UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON, DAVID SWAN, and JOSEPH SWAN, ) ) ) ) | | |
| Plaintiffs, ) | 3:04-cv-00049 JWS | |
| vs. ) | ORDER FROM CHAMBERS | |
| TECK COMINCO ALASKA, INC., ) | [Re:   Motion at Docket 102] | |
| Defendant. ) | | |

At docket 102, defendant Teck Cominco Alaska, Inc. ("Teck") moves for oral argument on the motion for partial summary judgment filed by plaintiffs Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, and Joseph Swan's[1] at docket 72. Plaintiffs' motion seeks to resolve 1,951 of Teck's alleged violations of its National Pollution Discharge Elimination System ("NPDES") permits.  Having carefully reviewed the parties' pleadings in support of and in opposition to summary judgment, as well as all attachments, the court finds that oral argument on plaintiff's motion is necessary.

The motion at docket 102 is **GRANTED**.  Oral argument on the motion for partial summary judgment at docket 72 is set for **June 15, 2006**, at **8:00 AM.**  Each party shall have one-half hour to address the court.  The parties shall address the issues identified below:

---

[1]Plaintiff David Swan died on May 5, 2005.

1.)   "The Clean Water Act allows any citizen to sue 'any person ... who is alleged to be in violation of ... an effluent standard or limitation under this chapter or ... an order issued by the [EPA] Administrator or a State with respect to such a standard or limitation.'"[2]  "An 'effluent standard or limitation' is further defined to include 'a permit or condition thereof issued under section 1342 of this title.'"[3]

Does the Clean Water Act permit plaintiffs to enforce the terms of both a NPDES permit and the terms of related compliance orders issued by the EPA?  More specifically, can plaintiffs enforce the TDS limits in the original 1998 NPDES permits and the TDS limits in a compliance order issued by the EPA in July 1999, and modified in May 2000, May 2001, and May 2002?  Does the court have authority to apply civil penalties for violations of both an NPDES permit and a compliance order which were in effect during the same time period?

2.)   Compliance Order (CWA-10-99-0167), which was first executed on July 1, 1999, and last modified on May 17, 2002, required Teck to "achieve compliance with its NPDES permit limit for TDS by August 28, 2003."[4]  Was the above-referenced compliance order still in effect when plaintiffs filed the underlying complaint on March 8, 2004?  If not, does the court have jurisdiction to enforce effluent limitations and to apply civil penalties for violations of a compliance order which was not in effect when plaintiffs filed their complaint?[5]

3.)   What Ninth Circuit authority, if any, supports plaintiffs' position that, for the purpose of assessing penalties, "[v]iolations of a monthly average limit mean that the permit was violated on each day the facility discharged in that month."[6]  What if a

---

[2] *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000) (quoting 33 U.S.C. § 1365).  Cf. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49, 60-61 (1987).

[3] *Id.* (quoting 33 U.S.C. § 1365(f)(g)).

[4] Modified Compliance Order (May 2002) at 3, exh. 76, doc. 72.

[5] *See, e.g., Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60-61 (1987).

[6] Reply at 45, doc. 124.

sample was only taken four days out of the month, and only one of the samples was over the daily maximum limit?  Does the court assess a penalty for each day Teck discharged during the month, in addition to a penalty for the day Teck violated the daily maximum limit, or is that duplicative?[7]

   4.)  Section I(A)(1) of the 1998 and 2003 mine site NPDES permits sets a daily maximum limit for cyanide of 9.0 ug/L and monthly average limit for cyanide of 4.0 ug/L.  However, section I(A)(5)(d) of the 1998 and 2003 permits state that the effluent limits for cyanide "are not quantifiable using EPA approved analytical methods," so the EPA will use the Interim Minimum Level of 9 ug/L as the compliance evaluation level for cyanide.  In light of the above sections, what limits for cyanide are enforceable under the mine site NPDES permits?  What method of testing cyanide is contemplated in the 1998 and 2003 mine site NPDES permits, Total Cyanide Analytical Method ("Total Method") or the Weak Acid Dissociable ("WAD") Cyanide Analytical Method?  Are split samples allowed under the NPDES permit?  If so, how are the results of split samples reported in relation to the daily maximum and monthly average limits for cyanide?

   5.)  The 1998 mine site NPDES permit permits Teck to discharge effluent from Outfall 001 into Middle Fork Red Dog Creek, and sets the daily maximum limit for TDS at 196 mg/L and the monthly average limit for TDS at 170 mg/L.  The 2003 mine site NPDES permit sets limits for in-stream TDS concentrations, and states that in addition to those limitations, "the TDS concentration at Outfall 001 shall not exceed 3900 mg/L."[8]  Both permits require Teck to sample the effluent one time per week.  However, the 2003 NPDES permit does not specify an applicable time period for the 3900 mg/L parameter.  Is the 3900 mg/L limit for TDS analogous to a daily maximum limitation?  If so, can plaintiffs establish that Teck's violations of the monthly average limit in the 1998 permit

---

[7]*Compare Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 791 F.2d 304, 313-315 (4th Cir. 1986), *with U.S. v. Allegheny Ludlum Corp.,* 366 F.3d 164, 169 (3rd Cir. 2004), *and Borden Ranch Partnership v. U.S. Army Corps of Engineers,* 261 F.3d 810 (2001), 817 -818 (9th Cir. 2001).

[8]July 2003 Mine Site NPDES Permit at 8, exh. 71, doc. 72.

are ongoing or capable of repetition when the 2003 permit does not contain a monthly average limit?

      6)      What Ninth Circuit authority, if any, supports defendant's position that Teck is permitted to submit amended DMRs to refute the DMRs it originally submitted, showing violations of Teck's NPDES permit?

      7)      On what date did the July 2003 mine site NPDES permit become effective? Was the July 2003 permit in effect or stayed when plaintiffs filed the underlying suit?

In addition to the issues set out above, the parties may address other issues raised in the pleadings in support of and in opposition to the motion for partial summary judgment. The court may, if its calendar permits, allow the parties somewhat more than 30 minutes each, but counsel should plan on having no more than 30 minutes per side.

DATED at Anchorage, Alaska, this 28th day of April 2006.

                    /s/
                JOHN W. SEDWICK
      UNITED STATES DISTRICT COURT JUDGE