OPTIONAL FORM 99 (7-90)
FAX TRANSMITTAL   # of pages ►
To: Luke Cole   From: Eva Chun
Dept./Agency   Phone # 206-553-1970
Fax # 415-346-8723
NSN 7540-01-317-7368   5099-101   GENERAL SERVICES ADMINISTRATION

BEFORE THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

In the Matter of:  )
)   Docket No. CWA-10-2004-0141
TECK COMINCO ALASKA, INC.  )
Red Dog Mine,  )   COMPLIANCE ORDER BY
Kotzebue, Alaska  )   CONSENT and REQUEST
)   FOR INFORMATION
NPDES Permit No. AK-003865-2  )
)
_____)

1. The following FINDINGS AND CONCLUSIONS are made, and COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION ("Order") issued, under the authority that Sections 308 and 309(a) of the Clean Water Act ("Act"), 33 U.S.C. §§ 1318 and 1319(a), vest in the Administrator of the United States Environmental Protection Agency ("EPA"). This authority has been delegated to the Regional Administrator, Region 10, and has been duly redelegated to the undersigned Director, Office of Water, Region 10.

## I. FINDINGS AND CONCLUSIONS

2. Section 402(a) of the Act, 33 U.S.C. § 1342(a), authorizes the Administrator of EPA to issue NPDES permits for discharges of pollutants into waters of the United States upon such specific terms and conditions as the Administrator may prescribe.

3. Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, except as authorized by an NPDES permit or other specified statutory sections. Each violation of an NPDES permit, and each discharge of pollutants that is not authorized by an NPDES permit, constitutes a violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

4. Teck Cominco Alaska, Incorporated ("Teck Cominco"), operates Red Dog Mine ("the Mine"), which is located on Red Dog Creek, 82 miles north of Kotzebue, Alaska, at latitude 68° 4' 17" and longitude 162° 52' 5". Teck Cominco is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

5. The Mine, which was under Teck Cominco's control at all times relevant to this action, discharges "pollutants" within the meaning of Section 502(6) of the Act, 33 U.S.C. § 1362(6), from a "point source" (outfall 001) within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14), into Middle Fork Red Dog Creek, which is "navigable waters" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7). The Mine's discharges constitute "discharges of pollutants" from a point source, within the meaning of Section 502(12) of the Act, 33 U.S.C. § 1362(12).

6. Teck Cominco is authorized to discharge pollutants from the Mine under NPDES Permit No. AK-003865-2 ("Permit"). Under Section 401 of the Act, Alaska Department of Environmental Conservation ("ADEC") certified the Permit, and it became effective on August 28, 1998, and was due to expire on August 28, 2003, but has been administratively extended under 40 CFR § 122.6. Part I.A.1. of the Permit established an average monthly effluent limit of 170 mg/L, and a daily maximum effluent limit of 196 mg/L, for total dissolved solids ("TDS"). [handwritten annotation]

7. EPA issued a permit modification, with an effective date of August 22, 2003, with new TDS limits and monitoring requirements. The Permit as modified limits the TDS load that can be discharged from outfall 001 such that in-stream TDS concentration at various locations within the creek do not exceed the applicable water quality criteria. An appeal of the permit modification (EAB Appeal No. NPDES 03-09) stayed the effect of the new TDS effluent limits, however, and since that

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141    Page 2 of 12

appeal is still pending as of the date of this Order, the Permit's original TDS limits, as set forth in paragraph 6, remain in effect pending resolution of the appeal.

8. At times during the months of September 1998, May 1999 through October 1999, May 2000 through October 2000, May 2001 through October 2001, May 2002 through October 2002, and May 2003 through August 2003, Teck Cominco violated the TDS effluent limits in the Permit. Teck Cominco submitted information that suggests that it will not be in compliance with the Permit's original TDS limits during the 2004 discharge season, though it likely would be in compliance with the TDS limits in the permit modification that are currently under appeal.

9. Cominco's violations of Part I.A.1. of the Permit constitute violations of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

10. Taking into account the seriousness of the violations and Teck Cominco's good faith efforts to comply, the schedule for compliance contained in the following ORDER is reasonable and appropriate.

11. The "Main Stem Red Dog Creek mixing zone" begins at the confluence of North Fork Red Dog Creek and Middle Fork Red Dog Creek and continues downstream for 1,930 feet. The "Ikalukrok Creek mixing zone" begins at the confluence of Main Stem Red Dog Creek and Ikalukrok Creek and continues downstream 3,420 feet. "Station 10" is a water quality monitoring station located on the Main Stem Red Dog Creek a short distance upstream of the confluence with the Ikalukrok Creek. "Station 160" is a water quality monitoring station on Ikalukrok Creek several miles below the confluence with the Main Stem Red Dog Creek, and approximately three miles below the confluence of Dudd Creek with Ikalukrok Creek. "Station 150" is a water quality monitoring station located within 150 feet downstream of the edge of the Ikalukrok Creek mixing zone.

12. The natural background TDS concentration (without the TDS contributed by the Mine's wastewater) at Stations 10 and 160, when water is free flowing within the streams, is always less than 500 mg/L.

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141        Page 3 of 12

## II. ORDER

13. Based upon the foregoing FINDINGS AND CONCLUSIONS, and pursuant to Sections 308 and 309(a) of the Clean Water Act, 33 U.S.C. §§ 1318 and 1319(a), it is hereby ORDERED as follows:

**Commencement of Discharge**

14. Teck Cominco shall not discharge from Outfall 001 until there is free flow of water in Main Stem Red Dog Creek. Prior to beginning discharge in 2004, Teck Cominco shall consult with EPA, Alaska Department of Natural Resources, Office of Habitat, Management, and Permitting, and Alaska Department of Environmental Conservation, and Teck Cominco must receive written approval from EPA.

**Schedule for Compliance**

15. Teck Cominco shall achieve compliance with its NPDES permit limit for TDS by December 31, 2004.

**Interim TDS Limit**

16. After the commencement of discharge, Teck Cominco shall limit the TDS load discharged from Outfall 001 so as to maintain in-stream TDS concentrations at or below 500 mg/L at the edge of the mixing zone in Main Stem Red Dog Creek. This limitation is in effect until Arctic Grayling have finished spawning in Main Stem Red Dog Creek.

17. The permittee must consult with the EPA, Alaska Department of Environmental Conservation, and the Alaska Department of Natural Resources, Office of Habitat, Management, and Permitting regarding the end of Arctic Grayling spawning, and must receive written approval from EPA prior to increasing the TDS load discharged from Outfall 001 above the limit specified in paragraph 16.

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141            Page 4 of 12

18. After Arctic Grayling have finished spawning and Teck Cominco has received written approval from EPA, Teck Cominco shall limit the TDS load discharged from Outfall 001 so as to maintain in-stream TDS concentrations at or below all of the following concentrations at all times:

Outfall 001: Shall not exceed 3,900 mg/L

At the edge of the mixing zone in Main Stem Red Dog Creek: Shall not exceed 1500 mg/L through the end of the discharge season

At the edge of the mixing zone in Ikalukrok Creek: Shall not exceed 1000 mg/L through the end of the discharge season

Station 160: Shall not exceed 500 mg/L from July 25th through the end of the discharge season.

19. In addition, flow volume must be limited as described in Paragraph 24.

**Monitoring** *Additional Grayling testing* [handwritten]

20. TDS. Monitoring by direct laboratory testing shall be conducted when discharging at Outfall 001. All samples for TDS shall be grab samples, and the date and time of sample collection must be recorded. TDS shall be monitored twice per week at the downstream edge of the mixing zone in Mainstem Red Dog Creek and at the downstream edge of the mixing zone in Ikalukrok Creek. Teck Cominco shall also monitor TDS once per week at Stations 10, 150, and 160, and the effluent. The sample for Station 10 shall be taken as close in time as practicable to one of the sample events collected at the edge of the mixing zone in Mainstem Red Dog Creek; and the sample for Station 150 shall be taken as close in time as practicable to one of the sampling events at the edge of the mixing zone in Ikalukrok Creek. Conductivity shall be monitored concurrently with TDS sampling at Stations 10, 150, and 160.

21. Stream Stage and Conductivity Correlation. Teck Cominco must update the TDS/Conductivity correlation curves twice per discharge season with the direct laboratory testing data for Station 10 and Station 160. The correlation curves must be updated once in mid-August

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141        Page 5 of 12

using the data collected through August 15th and once at the end of the discharge season using the data collected from August 16th through the end of the discharge season.

22. Once per month carbonates, chlorides, sulfates, potassium, magnesium, calcium, and sodium shall be analyzed at Station 10, Station 150, Station 160, and the effluent. The carbonate analysis may be estimated based on direct measurement of alkalinity.

**Reporting**

23. Teck Cominco shall calculate and record the allowable flow volume from Outfall 001 at least twice each day using the formulas below and shall submit all of the data involved in those calculations (including the time the measurements were taken), and the calculation results, each month along with the discharge monitoring report (DMR). Teck Cominco shall base each calculation on data collected within two hours of each shift change, and shall make each calculation within one hour of the collection of data. The calculations and data for Station 160 shall be made and recorded when the TDS limit for Station 160 is in effect. The allowable flow calculated from measurements taken at Station 10 and 160, and the outfall must reflect the stream conditions at each station and the outfall flow that are occurring at approximately the same time frame (i.e., the conductivity and flow measurements at Station 10, Station 160, and the flow from the outfall must be taken within 30 minutes of each other). The following shall be collected and calculated:

Effluent

Assume the effluent concentration ($C_e$) is equal to 3900 mg/L
Measure the effluent flow ($Q_e$)

Station 10

Measure conductivity at Station 10
Calculate the total TDS concentration at station 10 ($C_{10(total)}$) using the measured conductivity at Station 10
Measure the total flow at station 10 ($Q_{10(total)}$)
Calculate the flow at station 10 ($Q_{10}$) minus the effluent flow at station 10 by using the equation: $Q_{10} = Q_{10(total)} - Q_e$

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141   Page 6 of 12

Calculate the TDS concentration at station 10 ($C_{10}$) minus the TDS contribution from the effluent using the following equation:

$$C_{10} = \frac{(C_{10(total)} Q_{10(total)}) - (3900\, Q_e)}{(Q_{10(total)} - Q_e)}$$

Calculate the allowable effluent flow ($Q_{allowable}$) expected to result in 500 mg/L TDS at station 10, when Arctic grayling are spawning, and 1500 mg/L TDS at station 10 when Arctic grayling have finished spawning, using the following equation:

$$Q_{allowable} = \frac{Q_{10}(C_{criteria} - C_{10})}{(3900 - C_{criteria})}$$

Where, $C_{criteria}$ = 500 mg/L when Arctic grayling are spawning, and 1500 mg/L when Arctic grayling have finished spawning.

Station 160

Measure the conductivity at Station 160
Calculate the total TDS concentration at station 160 ($C_{160(total)}$) using the measured conductivity of Station 160
Measure the total flow at station 160 ($Q_{160(total)}$)
Calculate the flow at Station 160 ($Q_{160}$) minus the effluent flow at station 160 by using the equation: $Q_{160} = Q_{160(total)} - Q_e$
Calculate the TDS concentration at Station 160 ($C_{160}$) minus the TDS contribution from the effluent using the following equation:

$$C_{160} = \frac{(C_{160(total)} Q_{160(total)}) - (3900\, Q_e)}{(Q_{160(total)} - Q_e)}$$

Calculate the allowable effluent flow ($Q_{allowable}$) expected to result in 500 mg/L TDS at station 160 using the following equation:

$$Q_{allowable} = \frac{Q_{160}(500 - C_{160})}{(3900 - 500)}$$

24. The $Q_{allowable}$ calculated above must be compared to the $Q_{allowable}$ calculated for station 10. Teck Cominco must discharge at or below the more restrictive $Q_{allowable}$

25. Calculations of TDS concentrations based on conductivity shall be made using correlation curves that are based on TDS and conductivity measurements made pursuant to this Order.

26. Teck Cominco shall submit the results of the monitoring, calculations, and testing described in paragraphs 20, 21, 22, and 23 in the monthly discharge monitoring reports (DMRs).

27. At the end of the discharge season, Teck Cominco shall submit a report, with the final DMR for the season, which compares the calculated TDS values in Main Stem Red Dog Creek and

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141    Page 7 of 12

Ikalukrok Creek (based on the measured conductivity in the creeks) to the actual measured values. The report shall include the following information:

    (a) Measured TDS concentration at the edge of the edge of the mixing zone in Main Stem Red Dog Creek and at Station 10, and the date and time each sample was taken,

    (b) Measured conductivity at station 10, and predicted TDS concentration at Station 10 at the date and approximate time the samples were taken (i.e., within one hour of sample collection),

    (c) Measured TDS concentration at Station 160, and the date and time each sample was taken,

    (d) Measured conductivity at Station 160, and predicted TDS concentration at Station 160 at the date and approximate time the samples were taken (i.e., within one hour of sample collection).

28. Teck Cominco shall submit all information required by this Order to:

    Eva Chun, Compliance Officer
    U.S. Environmental Protection Agency, Region 10
    NPDES Compliance Unit, OW-133
    1200 Sixth Avenue
    Seattle, Washington 98101

    Sharmon Stambaugh, Environmental Specialist
    Alaska Department of Environmental Conservation
    Division of Air and Water Quality
    555 Cordova Street
    Anchorage, Alaska 99501

**Quality Assurance Plan**

29. Teck Cominco shall update, as needed, the Quality Assurance Plan previously submitted to EPA with the Modified Order by Consent under Docket No. CWA-10-99-0167 and last revised July 2002. The Plan shall be updated to include the new conditions of this Order not covered by the last QAPP submitted to EPA. The Plan shall describe the operational procedures, quality assurance and control measures, and calibration procedures for measuring conductivity, TDS, and flow at Stations 10 and 160.

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141       Page 8 of 12

## IV. SANCTIONS AND ENFORCEMENT

30. Violation of, or failure to comply with, the provisions of this Order may subject Teck Cominco to: (1) civil penalties of up to $32,500 per day of violation pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), and 40 C.F.R. Part 19; (2) administrative penalties of up to $11,000 per day for each violation, pursuant to Section 309(g) of the Act, 33 U.S.C. § 1319(g), and 40 C.F.R. Part 19; or (3) termination of the Permit under 40 C.F.R. § 122.64.

31. Nothing in this Order shall be construed to relieve Teck Cominco of the requirements of its NPDES permit or of applicable requirements of federal, state, or local law. EPA reserves the right to take enforcement action as authorized by law for any violation of this Order, and for any future or past violation of the Permit or any other applicable legal requirements.

## IV. GENERAL PROVISIONS

32. *Reevaluation of Order's Requirements.* EPA and Teck Cominco each understand that information will become available during the performance of this Order that may justify reevaluation of some of its provisions. EPA and Teck Cominco intend to confer periodically to exchange any new information, and to discuss any amendment to the Order's various terms that may be justified.

33. *Force Majeure*

(a) If any event occurs which causes delay and effectively precludes compliance with the terms of this Order, Teck Cominco shall promptly notify EPA orally and shall, within seven days of oral notification to EPA, notify EPA in writing of the anticipated length and cause of the delay, the measures taken and to be taken by Teck Cominco to prevent or minimize the delay, and the timetable by which Teck Cominco intends to implement these measures.

(b) If EPA determines, in its discretion, that the delay or anticipated delay of an obligation under this Order has been caused, or will be caused, by circumstances beyond the reasonable control and despite the due diligence of Teck Cominco, then the time for performance of the delayed

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141         Page 9 of 12

1 obligation shall be excused or extended for a period equal to the delay resulting from such
2 circumstances.
3     (c) Force Majeure shall not include increased costs of performance of the terms and
4 conditions of the Order, changed economic circumstances, or reasonably foreseeable seasonal
5 fluctuations in the weather conditions of the region.
6     34. <u>Reservation of Rights</u>
7     (a) The consent to this Order is not an admission of liability by Teck Cominco on any issue
8 dealt with in this Order. In consenting to this Order, Teck Cominco does not admit, and reserves the
9 right to controvert in any subsequent proceedings, the validity of or responsibility for any of the
10 factual or legal determinations made herein. However, by its consent to this Order, Teck Cominco
11 agrees that it will not controvert or challenge, in any subsequent proceedings initiated by the EPA or
12 the United States, the validity of this Order or the authority of EPA to issue and enforce this Order.
13     (b) Teck Cominco expressly reserves the right to claim that no harm has been or will be
14 caused by the discharge described in this Order.
15     35. <u>Parties Bound</u>. This Order shall apply and be binding upon Teck Cominco, their agents,
16 successors, and assigns and upon all persons, contractors, and consultants acting on behalf of Teck
17 Cominco.

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141    Page 10 of 12

36. <u>Property Transfer</u>. If Teck Cominco transfers, sells, or leases the Mine to another party prior to Teck Cominco's fulfillment of the provisions of this Order, Teck Cominco shall incorporate a copy of this Order into the documents of transfer or lease, and shall provide in those documents that the new owners or lessees shall take or lease subject to the provisions of this Order.

Dated this 7th day of May, 2004

*for*
Randall F. Smith
Director, Office of Water
U.S. Environmental Protection Agency, Region 10

COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
DOCKET NO. CWA-10-2004-0141    Page 11 of 12

May-07-2004 02:30pm   From-RED DOG ENVIRONMENTAL        8074289314         T-619  P.001  F-216

1  AGREED AND CONSENTED TO BY:

2

3  Teck Cominco Alaska Incorporated

4

5  By: _____Keith Malone_____
        for R. G. Scott
6       for General Manager

7

8  Date: _____07 May 04_____

9

10

11  I, R. G. SCOTT, hereby certify that I am the General Manager of Teck Cominco, and that I have the
12  authority to enter into agreements on behalf of Teck Cominco, and to otherwise legally bind Teck
    Cominco. I hereby acknowledge that I have freely and voluntarily consented to and signed this Order on
13  behalf of the Teck Cominco after obtaining advice of counsel.

14

15

16

17

18

19

20

21

22

23

24

25

26  COMPLIANCE ORDER BY CONSENT AND REQUEST FOR INFORMATION,
27  DOCKET NO. CWA-10-2004-0141    Παγε 12 οφ 12

28