LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty, & the Environment
450 Geary Street, Suite 500
San Francisco, CA, 94102
415/346-4179 • fax 415/346-8723

NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515-3538
907/345-5595• fax 907/345-3629

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON, DAVID SWAN, and JOSEPH SWAN,<br><br>Plaintiffs<br><br>v.<br><br>TECK COMINCO ALASKA INCORPORATED,<br><br>Defendant. | Case No. A04-49 CV (JWS)<br><br>**PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT UNDER F.R.C.P. 59** |

## I.   INTRODUCTION

Plaintiffs Enoch Adams, et al., file this motion under Federal Rules of Civil Procedure ("FRCP") Rule 59(e), to bring to the attention of the Court to a factual error in its "Order and Opinion re Motion at Docket 72" (filed July 28, 2006) [docket 136] ("Order"). Although the Court ruled that Adams had not demonstrated that the monthly total dissolved solids (TDS) violations were ongoing, Adams respectfully requests that this Court alter that Order to grant

summary judgment for Adams on the 618 violations of the monthly TDS permit limitations of the 1998 permit, about which there is no genuine issue of material fact. A Rule 59(e) motion is appropriate in situations, such as this, where the motion is necessary to correct errors of fact upon which the judgment relies.

## II. STANDARD FOR GRANTING A MOTION TO ALTER JUDGMENT

This Court has considerable discretion when considering a motion to amend a judgment under Rule 59(e). *Turner v. Burlington Northern Santa Fe Railroad*, 338 F.3d 1058, 1063 (9th Cir. 2002); *McDowell v. Calderon*, 197 F.3d 1253, 1254 n.1 (9th Cir. 1999). A Rule 59(e) motion may be granted if it "is necessary to correct manifest errors of law or fact upon which the judgment is based[.]" *Turner, supra,* at 1063.

## III. THE COURT OVERLOOKED UNDISPUTED FACTS IN RULING THAT THERE WAS NO EVIDENCE OF ONGOING VIOLATIONS OF THE MONTHLY TDS STANDARD.

In its Order, the Court overlooked the fact that there are no genuine issues of material fact as to the ongoing nature of Teck Cominco's violations of the monthly average TDS permit limitation contained in the 1998 Mine Site Permit. As described below, the 1998 Mine Site Permit limitation for monthly average TDS is still in effect during Arctic grayling season, and Teck Cominco has admitted violating it in 2004 and 2005, after the filing of this suit.

As the Court noted (Order at 4), there have been a series of Compliance Orders by Consent (COBCs) between Teck Cominco and the U.S. Environmental Protection Agency concerning the underlying permit at issue in this case. On May 8, 2006, EPA and Teck Cominco entered into the most recent of these COBCs. Because this 2006 COBC was entered into long after the completion of briefing on the summary judgment motion at issue here, on June 13, 2006 Adams filed it as Exhibit 311 [docket at 129].

The 2006 COBC reads, in pertinent part,

> [¶] 2.5. Teck Cominco is authorized to discharge pollutants from the Mine under NPDES Permit No. AK-003865-2 ("1998 Permit"). Under Section 401 of the Act, Alaska Department of Environmental Conservation ("ADEC") certified the 1998 Permit, and it became effective on August 28, 1998, and was due to expire on August 28, 2003, but has been administratively extended under 40 CFR §122.6. **Part I.A.1. of the 1998 Permit established an average monthly effluent limit of 170 mg/l, and a daily**

Motion to Alter or Amend
Judgment under Rule 59(e)                - 1 -

> **maximum effluent limit of 196 mg/l, for total dissolved solids ("TDS") at Outfall 001, based on the Alaska water quality standards in effect at that time.**
>
> ....
>
> 2.7. <u>Appeal of the New TDS Limit During Arctic Grayling Spawning</u>. In an appeal of the 2003 Modified Permit, the Environmental Appeals Board ("EAB") vacated the 500 mg/l TDS limit during Arctic grayling spawning, and remanded it to EPA Region 10 for further proceedings.... This stayed the effect of that limit pending further action by EPA, so **during Arctic grayling spawning the TDS limits from the 1998 Permit (specified in ¶2.5) remained in effect.**
>
> ...
>
> 2.11. On February 2, 2006, EPA issued for public notice, a draft NPDES permit for the Red Dog Mine ("2006 Draft Permit").... Because EPA Region 10 has not yet reissued the permit as of the date of this Order, **the 1998 Permit's original more stringent TDS limits, as set forth in Paragraph 2.5, remain the effective effluent limits during Arctic grayling spawning.**
>
> 2.12. At times during the months of September 1998, May-October 1999, May-October 2000, May-October 2001, May-October 2002, May-August 2003, **May-June 2004, and May-June 2005, Teck Cominco violated the TDS effluent limits in Part I.A.1 of the 1998 Permit.**
>
> 2.13. Teck Cominco's violations of the TDS limits in Part I.A.1 of the 1998 Permit constitute violations of Section 301(a) of the Act, 33 U.S.C. § 1311(a).
>
> 2.14. **Teck Cominco submitted information suggesting that it will not be in compliance with the 1998 Permit's TDS limits during the 2006 discharge season.**

Exhibit 311 (emphasis added); for the Court's convenience, it is also attached to Declaration of Luke W. Cole in Support of Motion to Alter or Amend Judgment ("Cole dec.") filed concurrently with this Motion.

Adams noted that the monthly TDS violations were ongoing in its Reply in Support of Motion for Summary Judgment (filed December 9, 2005). There, Adams quoted from the deposition of James Kulas, environmental superintendent of the mine, which was taken on May 31, 2005, more than a year after the filing of this suit:

> Q. What permit requirements currently apply to you in terms of TDS during the arctic grayling spawning season?
>
> A. Current permit limits for arctic grayling during the spawning period are the permit conditions in the 1998 permit.
>
> Q. Are you complying with those permit conditions?

Motion to Alter or Amend
Judgment under Rule 59(e)                     - 2 -

A.   No, we are not.[1]

As Adams pointed out in its Summary Judgment Reply brief (at 56-57), Kulas's testimony is corroborated by the May 2004 and June 2004 DMRs, which report that the monthly average TDS discharges are considerably over the 170 mg/l limit in the Mine Site Permit: 2747 mg/l in May (Exhibit 87[2]) and 3410 mg/l in June (Exhibit 294).

Since the monthly average TDS limits have been violated during grayling spawning season after the filing of the suit, as demonstrated by EPA documents, Teck Cominco's DMRs, and Teck Cominco's testimony, the monthly TDS violations during grayling spawning season are ongoing. Counsel for Adams pointed out that the monthly average TDS limits in the 1998 permit are still in effect during grayling spawning season during oral argument on June 15, 2006. Transcript, at 20:1-7 [docket 135]. The Court even noted this fact in its Order (at 11, text accompanying note 41). However, the Court then concluded that "Because plaintiffs have failed to demonstrate that violations of the monthly average TDS limit are ongoing or capable of repetition, plaintiffs motion for summary judgment is denied as to the 618 alleged violations of the monthly average TDS limit." Order at 15.

Adams respectfully notes that no genuine material issue of fact exists: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] The Court apparently overlooked the fact that Teck Cominco has already conceded in its DMRs, in its deposition testimony and in the COBC, that it is bound by, and violating, the 1998 Mine Site Permit monthly average TDS limit during grayling spawning season.

Adams thus requests under Rule 59(e) that this Court amend its Order of July 28, 2006, to enter summary judgment for Adams on the 618 monthly violations of the 1998 Permit's TDS

---

[1] Deposition of James Kulas ("Kulas depo."), 178:21-179:4, Exhibit 82 to Declaration of Luke W. Cole in Support of Motion for Summary Judgment [docket 72].

[2] Attached for the Court's convenience to Cole dec.

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Motion to Alter or Amend
Judgment under Rule 59(e)                          - 3 -

1 | limitations.

2 | Date: 8/4/06

Respectfully submitted,

CENTER ON RACE, POVERTY &
THE ENVIRONMENT

LAW OFFICES OF NANCY S. WAINWRIGHT

*/s/ Luke Cole*

LUKE W. COLE

450 Geary Street, Suite 500
San Francisco, CA 94102

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I certify that on the 4th day of August 2006, a true and correct copy of the Motion to Alter or Amend Judgment and Declaration of Luke Cole were served via electronic mail on the following counsel of record:

Lawrence Hartig
Sean Halloran
Hartig Rhodes
717 K Street
Anchorage, AK 99501

David Case
Landye Bennet Blumstein
701 West Eighth Avenue, Suite 1200
Anchorage, AK 99501

Nancy S. Wainwright
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515

James E. Torgerson
Heller Ehrman
510 L Street, Suite 500
Anchorage, AK 99501

*/s/ Luke Cole*

Luke W. Cole

Motion to Alter or Amend
Judgment under Rule 59(e)                    -4-