1  LUKE W. COLE, California Bar No. 145,505
   CAROLINE FARRELL, California Bar No. 202,871
2  BRENT J. NEWELL, California Bar No. 210,312
   Center on Race, Poverty, & the Environment
3  47 Kearny Street, Suite 804
   San Francisco, CA, 94108
4  415/346-4179 • fax 415/346-8723

5  NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
   Law Offices of Nancy S. Wainwright
6  13030 Back Road, Suite 555
   Anchorage, AK 99515-3538
7  907/345-5595 • fax 907/345-3629

8  Attorneys for Plaintiffs Enoch Adams, Jr., Leroy
   Adams, Andrew Koenig, Jerry Norton and Joseph Swan
9

10            **IN THE UNITED STATES DISTRICT COURT**

11          **FOR THE DISTRICT OF ALASKA AT ANCHORAGE**

12

13  ENOCH ADAMS, JR., LEROY ADAMS,          Case No. A04-49 (JWS)
    ANDREW KOENIG, JERRY NORTON
    DAVID SWAN and JOSEPH SWAN,
14                                          [PROPOSED]
         Plaintiffs,                        SUPPLEMENTAL
15                                          REVISED COMPLAINT FOR
                                            INJUNCTIVE AND
         v.                                 DECLARATORY RELIEF
16                                          AND CIVIL PENALTIES
    TECK COMINCO ALASKA INCORPORATED
17
         Defendant.
18                                          Federal Water Pollution Control
19  NANA REGIONAL CORPORATION and           Act, 33 U.S.C. §§ 1251 to 1287
    NORTHWEST ARCTIC BOROUGH,
20
         Intervenors-Defendants.
21

22

23

24

25

26

27

28

# I. JURISDICTION AND VENUE

1. Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the Federal Water Pollution Control Act, also known as the Clean Water Act (the "Act"), 33 U.S.C. § 1365(a)(1).

2. Pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), venue lies in the District of Alaska because Teck Cominco's Red Dog Mine and the port site are located within the District of Alaska.

# II. INTRODUCTION

3. Through this action, plaintiffs Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and Joseph Swan seek an injunction, declaratory relief, and civil penalties in response to repeated and continuing violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* by Teck Cominco Alaska Incorporated ("Teck Cominco"). Teck Cominco has violated the Clean Water Act by grossly exceeding the discharge limits set by its National Pollution Discharge Elimination System ("NPDES") permits for the Red Dog mine site and port site in northwest Alaska.

4. This case is about citizens seeking to enforce environmental laws when state and federal agencies are unable or unwilling to do so. The linchpin of the national effort to clean and preserve our waters is the Clean Water Act. Under 33 U.S.C § 1342, all discharges of pollutants to the waters of the United States must be authorized by a NPDES permit.

5. Teck Cominco defeats the purpose of the Clean Water Act and NPDES permits through its continuing disregard of the specified limits in the mine site and port site permits. Under the self-monitoring provisions of its permits, Teck Cominco documents and reports its compliance, or lack thereof, each month to the U.S. Environmental Protection Agency ("EPA") in its Discharge Monitoring Reports. These reports demonstrate that Teck Cominco knowingly violates at least some of its permit limits every month that it operates.

6. The six individual plaintiffs bring this action because Teck Cominco's repeated violations have reduced the quality of their lives and changed the way they perform basic activities such as subsistence hunting and fishing. The plaintiffs are all residents of the Native

Supplemental Revised Complaint                                  - 1 -

Village of Kivalina, an Inupiat village on the Chukchi Sea. They are also all appointed members of the Kivalina Relocation Planning Committee, and are referred to collectively as "plaintiffs" in this Complaint. Their homes are at the mouth of the Wulik River, downstream of the mine's Outfall 001 on Middle Fork Red Dog Creek. The community obtains drinking water from the Wulik River, and hunts and fishes in the marine and terrestrial environment adjacent to the port and mine sites. As a result of Teck Cominco's illegal discharges, plaintiffs believe that their drinking water quality has decreased. The location and quantity of terrestrial mammals, marine mammals and fish that constitute their basic source of food has changed. Teck Cominco's violations of the Clean Water Act deprive plaintiffs of the opportunity to exercise their traditional lifestyle without fear of illness or exposure to dangerous contaminants.

7. Neither the EPA nor the Alaska Department of Environmental Protection have undertaken any enforcement action or imposed administrative penalties in response to the repeated violations of the NPDES permits. EPA's response to the repeated violations has been to issue Compliance Orders by Consent that give Teck Cominco additional time to comply with its permit limits and specify new, less stringent interim limits. Teck Cominco violates these Compliance Orders as well.

### III. NATURE OF THE CASE

8. This is a citizens' suit for relief brought by the plaintiffs under Section 505 of the Clean Water Act, 33 U.S.C. § 1365. This provision allows citizens to bring an action against any person in violation of any effluent standard or limitation. The district court has jurisdiction to enforce any effluent standard or limitation, and to apply civil penalties as authorized by the Act.

9. Teck Cominco is routinely discharging a variety of pollutants in violation of the limits established in its mine site NPDES permit (permit no. AK-003865-2, hereafter "mine site permit") and port site permit (permit no. AK-004064-9, hereafter "port site permit"). Teck Cominco's permits, and the conditions of the permits, are "effluent standards or limitations" under 33 U.S.C. § 1365(f). Plaintiffs bring this action to enforce the Clean Water Act. Plaintiffs seek a declaratory judgment, injunctive relief to prohibit future discharges in violation of the

1    established permit limits, the imposition of civil penalties, and other relief for Teck Cominco's

2    violations of the terms of its permits.

3                                    **IV. PARTIES**

4        10.  The plaintiffs – Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton,

5    David Swan and Joseph Swan – all serve on the KRPC.  Each is a long-time resident of Kivalina.

6    The plaintiffs will be collectively referred to as "plaintiffs" in this Complaint.  The plaintiffs

7    have obtained and reviewed copies of Teck Cominco's Discharge Monitoring Reports for the

8    time period covered by this lawsuit.

9        11.  The plaintiffs, and other residents of Kivalina, reside at the mouth of the Wulik

10   River.  The Wulik River is the primary source of drinking water for the village of Kivalina.

11   Plaintiffs also obtain a number of species of fish from the Wulik River and its tributaries.

12   Plaintiffs hunt for marine mammals and fish in the waters offshore from the port site's discharge

13   point on the Chukchi Sea.  Plaintiffs and other residents of Kivalina depend on the food obtained

14   from subsistence hunting activities in these locations for a substantial portion of their dietary

15   needs.  Teck Cominco's permit violations affect the individual plaintiffs.  Plaintiffs rely on the

16   waters of the Wulik River, which is downstream of Red Dog Mine Outfall 001 in the Middle

17   Fork Red Dog Creek, for their drinking water and as a source of fish for its basic subsistence.

18   Likewise, plaintiffs fish and hunt in the waters of the Chukchi Sea into which Teck Cominco's

19   port facility regularly discharges hazardous substances such as zinc, cadmium, and fecal

20   coliform.  Plaintiffs observe that the quality of their drinking water has declined since the mine

21   began operating, noting strange tastes and colors that make the water offensive to consume.

22   Plaintiffs have also seen changes in the location and quantity of terrestrial mammals, marine

23   mammals and fish that constitute their basic source of food.  These changes have affected the

24   way that plaintiffs conduct their basic life activities, and hampered their ability to ensure an

25   adequate supply of food for themselves and their families.  Plaintiffs and other Kivalina residents

26   hunt in the vicinity of the mine, and are afraid that the subsistence resources they are hunting may

27   be contaminated from drinking in the streams to which Teck Cominco is illegally discharging.

28

Plaintiffs fear that Teck Cominco's continued illegal discharge will further limit their hunting and fishing. They also fear for their health when drinking the water near the mine during those hunting trips. Teck Cominco's violations of the Clean Water Act expose the plaintiffs to poor drinking water, threaten the health of the marine and freshwater ecosystems on which the community depends, and deprive the community of the opportunity to continue exercising its traditional lifestyle without fear of illness or exposure to dangerous contaminants. The individual plaintiffs have enjoyed aesthetic, recreational and spiritual interests in the pristine wilderness environment in the general region of the Wulik River watershed, which has been the home of their people since time immemorial. The individual plaintiffs' ability to enjoy their aesthetic, recreational and spiritual connection with this unspoiled area is harmed by Teck Cominco's illegal discharges.

12. Defendant Teck Cominco Alaska Incorporated is a subsidiary of Teck Cominco American, Incorporated, which is owned by a partnership of Teck Cominco Metals, Ltd. and Teck Cominco Nova Scotia, Ltd. Cominco Alaska Incorporated changed its name to Teck Cominco Alaska Incorporated in 2001. At that time, Teck Cominco Alaska Incorporated assumed responsibility for the permits issued to Cominco Alaska. Teck Cominco Alaska Incorporated operates the Red Dog mine, and holds the NPDES permits for the mine and port sites.

13. As the permit holder, Teck Cominco has a duty to comply with the terms of its NPDES permits. Teck Cominco's authorized representatives sign each Discharge Monitoring Report and certify its accuracy under penalty of law. Teck Cominco's mine site permit authorizes discharges to Middle Fork Red Dog Creek, which flows into the Ikalukrok Creek and then into the Wulik River. Teck Cominco's port site permit authorizes discharges to the tundra and the Chukchi Sea.

## V. NOTICE

14. Pursuant to Section 505(b)(A) of the Act, 33 U.S.C. § 1365(b)(1)(A), on July 3, 2003, Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and Joseph

Swan gave notice of the violations alleged in the Complaint sixty days prior to the filing of this Complaint to: A) the general manager and senior environmental advisor of Teck Cominco Alaska Incorporated, as well as its agent for service of process; B) the Administrator of the U.S. EPA; C) the Regional Administrator of the U.S. EPA for Region X; D) the U.S. Attorney General; E) the Commissioner of the Alaska Department of Environmental Conservation; F) the Commissioner of the Alaska Department of Fish and Game; and G) the Attorney General of Alaska. A true and correct copy of this Notice Letter is attached to this Complaint as Exhibit A. Pursuant to Section 505(b)(A) of the Act, 33 U.S.C. § 1365(b)(1)(A), on August 8, 2007, Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton and Joseph Swan gave supplemental notice of further violations sixty days prior to the filing of this Supplemental Complaint to the same nine persons. A true and correct copy of this Supplemental Notice Letter is attached to this Complaint as Exhibit B.

15. Neither EPA nor the State of Alaska has commenced or is diligently prosecuting a civil or criminal action in a court of the United Stated to require Teck Cominco's compliance with the standards, limitations, and orders at issue in this case, the mine site permit and the port site permit.

16. This action is not barred by any prior administrative penalty under § 309(g) of the Act, 33 U.S.C. § 1319(g).

## VI. GENERAL ALLEGATIONS

### A. Background on the Red Dog Mine

17. The Red Dog mine is the world's largest zinc mine, and its zinc deposit is the largest known zinc resource in the world. The mine is located about 55 miles east of the Chukchi Sea in the western end of the Brooks Mountain Range in the Northwest Arctic Borough of Alaska. The mine has the capacity to produce 1.1 million tons per year of high quality zinc concentrates, constituting seven percent of the world's mined zinc production. The mine has an expected life of forty years. Concentrate production and hauling began in 1989.

18. The Red Dog mine is an open-pit ore mine. After the ore is removed from the pit, it

is processed to extract the zinc and lead that are the mine's primary products. First the ore is crushed and ground to a fine powder. The powder is placed in tanks where the zinc and lead are separated from the rest of the ore in a milling process that utilizes a variety of chemicals, including 60 to 70 grams of cyanide per ton of ore. Waste ore and water from processing are placed in the tailings impoundment, an unlined storage area designed to keep the tailings and water in one place. This water is treated and discharged into Middle Fork Red Dog Creek through Outfall 001. Discharge from the mine site is seasonal, happening only in the warmer months, usually beginning in May and continuing until early October. Mining at the site takes place year-round.

19. Concentrates are transported year-round to the port on the 52-mile DeLong Mountain transportation system road, which runs from the mine site to a port site. A portion of the road passes through the Cape Krusenstern National Monument.

20. At the port site, the concentrates are stored in two large concentrate storage buildings approximately one mile from the sea. Each building is approximately one quarter mile long. The port site began operations in 1989 with one concentrate storage building. A second building was added later.

21. Zinc concentrates produced at the mine are sent to smelters around the world by ship from the port site, which is on the Chukchi Sea, located southeast of Kivalina at 67 34" N, 164 03" west. Construction of the port began in 1986, and the first barge was loaded in 1990. Shipping from the port site only occurs in warmer months when the Chukchi Sea is ice-free; most discharge from the port only occurs seasonally as well.

22. Teck Cominco mined 5,220,000 tons of ore in 1999, 6,591,000 tons of ore in 2000, 7,294,000 tons of ore in 2001, and 7,257 tons of ore at the Red Dog mine in 2002. Red Dog produced 1,148,000,000 pounds of zinc in 1999, 1,171,000,000 pounds of zinc in 2000, 1,141,000,000 pounds of zinc in 2001, and 1,156,800,000 pounds of zinc in 2002.

23. Teck Cominco's pro forma operating profit at the Ted Dog mine was $117,000,000 in 1999, $121,000,000 in 2000, and $4,000,000 in 2001.

24. The mine and port are located on lands owned by Northwest Alaska Native Association (NANA) Regional Corporation. Teck Cominco financed the construction of the mine and operates it under an agreement with NANA.

### B. Statutory and Regulatory Background

25. Section 301 (a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source" into the navigable waters of the United States, unless the discharge is in compliance with the applicable effluent limitation set by EPA, as required by a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

26. The Red Dog Mine and its port site both include point sources under Section 502(14) of the Act, 33 U.S.C § 1362(14).

27. Middle Fork Red Dog Creek and the Chukchi Sea are navigable waters under Section 502(7) of the Act, 33 U.S.C. § 1362(7).

28. The U.S. EPA administers the NPDES permit program in the State of Alaska.

### C. Permit History, Requirements, Consent Orders and Other Violations

#### 1. The Mine Site

29. The first NPDES permit for the mine site (permit no. AK-003865-2) was issued on July 10, 1985, and was reissued by EPA on August 28, 1998. The current mine site permit expired on August 28, 2003, but was administratively extended by EPA and is still in force.

30. The mine site permit authorizes Teck Cominco to discharge 2.418 billion gallons of effluent each year from its tailings pond through its treatment plant's "Outfall 001" to Middle Fork Red Dog Creek (Permit Condition I(A)(2)).

31. The permit establishes discharge limits for 11 parameters. The permit contains two types of limitations: a daily maximum discharge limit and a monthly average discharge limit.

32. The permit limits for total dissolved solids are a daily maximum concentration of 196 milligrams per liter (mg/L) and a monthly average concentration of 170 mg/L (Permit Condition I(A)(1)). EPA issued a permit modification on July 17, 2003 which became effective on August 22, 2003, allowing a higher level of TDS in the mine's discharge, but this permit modification

Supplemental Revised Complaint            - 7 -

has currently been stayed pending appeal and the old permit limitation is still in effect. As the EPA informed Teck Cominco on October 2, 2003, "Until the appeal is resolved, all conditions of the unmodified 1998 NPDES permit referenced above remain in effect, including the TDS limits and monitoring requirements for Outfall 001 contained in Part I.A[.]" As of June 15, 2004, the daily TDS permit limit is 3900 mg/L, except during Arctic Grayling spawning season when both the daily and monthly TDS limits from the 1998 permit are in force.

33. The permit limits for cyanide are a daily maximum concentration of 9.0 parts per billion (ppb) and a monthly average concentration of 4.0 ppb (Permit Condition I(A)(1)).

34. The permit limits for whole effluent toxicity are a daily maximum concentration of 12.2 chronic toxicity units (TUc) and a monthly average concentration of 9.7 TUc (Permit Condition I(A)(1) and I(H)(5)).

35. The permit limits for cadmium are a daily maximum concentration of 3.4 ppb and a monthly average concentration of 2.0 ppb (Permit Condition I(A)(1)).

36. The mine site permit describes the monitoring and reporting requirements Teck Cominco must follow, including frequency of sampling, analytical protocols, and ambient monitoring requirements.

37. The mine site permit also details a number of management measures that Teck Cominco must follow. The permit specifies that precipitation falling on the shale pile be directed into the tailings impoundment; that water that seeps from the tailings impoundment dam be returned to the tailings impoundment, treated, or recycled in the milling process; and the water in the tailings impoundment not leak into Red Dog Creek.

38. Teck Cominco has consistently failed to comply with many of the limits specified in its mine site permit.

## 2. The Port Site

39. The current port site NPDES permit (permit no. AK-004064-9) became effective on January 29, 1999.

40. The port site permit authorizes Teck Cominco to discharge treated wastewater from

the sewage treatment plant via Outfall 001 to the Chukchi Sea; and to discharge drainage water from the concentrate storage buildings via Outfall 005 to the Chukchi Sea or to the tundra.

41. The port site permit specifies discharge limits for three parameters for Outfall 001, and for six parameters for Outfall 005. The discharge limits for discharges from Outfall 005 are significantly higher for discharges to the Chukchi Sea, as compared to limits for discharges to the tundra.

42. The port site permit establishes monitoring and reporting requirements for certain parameters in the discharge from the port.

43. The permit specifies that it does not authorize the discharge of any waste streams, including spills and other unintentional or non-routine discharges of pollutants that are not part of normal operations as disclosed in the permit application.

44. The permit does not authorize the discharge of chlorine from Outfall 001.

45. Teck Cominco has consistently failed to comply with some of the limits specified in its port site permit.

### 3. Compliance Orders

46. EPA has not initiated any enforcement action against Teck Cominco for its violations of its permit limits. Instead, EPA has issued Compliance Orders by Consent ("Compliance Orders") to Teck Cominco, extending deadlines by which Teck Cominco must comply with its permits and establishing relaxed limitations for certain parameters. The Compliance Orders represent a negotiated agreement between Teck Cominco and EPA.

47. EPA issued a Compliance Order relating to discharges at the mine site (Docket No. CWA-10-99-0167) on July 1, 1999. This Compliance Order required Teck Cominco to come into compliance with the terms of its permit by the start of the 2001 discharge season.

48. EPA subsequently issued a Modified Compliance Order for the mine on May 30, 2000. The Modified Compliance Order required Teck Cominco to come into compliance with the TDS limitations of its permit by the start of the 2002 discharge season.

49. EPA subsequently issued a second Modified Compliance Order for the mine on May

17, 2002, just before the 2002 discharge season. The Modified Compliance Order requires Teck Cominco to come into compliance with the TDS limitations of its permit by August 28, 2003, the date the permit expired.

50. None of the three mine site Compliance Orders modify the terms of the underlying NPDES permit. Teck Cominco's current Modified Compliance Order for the mine site states at paragraph 24: "Nothing in this Order shall be construed to relieve [Teck] Cominco of the requirements of its NPDES permit[.]"

51. The substantive requirements of the three mine site Compliance Orders are nearly identical.

52. The mine site Compliance Orders permit Teck Cominco to measure concentrations of total dissolved solids (TDS) downstream from the discharge point, and set a significantly higher concentration for TDS.

53. The most recent mine site Compliance Order required TDS measurements at Station 10, a water quality monitoring station on Main Stem Red Dog Creek; and Station 7, a water quality monitoring station on Ikalukrok Creek several miles below the confluence with Main Stem Red Dog Creek.

54. The first two mine site Compliance Orders limited TDS to 1500 mg/L at Station 10 and to 500 mg/L at Station 160 from July 25 through the end of the discharge season. Teck Cominco's third mine site Compliance Order limits TDS to 1500 mg/L at Station 10 and to 500 mg/L at Station 150 through the end of the discharge season.

55. Temporary exceedences of up to 1600 mg/L were permitted at Station 10 if such exceedences did not continue for more than 48 hours in any ten day period.

56. EPA issued Compliance Orders relating to discharges at the port site (Docket No. CWA-10-99-0200) on August 24, 1999 and January 12, 2000. A Modified Compliance Order was issued on January 10, 2002. The Modified Compliance Order for the port site states that "As a result of Cominco's unpermitted discharges of chlorine, Cominco is in violation of Section 301(a) of the Act, 33 U.S.C. § 131(a)." It allowed Teck Cominco to discharge chlorine in

concentrations of less than 0.1 mg/L until January 28, 2004.

57. None of the three port site Compliance Orders modify the terms of the underlying port site NPDES permit. Teck Cominco's most recent Modified Compliance Order for the port site states at paragraph 16: "Nothing in this Order shall be construed to relieve [Teck] Cominco of the requirements of its NPDES permit[.]"

### 4. <u>Summary of Teck Cominco's Violations</u>

58. Teck Cominco's permits require it to file a Discharge Monitoring Report (DMR) for the mine site and a DMR for the port site each month. In these DMRs, Teck Cominco reports to U.S. EPA its discharges. The DMRs are certified as accurate by Teck Cominco representatives under penalty of law.

59. By simply comparing the discharges reported by Teck Cominco in the mine site DMRs to the discharge limits found in Teck Cominco's mine permit, plaintiffs documented 2,322 violations of the mine site permit from August 28, 1998 until May 31, 2003. Plaintiffs specified each of the 2,322 violations of the mine site permit in the 60-day Notice Letter Plaintiffs served on Teck Cominco on July 3, 2003. This suit seeks relief from a subset of the mine site violations noticed by plaintiffs, the 2,203 violations plaintiffs have determined to be ongoing or capable of repetition. In addition, by comparing discharges reported by Teck Cominco in the mine site DMRs to the mine permit, plaintiffs documented an additional 772 violations of the mine site permit from June 1, 2003 until June 30, 2007. Plaintiffs specified each of the 772 violations of the mine site permit in a supplemental 60-day Notice Letter plaintiffs served on Teck Cominco on August 8, 2007. This suit also seeks relief from 574 of the supplemental notice violations, which plaintiffs have determined to be ongoing or capable of repetition and not alleged in the original Complaint.

60. By comparing the discharges reported by Teck Cominco in the port site DMRs to the discharge limits found in Teck Cominco's port site permit, plaintiffs documented 1,654 violations of the port site permit from May 13, 1999 until May 31, 2003. Plaintiffs specified each of the 1,654 total violations in the Updated 60-day Notice Letter plaintiffs served on Teck Cominco on

July 3, 2003. This suit seeks relief from a subset of the mine site violations noticed by plaintiffs, the 42 violations plaintiffs have determined to be ongoing or capable of repetition.

61. By comparing the discharges reported by Teck Cominco in the mine site DMRs to the discharge limits found in Teck Cominco's mine site Consent Orders, plaintiffs documented at least 64 violations of the mine site Consent Orders. Plaintiffs specified each of the 64 violations of the mine site's Consent Orders in the 60-day Notice Letter plaintiffs served on Teck Cominco on July 3, 2003. This suit seeks relief from the mine site Consent Order violations noticed by the plaintiffs, the 64 violations plaintiffs have determined to be ongoing or capable of repetition.

62. By comparing the discharges reported by Teck Cominco in the port site DMRs to the discharge limits found in Teck Cominco's port site Consent Order, plaintiffs documented 53 violations of the port site Consent Order.

63. The total violations of the permits and Consent Orders alleged in this suit are 2,883.

64. The regulations implementing the Clean Water Act, 40 C.F.R. §19.4, authorize a penalty of up to $27,500 for each violation of the permits and Consent Orders that occurred before March 14, 2004, and $32,500 for violations after March 14, 2004, or up to $82,107,500 for the violations alleged herein.

### 5. Other Violations by Teck Cominco at Red Dog

65. Although neither the U.S. EPA nor the State of Alaska has taken action to enforce the provisions of the Clean Water Act permits at issue in this case, EPA entered into a $4,800,000 settlement with Cominco Alaska in July 1997 for more than 1,000 Clean Water Act violations at the Red Dog mine and port sites, lodged with this Court in *United States v. Cominco Alaska, Inc.*, No.A97-267CIV (JKS). In addition, Alaska has taken action against Teck Cominco for violations of other permits and environmental laws at the Red Dog mine site. Most recently, on December 18, 2001, Teck Cominco, the Alaska Department of Environmental Conservation and the Alaska Department of Law signed a settlement agreement in which Teck Cominco agreed to a civil penalty of $827,000 for 18 alleged violations of its air permit, including knowingly operating and failing to properly report equipment that exceeded emission limits and failure to

1   conduct air monitoring.

2                              **D.  The Village of Kivalina**

3       66.  Kivalina, population 383, is located 80 miles northwest of Kotzebue on the tip of a

4   barrier beach between the Chukchi Sea and the Kivalina Lagoon.  Historically, the area was a

5   stopping place for seasonal coastal travelers and a spring shore hunting base for inland Inupiat.

6   Kivalina was settled in the early 1900s.  The local economy is based on subsistence hunting and

7   fishing.

8                                     **FIRST CLAIM**

9          **Mine Site:  Violations of Total Dissolved Solids Permit Limits**

10                             **(33 U.S.C. § 1311(a))**

11      67.  Paragraphs 1-66 are incorporated by reference.

12      68.  Mine site permit I(A)(1) for TDS specifies a daily maximum discharge of 196 mg/l.

13      69.  Teck Cominco's operations at the Red Dog Mine cause Teck Cominco to discharge

14  TDS through Outfall 001 in quantities approximately 1500 percent higher than its maximum

15  daily limits on every day in which the mine discharges.

16      70.  As specified in plaintiffs' Notice Letter, Teck Cominco violated mine site permit

17  condition I(A)(1) for daily maximum TDS on the following days:

18      **1999:**  June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23,

19  24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19,

20  20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13,

21  14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 2, 3, 4, 5, 6,

22  7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30;

23  October 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12.

24      **2000:**  May 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11,

25  12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7,

26  8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31;

27  August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27,

28

28, 29, 30, and 31; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; October 1, 2, 3, 4, 5, 6, and 7.

**2001:** May 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; October 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10.

**2002:** May 26, 27, 28, 29, 30, 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; October 1, 2, 3, 4, 5 and 6.

**2003:** May 9, 10, 11, 12, 13, 14, 15, 25, 26, 29 and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14.

**2004:** May 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26.

**2005:** May 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11,

12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30; October 1, 2, 3, 4, 5 and 6.

**2006:** May 9, 10, 11, 12, 13, 14, 15 and 16; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30; October 1, 2.

**2007:** June 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30.

71. Plaintiffs are informed and believe that the violations of mine site permit Condition I(A)(1) for daily maximum TDS are ongoing to this day or are capable of repetition.

72. Mine site permit Condition I(A)(1) for TDS specifies a monthly average discharge limit of 170 mg/l per day.

73. Teck Cominco has violated permit condition I(A)(1)'s limits for monthly average for TDS in every month in which Teck Cominco discharges from Outfall 001. Teck Cominco violated its permit limits in May 1999, June 1999, August 1999, September 1999, October 1999, May 2000, June 2000, July 2000, August 2000, September 2000, October 2000, May 2001, June 2001, July 2001, August 2001, September 2001, October 2001, May 2002, June 2002, July 2002, August 2002, September 2002, October 2002, May 2003, June 2003, July 2003, and August 2003, May 2004, June 2004, May 2005, June 2005, May 2006, June 2006, May 2007 and June 2007.

74. Violations of a monthly average limit mean that the permit was violated on each day the facility discharged in that month. As specified in plaintiffs' Notice Letter, Teck Cominco violated its permit limits for TDS on the following days:

**1999:** June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31;  August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; October 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12.

**2000:** May 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 2 ,3 ,4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; October 1, 2, 3, 4, 5, 6, and 7.

**2001:** May 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; October 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10.

**2002:** May 26, 27, 28, 29, 30, 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; October 1, 2, 3, 4, 5 and 6.

**2003:** May 9, 10, 11, 12, 13, 14, 15, 25, 26, 29 and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14.

**2004:** May 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14.

**2005:** May 24, 25, 26, 27, 28, 29, 30, 31; June 1, 2, 3, 4, 5, 6.

**2006:** May 30, 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15.

**2007:**  May 26, 27, 28, 29, 30 and 31; June 1, 2.

75. Plaintiffs are informed and believe that the violations of the mine site permit condition I(A)(1) for monthly average TDS are ongoing to this day or are capable of repetition.

76. Teck Cominco has discharged TDS in excess of its daily permit limit at least 915 times, and in excess of the monthly average permit limit at least 688 times, for 1303 total TDS violations.

77. Plaintiffs believe and aver that, without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, Teck Cominco will continue to violate its permit limits with respect to TDS discharges.

## SECOND CLAIM

### Mine Site: Violations of Cyanide Permit Limits

### (33 U.S.C. § 1311(a))

78. Paragraphs 1-77 are incorporated by reference.

79. Mine site permit condition I(A)(1) for cyanide specifies a daily maximum discharge of 9 ppb.

80. As specified in plaintiffs' Notice Letter, Teck Cominco exceeded its daily maximum permissible concentration of cyanide and thus violated permit condition I(A)(1) for cyanide on May 22, 1999; May 25 and 29, 2000; June 10, 13, and 24, 2000; June 14 and 18, 2001; July 22 and 30, 2001, August 13, 16, 20, and 27, 2001; June 10, 2002; and September 30, 2002. As specified in plaintiffs' Supplemental Notice Letter, Teck Cominco exceeded its daily maximum permissible concentration of cyanide and thus violated permit condition I(A)(1) for cyanide on May 10 and 13, 2003; June 17 and 24, 2003; July 1, 15, 21 and 29, 2003; August 12, 2003; May 23, 2005; August 9, 2005; September 5, 12, 19, 2005; October 3, 2005; May 11 and 15, 2006; June 5, 2006; October 1, 2006.

81. Plaintiffs are informed and believe that the violations of mine site permit Condition I(A)(1) for daily maximum cyanide discharges are ongoing to this day or are capable of repetition.

82. Mine site permit condition I(A)(1) for cyanide specifies a maximum monthly average

1   discharge of 4 ppb per day.

2       83.  Teck Cominco exceeded its permissible monthly average for cyanide in June 1999,

3   July 1999, August 1999, September 1999, May 2000, June 2000, July 2000, September 2000,

4   October 2000, June 2001, July 2001, August 2001, September 2001, May 2002, June 2002 and

5   September 2002, as well as in September 2005, October 2005, May 2006, June 2006, July 2006,

6   August 2006 and September 2006.

7       84.  Violations of a monthly average limit mean that the permit was violated each day the

8   facility operated in that month.  As specified in plaintiffs' Notice Letter, Teck Cominco violated

9   permit Condition I(A)(1) for monthly average discharge of cyanide on the following days:

10      **1999:** June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24,

11  25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20,

12  21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31;  August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14,

13  15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 2, 3, 4, 5, 6, 7,

14  8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30.

15      **2000:** May 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11,

16  12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7,

17  8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31;

18  September 1, 2 ,3 ,4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26,

19  27, 28, 29, and 30; October 1, 2, 3, 4, 5, 6, and 7.

20      **2001:** June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23,

21  24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19,

22  20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13,

23  14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; September 1, 13, 14, 15,

24  16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30.

25      **2002:** May 26, 27, 28, 29, 30, 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16,

26  17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11,

27  12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30.

28

**2005:**  September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30; October 1, 2, 3, 4, 5 and 6.

**2006:**  May 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; August 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31; September 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30.

85.  Plaintiffs are informed and believe that the violations of mine site permit Condition I(A)(1) for monthly average cyanide discharges are ongoing to this day or are capable of repetition.

86.  Teck Cominco has discharged cyanide in excess of its daily permit limits at least 35 times, and in excess of the monthly average permit limit at least 588 times, for 623 total cyanide violations.

87. Plaintiffs believe and aver that, without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, Teck Cominco will continue to violate its permit limits with respect to cyanide discharges.

**THIRD CLAIM**

**Mine Site: Whole Effluent Toxicity ("WET") Testing Permit Violations**

**(33 U.S.C. § 1311(a))**

88.  Paragraphs 1-87 are incorporated by reference.

89.  Mine site permit condition I(H)(4) requires that the results for the whole effluent toxicity ("WET") tests of effluent and ambient waters be reported in the Discharge Monitoring Report for the month in which the tests were conducted.

90.  As specified in plaintiffs' Notice Letter, Teck Cominco violated permit Condition I(H)(4) by not reporting the results of required WET testing, or by reporting the results of

incomplete or inadequate WET testing, in August 1999 (Outfall 001, Station 9, Station 12); August 2, 3, 4, 2001 (Outfall 001); July 2002 (Station 9); August 2002 (Station 9) and October 2002 (Station 9).

91.  Plaintiffs are informed and believe that the violations of mine site permit Condition I(H)(4) for WET test reporting are ongoing to this day or are capable of repetition.

92.  Mine site permit condition I(H)(5) specifies that WET may not exceed a daily maximum of 12.2 TUc.

93.  As specified in plaintiffs' Notice Letter, Teck Cominco exceeded the maximum daily limit for WET, and thus violated mine site permit condition I(H)(5), in May 1999, June 1999, July 1999, August 2000; on August 16, 18, 20, 2001; in August 2002; and in September 2002 (2 violations).  As specified in plaintiffs' Supplemental Notice Letter, Teck Cominco exceeded the maximum daily limit for WET, and thus violated mine site permit condition I(H)(5), in August 2004.

94.  Plaintiffs are informed and believe that the violations of mine site permit Condition I(H)(5) for daily maximum WET are ongoing to this day or are capable of repetition.

95.  Mine site permit condition I(H)(5) specifies that WET may not exceed a monthly average of 9.7 TUc per day.

96.  As specified in plaintiffs' Notice Letter, Teck Cominco exceeded its monthly average limit for whole effluent toxicity in May 1999, June 1999, July 1999, August 2000, August 2001, August 2002 and September 2002.

97.  Violations of a monthly average limit mean that the permit was violated on each day the facility operated that month.  As specified in plaintiffs' Notice Letter, Teck Cominco violated permit Condition I(H)(5) for monthly average WET values on the following days:

**1999:** May 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31; June 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30; July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31.