LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty & the Environment
47 Kearny St, Suite 804
San Francisco, CA 94108
415/346-4179 • fax 415/346-8723

NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515-3358
907/345-5595 • fax 907/345-3629

Attorneys for Plaintiffs Enoch Adams, Jr., Leroy
Adams, Andrew Koenig, Jerry Norton, David
Swan and Joseph Swan

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON DAVID SWAN and JOSEPH SWAN, | Case No. A04-49 (JWS) |
| Plaintiffs, | **PLAINTIFFS' OBJECTIONS TO TECK COMINCO'S LIABILITY WITNESS LIST AND MOTIONS IN LIMINE TO EXCLUDE WITNESSES AND EVIDENCE THAT IS NOT RELEVANT** |
| v. | |
| TECK COMINCO ALASKA INCORPORATED | (Evidence Code §402) |
| Defendant. | |
| NANA REGIONAL CORPORATION and NORTHWEST ARCTIC BOROUGH, | |
| Intervenors-Defendants. | |

1

2

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.    WITNESSES AT THE LIABILITY PHASE OF TRIAL MUST TESTIFY ABOUT
      ISSUES RELEVANT TO LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  THE CONDITIONS AT KIVALINA ARE NOT RELEVANT TO TECK
      COMINCO'S LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    The testimony of Roland Booth is not relevant . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    The testimony of Bert Adams, Sr. and Theodore Booth is not relevant . . . . . . . 4

      C.    The testimony of Alvin G. Ott is not relevant . . . . . . . . . . . . . . . . . . . . . . . . 5

      D.    The testimony of Joyce Tsuji is not relevant . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   THE OPINIONS OF STATE ENVIRONMENTAL OFFICIALS
      ARE NOT RELEVANT TO LIABILITY UNDER THE FEDERAL CLEAN WATER
      ACT AND TECK COMINCO'S FEDERAL PERMIT . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    The testimony of Nancy Sonafrank is not relevant . . . . . . . . . . . . . . . . . . . . 6

      B.    The testimony of Sharmon Stambaugh is not relevant . . . . . . . . . . . . . . . . . . 6

V.    EXCUSES AND EXPLANATIONS OF WHY TECK COMINCO FAILED TO
      COMPLY ARE NOT RELEVANT UNDER THE STRICT LIABILITY REGIME OF
      THE CLEAN WATER ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    The testimony of Wayne Hall is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    The testimony of Chuck Hingsbergen is not relevant . . . . . . . . . . . . . . . . . . . 9

      C.    The testimony of John Key is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      D.    The testimony of Ed Koon is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      E.    The testimony of Jackie Lundberg is not relevant . . . . . . . . . . . . . . . . . . . . . 11

      F.    The testimony of Keith Malone is not relevant . . . . . . . . . . . . . . . . . . . . . . . . 11

G. The testimony of John Martinisko is not relevant . . . . . . . . . . . . . . . . . . . . . . . 12

H. The testimony of Robert Napier is not relevant . . . . . . . . . . . . . . . . . . . . . . . . 12

I. The testimony of Mike Schierman is not relevant . . . . . . . . . . . . . . . . . . . . . . 12

VI. EXPLANATIONS OF LAB TESTS AND METHODOLOGIES ARE
NOT RELEVANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A. The testimony of Sue Barkey is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B. The testimony of Richard Brown is not relevant . . . . . . . . . . . . . . . . . . . . . . . 15

C. The testimony of Stan Capps is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . . 15

D. The testimony of Peter Chapman is not relevant . . . . . . . . . . . . . . . . . . . . . . . 16

E. The testimony of David DeForest is not relevant . . . . . . . . . . . . . . . . . . . . . . 16

F. The testimony of James Dryden is not relevant . . . . . . . . . . . . . . . . . . . . . . . . 16

G. The testimony of Steven Eide is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . . 17

H. The testimony of Greg Horner is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . 17

I. The testimony of Kevin Lackey is not relevant . . . . . . . . . . . . . . . . . . . . . . . . 18

J. The testimony of Kent Patton and Mike Prieve is not relevant . . . . . . . . . . . . 18

K. The testimony of David Pillard is not relevant . . . . . . . . . . . . . . . . . . . . . . . . 19

L. The testimony of Mike Stanoway is not relevant . . . . . . . . . . . . . . . . . . . . . . . 19

M. The testimony of William Stubblefield is not relevant . . . . . . . . . . . . . . . . . . 20

N. The testimony of Jason Weakley is not relevant . . . . . . . . . . . . . . . . . . . . . . . 20

VII. THE PROFFERED TESTIMONY OF US EPA OFFICIALS IS NOT
RELEVANT TO LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A. The testimony of Eva Chun is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B. The testimony of Keith Cohon is not relevant . . . . . . . . . . . . . . . . . . . . . . . . . 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VIII.   THE COURT SHOULD LIMIT THE TESTIMONY OF SOME WITNESSES TO
        ISSUES RELEVANT TO LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        A.   Portions of the proffered testimony of Mark Thompson are not relevant . . . . . . 23

        B.   Portions of the proffered testimony of Kevin Brix are not relevant . . . . . . . . . 24

        C.   Portions of the proffered testimony of Mike Botz are not relevant . . . . . . . . . . 24

        D.   Portions of the proffered testimony of Jeffrey Clark and Gary Coulter are not
             relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        E.   Portions of the proffered testimony of Anna Echter and Gretchen Mitchell
             are not relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        F.   Portions of the proffered testimony of Kathleen Willman are not relevant . . . . . 26

        G.   Portions of the proffered testimony of James Kulas are not relevant . . . . . . . . 26

IX.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**Federal Cases**

*Atlantic States Legal Foundation v. Tyson Foods,* 897 F.2d 1128 (11th Cir.1990) . . . . . . . . . 8

*California Public Interest Research Group v. Shell Oil Co.*, 840 F. Supp.
    712 (N.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10, 11, 14-17

*Enoch Adams, et al. v. Teck Cominco Alaska, Inc.,* 396 F. Supp.2d 1095 (D. Ak. 2006) . . . . . . 1

*Environmental Protection Information Center v. Pacific Lumber Company*, 430
    F.Supp.2d 996 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-18, 27

*Hawaii's Thousand Friends v. City and County of Honolulu*, 821 F. Supp.
    1368 (D. Ha. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Mumford Cove Ass'n v. Town of Groton*, 640 F. Supp. 392 (D.Conn. 1986) . . . . . . . . . . . . . . . 3

*Save Our Bays and Beaches v. City and County of Honolulu*, 904 F. Supp.
    1098 (D. Haw. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sierra Club v. Union Oil Co. of Cal.*, 813 F.2d 1480 (9th Cir. 1988), *vacated*
    *for reconsideration*, 485 U.S. 931 (1988), *reinstated & amended*,
    853 F.2d 667 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 13, 14

*Stoddard v. Western Carolina Regional Sewer Authority,* 784 F.2d 1200 (4th Cir.1986) . . . . . 8

*United States v. CPS Chem. Co.*, 779 F. Supp. 437 (D. Ark. 1991) . . . . . . . . . . . . . . . . . . . . . . 14


**Federal Statutes**

33 U.S.C. § 1311(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8
    § 1342(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    § 1369 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25


**Federal Rules of Evidence**

Rule 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**I.    WITNESSES AT THE LIABILITY PHASE OF TRIAL MUST TESTIFY ABOUT ISSUES RELEVANT TO LIABILITY.**

The Clean Water Act is a strict liability statute.  33 U.S.C. § 1311(a)*; Hawaii's Thousand Friends v. City and County of Honolulu*, 821 F. Supp. 1368, 1392 (D. Ha. 1993).  At issue during the liability phase are the questions, 1) did the alleged violations of Teck Cominco's permit conditions take place?  And 2) if so, are they ongoing or capable of repetition?  *See Enoch Adams, et al. v. Teck Cominco Alaska, Inc.,* 396 F. Supp.2d 1095, 1099 (D. Ak. 2006).  A great majority of the violations have already been admitted by Teck Cominco in its discharge monitoring reports (DMRs) filed with EPA and in its Answer and other pleadings filed in this case; the central issue for monthly TDS, daily cyanide, monthly cyanide, daily whole effluent toxicity (WET) and monthly WET violations is whether the violations are ongoing.

These violations and their ongoing nature will be proven by documentary evidence such as the DMRs filed by Teck Cominco and the Compliance Orders by Consent (COBCs) entered into by Teck Cominco.  These documents will, on their face, demonstrate both the violations and their ongoing nature.  *See, e.g.*, Exhibit 1 to Declaration of Luke Cole in Support of Motion in Limine to Preclude Testimony ("Cole dec.") (excerpt of October 2007 DMR reporting daily and monthly cyanide violations); Exhibit 2 to Cole dec. (excerpt of 2006 COBC attesting, over Teck Cominco's signature, that, "At times during the months of ... May-June 2004, and May-June 2005, Teck Cominco violated the TDS effluent limits in Part I.A.1 of the 1998 Permit").

Despite the narrow issues at trial – strict liability for those proven violations, and resolution of the question of whether the violations are ongoing or capable of repetition – Teck Cominco presents this Court with a list of 45 witnesses it anticipates calling at trial, the vast majority of them, it discloses, to testify about subjects wholly apart from permit violations and

whether or not they are ongoing.  Some witnesses are offered to discuss the conditions at

Kivalina, some are Teck Cominco employees apparently prepared to explain why certain

violations happened.  Many witnesses are laboratory personnel offered to discuss the results of

their lab tests – lab tests which, by stipulation of the parties, are all already fully admitted and in

no need of authentication.  Two U.S. Environmental Protection Agency ("EPA") staffers are

offered to talk about the COBCs, although the COBCs are not relevant to liability here.  Two

witnesses are even offered to give the *State of Alaska's* "perspective" on this federal suit to

enforce a federal permit under the federal Clean Water Act!

   This parade of witnesses is not only unnecessary, the vast majority of the testimony

proffered by Teck Cominco through these witnesses is simply not relevant to liability.  As

explained below, the conditions at Kivalina are not relevant to Teck Cominco's liability.  The

opinions of state officials are not relevant to Teck Cominco's liability.  The opinions of random

EPA staff are not relevant to Teck Cominco's liability.  The testimony of lab technicians as to the

results of their tests are not relevant, particularly when the lab results themselves are not in

dispute and are their own best evidence.  The testimony of Teck Cominco employees explaining

the reasons for non-compliance is not relevant under the strict liability of the Clean Water Act.

And the testimony of Teck Cominco employees as to topics other than Teck Cominco's permit

violations, and whether or not the are ongoing, is not relevant at the liability phase.

   Through this set of objections to Teck Cominco's Liability Phase Witness List and

motions in limine to exclude irrelevant testimony and witnesses, the Adams plaintiffs attempt to

restore some focus to the trial proceedings at the liability phase.  The great majority of Teck

Cominco's proffered witnesses – 33 of the 45 – can be excluded entirely on relevance grounds

alone, and the testimony of the remaining witnesses should be strictly limited to issues actually

relevant to liability.  Adams respectfully requests, through this motion and others filed

simultaneously with it, that the Court assert its control over the trial process and preclude the

carnival of irrelevance that Teck Cominco apparently envisions and proposes as its portion of

trial's liability phase.

## II.    LEGAL STANDARD

Rule 402 of the Federal Rules of Evidence states, "Evidence which is not relevant is not

admissible."   This is the critical benchmark for our inquiry into Teck Cominco's proffered

witnesses and the testimony Teck Cominco describes they will be giving in this Clean Water Act

enforcement suit at the liability phase.

The Clean Water Act was designed to lend itself to speedy and simple enforcement.  It is

a strict liability statute: to establish a violation of the Act, a plaintiff need only prove that the

defendant violated the terms and conditions of its NPDES permit.  *See* 33 U.S.C. § 1311(a),

1342(k); *see also Hawaii's Thousand Friends v. Honolulu*, 821 F. Supp. 1368, 1392 (D.Haw.

1993) ("Courts throughout the country have held that NPDES compliance is a matter of strict

liability and a defendant's intent and good faith are irrelevant"); *Sierra Club v. Union Oil Co. of

Cal.*, 813 F.2d 1480, 1490-1491 (9th Cir. 1988), *vacated for reconsideration*, 485 U.S. 931

(1988), *reinstated & amended*, 853 F.2d 667 (9th Cir. 1988) ("*Sierra Club*") (whether violations

are de minimis, "technical," "rare" or insignificant is irrelevant to liability); *Mumford Cove Ass'n

v. Town of Groton*, 640 F. Supp. 392, 395 (D.Conn. 1986) (fault, intent and environmental harm

are relevant only with respect to remedies).

1
2

**III.    THE CONDITIONS AT KIVALINA ARE NOT RELEVANT TO TECK COMINCO'S LIABILITY.**

3

4

The conditions at Kivalina and elsewhere in the Wulik River watershed are not at issue in

the liability phase.[1]  Nor are NANA's actions.  Thus, as explained more fully below, Adams

5

6

respectfully objects to the testimony of and moves in limine to preclude the following listed

7

witnesses from testifying at the liabiliy phase at trial: Roland Booth, Bert Adams, Sr., Theodore

8

Booth, Alvin G. Ott and Joyce Tsuji.

9

10

**A.    The testimony of Roland Booth is not relevant.**

11

Teck Cominco lists Mr. Booth on its witness list with the following description:

12

13

14

15

Roland Booth is a resident of Noatak.  He is expected to testify regarding his observations of the availability, location, quantity and quality of subsistence resources over the years near and around Kivalina.  He is also expected to testify regarding his observations on issues related to the drinking water in Kivalina.  Mr. Booth is expected to testify regarding his knowledge of NANA's work to preserve the region's subsistence resources and his work with the Red Dog Mine subsistence committee.

16

Liability Phase Witness List at 2.  None of the proffered subjects – subsistence resources and

17

18

drinking water at Kivalina, and NANA's work – are in any way relevant to the issues to be

19

proven at the liability phase, violations of Teck Cominco's permit and whether or not they are

20

ongoing.  Accordingly, Mr. Booth should be precluded from testifying.

21

22

**B.    The testimony of Bert Adams, Sr. and Theodore Booth is not relevant.**

23

24

25

[1]To the extent that the conditions at Kivalina are relevant at all in this litigation, it would be to decide the threshold issue of standing.  That threshold has been crossed.  As the Court ruled in this case, "plaintiffs have satisfied Article III's requirements and have standing to bring this action." Order and Opinion, Docket 136 at 8. Thus, such testimony is not relevant, period.

26

27

28

Furthermore, even if standing were at issue (which it is not), the testimony of non-parties such as Mssrs. Booth, Mr. Bert Adams, Dr. Ott and Ms. Tsuji would not be relevant to the experiences and perceptions of the individual plaintiffs.  Standing is determined by the injury in fact to a litigant, not the perceptions of a non-party.

Teck Cominco describes Mr. Adams's and Mr. Theodore Booth's testimony in identical language to two of the sentences used to describe Roland Booth's testimony:

> He is expected to testify regarding his observations of the availability, location, quantity and quality of subsistence resources over the years near and around Kivalina. He is also expected to testify regarding his observations on issues related to the drinking water in Kivalina.

Liability Phase Witness List at 2. Neither of the proffered subjects – subsistence resources and drinking water at Kivalina – are relevant to the issues to be proven at the liability phase. Accordingly, Mr. Adams and Mr. Booth should be precluded from testifying.

### C.    The testimony of Alvin G. Ott is not relevant.

Teck Cominco offers Dr. Ott with the following description:

> Dr. Ott is with the Office of Habitat Management and Permitting in the Department of Natural Resources for the State of Alaska. Dr. Ott is an expert in aquatic life in Northwest Alaska, having conducted a number of studies of the subject in and about the Red Dog Mine. Dr. Ott will testify to his work designing, implementing and supervising a bio-assessment program in the waters downstream from Red Dog Mine, the effects of natural mineralization on aquatic life, the lack of significant effects caused by the mine, and will otherwise testify consistent with his declarations in this case and the case of KRPC v. Teck Cominco, A:02-231 CV (JWS), as well as studies he has authored relative to aquatic life in the DeLong Mountain Region.

Liability Phase Witness List at 2-3. As with Mssrs. Booth and Mr. Adams, above, none of the proffered testimony is relevant to the liability phase, which is focused solely on violations of Teck Cominco's permt and whether or not they are ongoing and capable of repetition. Accordingly, Dr. Ott should be precluded from testifying.

### D.    The testimony of Joyce Tsuji is not relevant.

Teck Cominco offers Ms. Tsuji with the following brief and non-specific description: "A retained expert. Will testify consistent with her report and supplemental report, and work performed by Exponent for Red Dog Mine." Liability Phase Witness List at 3. Although not

revealed by this description, Ms. Tsuji's "report and supplemental report" both discuss human health and drinking water in the Wulik River. Cole dec. ¶4. As discussed above, such testimony is simply not relevant to the liability phase, which is focused solely on violations of Teck Cominco's permt and whether or not they are ongoing and capable of repetition. Further, not one of the 802 exhibits offered by Teck Cominco, or the 52 joint exhibits lodged by the parties, are authored by Exponent. Cole dec. ¶5. There is nothing to work from to uncover the relevance of "work performed by Exponent for Red Dog Mine," and nothing in Tsuji's reports about violations or their ongoing nature. Accordingly, Ms. Tsuji should be precluded from testifying. (Plaintiffs are separately moving to preclude Ms. Tsuji's testimony because of Teck Cominco's failure to disclose her testimony with the requisite specificity.)

**IV.    THE OPINIONS OF STATE ENVIRONMENTAL OFFICIALS ARE NOT RELEVANT TO LIABILITY UNDER THE FEDERAL CLEAN WATER ACT AND TECK COMINCO'S FEDERAL PERMIT.**

This case is brought under the federal Clean Water Act and concerns only violations of federal permits issued by the U.S. EPA. The meaning of a NPDES permit is a question of law for the court to decide. See *California Public Interest Research Group v. Shell Oil Co.*, 840 F. Supp. 712, 716 (N.D. Cal. 1993) ("*Shell Oil*"). "In construing NPDES permits, courts often defer to the agency *that drafted the permit*, consistent with established rules of statutory construction that give deference to agency interpretations where they are reasonable." *Id*. (emphasis added). The NPDES permits in question here were drafted by the federal EPA, not by the state of Alaska. The opinions of state officials are thus not relevant to liability here, and, as more fully explained below, Adams objects to and moves in limine to preclude the testimony of Nancy Sonafrank and Sharmon Stambaugh.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.     The testimony of Nancy Sonafrank is not relevant.**

Teck Cominco lists Nancy Sonafrank as a witness, with the following description:

> The Section Manager for Water Quality Standards within the AK Department of Environmental Conservation, Ms. Sonafrank will testify as to relevant water quality standards and aquatic life criteria, including cyanide, and the use of the WAD testing method.

Liability Phase Witness List at 6.  In this case, Adams has alleged violations of Teck Cominco's effluent limitations (that is, end-of-pipe permit limits) for Total Cyanide.  Supplemental Complaint, Docket 174 at ¶¶79-85.  There are no allegations of violations of water quality standards or aquatic life criteria, nor any allegations of violations of WAD cyanide tests.  Thus, any testimony "as to relevant water quality standards and aquatic life criteria, including cyanide, and the use of the WAD testing method," is not relevant – none of it addresses the violations of the effluent limitations for *Total* Cyanide, which are at issue here.  Further, the opinions of a state official on the contents or requirements of a federal permit are likewise not relevant: the permit speaks for itself, and any interpretation of the permit conditions is solely the province of this Court, not an official from a state agency.  Thus, no testimony that Ms. Sonafrank is described as giving would be relevant, and Adams moves to preclude the testimony of Nancy Sonafrank.

**B.     The testimony of Sharmon Stambaugh is not relevant**.

Teck Cominco states that Sharmon Stambaugh "Will testify as to the compliance and monitoring of Red Dog wastewater discharges from the perspective of the AK Dept. Of Environmental Conservation."  Liability Phase Witness List at 6.   As with Ms. Sonafrank, the opinions of a state official, her "perspective" on the contents or requirements of a federal permit and Teck Cominco's compliance with it, are simply not relevant: the permit speaks for itself, and any interpretation of the permit conditions is solely the province of this Court, not an official

1   from a state agency.  Teck Cominco's compliance with the permit is at issue at trial, but Ms.

2   Stambaugh's opinions on that compliance are simply not relevant to Teck Cominco's liability

3   under the federal Clean Water Act.  Thus, no testimony that Ms. Stambaugh is described as

4   giving would be relevant, and Adams moves to preclude the testimony of Sharmon Stambaugh.

5   
6   **V.    EXCUSES AND EXPLANATIONS OF WHY TECK COMINCO FAILED TO**
      **COMPLY ARE NOT RELEVANT UNDER THE STRICT LIABILITY REGIME**
7      **OF THE CLEAN WATER ACT.**

8        Again, the Clean Water Act is a strict liability Act.  *Hawaii's Thousand Friends v. City*

9   *and County of Honolulu*, 821 F. Supp. 1368, 1392 (D. Ha. 1993).  As such, even if Teck

10  Cominco's violations had been "de minimis" or "rare" and faultless – which they are not – Teck

11  Cominco would still be liable for those violations.  Courts throughout the country have held that

12  NPDES compliance is a matter of strict liability, and a defendant's intent and good faith are

13  irrelevant to the liability issue.  *Id.* (citing *Stoddard v. Western Carolina Regional Sewer*

14  *Authority,* 784 F.2d 1200, 1208 (4th Cir.1986) and *Atlantic States Legal Foundation v. Tyson*

15  *Foods,* 897 F.2d 1128, 1142 (11th Cir.1990)).  Under the Clean Water Act, fault only becomes

16  relevant at the penalty phase.

17       Based on information provided by Teck Cominco about the testimony it expects to elicit

18  from witnesses for trial, it appears that many of the witnesses are offered in an attempt to

19  minimize the significance of the Clean Water Act's requirements.  This message is

20  fundamentally contrary to the spirit of the Clean Water Act.  The Act strikes a delicate balance

21  between the environment and commercial and other human interests.  It recognizes that very

22  serious environmental harms can often be very difficult to perceive; hence its prohibition against

23  the discharge of pollutants except as authorized by a NPDES permit. 33 U.S.C. §§ 1311(a), 1342;

1    *Sierra Club*, 813 F. 2d at 1483.

2         Teck Cominco offers a series of witnesses in what appears to be an attempt to explain its

3    noncompliance.  Good faith and substantial compliance are irrelevant as defenses at the liability

4

5    phase of a Clean Water Act case such as this one. *Shell Oil*, 840 F. Supp. at 714 ("[Because the

6    CWA imposes strict liability for any violation of a NPDES permit], neither good faith,

7    impossibility, nor reporting errors, are accepted as valid defenses to liability"); *Sierra Club,* 813

8

9    F.2d at 1491 (rejecting the substantial compliance defense).  Testimony in this vein is irrelevant

10   and should therefore be precluded at this stage of litigation, and, as more fully explained below,

11   Adams objects to and moves in limine to preclude the testimony of Wayne Hall, Chuck

12   Hingsbergen, John Key, Ed Koon, Jackie Lundberg, Keith Malone, John Martinisko, Robert

13

14   Napier and Mike Schierman.

15        **A.    The testimony of Wayne Hall is not relevant.**

16        Teck Cominco discloses that "Mr. Hall will testify as to facts involving alleged

17   excursions with which he was involved, policies and procedures at Red Dog, permitting history

18

19   and compliance."  Liability Phase Witness List at 5.  Here, however, Teck Cominco's liability

20   will be established by its admissions to the EPA through its DMRs.  Mr. Hall's explanations of

21   the "alleged excursions" have no bearing on the strict liability Teck Cominco faces – any reasons

22

23   or explanations for the violations are simply not relevant.  *Shell Oil*, 840 F. Supp. at 714.  Even

24   further from relevance at the liability stage are "policies and procedures at Red Dog, permitting

25   history and compliance."  Thus, no testimony that Mr. Hall is described as giving would be

26   relevant, and Adams moves to preclude the testimony of Wayne Hall.

27        **B.    The testimony of Chuck Hingsbergen is not relevant.**

28

Teck Cominco discloses that "Mr. Hingsbergen will testify as to total suspended solids and issues involving the DMTS port." Liability Phase Witness List at 5. This Court has already decided, at the summary judgment stage, the sole total suspended solids violation at the Port alleged in the Complaint: "As defendant admitted both the TSS violation and the fact that it is ongoing, plaintiffs' motion for summary judgment is granted as to the port site TSS violation in May 2002." Docket 136. Thus, Mr. Hingsbergen's testimony on total suspended solids cannot be relevant. As to any remaining violations at the Port Site, Teck Cominco's liability will be established by its admissions to the EPA through its DMRs. Mr. Hingsbergen's explanations of "issues involving the DMTS port" have no bearing on the strict liability Teck Cominco faces. *Shell Oil*, 840 F. Supp. at 714. Thus, no testimony that Mr. Hingsbergen is described as giving would be relevant, and Adams moves to preclude the testimony of Chuck Hingsbergen.

**C.    The testimony of John Key is not relevant.**

Teck Cominco discloses that "Mr. Key will testify as to the feasibility of various treatment options for water at Red Dog." Liability Phase Witness List at 5. The "feasability of various treatment options" is, in the words of the *Shell Oil* court, "simply beside the point for purposes of determining liability." 840 F.Supp. at 718. Thus, no testimony that Mr. Key is described as giving would be relevant, and Adams moves to preclude the testimony of John Key.

**D.    The testimony of Ed Koon is not relevant.**

Teck Cominco discloses that Mr. Koon will "offer factual testimony relative to each of the claimed violations occurring at the DMTS port." Liability Phase Witness List at 5. However, Teck Cominco's liability will be established by its admissions to the EPA through its DMRs. Mr. Koon's explanations have no bearing on the strict liability Teck Cominco faces at

1  this phase of the trial.  *Shell Oil*, 840 F. Supp. at 714.  Thus, no testimony that Mr. Koon is

2  described as giving would be relevant, and Adams moves to preclude the testimony of Ed Koon.

3       **E.    The testimony of Jackie Lundberg is not relevant.**

4

5       Teck Cominco discloses that "Ms. Lundberg will testify as to TIE/TRE and alleged port

6  excursions."  Liability Phase Witness List at 6.  Although not disclosed by this abbreviated

7  description, "TIE/TRE" refers to Toxicity Identification Evaluation/Toxicity Reduction

8  Evaluation, which is a step required by Teck Cominco's permits after a repeated violation of its

9  WET test permit limitations.  Cole dec. ¶6.  Because the TIE/TRE only happens after a violation,

10  it is not relevant to proving the violation itself.  Further, Ms. Lundberg's explanation of "alleged

11  port excursions" have no bearing on the strict liability Teck Cominco faces on those violations as

12  proven by its admissions to the EPA through its DMRs.  *Shell Oil*, 840 F. Supp. at 714.  Thus, no

13  testimony that Ms. Lundberg is described as giving would be relevant, and Adams moves to

14  preclude the testimony of Jackie Lundberg.   (Plaintiffs are separately moving to preclude Ms.

15  Lundberg's testimony because of Teck Cominco's failure to disclose her testimony with the

16  requisite specificity.)

17       **F.    The testimony of Keith Malone is not relevant.**

18

19       Teck Cominco discloses that Mr. Malone "will testify as to alleged excursions with which

20  he was involved, standard operating procedures, and cadmium in Red Dog water."  Liability

21  Phase Witness List at 6.  Teck Cominco's liability will be established by its admissions to the

22  EPA through its DMRs.  Mr. Malone's explanations of his involvement in the violations, or of

23  "standard operating procedures," or even of cadmium "in Red Dog water" – whatever that may

24  be – have no bearing on the strict liability Teck Cominco faces.  *Shell Oil*, 840 F. Supp. at 714.

Thus, no testimony that Mr. Malone is described as giving would be relevant, and Adams moves to preclude the testimony of Keith Malone.

### G.    The testimony of John Martinisko is not relevant.

Teck Cominco discloses that "Mr. Martinisko will testify as to hold times, sampling, monitoring, and alleged excursions with which he was involved." Liability Phase Witness List at 6. Teck Cominco's liability will be established by its admissions to the EPA through its DMRs. Mr. Martinisko's explanations have no bearing on the strict liability Teck Cominco faces. *Shell Oil*, 840 F. Supp. at 714. Thus, no testimony that Mr. Martinisko is described as giving would be relevant, and Adams moves to preclude the testimony of John Martinisko.

### H.    The testimony of Robert Napier is not relevant.

Teck Cominco discloses that Mr. Napier "will testify as to factual events occurring with respect to alleged exceedances in 2007." Liability Phase Witness List at 6. Teck Cominco's liability will be established by its admissions to the EPA through its DMRs, however. Mr. Napier's explanations of "factual events" have no bearing on the strict liability Teck Cominco faces. *Shell Oil*, 840 F. Supp. at 714. Thus, no testimony that Mr. Napier is described as giving would be relevant, and Adams moves to preclude the testimony of Robert Napier.

### I.    The testimony of Mike Schierman is not relevant.

Teck Cominco discloses that Mike Schierman "Will testify as to weather conditions at Red Dog as they pertain to claims, and their effects on monitoring, sampling, and transport of lab samples and results." Liability Phase Witness List at 6. As noted above, the Clean Water Act is a strict liability statute, and thus "weather conditions" – presumably to be discussed in the context of explaining Teck Cominco's failure to comply with its permit conditions, though not

clear from the description offered by Teck Cominco – are simply not relevant to Teck Cominco's

liability, to its permit violations, or to the question of whether or not those violations are

ongoing. *Shell Oil*, 840 F. Supp. at 714. Thus, no testimony that Mr. Schierman is described as

giving would be relevant, and Adams moves to preclude the testimony of Mike Schierman.

(Adams is separately moving to preclude the testimony of Mr. Schierman because of Teck

Cominco's failure to disclose his testimony with the requisite specificity.)

## VI.    EXPLANATIONS OF LAB TESTS AND METHODOLOGIES ARE NOT RELEVANT.

Defendants may not impeach their own DMRs. *See, e.g., Sierra Club*, 813 F.2d at

1491-92; *United States v. CPS Chem. Co.*, 779 F. Supp. 437, 442 (D. Ark. 1991) ("[f]or

enforcement purposes, a permittee's DMRs constitute admissions regarding the levels of effluents

that the permittee has discharged" (citation omitted)); *Save Our Bays and Beaches v. City and

County of Honolulu*, 904 F. Supp. 1098, 1138 (D. Haw. 1994) (city's noncompliance reports

which it submitted pursuant to the CWA "constitute admissions of noncompliance which bind

the defendant in this [enforcement] proceeding.").

Liability in this case is governed by what Teck Cominco discharged, and what it reported

to EPA that it discharged. The Ninth Circuit has held that DMRs are "conclusive evidence of an

exceedance of a permit limitation." *Sierra Club*, 813 F.2d at 1492. The DMRs, in some cases

supported by the documentary lab results, are the best evidence as to what Teck Cominco

discharged and reported to EPA. "[I]t is reasonable to preclude a permittee from impeaching its

own DMRs during an enforcement action proceeding because the 'NPDES program

fundamentally relies on self-monitoring," and 'allowing permittees to excuse their reported

exceedances by showing sampling error would create the perverse result of rewarding permittees

1   for sloppy laboratory practices.'" *Environmental Protection Information Center v. Pacific*

2   *Lumber Company*, 430 F.Supp.2d 996, 1010 ("*EPIC*"), quoting *Sierra Club*, 813 F.2d at 1492;

3   see also *Public Interest Research Group*, 361 F. Supp. 2d 1232, 1240-41.

4       Teck Cominco lists a variety of witnesses who are apparently staffers at different

5   laboratories.  Any testimony by these staffers is simply not relevant under the caselaw in the

6   Ninth Circuit.  The lab results which were timely disclosed to the Adams plaintiffs from ACZ

7   Lab, North Creek Analytical, ENSR, EVS Environmental Consultants, CH2M Hill, and

8   Parametrix are all admitted in this case for both the liability and penalty phases, and thus there is

9   no need for authentication or appearance by personnel from these labs.  Further, there are

10  personnel from other environmental consultant agencies listed although no exhibits or any other

11  disclosures in the exhibits list mention them; these unmentioned consultants are Richard Brown

12  of American Meteorburst Corp. and Greg Horner of Ecology and Environment.

13      Thus, as explained more fully below, Adams respectfully objects to the testimony of and

14  moves in limine to preclude the following listed witnesses from testifying at the liability phase at

15  trial: Sue Barkey, Richard Brown, Stan Capps, Peter Chapman, David DeForest, James Dryden,

16  Steven Eide, Greg Horner, Kevin Lackey, Kent Patton, David Pillard, Mike Prieve, Mike

17  Stanoway, William Stubblefield, and Jason Weakley.  (In the alternative, if this Court finds that

18  any of their testimony is relevant – which it is not – then the testimony should be excluded as

19  redundant as the lab reports are already in evidence.)

20      **A.    The testimony of Sue Barkey is not relevant.**

21      Teck Cominco offers Sue Barkey with the following description: "An employee of ACZ

22  Lab, Ms. Barkey will testify as to effluent analysis, inorganic compounds and cyanide, and will

discuss lab protocals *[sic]* and ACZ lab results." Liability Phase Witness List at 3. As noted above, once Teck Cominco has submitted its DMRs to the EPA, the lab protocols are not relevant under the strict liability regime of the Clean Water Act. *EPIC*, 430 F.Supp.2d at 1010. Neither is explanation of the "effluent analysis, inorganic compounds and cyanide" as the ACZ lab results speak for themselves and are the best evidence. Thus, no testimony that Ms. Barkey is described as giving would be relevant, and Adams moves to preclude the testimony of Sue Barkey.

**B.     The testimony of Richard Brown is not relevant.**

Teck Cominco offers Richard Brown with the following description: "An employee of American Meteorburst Corp., Mr. Brown will testify as to auto-monitoring equipment and in-stream conductivity." Liability Phase Witness List at 3. Adams is unable to find any exhibits among the 802 offered by Teck Cominco and the further 52 joint exhibits filed by the parties that are authored by (or indeed that even refer to) American Meteorburst Corp. Cole dec. ¶5. Further, none of the violations Adams will prove at trial – of TDS, cyanide and WET effluent limitations – involve auto-monitoring equipment or in-stream conductivity. Thus, no testimony that Mr. Brown is described as giving would be relevant, and Adams moves to preclude the testimony of Richard Brown.

**C.     The testimony of Stan Capps is not relevant.**

Teck Cominco discloses that "An employee of ENSR, Mr. Capps will testify as to WET testing methodology, laboratory procedures, and results." Liability Phase Witness List at 3. Once Teck Cominco has submitted its DMRs to the EPA, WET testing methodology and laboratory procedures are not relevant because of the Clean Water Act's strict liability. *EPIC*,

430 F.Supp.2d at 1010.  Further, any WET test results by ENSR speak for themselves, and are already admitted as evidence.  Thus, no testimony that Mr. Capps is described as giving would be relevant, and Adams moves to preclude the testimony of Stan Capps.

**D.    The testimony of Peter Chapman is not relevant.**

Teck Cominco discloses that "An employee of EVS Environmental Consultants, Dr. Chapman will testify as to toxicology, TDS, WET and the effect of mine effluent on fish and other aquatic life."  Liability Phase Witness List at 3.  EVS conducted several WET tests used in the DMRs, but such test results are themselves the best evidence.  At the liability phase, there is no place for testimony about "toxicology" nor about "the effect of mine effluent on fish and other aquatic life."  Thus, no testimony that Dr. Chapman is described as giving would be relevant, and Adams moves to preclude the testimony of Peter Chapman.

**E.    The testimony of David DeForest is not relevant.**

Teck Cominco discloses that "Mr. DeForest will testify as to the analytical history of WET testing, and laboratory caused apparent excursions of WET parameters."  Liability Phase Witness List at 4.  Under the Clean Water Act, the "analytical history of WET testing" and the "laboratory caused apparent excursions of WET parameters" are simply not relevant to liability. See *Shell Oil*, 840 F. Supp. at 714; *EPIC*, 430 F.Supp.2d at 1010.  Thus, no testimony that Mr. DeForest is described as giving would be relevant, and Adams moves to preclude the testimony of David DeForest.

**F.    The testimony of James Dryden is not relevant.**

Teck Cominco discloses that "A principal of Dryden Instruments, he will testify as to field monitoring equipment used for NPDES monitoring and his consulting work in regard

thereto.  He will testify to the conscientious nature of Teck Cominco's commitment to meeting

its obligations for monitoring."  Liability Phase Witness List at 4-5.  None of the violations

Adams will prove at trial – the TDS, cyanide and WET violations – involve "field monitoring

equipment" as all are effluent (end of pipe) limitations.  Further, "the conscientious nature of

Teck Cominco's commitment to meeting its obligations for monitoring" is wholly irrelevant as

the Clean Water Act is a strict liability statute.  See *Shell Oil*, 840 F. Supp. at 714.  Thus, no

testimony that Mr. Dryden is described as giving would be relevant, and Adams moves to

preclude the testimony of James Dryden.

**G.     The testimony of Steven Eide is not relevant.**

Teck Cominco discloses that "Mr. Eide, of CT&E Environmental Services, Inc., will

testify as to test protocols, issues involving the laboratory receiving station, inorganics, and hold

time logistics."  Liability Phase Witness List at 5.  Because the Clean Water Act is a strict

liability statute, none of these issues – test protocols, the laboratory receiving station, inorganics

and hold time logistics – are relevant to issues of liability.  *EPIC*, 430 F.Supp.2d at 1010.  Thus,

no testimony that Mr. Eide is described as giving would be relevant, and Adams moves to

preclude the testimony of Steven Eide.

**H.     The testimony of Greg Horner is not relevant.**

Teck Cominco discloses that "Mr. Horner will testify as to studies performed by Ecology

and Environment."  Liability Phase Witness List at 5.  Adams is unable to find any exhibits

among the 802 offered by Teck Cominco and the further 52 joint exhibits filed by the parties that

are authored by Ecology and Environment.  Cole dec. ¶5.  Since liability will be established by

the documentary evidence, none of which include documents by Ecology and Environment, no

testimony that Mr. Horner is described as giving would be relevant, and Adams moves to preclude the testimony of Greg Horner. (Adams is separately moving to preclude the testimony of Mr. Horner because of Teck Cominco's failure to disclose his testimony with the requisite specificity.)

**I.      The testimony of Kevin Lackey is not relevant.**

Teck Cominco discloses that "Mr. Lackey will testify as to issues involving the Teck Cominco laboratory facilities at Red Dog." Liability Phase Witness List at 5. However, "issues" involving the lab have no bearing on liability under the strict liability of the Clean Water Act. *EPIC*, 430 F.Supp.2d at 1010. Thus, no testimony that Mr. Lackey is described as giving would be relevant, and Adams moves to preclude the testimony of Kevin Lackey. (Adams is separately moving to preclude the testimony of Mr. Lackey because of Teck Cominco's failure to disclose his testimony with the requisite specificity.)

**J.      The testimony of Kent Patton and Mike Prieve is not relevant.**

Teck Cominco lists Kent Patton to "testify as to work performed by North Creek Analytical, Inc." and Mike Prieve to "testify as to laboratory procedures, alleged cyanide excursions, and work performed by North Creek Analytical." Liability Phase Witness List at 6. As explained above, the best evidence of any testing done by North Creek Analytical is the test result itself, and all timely-disclosed North Creek Analytical test results are already admitted evidence in this matter. "Laboratory procedures" are not relevant to liability once Teck Cominco has reported a violation in its DMR. *EPIC*, 430 F.Supp.2d at 1010. Thus, no testimony that Mr. Patton or Mr. Prieve is described as giving would be relevant, and Adams moves to preclude the testimony of Kent Patton and Mike Prieve.

**K.    The testimony of David Pillard is not relevant.**

Teck Cominco discloses that David Pillard will "testify as to WET claims and WET

testing methodology and procedures."  Liability Phase Witness List at 6.  Although Mr. Pillard's

qualifications and affiliation are not disclosed, Teck Cominco's earlier-filed witness list lists him

as as with ENSR out of Fort Collins, Colorado.  Defendant Teck Cominco Alaska Incorporated's

Final Witness List [Docket 29], at 15.  As explained above, the best evidence of any WET testing

done by ENSR is the test result itself, and all timely-disclosed ENSR WET tests are already

admitted evidence in this matter.  WET testing "methodologies and procedures" are not relevant

to liability once Teck Cominco has reported a violation in its DMR.  Thus, no testimony that Mr.

Pillard is described as giving would be relevant, and Adams moves to preclude the testimony of

David Pillard.

**L.    The testimony of Mike Stanoway is not relevant.**

Teck Cominco discloses that "A CH2M Hill employee, Mr. Stanoway will testify as to

biomonitoring, bioassay surveys, and WET."  Liability Phase Witness List at 6.  On their face,

biomonitoring and bioassay surveys are not relevant to Teck Cominco's permit violations or their

ongoing nature.  Further, any CH2M Hill WET tests to be used as evidence speak for themselves;

all timely-disclosed WET tests are already admitted as evidence in this matter.  Cole dec. ¶7.

Thus, no testimony that Mr. Stanoway is described as giving would be relevant, and Adams

moves to preclude the testimony of Mike Stanoway.  (Adams is separately moving to preclude

the testimony of Mr. Stanoway because of Teck Cominco's failure to disclose his testimony with

the requisite specificity.)

**M.    The testimony of William Stubblefield is not relevant.**

Teck Cominco discloses that "Dr. Stubblefield will testify as to WET." Liability Phase Witness List at 7. This is the only identification given of the testimony and Dr. Stubblefield. Consulting Teck Cominco's earlier-filed witness list, Dr. Stubblefield is listed as with Parametrix of Corvallis, Oregon. Defendant Teck Cominco Alaska Incorporated's Final Witness List [Docket 29], at 18. As explained above, the best evidence of any testing done by Parametrix is the test result itself, and all timely-disclosed Parametrix tests are already admitted evidence in this matter. Thus, no testimony that Dr. Stubblefield is described as giving would be relevant, and Adams moves to preclude the testimony of William Stubblefield. (Adams is separately moving to preclude the testimony of Mr. Stubblefield because of Teck Cominco's failure to disclose his testimony with the requisite specificity.)

**N.    The testimony of Jason Weakley is not relevant.**

Teck Cominco offers Mr. Weakley to "testify as to the chemistry and treatment of Red Dog water." Liability Phase Witness List at 7. The "chemistry and treatment of Red Dog water" do not appear to be relevant to Teck Cominco's permit violations and their ongoing nature, and thus Adams moves to preclude the testimony of Mr. Weakley. (Adams is separately moving to preclude the testimony of Mr. Weakley because of Teck Cominco's failure to disclose his testimony with the requisite specificity.)

**VII.    THE PROFFERED TESTIMONY OF US EPA OFFICIALS IS NOT RELEVANT TO LIABILITY.**

Teck Cominco also offers two EPA officials – Eva Chun and Keith Cohon – on the witness list. However, their testimony as described by Teck Cominco in the witness list does not affect Teck Cominco's liability or illuminate the ongoing nature of the violations alleged in this suit, and thus Adams respectfully objects to the testimony of and moves in limine to preclude the

listed witnesses Eva Chun and Keith Cohon from testifying at the liability phase at trial.

### A.    The testimony of Eva Chun is not relevant.

Teck Cominco lists Eva Chun of the Water Division at Region 10 of EPA as a witness, explaining,

> She is expected to testify regarding the regulatory action she took or participated in taking in relation to the regulation of Red Dog Mine's water discharge and management.  Her testimony is expected to include information about the mine's operation and impacts that she gathered and/or considered relating to, in particular, to the compliance orders by consent (COBC) EPA gave to the mine and which she was involved.  Her testimony may also include the regulatory standards she believes are appropriate and present for the Mine's water discharge.

Liability Phase Witness List at 3-4.  Because liability hinges on what Teck Cominco reported in its DMRs and what its permit requires, any "regulatory action she took or participated in taking in relation to the regulation of Red Dog Mine's water discharge and management" is not relevant, nor is "information about the mine's operation and impacts that she gathered and/or considered relating to, in particular, to the compliance orders by consent (COBC) EPA gave to the mine and which she was involved."  The COBCs on their face acknowledge that Teck Cominco is violating its permit after the filing of this suit – *see, e.g.*, Trial Exhibit 1002 (Exhibit 2 to Cole dec.) ("At times during the months of... May-June 2004, and May-June 2005, Teck Cominco violated the TDS effluent limits in Part I.A.1 of the 1998 Permit" ( ¶12)) – and thus information "gathered and/or considered" by Ms. Chun is not relevant to liability here.  Finally, the evaluation of what the Clean Water Act and Teck Cominco's permit require is within the ambit of this Court, not some random EPA employee chosen by Teck Cominco.  Her testimony as to "the regulatory standards she believes are appropriate and present for the Mine's water discharge" is simply not relevant; on its face, she did not sign the COBC.  Exhibit 2 to Cole dec.

1
2

Thus, no testimony that Ms. Chun is described as giving would be relevant, and Adams moves to

preclude the testimony of Eva Chun.

3
4

**B.    The testimony of Keith Cohon is not relevant.**

5

Like Ms. Chun, Mr. Cohon is listed by Teck Cominco with the following description:

6
7
8
9

He is expected to testify regarding the regulatory action he took or participated in taking in relation to the regulation of Red Dog Mine's water discharge and management. His testimony is expected to include information about the mine's operation and impacts that he gathered and/or considered relating to the permits issued to the mine and the COBC's given to the mine since the late 1990's. His testimony may also include the regulatory standards he believes are appropriate and present for the Mine's water discharge.

10
11

Liability Phase Witness List at 4. Again, like Ms. Chun's testimony, because liability hinges on

12

what Teck Cominco reported in its DMRs and what its permit requires, any "regulatory action he

13

took or participated in taking in relation to the regulation of Red Dog Mine's water discharge and

14
15

management" is not relevant. Any "information about the mine's operation and impacts that he

16

gathered and/or considered relating to the permits issued to the mine and the COBC's given to

17

the mine since the late 1990's" is not relevant here, either, where the permits and the COBCs are

18

in evidence, can be reviewed by the Court, and speak for themselves. The COBCs on their face

19
20

acknowledge that Teck Cominco is violating its permit – as noted directly above, *see, e.g.*,

21

Exhibits 2 to Cole dec., ¶¶ 12, 14 – and thus information "gathered and/or considered" by Mr.

22

Cohon is not relevant to liability here. Finally, the evaluation of what the Clean Water Act and

23

Teck Cominco's permit require is within the ambit of this Court, not some random EPA

24
25

employee chosen by Teck Cominco for his flattering testimony. His testimony as to "the

26

regulatory standards he believes are appropriate and present for the Mine's water discharge" is

27

simply not relevant; on its face, he did not sign the COBC. Exhibit 2 to Cole dec. Thus, no

28

testimony that Mr. Cohon is described as giving would be relevant, and Adams moves to

1   preclude the testimony of Keith Cohon.

2
3   **VIII.   THE COURT SHOULD LIMIT THE TESTIMONY OF SOME WITNESSES TO ISSUES RELEVANT TO LIABILITY.**

4          As set forth above in Sections I, II, V and VI and the cases cited therein, this is a strict
5
6   liability case and Teck Cominco may not "explain" or impeach its DMRs.  Any testimony or
7   "explanation" is simply irrelevant under the Clean Water Act at the liability phase of trial.  Thus
8   Adams respectfully objects to the testimony of and moves in limine to preclude the following
9
10  listed witnesses from testifying about non-relevant subjects at the liabiliy phase at trial.  *Some* of
11  the testimony described by Teck Cominco as to be offered by these witnesses may be relevant at
12  trial, but as explained below, portions of the testimony as described by Teck Cominco are clearly
13  not relevant to liability.  Adams requests an Order from this Court limiting the testimony of these
14
15  witnesses: Mark Thompson, Kevin Brix, Mike Botz, Jeffrey Clark, Gary Coulter, Anna Echter,
16  Gretchen Miller, Kathleen Willman and James Kulas.

17          **A.      Portions of the proffered testimony of Mark Thompson are not relevant.**

18          Teck Cominco offers the testimony of Mark Thompson on, among other topics, "issues
19
20  pertaining to maintenance of the water balance at Red Dog, policies and procedures employed
21  within his department, the history of waste water permitting, and efforts to comply with existing
22  and past permits and to obtain workable permit[.]"  Liability Phase Witness List at 2.  None of
23  these proffered topics is relevant in establishing or contesting Teck Cominco's liability.  The
24  "maintenance of the water balance at Red Dog" is not relevant to liability.  The "policies and
25
26  procedures employed within his department" have no bearing on liability, which is established
27  from Teck Cominco's own DMRs and other admissions.  The "history of waste water
28  permitting," while perhaps educational, likewise has no relevance to liability.  Nor, under the

strict liability scheme of the Clean Water Act, do Teck Cominco's "efforts to comply with existing and past permits." Such "efforts" or intent to comply has no relevance under a strict liability statute. Finally, Teck Cominco's efforts "to obtain [a] workable permit" are not relevant to questions of liability (although they might, arguably, be relevant to the issue of penalties). Accordingly, Adams moves to preclude Mr. Thompson from testifying at the liability phase about "issues pertaining to maintenance of the water balance at Red Dog, policies and procedures employed within his department, the history of waste water permitting, and efforts to comply with existing and past permits and to obtain workable permit[.]"

**B.    Portions of the proffered testimony of Kevin Brix are not relevant.**

Teck Cominco offers the testimony of Kevin Brix on, among other topics, "water quality assessments for the protection of aquatic life," and "tocicological *[sic]* issues pertaining to effluent." Liability Phase Witness List at 3.[2] Since the questions to be resolved at the liability phase include only whether or not Teck Cominco violated its permits (as demonstrated by its own self-reporting to EPA) and whether or not those violations are ongoing or capable of repetition, neither "water quality assessments for the protection of aquatic life" nor "tocicological issues pertaining to effluent" are relevant, and Adams thus moves to preclude Mr. Brix from testifying at the liability phase about either issue.

**C.    Portions of the proffered testimony of Mike Botz are not relevant.**

Teck Cominco offers the testimony of Mike Botz on cyanide "consistent with his declarations on file in this case and KRPC v. Teck Cominco." Those declarations focused

---

[2]Mr. Brix is offered as witnesses number 6 and 10. Liability Phase Witness List at 3. This objection pertains to both listings.

primarily on attacking the validity of the Total Cyanide permit limitation found in Teck

Cominco's permits, and opining that the WAD cyanide test method is superior.  As this is a strict

liability standard, any explanation of permit violations is both unnecessary and irrelevant.

Further, as the liability phase involves only violations of the Total Cyanide permit limitations,

any testimony as to WAD cyanide test methods is not relevant.  Further, because Teck Cominco

did not appeal its Total Cyanide permit limitation, it is precluded from attacking it in this

litgation. 33 U.S.C. §1369(b)(2).  Thus, any testimony by Mr. Botz as to the purported invalidity

or inferiority of the Total Cyanide test method is irrelevant.  Adams thus moves to preclude Mr.

Botz from testifying about cyanide at all; if Mr. Botz is allowed to testify, Adams moves to

preclude him from 1) discussing the WAD cyanide method, and 2) criticizing the Total Cyanide

method.

**D.    Portions of the proffered testimony of Jeffrey Clark and Gary Coulter are not relevant.**

Teck Cominco offers Mr. Clark and Mr. Coulter for, among other testimony, "all aspects

of the company's environmental management system, mineralization, and water balance issues."

Liability Phase Witness List at 4.[3]  None of these three topics – environmental management,

mineralization, or water balance – are at issue at the liability phase of this trial, and are thus not

relevant.  Adams thus moves to preclude Mr. Clark and Mr. Coulter from testifying at the

liability phase about these issues.

**E.    Portions of the proffered testimony of Anna Echter and Gretchen Mitchell are not relevant.**

---

[3]Mr. Clark is offered as witnesses number 15 and 17.  Liability Phase Witness List at 4. This objection pertains to both listings.

1    Teck Cominco discloses that Ms. Echter and Ms. Mitchell "Will testify as to conductivity

2  based claims, WET testing and alleged WET excursions."  Liability Phase Witness List at 5.

3  None of the claims Adams will prove at trial – the end-of-pipe limitations on TDS, cyanide and

4

5  WET – involve conductivity testing.  Further, the results of the WET tests are already admitted

6  into evidence in the uncontested DMRs and lab reports, and are the best evidence as to that WET

7  testing.  Thus, the testimony that Ms. Echter or Ms. Mitchell is described as giving "as to

8
   conductivity based claims" and WET testing would not be relevant, and Adams moves to
9
   preclude the testimony of Anna Echter and Gretchen Mitchell on these topics at the liability
10
   phase.
11

12       **F.    Portions of the proffered testimony of Kathleen Willman are not relevant.**
13
         Teck Cominco offers the testimony of Kathleen Willman "as to water balance issues and
14
   facts involving specific DMR's she prepared."  Liability Phase Witness List at 7.  While Adams
15
16  reserves the right to challenge the relevance of Ms. Willman's testimony as to any "specific

17  DMRs she prepared" at trial, any testimony as to "water balance issues" is clearly not relevant to

18  liability and thus Adams moves to preclude Ms. Willman from testifying at the liability phase

19  about it.  (Adams is separately moving to preclude the testimony of Ms. Willman because of
20
   Teck Cominco's failure to disclose her testimony with the requisite specificity.)
21

22       **G.    Portions of the proffered testimony of James Kulas are not relevant.**
23
         Teck Cominco offers the testimony of James Kulas on, among other topics, "issues
24
   pertaining to maintenance of the water balance at Red Dog, policies and procedures employed
25
26  within his department, the history of waste water permitting, and efforts to comply with existing

27  and past permits and to obtain workable permits."  Liability Phase Witness List at 7.  None of

28

these proffered topics is relevant in establishing or contesting Teck Cominco's liability. The "maintenance of the water balance at Red Dog" is not relevant to liability. The "policies and procedures employed within his department" have no bearing on liability, which is established from Teck Cominco's own DMRs and other admissions. The "history of waste water permitting," while perhaps educational, likewise has no relevance to liability. Nor, under the strict liability scheme of the Clean Water Act, do Teck Cominco's "efforts to comply with existing and past permits." Such "efforts" or intent to comply has no relevance under a strict liability statute. *EPIC*, 430 F.Supp.2d at 1010. Finally, Teck Cominco's efforts "to obtain workable permits" are not relevant to questions of liability (although they might, arguably, be relevant to the issue of penalties). Accordingly, Adams moves to preclude Mr. Kulas from testifying at the liability phase about "issues pertaining to maintenance of the water balance at Red Dog, policies and procedures employed within his department, the history of waste water permitting, and efforts to comply with existing and past permits and to obtain workable permits."

## IX.    CONCLUSION

For the reasons set forth above, this Court should dramatically limit the number of witnesses Teck Cominco is allowed to present at the liability phase, and strictly limit those witnesses testimony to subjects relevant to liability.

Respectfully submitted this 29th day of January, 2008.


_____ /S/ Luke Cole _____
Luke Cole
Attorney for Plaintiffs

1

2

3  CERTIFICATE OF SERVICE

   I hereby certify that on the 29th day of January 2008, a true and correct copy of the foregoing Plaintiffs' Objections to Witness
   List and Motions to Exclude Witnesses was served, via electronic mail, on the below identified parties of record:

4

5  Sean Halloran
   Hartig Rhodes
   717 K Street
6  Anchorage, AK 99501

7  Nancy S. Wainwright
   Law Offices of Nancy S. Wainwright
   13030 Back Road, Suite 555
8  Anchorage, Alaska 99515-3538

9
   James E. Torgerson
   Heller Ehrman White & McAuliffe LLP
10 510 L Street, Suite 500
   Anchorage, Alaska 99501-1959
11

12 David S. Case
   Landye Bennett Blumstein LLP
   701 W. 8th Ave., Suite 1200
13 Anchorage, AK 99501

14 Thane Tienson
   Landye Bennet Blumstein
15 1300 Southwest Fifth Ave, Suite 3500
   Portland, OR 97201

16

17   /S/ Luke Cole

18 Luke Cole

19

20

21

22

23

24

25

26

27

28