LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty & the Environment
47 Kearny St, Suite 804
San Francisco, CA 94108
415/346-4179 • fax 415/346-8723

NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515-3358
907/345-5595 • fax 907/345-3629

Attorneys for Plaintiffs Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and Joseph Swan

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON DAVID SWAN and JOSEPH SWAN,<br><br>    Plaintiffs,<br><br>    v.<br><br>TECK COMINCO ALASKA INCORPORATED<br><br>    Defendant.<br><br>NANA REGIONAL CORPORATION and NORTHWEST ARCTIC BOROUGH,<br><br>    Intervenors-Defendants. | Case No. A04-49 (JWS)<br><br>**PLAINTIFFS' OBJECTIONS TO TECK COMINCO'S PENALTY WITNESS LIST AND MOTIONS IN LIMINE TO EXCLUDE WITNESSES FOR FAILURE TO ADEQUATELY SPECIFY TESTIMONY** |

**I.     TECK COMINCO MUST DISCLOSE THE TESTIMONY OF WITNESSES AT THE PENALTY PHASE WITH SPECIFICITY.**

Once liability is established, under the Clean Water Act there is a penalty phase. During that phase, the Court determines what civil penalty and injunctive relief is appropriate. Civil penalties are mandatory once Clean Water Act violations are found, although the amount to be assessed is within the discretion of the court. 33 U.S.C. § 1319(c); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1396 (9th Cir. 1995). Courts follow a two-step process in calculating penalties under section 1319 of the CWA. *See Tyson Foods, Inc.*, 897 F.2d at 1142. First, the court calculates the maximum penalty that could be assessed against the violator. *Id.* Second, the court determines if the maximum penalty should be reduced based upon an analysis of six factors in section 1319(d). *Id.* Those factors are (1) the seriousness of the violation or violations, (2) the economic benefit (if any) resulting from the violation, (3) any history of such violations, (4) any good-faith efforts to comply with the applicable requirements, (5) the economic impact of the penalty on the violator, and (6) such other matters as justice may require. 33 U.S.C. § 1319(d).

Despite the narrow issues at trial – the application of these six factors to the maximum penalty that could be assessed – Teck Cominco presents this Court with a list of 84 witnesses it anticipates calling at the penalty phase, the vast majority of them with just one- or two-sentence, abbreviated descriptions of proffered testimony. Teck Cominco Alaska Incorporated's and NANA Regional Corporation's Revised List of Witnesses to be Called in the Remedial Phase of Trial ("Penalty Phase Witness List"), Docket 203, filed January 23, 2008. Almost none of the descriptions of the 84 listed witnesses' proffered testimony provide any mention of any of the statutory penalty factors, making it difficult for Adams to determine what information the witness will present and thus fashion cross-examination for those witnesses. Indeed, as Adams notes below, fully 68 of the witnesses do not even mention anything related to the six statutory penalty factors.

**II.    THE COURT'S INSTRUCTIONS WERE CLEAR.**

The Court's Pre-Trial Order instructed: "As to each witness so listed (even though the witness may have been deposed), counsel will disclose the testimony expected to be elicited from

that witness at trial.  *The disclosure will be specific and not general*, the purpose being to avoid surprise and delay at trial and *to give opposing counsel an adequate basis for developing cross-examination*."  Docket 177 at 3 (emphasis added).

Teck Cominco's Penalty Phase Witness List does not meet the standard for specificity in numerous instances.  In some cases, Adams is able to discern what the testimony might be about (and in many cases the proposed testimony is irrelevant, leading Adams to file a separate motion to exclude some of the witnesses named on grounds of relevance).  Adams has detailed 11 instances, however, where the description of the testimony is not sufficient to permit Adams to determine what facts the witness might testify to, and thus precludes Adams from adequately preparing to cross-examine the witness at trial; Adams also includes the names of 57 other witnesses – too many to include individual objections to at the same level as the 11 discussed – who do not even mention any of the six statutory penalty factors.  In these 68 instances, detailed below, Adams respectfully requests that the witnesses be precluded from testifying because of Teck Cominco's failure to follow the express mandate of this Court's Pre-Trial Order, Docket 177.

**III.    TECK COMINCO DID NOT PROVIDE THE REQUISITE SPECIFICITY.**

Most of Teck Cominco's listed witnesses at the penalty phase are listed without enough specificity for Adams to effectively develop cross examination.  *See* Declaration of Luke Cole in Support of Motion in Limine to Exclude Witnesses for Failure to Disclose Testimony with Specificity ("Cole dec.")[Docket 212], ¶2.  Here, Adams specifically discusses eleven of the most egregiously non-specific testimony descriptions, and then summarizes the objections to the 57 witnesses' non-specific testimony.

**A.    The description of the testimony of Joyce Tsuji is not sufficiently specific.**

Teck Cominco offers Ms. Tsuji with the following brief and non-specific description: "A retained expert.  Will testify consistent with her report and supplemental report, and work performed by Exponent for Red Dog Mine."  Penalty Phase Witness List at 8.  Although not revealed by this description, Ms. Tsuji's "report and supplemental report" both discuss human health, water in the Wulik River, Kivalina drinking water and biota near the Red Dog mine.  Cole

Specificity dec. ¶3 [Docket 212]. The reports are specific and clear. The portion of Teck Cominco's disclosure about Ms. Tsuji's testimony that is not adequately specific, however, is "and work performed by Exponent for Red Dog Mine."

In an attempt to determine what "work performed by Exponent for Red Dog Mine" might be, Adams consulted the Exhibit List filed by Teck Cominco, Docket 194. Of the 802 exhibits listed there, not one is authored by Exponent. Cole Specificity dec. ¶4 [Docket 212]. Nor is anything by Exponent listed on the Joint Exhibit List of 52 documents. Docket 195; Cole Specificity dec. ¶4 [Docket 212]. Ms. Tsuji's reports are no further help: her 13-page "Expert Report Addendum of Joyce S. Tsuji," disclosed to Adams on January 18, 2008, mentions the word "Exponent" only once: on page 13, in the final numbered paragraph, Ms. Tsuji notes that she is employed at Exponent. Exhibit 1 to Cole Specificity dec. None of the documents listed in the report itself are by Exponent or are disclosed as involving any "work performed by Exponent for Red Dog Mine." Exhibit 1 [Docket 212].

Her eight-page rebuttal report, of January 10, 2005, does not include the word Exponent at all. Cole Specificity dec. ¶6 [Docket 212]. Her original expert report, of November 15, 2004, notes that she works at Exponent (pp. 3, 20), and mentions an "Exponent data validation report for the Kivalina drinking water 2002 sampling event" (p. 5), and an Exponent report, *Evaluation of Metals Concentrations in Caribou Tissues* (p. 6). Neither of these is identifiable as "work performed by Exponent for Red Dog Mine" from the mention in the expert report – or, more to the point, from the mention in the witness list. None of the other 25 "site and case-related information" sources listed by Tsuji are identified as by Exponent (Exhibit 2 to Cole Specificity dec. at 4-8 [Docket 212]), nor do any of her opinions make reference to any work by Exponent for or at the mine site. Exhibit 2 at 8-20. None of the 47 documents Tsuji lists as references or other works consulted is by Exponent, and only one mentions Red Dog mine: a US EPA study. Exhibit 2 at 20-25. On page four of the report, in the Qualifications section, there is a passing mention of Tsuji's work for Red Dog mine, but with no specificity: "I am serving as a senior advisor on the human health risk assessment work conducted by Exponent for the Red Dog Mine site." Exhibit 2. However, nowhere in this 25-page document (or any other Tsuji-produced

1  report) is there any description or disclosure of what that human health risk assessment work
2  entailed or what its results were. As a result, Adams is completely in the dark as to what "work
3  performed by Exponent for Red Dog Mine" refers to. Cole Specificity dec. ¶7 [Docket 212].
4     Because the abbreviated description "work performed by Exponent for Red Dog Mine"
5  does not give enough specificity for Adams to formulate cross-examination on any such work –
6  even after canvassing every exhibit offered by Teck Cominco for trial and reviewing all three
7  expert reports filed by Tsuji – Adams respectfully requests that Ms. Tsuji be precluded from
8  testifying about "work performed by Exponent for Red Dog Mine."

### B. The testimony of Richard Brown is not sufficiently specific.

Teck Cominco offers Richard Brown with the following description: "An employee of American Meteorburst Corp., Mr. Brown will testify as to auto-monitoring equipment and in-stream conductivity." Penalty Phase Witness List at 3. Adams is unable to find any exhibits among the 802 offered by Teck Cominco and the further 52 joint exhibits filed by the parties that are authored by (or indeed that even refer to) American Meteorburst Corp. Cole Specificity dec. ¶8 [Docket 212]. Further, none of the violations Adams will prove at trial – of TDS, cyanide and WET end-of-pipe effluent limitations – involve auto-monitoring equipment or in-stream conductivity. Thus, Adams is at a loss as to what exactly Mr. Brown will testify to and cannot adequately prepare cross-examination based on the description of the testimony provided by Teck Cominco. Adams thus moves to preclude the testimony of Richard Brown in its entirety.

### C. The description of the testimony of Peter Chapman is not sufficiently specific.

Teck Cominco discloses that "An employee of EVS Environmental Consultants, Dr. Chapman will testify as to toxicology, TDS, WET and the effect of mine effluent on fish and other aquatic life." Penalty Phase Witness List at 5. Among the 802 exhibits offered by Teck Cominco are two WET analyses authored by EVS Environmental Consultants. Cole Specificity dec. ¶9 [Docket 212]. However, from the description offered by Teck Cominco, Adams is unsure if Dr. Chapman will testify as to those results, which are not mentioned, or testify in general about WET (the abbreviation for "whole effluent toxicity"). If Dr. Chapman were going to talk about the EVS results (which is not apparent from Teck Cominco's disclosure), any such

AND MOTION TO EXCLUDE WITNESSES FOR FAILURE
TO ADEQUATELY SPECIFY TESTIMONY          4

test results would themselves be the best evidence. Further, "toxicology" is a vast scientific field, and there is no indication from this one-sentence description as to what about toxicology Dr. Chapman will testify to. Is this a history of toxicology? A critique of it? An explanation of it? Adams cannot tell, and consequently cannot prepare for an examination of Dr. Chapman at trial.

Finally, "the effect of mine effluent on fish and other aquatic life" is also a vastly broad topic, not even limited by this description to the Red Dog mine that is the subject of this lawsuit. The description of Dr. Chapman's proposed testimony is simply so vague as to preclude Adams from adequately preparing cross examination. Cole Specificity dec. ¶10 [Docket 212]. Adams thus moves to preclude the testimony of Peter Chapman in its entirety.

**D.   The description of the testimony of Greg Horner is not sufficiently specific.**

Teck Cominco discloses that "Mr. Horner will testify as to studies performed by Ecology and Environment." Penalty Phase Witness List at 6. Adams is unable to find any exhibits among the 802 offered by Teck Cominco and the further 52 joint exhibits lodged by the parties that are authored by Ecology and Environment. Cole Specificity dec. ¶11 [Docket 212]. Since there are no "studies performed by Ecology and Environment" in evidence, Adams has nothing other than this one-sentence description with which to prepare for trial, and is Adams is thus unable to adequately prepare cross-examination. Cole Specificity dec. ¶12 [Docket 212].

**E.   The description of the testimony of Kevin Lackey is not sufficiently specific.**

Teck Cominco discloses that "Mr. Lackey will testify as to issues involving the Teck Cominco laboratory facilities at Red Dog." Penalty Phase Witness List at 7. This one-sentence description – all that Adams is given to work with – not only does not disclose the "issues" Mr. Lackey will discuss, but also does not discuss how they might in any way relate to the actual issues to be determined in the penalty phase. Cole Specificity dec. ¶13 [Docket 212]. Thus Adams is unable to adequately prepare cross-examination, not knowing what issues or how the Teck Cominco laboratory facilities at Red Dog relate to the actual violations alleged in this suit. Cole Specificity dec. ¶14 [Docket 212]. Adams thus moves to exclude the testimony of Mr. Lackey in its entirety.

**F.    The description of the testimony of Jackie Lundberg is not sufficiently specific.**

Teck Cominco discloses that "Ms. Lundberg will testify as to TIE/TRE and alleged port excursions." Penalty Phase Witness List at 7. Although not disclosed by this abbreviated description, "TIE/TRE" refers to Toxicity Identification Evaluation/Toxicity Reduction Evaluation, steps required by Teck Cominco's permits after a repeated violation of its WET test permit limitations. Cole Specificity dec. ¶15 [Docket 212]. Over the past decade, Teck Cominco has undertaken numerous TIE/TRE processes. *Id.* at ¶16. These analyses fill hundreds of pages in numerous reports, for both the Mine Site and the Port Site. *Id*. Without further explication of what Ms. Lundberg would testify "as to TIE/TRE," Adams is unable to adequately prepare cross-examination. Further, the description is vague to the point of confusion, because the "and" could be conjunctive and limiting – i.e., "Ms. Lundberg will testify as to TIE/TRE *only as to* alleged port excursions" – or disjunctive and additive – i.e., "Ms. Lundberg will testify as to TIE/TRE and *also* alleged port excursions." Not knowing what Ms. Lundberg will actually testify to makes it impossible for Adams to adequately prepare cross examination. Cole Specificity dec. ¶17 [Docket 212]. Adams thus moves to exclude the testimony of Jackie Lundberg in its entirety.

**G.    The description of the testimony of Mike Schierman is not sufficiently specific.**

Teck Cominco discloses that Mike Schierman "Will testify as to weather conditions at Red Dog as they pertain to claims, and their effects on monitoring, sampling, and transport of lab samples and results." Penalty Phase Witness List at 8. As noted above, the Clean Water Act is a strict liability statute, and thus "weather conditions" – presumably to be discussed in the context of explaining Teck Cominco's failure to comply with its permit conditions, though not clear from the description offered by Teck Cominco – are not described with the specificity that would allow their connection to any of the penalty factors. Put most simply, "weather conditions at Red Dog" *do not* "pertain to claims." There is no description here as to how Teck Cominco will bridge this seeming contradiction in its description of Mr. Schierman's testimony or tie Mr. Schierman's testimony to some relevant fact or circumstance regarding penalties. Without any

stated connection to topics relevant to the penalty factors, this description lacks the specificity necessary to allow Adams to adequately prepare cross-examination. Cole Specificity dec. ¶18 [Docket 212].

### H. The description of the testimony of Mike Stanoway is not sufficiently specific.

Teck Cominco discloses that "Mr. Stanoway will testify as to biomonitoring, bioassay surveys, and WET." Penalty Phase Witness List at 8. Numerous agencies and contractors have conducted biomonitoring and bioassay surveys in the Wulik River watershed over the past three decades. Thousands of pages are devoted to such surveys. Cole Specificity dec. ¶19 [Docket 212]. From this description alone, it is unclear which of these dozens of surveys Mr. Stanoway will testify about – *if any* – and how that testimony will be in any way relevant to Teck Cominco's penalty factors, which are wholly independent from either biomonitoring or bioassays. Further, as with the abbreviated description of Ms. Lundberg's testimony discusses above, it is unclear from the sentence (and thus confusing) whether the testimony about "biomonitoring, bioassay surveys, and WET" is related – *i.e.*, "biomonitoring, bioassay surveys, and *how they relate to* WET" – or simply additive, *i.e.*, " biomonitoring, bioassay surveys, and *also* WET." WET itself is a large topic, and there is no indication from this description that Mr. Stanoway will discuss in any way the actual WET violations at issue in this suit. Accordingly, the description is not sufficiently specific to allow Adams to prepare cross examination, and Adams respectfully requests that Mr. Stanoway's testimony be excluded in its entirety.

### I. The description of the testimony of William Stubblefield is not sufficiently specific.

Similar to his listing in the Liability Phase Witness List, in decidedly the most egregious instance of lack of specificity in its entire 16-page, 85-name witness list, Teck Cominco discloses that "Dr. Stubblefield will testify as to WET." Penalty Phase Witness List at 8. In the context of this litigation, Adams will assume that Teck Cominco is referring to whole effluent toxicity when it lists "WET" as the topic, although the abbreviation also is used for "an opensource web automation testing tool which uses Watir as the library to drive web pages," Cole Specificity dec. ¶21 and Exhibit 3 [Docket 212], and the Western European Time zone. Cole Specificity dec. ¶21. The Court has instructed the parties to disclose the testimony expected, and ordered that

"the disclosure will be specific and not general[.]" Docket 177 at 3. Whole effluent toxicity as a topic is a broad one, as WET testing is the subject of courses, books, and countless agency and consultant reports around the world. Merely mentioning that the testimony will be about WET – and not even, from this description, the WET violations alleged by Adams – is not sufficient enough to allow Adams to effectively prepare cross examination. Cole Speficity dec. ¶22 [Docket 212]. Adams respectfully requests that Mr. Stubblefield's testimony be excluded in its entirety.

### J. The description of the testimony of Jason Weakley is not sufficiently specific.

Teck Cominco offers Mr. Weakley to "testify as to the chemistry and treatment of Red Dog water." Penalty Phase Witness List at 8. The "chemistry and treatment of Red Dog water" is a huge topic, potentially encompassing the several hundred chemicals that have been tested for in the Red Dog mine effluent. The "treatment" of the water is also a very general description. Taken as a whole, the description is not sufficiently specific to allow Adams to adequately prepare cross examination. Cole Specificity dec. ¶23 [Docket 212]. Adams thus moves to exclude the testimony of Jason Weakley.

### K. The description of the testimony of Kathleen Willman is not sufficiently specific.

Teck Cominco offers the testimony of Kathleen Willman "as to water balance issues and facts involving specific DMR's she prepared." Penalty Phase Witness List at 8. Adams is unaware of what "water balance issues" are and thus their relevance to the penalty factors to be proven at trial. Thus, Adams is unable to adequately prepare cross examination and is prejudiced by the scanty description offered. Adams therefore respectfully moves to exclude the testimony of Kathleen Willman as to "water balance issues."

### L. The testimony of most of the remainder of the witnesses is not specifically tied to any of the penalty factors, and thus should be disallowed.

As noted above, there are six statutory penalty factors that will form the framework for all testimony at the penalty phase. 33 U.S.C. § 1319(d). In addition to the 11 witness testimony descriptions examined in detail above, none of the following witnesses is listed with a description that mentions any of the penalty factors. This lack of specificity makes it impossible

for Adams to adequately prepare cross-examination on the primary legal questions – the statutory penalty factors – that are at issue in the penalty phase.

Witnesses that do not mention any of the statutory penalty factors: Roland Booth, Raymond Hawley, John Rense, Gerry Booth, Philip Driver, Jon Houghton, Alvin Ott, Karen Kelly, Gene Andrews, Steven Day, Walter Kuit, Brigitte Lacouture, Carl Overpeck, George Thornton, Jeff Weaver, Ted Zigarlick, Sue Barkey, Mike Botz, Kevin Brix, Stan Capps, David DeForest, Anna Echter, Gretchen Mitchell, Steven Eide, Wayne Hall, Chuck Hingsbergen, Lynda Huckstein, John Key, Ed Koon, Keith Malone, John Martinisko, Robert Napier, Kent Patton, David Pillard, Mike Prieve, Kathleen Collins, Craig Paulsen, John Middaugh, Scott Arnold, JoAnne Bozek, Gerry Brown, Steven Pannone, Larry Peterson, Scott Shock, Bert Adams, Sr., Theodore Booth, Chuck Greene, Walter Sampson, Robert Sheldon, Jim Dau, Alfred DeCicco, Lee Johnson, Al Townsend, Kevin Thomas, Rose Barr, Helvi Sandvik, and James Kulas. Because none of these witnesses specifically addresses the statutory penalty factors, even in passing, it is impossible for Adams to formulate cross-examination on the penalty factors. Accordingly, Adams respectfully requests that the testimony of the above witnesses be disallowed.

**IV.   CONCLUSION**

This Court's instructions to the litigants were clear: the disclosure of expected testimony "will be specific and not general, ... to give opposing counsel an adequate basis for developing cross-examination." Docket 177 at 3. For the eleven witnesses discussed in detail above, and the 57 witnesses listed below them, Teck Cominco did not meet that simple threshold, and its general, vague, confusing and sparse descriptions did not give Adams an adequate basis for developing cross examination. Thus, in fairness to the parties and to protect Adams's due process rights, Adams respectfully requests that the testimony of these 68 witnessed be excluded.

Respectfully submitted this 29th day of January, 2008.

_____/S/ Luke Cole_____
Luke Cole
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of January 2008, a true and correct copy of the foregoing Objections to Penalty Witness List and Motion to Exclude Witnesses for Failure to Adequately Specify Testimony, was served, via electronic mail, on the below identified parties of record:

Sean Halloran
Hartig Rhodes
717 K Street
Anchorage, AK 99501

Nancy S. Wainwright
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, Alaska 99515-3538

James E. Torgerson
Heller Ehrman White & McAuliffe LLP
510 L Street, Suite 500
Anchorage, Alaska 99501-1959

David S. Case
Landye Bennett Blumstein LLP
701 W. 8th Ave., Suite 1200
Anchorage, AK 99501

Thane Tienson
Landye Bennet Blumstein
1300 Southwest Fifth Ave, Suite 3500
Portland, OR 97201

_____/S/Luke Cole_____

Luke Cole

ADAMS OBJECTION TO PENALTY WITNESS LIST
AND MOTION TO EXCLUDE WITNESSES FOR FAILURE
TO ADEQUATELY SPECIFY TESTIMONY         10