## Title 9
## ZONING AND LAND USE[1]

Chapters:
9.04 General Provisions
9.08 Administrative Provisions
9.12 Zoning Districts
9.16 Administrative Approvals
9.20 Planning Commission Approvals
9.24 Borough Standards (Repealed)
9.25 Borough Standards
9.28 Supplemental Subsistence Standards
    (Repealed)
9.30 Miscellaneous Provisions
9.32 Flood Damage Prevention

## Chapter 9.04
## GENERAL PROVISIONS

## January 24, 2008 (Draft)

Sections:
9.04.010 Introduction.
9.04.020 Purposes.
9.04.030 Geographic scope.
9.04.040 Severability/survivability.
9.04.050 Relationship to coastal management plan.
9.04.060 Rules of construction.
9.04.070 Definitions.
9.04.080 Effective date.

**9.04.010 Introduction.**
This title creates a unique set of land management principles and procedures. The ideas contained in this title were developed by officials and residents of the borough in many public meetings held to develop the borough's comprehensive plan, coastal management plan and other planning studies. This title was originally enacted upon final approval of the borough's comprehensive plan. Consistent with applicable law, procedural and administrative provisions are to be interpreted so as to be as efficient and fair as possible to all concerned. (Ord. 93-02 § 1 (9.10.010), 1993)

**9.04.020 Purposes.**
This title is adopted:
   A. To achieve the goals and objectives, and implement the policies, of the borough comprehensive plan;
   B. To promote and protect the public health, safety, morals and general welfare, as well as the historic, economic, social and cultural interests of the borough's residents,

1

Exhibit     C
Page  1  of  76

particularly as these are related to the subsistence way of life of the great majority of the borough residents;

C. To ensure future growth and development of the borough is in accord with the values of its residents;

D. To identify and secure, for present and future generations, the beneficial effects of development;

E. To identify and avoid, minimize or mitigate the adverse effects of development;

F. To ensure future development is of the proper type, design and location, and is served by a proper range of public services and facilities;

G. To ensure meaningful public involvement in permitting, planning and zoning decisions; and

H. To implement the requirements of the borough charter and AS 29.35.180(b). (Ord. 93-02 § 1 (9.10.020), 1993)

### 9.04.030 Geographic scope.

Unless prohibited by state law, this title applies to all private, state, borough and municipally owned lands and waters within the borough's boundaries. It also applies to federal lands, waters, tidelands or submerged lands within the borough's boundaries, unless preempted by federal law. This title does not apply to federally restricted townsite lots or allotments, except as may be allowed by federal law. This title does not apply to any lands within the municipal boundaries of the city of Kotzebue. (Ord. 93-02 § 1 (9.10.030), 1993)

### 9.04.040 Severability/survivability.

Should any provision of this title be held to be in violation of state law, the Alaska Constitution, federal law or the United States Constitution, such holding shall not affect the validity of any other provision. The enactment of this title and the repeal of its predecessor law or regulations, does not release or extinguish any penalty, forfeiture or liability incurred, or any right accruing or accrued under such predecessor law or regulations. Hearings and appeals related to such matters shall follow the procedures provided in such predecessor law or regulations. (Ord. 93-02 § 1 (9.10.040), 1993)

### 9.04.050 Relationship to coastal management plan.

The borough coastal management plan is based on the borough comprehensive plan as provided in AS 46.40.030. The coastal management plan has historically been the source of enforceable policies against which development affecting coastal uses or resources has been measured for consistency. Those enforceable policies are incorporated into this title by reference. Those enforceable policies, along with the statewide standards at 11 AAC 112, are the standards under which coastal consistency recommendations and determinations are made. The enforceable policies of the coastal management plan apply to all activities that undergo a coastal management review, but a consistency determination under those policies does not exempt any person from the application of stricter or more protective requirements of this title. (Ord. 93-02 § 1 (9.10.050), 1993)

### 9.04.060 Rules of construction.

Within this title, the following rules and definitions apply:

A. Words used in the present tense include the past and future tense.

B. The singular number includes the plural and the plural the singular.

Exhibit C
Page 2 of 76

C. The word "person" includes a corporation, partnership, joint venture, unincorporated association, the borough, and any other municipality, tribe, public agency or other entity as well as any natural person.

D. The words "shall" and "must" are mandatory and the word "may" is permissive.

E. The words "used" and "occupied" as applied to tidelands, water areas, land, structures or buildings include "intended," "arranged" or "designed" to be used or occupied.

F. The word "include" and "including" means "including but not limited to."

G. The provisions of this title shall be given a liberal construction favoring the purposes of this title, the purposes of the specific zoning districts, and the implementing standards of Chapter 9.25 NABC. In case of conflicts between standards, the more restrictive standard shall apply. (Ord. 93-02 § 1 (9.20.010), 1993)

### 9.04.070 Definitions.

The definitions in this section are intended to be specific to this title. Any word or term not defined shall be used with the meaning of common or standard usage as determined by a current edition of Webster's Unabridged Dictionary. In this title, the following definitions shall apply:

"Accessory," applied to a use or structure, means customarily subordinate to or incidental to, and located on the same parcel with, a principal use or structure.

"Activity" means "use" as defined in this section.

"Administrative approval" means a minor or major use permit issued by the administrator pursuant to NABC 9.16.010(B).

"Administrator" means the borough planning director or designee.

"Aircraft" means a plane or helicopter.

"Airport" means a state-maintained airport.

"Airstrip" means every facility for landing of aircraft other than an airport.

"Applicant" means the person who makes an application for a use under the provisions of this title, and their successors in title or interest. The term also includes the person who engages in such use.

"Approval" means a permit or other authorization required to conduct an activity regulated by this title.

"Area of special flood hazard" means the land in any floodplain within the borough subject to a one percent or greater chance of flooding in any given year.

"Archaeological survey" means an investigation conducted on a parcel of land to determine if there are graves, ruins, artifacts, or other objects of antiquity.

Exhibit    C
Page 3 of 76

"Assembly" means the Northwest Arctic Borough assembly.

"Borough" means the Northwest Arctic Borough, Alaska.

"Bulk fuel storage" means storage of more than 660 gallons of petroleum products above or below ground in temporary containers or permanent structures.

"Business day" means any calendar day, Monday through Friday, exclusive of borough holidays.

"Coastal area" means the area within the coastal zone boundary as defined by the Northwest Arctic Borough coastal management plan, as now or hereafter amended.

"Coastal management plan" means the coastal management plan of the Northwest Arctic Borough, federally approved December 1, 1989, as now or hereafter amended, and includes the chapters, appendices and supporting documents adopted as part of the Northwest Arctic Borough coastal management plan including the enforceable policies.

"Commercial" means use involving the storing, wholesaling, retailing or rental of any article, service or substance for cash, trade or any form of compensation, and supporting activities, but excludes such uses when they are conducted in a dwelling unit or accessory building and are clearly subordinate to the use of the dwelling for residential purposes; provided, that:
    1.  The primary use and appearance of the lot and accessory building remains residential and generally conforming to the appearance of the surrounding area; and
    2.  Outside storage of stock or materials shall be limited to a period of 90 days in any one calendar year.

"Commercial recreation" means use involving the commercial provision of services in support of any of the following: hiking, fishing, hunting, camping, boating, guiding, overland or water travel or similar activities. The term includes support facilities such as lodges and the activities of guides, transporters, outfitters and commercial air charters for recreational purposes.

"Commission" means the Northwest Arctic Borough planning commission.

"Communication equipment" means and includes navigational aides, satellite dishes, antennas and airport approach lighting.

"Compliance plan" means a plan developed by the administrator to bring uses and development into compliance with this title.

"Conditional use" means a use subject to permit approval by the borough planning commission. Conditional uses are listed by land use district in Chapter 9.12 NABC and by use in Table 9.12 and are approved through the process in Chapter 9.20 NABC.

"Consistency determination" means the formal finding of consistency of a proposed use with the enforceable policies of the Alaska coastal management program including the statewide standards in 11 AAC 112 and the enforceable policies of the borough coastal

C
Page 4 of 26

management plan, and is made by the state of Alaska coordinating agency pursuant to state regulations in 11 AAC 110. The definitions under 11 AAC 110.990(a)(15), and as hereafter amended, are incorporated to define this term.

"Consistency recommendation" means the formal finding of consistency of a proposed development or use with the enforceable policies of the Alaska coastal management program including the statewide standards at 11 AAC 112 and the enforceable policies of the borough coastal management plan, and is submitted by the borough to a state agency designated the coordinating agency for a particular consistency review.

"Coordinating agency" means the state agency responsible for making a formal finding of consistency of a proposed development or use with the enforceable policies of the Alaska coastal management program including the policies of the borough coastal management plan. Where a proposed development requires a federal or state permit in addition to a borough approval, a state agency will be designated the coordinating agency; where only a borough approval is required, the borough is the coordinating agency.

"Cumulative effect" means a social, cultural or environmental effect that results from incremental effect of the action when added to other past, present and reasonably foreseeable future actions. Cumulative effects can result from individually minor but collectively significant actions taking place over a period of time.

"Day" means any calendar day, including weekends and holidays.

"Development" means "use" as defined in this section.

"Developer" means the person that owns or controls the property used for development. The term "developer" includes permittees, operators, contractors, and persons who are obligated to obtain a permit or approval under this title.

"Elevated structure" means for insurance purposes, a non-basement structure that has its lowest elevated floor raised above ground level by structures including foundation walls, shear walls, posts, piers, pilings or columns.

"Emergency action" means operations necessary to avert imminent danger to human health, safety or welfare, as well as imminent damage to wildlife or wildlife habitat.

"Ex parte communication" means private communication between an interested party in a quasi-judicial proceeding (e.g., variance, conditional use permit, subdivision approval, or appeal) and a member of the body that is hearing the matter.

"Existing use" means the use or uses made of a site on the original effective date of any ordinance codified in this title.

"Facility" means a building, including a gravel pad or any other structure or improvement that is used in association with a project.

5

Exhibit C
Page 5 of 76

"Feasible and prudent," when used to modify a standard, means consistent with sound engineering practice and cost and not causing environmental or social problems that would outweigh the public benefit to be derived from compliance with the standard, as determined by the borough.

"Federal Insurance Administration (FIA)" means the federal division responsible for administration of the National Flood Insurance Program.

"Field" means any area within the borough boundaries that is not an airport listed in the Alaska Supplement to the Airmen's Guide.

"Flood" or "flooding" means a general and temporary condition of partial or complete inundation of normally dry land areas from the overflow of inland or tidal waters or the unusual and rapid accumulation of runoff of surface waters from any source.

"Gravel extraction" means the removal from the earth of sand or gravel including other common varieties of stone, pumice or clay not considered minerals and includes excavation from pits, beaches, banks and land adjacent to or beneath waterbodies. Gravel extraction is included in the terms "major resource extraction" and "minor resource extraction."

"Great weight" means, as related to the opinions of village residents, including traditional and contemporary local knowledge, that such opinions shall be accorded greater credibility than the opinions and findings of others on matters affecting village life, unless they are either substantially inconsistent with each other or with substantial contrary evidence.

"Hazardous materials" means and includes any pollutant, waste, element, compound, mixture, solution or other substance designated, listed or identified pursuant to the following federal statutes or regulations, including subsequent amendments to the same:
    1. Section 311(b)(2)(A) of the Federal Water Pollution Control Act (FWPCA) (33 U.S.C.A. 1321(b)(2)(A));
    2. Section 102 (42 U.S.C.A. 9602) of the Comprehensive Environmental Response, Compensation and Liability Act;
    3. Section 3001 (42 U.S.C.A. 6921) of the Solid Waste Disposal Act, but excluding any waste the regulation of which under the Solid Waste Disposal Act has been suspended by act of Congress;
    4. Section 307(a) (33 U.S.C.A. 1317(a)) of the FWPCA;
    5. Section 112(b) (42 U.S.C.A. 7412(b)) of the Clean Air Act; and
    6. Any imminently hazardous chemical substance or mixture with respect to which the administrator of the Federal Environmental Protection Agency has taken action pursuant to Section 7 (15 U.S.C.A. 2606) of the Toxic Substances Control Act. This term also includes petroleum, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, synthetic gas usable for fuel, or mixtures of natural gas and such synthetic gas, except petroleum used for personal consumption, which amounts to 660 gallons or more stored on any premises or location.

"High water mark of record" (HWM) means a 1.5-inch-diameter metal washer attached with a lag bolt to a building or a utility pole, placed at the water level of the highest

6

C
Page 6 of 76

recorded flood. The washer is stamped COE-HWM and painted fluorescent red at the time of installation. A HWM may or may not be at the level of the 100-year flood.

"Ice road" or "ice pad" means a roadway or pad used for wheeled or lugged vehicles or as a winter staging area and constructed with or on frozen water, but excludes such uses as trail staking, snowmobile trails and borough-constructed ice roads.

"Land" includes water, ice, submerged land and interests therein, unless specifically excluded.

"Local government" means any borough, city or tribal government.

"Local knowledge" means information based on observation of Borough residents or users of an area about physical or biological processes in the area.

"Lowest floor" means the lowest floor of the lowest enclosed area (including basement). An unfinished or flood resistant enclosure, usable solely for parking of vehicles, building access or storage, in an area other than a basement area, is not considered a building's lowest floor, if such enclosure is built in accordance with chapter 9.32 NABC.

"Major alteration" means any change that is not a minor alteration.

"Major development" means a project that involves more than 20 acres of affected surface disturbance; or having 75 or more personnel employed at the operation, whether direct employees or employees of independent contractors, in any consecutive three-month period; or a project for which a federal agency has determined would involve a major federal action that requires preparation of an environmental impact statement in accordance with the National Environmental Policy Act.

"Major energy facilities" means a development of more than local concern that supports energy exploration or development activities, is used to produce, convert, process or store energy resources or marketable products, is used to transfer, transport, import, or export energy resources or marketable products, or is used for the manufacture, production, or assembly of equipment, machinery, products, or devices that are involved in an activity described in this definition. Major energy facilities include marine service bases and storage depots, pipelines and rights-of-ways, drilling rigs and platforms, geophysical survey equipment, petroleum or coal separation, treatment, or storage facilities, coal bed methane facilities, liquid natural gas plants and terminals, oil terminals and other port development for the transfer of energy products, petrochemical plants, refineries and associated facilities, commercial wind generation facilities, hydroelectric projects, other electric generating  plants, transmission lines, uranium enrichment or nuclear fuel processing facilities, geothermal facilities, natural gas pipelines and rights-of-way, natural gas treatment and processing facilities, and infrastructure related to gas treatment and processing facilities.

"Major mining activities" means mining activities with a potential for more than minor social, cultural or environmental effects.

C
7 of 76

"Major resource extraction" means removal for commercial purposes of the following materials involving one acre or more of surface disturbance: Native vegetation (including timber), topsoil, fill, sand, gravel, rock, and other operations having similar characteristics. The term "major resource extraction" also includes activities related to the extraction of petroleum, natural gas, coal bed methane and mineral development activities.

"Major use permit" means an authorization issued by the administrator for activities with the potential for more than minor social, cultural or environmental effects. Major permit uses are listed by land use district in Chapter 9.12 NABC, and are approved through the process in Chapter 9.16 NABC.

"Manufactured home" means a structure, transportable in one or more sections, which is built on a permanent chassis and is designed for use with or without a permanent foundation when attached to the required utilities.

"Master plan" is the plan of development required with the application for rezoning to the resource development and transportation corridor districts or in any district where major resource extraction is proposed. The approved master plan indicates the location and type of development which shall be allowed. Unless specifically allowed otherwise by the planning commission, each master plan shall be updated with an annual work plan or equivalent document, which shall be submitted for approval under NABC 9.20.030.

"Mayor" means the mayor of the Northwest Arctic Borough.

"Mineral" means a naturally occurring and commercially valuable substance, including but not limited to metals, ore, coal, salt, sulfur, rock, stone, gravel, sand, petroleum and natural gas, which is extracted from the ground."

"Mineral development" means development and operation of facilities to extract or process minerals which typically includes detailed drilling, bulk sampling, feasibility analysis and determination as well as facility access design and engineering. The term "mineral development" includes reconnaissance exploration activities that are associated with a mineral development project.

"Mineral exploration" means reconnaissance activities to determine whether commercial quantities of minerals exist in an area. The term "mineral exploration" includes surface geologic mapping, surveys (other than seismic surveys), drilling, and sampling by hand, portable sluice boxes or other lightweight equipment. The term "mineral exploration" does not include reconnaissance activities that are associated with a mineral development project.

"Mining" means the extraction of minerals including: solids, such as coal and ores; The term "mining" also includes quarrying; milling, such as crushing, screening, washing and flotation; and other preparation customarily done at the mine site or as part of a mining operation.

"Mining operation" means the development, construction or reclamation of a mine, including associated infrastructure, or the exploitation or extraction of a mineral commodity from its occurrence on or in the earth, or the operation of a mine. The term

"mining operation" includes open pit mining, placer mining, underground mining, and the disposal of refuse, tailings or waste rock from any such operation. The term "mining operation" also includes transporting, concentrating, milling, evaporating and other on-site processing. The term "mining operation" does not include off-site smelting, refining, cleaning, preparing, transportation or other surface operations not conducted on the affected surface.

"Minor alteration" is a change to an approved or existing use which will not significantly affect the environment, or have only minimal effects over and above that originally approved or requested.

"Minor resource extraction" means removal for commercial purposes of the following materials involving less than one acre of surface disturbance: Native vegetation (including timber), topsoil, fill, sand, gravel, rock, or other operations having similar characteristics. The term "minor resource extraction" does not include activities related to a major development project.

"Minor use permit" means an authorization issued by the administrator for activities with expected minor social, cultural or environmental effects. Minor permit uses are listed by land use district in Chapter 9.12 NABC, and are approved through the process in Chapter 9.16 NABC.

"Natural hazards" means natural processes or adverse conditions that pose a threat to life, property or the environment or pose such a threat after disturbance. The term "natural hazards" includes flooding, earthquakes, active faults, tsunamis, landslides, volcanoes, storm surges, ice formations, snow avalanches, erosion, and permafrost.

"New construction" means structures for which the "start of construction" commenced on or after the effective date of the ordinance codified in 2005 as chapter 9.32 NABC.

"Nonconformity" means a parcel, structure, use or portion thereof, which was lawfully altered, erected or maintained, but no longer conforms to the provisions for the zoning district in which it is located and as further described in NABC 9.16.080.

"Parcel" means the tract of land or water on which use occurs or is intended to occur. "Parcel" also includes the words lot, plot, site or tract.

"Planning commission" means the Northwest Arctic Borough planning commission.
"Project" means any use that requires a permit under this title.

"Prospecting" means the process of seeking and occasionally removing small samples of mineral commodities for claim staking or further exploration. The term "prospecting" includes only those activities which cause no or very little surface disturbance and which uses no mechanized earth-moving or drilling equipment. The term "prospecting" includes the use of small-scale, mechanized, in-stream equipment, such as suction dredges, large sluice boxes and portable jigs.

"Public facility" is a park, building, road or structure owned or used by a federal, state, municipal, tribal or other local government agency, school board or utility company.

9

"Public notice" means a notice published or broadcast through the media widely available throughout the borough and mailed to each city or village administrator at least 10 days before the hearing, or action, or meeting for which the notice is given.

"Public review" means a review of a permit application that involves a public notice and an opportunity for public comment.

"Recreational" means any temporary activity undertaken primarily for pleasure as distinguished from commercial or commercial recreation activities. It does not include permanent construction, but may include temporary construction, such as tent platforms and lean-tos.

"Residential" means a use involving the occupation of a building or structure for living, cooking, sleeping and accessory uses other than on a temporary basis.

"Significant adverse effect" means a material negative alteration or disturbance of a resource or use that would cause considerable alteration to a resource or considerable disruption to the ability of a person to engage in the use.

"Structure" other than for chapter 32 of this title, means anything which is placed, constructed, erected or located on or under the ground, or attached to something fixed to the ground, such as a floating structure anchored to submerged ground, regardless of size, purpose or whether it is temporary or permanent, including:
    1.  A building;
    2.  A tower, antenna, pole or similar structure;
    3.  Drilling or excavating apparatus, pipeline, pump stations, conveyor belt or similar structure;

    4.  A foundation, or gravel pad;
    5.  A street, road, ice road, ice pad, parking area or storage area;
    6.  Staging areas for landing barges.

"Structure" for the purposes of chapter 32 of this title means a walled and roofed building including a gas or liquid storage tank that is principally above ground.

"Subsistence," in addition to its meanings under state or federal law, means an activity performed in support of the cultural beliefs or nutritional needs of the residents of the borough and includes hunting, whaling, fishing, trapping, camping, food gathering and other traditional or cultural activities. The term "subsistence" includes preparation for and transportation to and from the activities listed in this definition. The term "subsistence" also includes construction and use of drying racks, traditional shelters and other small-scale, traditional structures. It does not include construction for residential, equipment storage, equipment maintenance, warehousing or similar purposes.

"Substantial improvement" means for the purposes of Chapter 9.32 NABC any repair, reconstruction, or improvement of a structure the cost of which equals or exceeds 50 percent of the market value of the structure.

"Temporary use" means use of less than 30 consecutive days.

Exhibit _C_
Page _10_ of _76_

"Title" means NABC Title 9, the comprehensive plan, and their implementing regulations, standards or procedures.

"Traditional knowledge" means knowledge based on oral tradition or personal knowledge of elders, hunters, gatherers, whaling captains and others amongst and including the Iñupiat people and other borough residents, about the culture and history of the people of the Northwest Arctic Borough and the natural environment, including, but not limited to, knowledge of subsistence habits, uses, and traditions, wildlife, flora, fauna, land, sea, water, air, and ecosystem conservation.

"Transport" means the carriage of persons to, from, or in the field.

"Transporter" means a person or business that provides transportation services and/or accommodation services to sport, recreational and/or big game hunters in the field or at a lodge, house, cabin, or a boat with permanent living quarters on salt water.

"Tribe" or "tribal" means of or related to a village government organized traditionally or under the federal Indian Reorganization Act ("IRA") and which is recognized by the federal government as eligible for services provided to Native Americans because of their status as Native Americans.

"Trip" means the drop-off and pickup of the same person or persons; if only one-way transportation is provided, the transport is one-half of a trip.

"Tundra travel" means the off-road operation of vehicle(s), except snow machines and balloon-tired vehicles (i.e., rolligons) with less than five psi ground pressure, and during times of at least 12 inches of frost and six inches of snow cover, vehicles with less than nine psi ground pressure.

"Use," except where excluded, means and includes any development or other significant activity on a parcel of land, including the following:
    1.   Construction, reconstruction, relocation, placement or alteration of a structure;
    2.   Change in the use or material increase in use of a site, including any structure thereon;
    3.   Disturbance of the surface of the land. Disturbance includes dredge excavation or fill activities; creation of an equipment or material storage site, or tailing pile; creation of a refuse pile, dump or landfill; creation of a reservoir, settling or evaporation pond, reserve pit or leach field; hard rock or placer mining; or seismic exploration;
    4.   Activities directly related to minor or major resource extraction; or
    5.   Tundra travel for new development.

The following are specifically excluded from the term "use":
    1.   Subsistence, including access, travel and the construction or placement of small-scale, traditional structures such as ice cellars, drying racks, shelters and hunting blinds, if in furtherance of subsistence activities, so long as such activities do not jeopardize archaeological resources. Subsistence does not include construction for residential, equipment storage, equipment maintenance, warehousing or similar purposes;

11



2. Uses approved by the borough prior to the effective date of this title; provided, that such uses are not expanded in scope or otherwise materially changed from the use previously approved;

3. Transfer of title, sales, leases or exchanges of land;

4. Emergency actions under NABC 9.16.040;

5. Tundra travel for the maintenance of existing or approved development;

6. Mineral exploration;

7. Non-commercial recreational use involving 10 people or less. Such use does not include permanent construction;

8. Residential use in the village district;

9. Uses allowed pursuant to a master plan for the resource development and transportation corridor districts;

10. General land management functions including trespass abatement and enforcement, surveying, property inspection, maintaining and securing property, seasonal camps used only for land management, or pre-exploration;

11. Airport uses, other than planning, siting and construction activities, conducted on state-maintained airports;

12. Nonconformities as described under NABC 9.12.080;

13. Commercial fishing, except for construction of other than temporary structures;

14. Movement of bulk fuel in the village district for village needs;

15. Snow disposals except in the village, resource development and transportation corridor districts; and

16. Activities hereafter excluded by resolution of the planning commission.

"Use permit" means a permit for minor or major a use issued by the administrator under the provisions of NABC 9.16.010.

"Village" means the communities of Ambler, Buckland, Deering, Kiana, Kivalina, Kobuk, Kotzebue, Noatak, Noorvik, Selawik and Shungnak.

"Village area of influence" or "area of influence" means the area outside a village which is used in common by some or all of the residents thereof for subsistence, transportation, public facilities or other purposes, as determined by the administrator based on the best available evidence. In no case shall the village district of one village be considered to be within the area of influence of another village

"Village council" means the city council of incorporated cities and the IRA or traditional council of both incorporated and unincorporated villages.

"Wetlands" are areas inundated or saturated by surface or groundwater at a frequency and duration sufficient to support, and under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. The term "wetlands" includes swamps, marshes, bogs, and similar areas. (Ord. 93-02 § 1 (9.20.020), 1993)

## 9.04.080 Effective date.

The ordinance codified in this title shall become effective on January 1, 2009. It shall be applied to all planning, zoning, coastal management consistency and similar decisions

Exhibit    C
Page 12 of 76

made from that day forward, but excluding decisions made on pending applications or matters. Pending applications or matters shall be administered and adjudicated according to borough ordinances, policies and standards in effect at the time the application was submitted or the matter arose. (Ord. 93-02 § 1 (9.10.060), 1993)

## Chapter 9.08
## ADMINISTRATIVE PROVISIONS

Sections:

9.08.010 Assembly.
9.08.020 Administrator.
9.08.030 Planning commission – Implementation of title.
9.08.040 Approvals – Duration and conditions.
9.08.050 Reviewing parties.
9.08.060 Fees.
9.08.070 Compliance.
9.08.080 Enforcement orders.
9.08.090 Appeals – To the commission.
9.08.100 Appeals – To the assembly.
9.08.110 Appeals – From assembly decisions.
9.08.120 Date of hearing.
9.08.130 General hearing procedures.
9.08.140 Specific hearing procedures.
9.08.150 Scope of review.
9.08.160 Deliberations.
9.08.170 Decisions.
9.08.180 Reconsideration.
9.08.190 Ex parte contacts prohibited.
9.08.200 Transition.
9.08.210 Judicial relief.
9.08.215 Costs of enforcement. 9.08.220 Lien enforcement.
9.08.230 Interpretation.
9.08.240 Violation – Penalty.

## 9.08.010 Assembly.
The assembly shall:
  A.  Review and act upon all applications for rezoning and amendments to this title;
  B.  Hear and decide appeals of the planning commission related to zoning and permitting. The assembly's decision shall be final for the borough. (Ord. 93-02 § 1 (9.30.010), 1993)

## 9.08.020 Administrator.
 Subject to the mayor's review, the administrator is authorized and empowered to carry out all of the duties set forth in this chapter, may serve as staff to the planning commission, and shall have all other power and authority reasonably necessary and desirable to carry out those duties, including the power to delegate those duties as appropriate. In the absence of the administrator, the mayor or the mayor's designee may perform the duties of the administrator. (Ord. 93-02 § 1 (9.30.020), 1993)



**9.08.030 Planning commission – Implementation of title.**
The planning commission may adopt by resolution such rules governing the conduct of its business, and after public notice and opportunity to comment, such rules, policies and standards as it deems necessary and desirable to implement the provisions of this title. (Ord. 93-02 § 1 (9.30.030), 1993)

**9.08.040 Approvals – Duration and conditions.**
A. Duration of approvals. Permit approvals are valid only during applicant's compliance with this title and the terms and conditions of approval. However, approvals and permits expire automatically 12 months after issuance if no construction, activity or occupancy has commenced, or if the use has been suspended for 12 consecutive months. Unless there are extenuating circumstances, determined by the administrator to be beyond the control of the applicant, a request for an extension after a 12-month period of suspension will be treated as a new application and subject to the appropriate approval process. The administrator or planning commission may place limits on the duration of an approval or establish a longer duration. Approved uses, unless ordered to cease by the administrator, shall be allowed to continue during the appeal of the issuance of an approval.

B. Conditions of approval. The assembly, commission or administrator may place conditions upon issuance of any approval which are necessary or desirable to ensure that a rule, policy, standard or intent will be implemented in a manner consistent with this title or the coastal management plan. Any permit or approval issued under this title shall require compliance with the state fire code and any other federal, state or local regulations which are applicable to the activity. For projects that require a borough permit and a state or federal permit, the applicant may not commence activities permitted by a state or federal agency until the approval is issued by the state or federal agency and the borough issues its permit. Except on borough lands, a permit granted under this title does not allow activity on other lands without the further permission of the affected landowner. The issuance of a permit or approval under this title or enforcement or lack of enforcement of any such permit or approval shall not be deemed grounds for borough liability arising out of the errors or omissions of the permittee or the person who received the approval.

C. Surety. Prior to the commencement of a use, including construction, operation of facilities or reclamation, or as a condition of approval of a rezoning, the administrator or commission may require surety by a company authorized to do business in Alaska and listed on the most recent U.S. Treasury Department Circular 570, List of Approved Sureties, published each year in the Federal Register.1.   The form and amount of surety shall be set based upon the magnitude, type and costs of the activities planned and the nature, extent and duration of the operations. The amount and form of surety shall be calculated to protect the borough and ensure compliance with the requirements of the permit or approval, and cover the cost of reclamation, restoration, rehabilitation, or mitigation required by the administrator or commission in the permit conditions or other approval. The total amount of the surety (in the aggregate with any state or federally required surety) shall not exceed 100 percent of the estimated cost of reclamation or mitigation as determined by the administrator or the planning commission, with the sum adjusted for inflation. Upon reasonable notice to the permittee, the amount of the surety may be increased during the life of the permit, upon issuance of written findings by the administrator, providing the reasons and calculations increasing the surety in proportion

14



to the amount that the estimated cost of reclamation or mitigation has increased and is not covered by the original surety amount.

    2.  The liability under the surety provisions shall continue until released by the administrator in part, or in its entirety, upon verification of the completion of the required reclamation or mitigation.

    3.  The administrator or commission may accept evidence of sufficiently funded and unencumbered self-insurance, proof of financial responsibility, or the existence of sufficient surety filed with another governmental entity as a means of surety that fulfills the requirements of this section.        D. Reclamation Plan. The administrator or commission may require a reclamation plan be submitted with the application packet or as a condition of approval. Applicants shall contact the administrator prior to submission of the application packet to determine if a reclamation plan will be required with the application. At a minimum, a reclamation plan shall contain:

    1.  A grading and site plan drawn and certified by an Alaska licensed professional engineer or land surveyor or other acceptable plan, indicating the areas excavated or filled, the proposed finished grades and contours, drainage directions and any control structures to be installed;

    2.  The methods and plans to be employed for reclamation of the site during and after the activity shall be stated along with a time table for completion;

    3.  A description of all roads and structures and a site map showing the locations of all roads and development which will be built indicating which will remain after cessation of activities;

    4.  A description of any known reclamation requirements of any other governmental entity, and a copy of any reclamation plan under development or in existence for the activity; and

    5.  A map at a scale of one inch equals 200 feet extending 200 beyond the site area with a maximum contour interval of five feet. The scale requirements may be adjusted by the administrator to fit unusual circumstances.

  The administrator or commission shall not impose reclamation requirements inconsistent with or duplicative of the reclamation requirements of a state or federal agency, but they may impose more stringent requirements. If there appears to be conflicting requirements, the administrator shall work with the applicant to attempt to reach a solution acceptable to the borough, the applicant and the applicable state or federal agency. If a suitable reclamation plan is already in existence, the administrator or commission may adopt that plan if it fulfills the requirements of this section and concerns of the public.

### 9.08.050 Reviewing parties.

  The administrator or the planning commission may identify those parties that are to be included in the review of proposed actions under this title. These parties may include local governments, state or federal agencies, and private individuals or groups potentially affected or with interests in the proposed action. The administrator or the commission may establish new groups to participate in the review process. The parties and established groups will be provided all relevant materials and may submit comments and recommendations concerning the proposed actions. Any village council shall automatically be included as a reviewing party of any proposed action within its village's area of influence. Upon timely request, land owners in the vicinity of the proposed use


C

Page 15 of 76

who make such a request shall be included as reviewing parties. (Ord. 93-02 § 1 (9.30.050), 1993)

### 9.08.060 Fees.

The commission shall establish a schedule of fees for permits or other actions under this title by resolution. The administrator may waive or reduce the fees in this schedule when the borough, state, federal or a local government is the applicant, when the applicant is a nonprofit corporation or for any natural person for whom the fee would pose an economic hardship. (Ord. 93-02 § 1 (9.30.060), 1993)

### 9.08.070 Compliance.

Any use that is not in compliance with the applicable provisions of this title as well as permits, master plans, approvals, and other authorizations issued under this title is a violation of this title. The administrator may take administrative actions consistent with this title to bring about compliance, and may initiate or request such civil or criminal action as may be available for violations of this title.

A. Violation Complaint. Any person may bring to the attention of the administrator suspected violations of this title. The complaint may be oral or in writing. The administrator shall summarize in writing the substance of any complaint lodged orally. The administrator is authorized to investigate any credible complaints in order to ensure compliance with this title. At any time, upon his or her initiative, or upon the receipt of a complaint, the administrator may inspect or investigate any use or development for compliance with or violations of this title.

B. Violation Notice. After a violation has been discovered, investigated and verified, the administrator will notify by written finding the person responsible for the violation and the property owner by personal notice, certified mail and/or notice posted on the site of the violation. The finding will specify the violation(s) and may specify the range of fines or penalties to be imposed and shall direct the person to cease the violation, or appeal the finding within 10 days after receipt, mailing or posting of the notice, as the case may be. All violation notices will be reported to the commission at its next meeting.

### 9.08.080 Enforcement orders.

A. Upon substantiation of a violation, the administrator may:

1. Order the discontinuance of activity for any use which does not comply with the terms of this title;

2. Order the removal or abatement of buildings or structures or any noncompliant additions or alterations to buildings or structures;

3. Order the discontinuation of development, use, construction or other activity leading to a noncompliant use or structure;

4. Order the restoration of any structure, vegetation, land, water body, or other thing upon the land that is destroyed or damaged;

5. Specify the date by which corrective actions be completed; 6. Revoke permits or other licenses issued by the borough;

7. Order submittal of a plan for compliance with the terms of this title. The plan shall include a schedule for completion and procedures to accomplish compliance. The administrator will review and approve, condition, or deny the plan pursuant to the administrative approval procedures of Chapter 9.16 NABC;

8. Assess a civil fine under provisions in NABC 9.08.240;

C
Page 16 of 76

9.  Order posting of a bond or other security in a form and amount calculated by the administrator to ensure correction of the violation and recovery of any damages, or

10.  Take any other action necessary to ensure compliance with all provisions of this title, including revocation or suspension of approvals. (Ord. 93-02 § 1 (9.30.080), 1993)

B. An order issued by the administrator under this chapter shall be delivered to the owner, operator, manager, or lessee of the property, or person responsible for the violation by personal service or by certified mail, or, if the foregoing parties cannot be located after a reasonable inquiry, it may be posted in a conspicuous place on the site of the violating development.  An order posted under this chapter may not be moved, removed, modified, defaced, hidden or obliterated except upon the authority of the administrator.

### 9.08.090 Appeals – To the commission.
Any aggrieved person, including the applicant, may appeal a decision of the administrator by serving written notice of appeal on the administrator (and the applicant) within 15 business days of receipt of the decision. The notice shall state the reasons why the appellant believes the decision of the administrator is improper. Notice of an appeal is considered served when actually received or when properly mailed. The issues before the commission shall be limited to those raised on appeal, and the evidence shall be limited to a review of the record, although further argument may be allowed based on the record. The burden of proof shall be on the appellant to demonstrate the issues on appeal by substantial evidence. Except for an applicant, the appellant must also demonstrate the manner in which the appellant is adversely affected by the decision being appealed. The commission may affirm or reverse the administrator's decision, return the matter to the administrator for further evidence, or change the conditions attached to any approval issued by the administrator. Approved uses may proceed during the appeal process unless ordered to cease by the administrator or the planning commission. Uses which have not been approved are subject to abatement, fines and other penalties following an unsuccessful appeal. (Ord. 93-02 § 1 (9.30.100), 1993)

### 9.08.100 Appeals – To the assembly.
An appeal to the assembly from any decision of the planning commission may be made in the same manner and according to the same requirements as set forth above for appeals to the commission. Notice of appeal shall be served on the administrator. The assembly's decision shall be final for the borough. (Ord. 93-02 § 1 (9.30.110), 1993)

### 9.08.110 Appeals – From assembly decisions.
Any person aggrieved by the final decision of the assembly may appeal such a decision or action as provided under NABC 9.08.210. (Ord. 93-02 § 1 (9.30.120), 1993)

### 9.08.120 Date of hearing.
Where an appeal to the commission or assembly is allowable under this title and an appeal has been properly lodged, such proceeding shall take place at the next regularly scheduled or special meeting of the body hearing the appeal; provided, that sufficient time exists for the applicant and the borough to prepare the appeal. In no case should the date of hearing exceed three months from the lodging of the appeal. (Ord. 93-02 § 1 (9.30.130), 1993)

17



### 9.08.130 General hearing procedures.

Appeals under this title should be conducted informally and may be governed by such rules and procedures as the commission or assembly may choose to establish, except that:

A. Parties may appear in person or through counsel.

B. Parties may present witnesses and evidence on their own behalf.

C. Parties or their counsel may cross-examine opposing witnesses on matters relevant to the issues, impeach witnesses regardless of which party first called the witness to testify, and rebut evidence against themselves.

D. Relevant evidence should be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of a common law or statutory rule which makes improper the admission of the evidence over objection in a civil action. Hearsay evidence may be considered, provided there are guarantees of its trustworthiness and that it is more probative on the point for which it is offered than any other evidence which the proponent can procure by reasonable efforts.

E. All appeals shall be open to the public, unless otherwise agreed by all parties to the appeal.

F. All appeals should be memorialized by an electronic recording or a stenographic record. (Ord. 93-02 § 1 (9.30.140), 1993)

### 9.08.140 Specific hearing procedures.

Subject to modification by the commission or the assembly, the following procedures shall be followed in the conduct of an appeal.

A. Before the Planning Commission.

1. The notice of violation, or the notice of appeal if the appeal does not relate to a notice of violation, shall be read into the record.

2. Parties make opening statements (appellant going first).

3. Appellant presents its case which may include a statement or information provided by witnesses. An opportunity is provided for cross-examination.

4. The administrator and/or the applicant, as appropriate, offers a rebuttal

5. Parties make closing remarks (appellant going first).

6. The Planning Commission deliberates and makes a written decision under the provisions of NABC 9.08.160 and NABC 9.08.170.

B. Before the Assembly.

In appeals before the assembly, the administrator or the borough clerk may assist in preparation of the record on appeal. The record on appeal shall contain a brief factual summary of the proceedings before the planning commission, and any other relevant information. Either party may request a full transcript of the prior proceedings before the planning commission. Such request must be in writing, presented to the borough clerk, and the borough clerk will deliver the transcript within 10 business days of the request. The party making such request must bear the costs of transcription. The borough clerk will notify the requesting party of the costs of such transcription once the transcription has been completed.

The appeal shall proceed as follows.

1. The decision of the planning commission shall be read into the record or distributed to assembly members for review.

2. Parties make opening statements (appellant going first).

18



3. Appellant presents its case which may include a statement or information provided by witnesses. An opportunity shall be provided for cross-examination by the borough.

4. The Planning Commission or its designee and/or the applicant, as appropriate, offers a rebuttal.

5. Parties make closing remarks (appellant going first).

6. The Assembly deliberates and makes a written decision under the provisions of NABC 9.08.160 and NABC 9.08.170.

C. Telephonic Appearances. Telephonic appearances of parties to appeals is allowable, particularly in cases where it will result in reduced costs to all parties.

D. Failure to Appear. If any appellant has a scheduled appearance, but has failed to appear before the appellate body, the appeal will proceed as scheduled, and any documents or evidence submitted by the appellant will be presented to the appellate body at the time of the hearing. For good cause shown, the appellate body may postpone the hearing at the request of the appellant. (Ord. 93-02 § 1 (9.30.150), 1993)

## 9.08.150 Scope of review.

The commission or assembly may hear and decide de novo all matters appealed and may exercise independent judgment as to the weight of evidence supporting or refuting the decision being appealed, and may exercise independent judgment on legal issues raised by the parties. Decisions being appealed may be reversed, modified, remanded or affirmed by the commission or assembly. In each case where the reviewing body denies the appeal, it may also determine any penalties to be imposed for a violation. (Ord. 93-02 § 1 (9.30.160), 1993)

## 9.08.160 Deliberations.

Upon close of the presentation of the case on appeal, and after any closing remarks have been made by the parties, the body hearing the appeal may adjourn to closed chambers to privately discuss any adjudicatory matters pertaining to the appeal or may otherwise take the matter under advisement prior to issuing a written decision on the matter under appeal. (Ord. 93-02 § 1 (9.30.170), 1993)

## 9.08.170 Decisions.

No later than 15 business days following an administrative hearing or quasi-judicial proceeding conducted under this chapter, the body empowered to conduct the appeal proceeding shall issue a written decision based on findings and conclusions adopted by the body hearing the appeal. An oral decision may be given on the record at the close of the proceedings, but such decision will not become a final decision from which appeal may be taken until that decision is issued as a written decision containing the required findings. Such findings must be in writing and must be reasonably specific so as to provide interested persons, and where appropriate, reviewing authorities, a clear and precise understanding of the reasons for the decision entered. The decision, findings of fact and conclusions of law shall be forwarded to all parties to the appeal. (Ord. 93-02 § 1 (9.30.180), 1993)

## 9.08.180 Reconsideration.

A. A decision of the commission or the assembly reached at the conclusion of a hearing or other proceeding may be reconsidered or reheard only if:

1. There was substantial procedural error in the original proceedings; or

19



2.  The original decision was based on fraud or misrepresentation.

B.  Any party to an appeal seeking reconsideration or rehearing must file a request with the borough clerk together with the materials supporting one or more of the grounds stated above within 10 business days after the date of the final decision for which reconsideration or rehearing is requested. If reconsideration is granted, a rehearing may also be granted if appropriate. A rehearing shall be conducted in the same manner as the original proceeding. (Ord. 93-02 § 1 (9.30.190), 1993)

### 9.08.190 Ex parte contacts prohibited.

Members of the commission or the assembly, while acting in a quasi-judicial capacity, shall be impartial in all matters both in fact and in appearance. No member of the commission or the assembly shall receive or otherwise engage in ex parte communications with the appellant, applicant or other parties adversely affected by the appeal or members of the public concerning the appeal or issues specifically presented in the notice of appeal, either before the appeal hearing or afterwards, during the period of time the matter is subject to reconsideration. This section shall not be deemed to prevent those charged with conducting appeals under this title from discussing matters relating to the appeal among themselves or to prohibit communications between the borough staff and such persons where such staff members themselves are not named parties to an appeal. Insofar as practicable, communications between borough staff and such commission or assembly members should avoid discussion of the merits, evidence or other nonprocedural matters related to a specific appeal. (Ord. 93-02 § 1 (9.30.200), 1993)

### 9.08.200 Transition.

The provisions of this chapter shall apply only to those appeals or applications for administrative decisions filed on or after the date this title becomes effective. (Ord. 93-02 § 1 (9.30.210), 1993)

### 9.08.210 Judicial relief.

Any aggrieved party may seek an appeal before the Superior Court for the state of Alaska only after final exhaustion of all administrative remedies and appeals. The venue for an appeal to the Superior Court will be the Second Judicial District at Kotzebue. All such judicial appeals are appeals on the record, and no new evidence or issues may be presented. Both parties are limited to the record on appeal, except to the extent that the Alaska Rules of Civil Procedure require otherwise. (Ord. 93-02 § 1 (9.30.220), 1993)

### 9.08.215  Costs of Enforcement.

A. A developer shall be responsible for all costs incurred by the borough in enforcing violations of this title and unsuccessful appeals of a decision by the administrator or the planning commission.  Such costs shall include, but are not limited to, the cost of detecting, investigating and attempted correction of the violations; attorney fees and costs; costs of removal of structures; repair or restoration of damages; and all other costs related to the enforcement action.

B. In addition, in the discretion of he administrator, the borough may assess the economic savings realized by the person in not complying with the requirement for which a violation is charged. "Economic savings"

C
30 of 76

means the sum which a person would be required to expend for the planning, acquisition, siting, construction, installation and operation of the facilities necessary to effect compliance with the standard violated.

C. All costs shall become a lien on the violator's property or interest in property, if the property or interest was the subject of the abatement action, or shall become collectible and subject to any collection actions the borough employs to collect other debts.

D. The administrator may defer assessment of all or part of that portion of the costs imposed upon a person under this section conditioned upon the person complying, within the shortest feasible time, with the requirement that was violated.

### 9.08.220 Lien enforcement.

The failure to pay any penalty assessed or upheld as a result of a violation of this title, or the failure of an appellant to reimburse the borough for all costs incurred in the defense of an appeal that is dismissed or otherwise rejected creates a lien against the appellant and appellant's real and personal property. The lien amount may include the cost of abating a violation or defending a permit or approval condition. The lien created may be enforced as provided in AS 34.35.005 through 34.35.045. The enforcement of the lien is a cumulative remedy and does not bar the collection of the charges for abatement or costs and attorney fees through a personal action. (Ord. 93-02 § 1 (9.30.230), 1993)

### 9.08.230 Interpretation.

All questions of the administrator's interpretation of the provisions of this title shall be treated as an appeal if proper notice is served pursuant to NABC 9.08.120. (Ord. 93-02 § 1 (9.30.240), 1993)

### 9.08.240 Violation – Penalty.

A. Administrative fines. The commission may establish by resolution a schedule of civil fines for various violations which can be imposed by the administrator and disposed of without court appearance. Absent such a schedule, fines may be levied by the administrator, with the approval of the mayor, on a case-by-case basis for each violation up to the maximum allowed by this chapter. Prior to imposing a fine under this section, the administrator shall give written notice to the violator of the violation and that a specific fine will be imposed unless the violator can show cause why the fine should not be imposed. The notice shall also inform the violator of the date, time and place a hearing will be held by the administrator or the administrator's appointee to hear from the violator why the fine should not be imposed. The administrator may delegate to an appointee the authority to hear the case and provide the administrator with a proposed decision or may delegate the authority to hear and decide the case. At the conclusion of the hearing, the person hearing the case shall render a written decision ordering a full fine, a partial fine or dismissal. The order shall contain findings supporting the conclusion and action ordered. If the violator fails to appear at the hearing, without good cause, the person hearing the case may treat such failure as an admission of the violation and may issue an order with appropriate findings an may impose the fine. All orders issued under this section shall be mailed or otherwise promptly delivered to the violator and shall contain notice of a violator's right to appeal the decision to the commission and the time within which such an appeal must be filed. Fines imposed under this section may be collected in a civil action against the violator if not paid voluntarily within 30 days.

B. Civil Remedies. The administrator, with the approval of the mayor, may commence a civil judicial action against a person who violates a provision of this title or a term, a


C
21 of 76

lawful order of the borough, or a condition or limitation imposed on a permit or approval under this title. A judicial action to enjoin a violation may be brought notwithstanding the availability of any other remedy. Each act of violation and every day a violation exists is a separate violation. In addition to other relief, a civil penalty not to exceed $1,000 may be imposed for each violation; or in the case of operating without an appropriate notice, permit or for violations which are related to public health, safety or welfare, or cause substantial adverse effects to the environment, no more than $5,000 for the initial violation nor more than $2,000 for each day thereafter on which the violation continues and which, in either case, shall reflect, when applicable:

1. Reasonable compensation in the nature of liquidated damages for any adverse public health, safety, welfare, or environmental effects caused by the violation, which shall be determined by the court according to the sensitivity of the receiving environment, and the degree to which the violation degrades existing environmental quality;

2. Reasonable enforcement costs incurred by the borough as described in NABC 9.08.215; and

3. The economic savings realized by the person in not complying with the requirement for which a violation is charged. As used in this section "economic savings" means that sum which a person would be required to expend for the planning, acquisition, siting, construction, installation, or operation of the facilities necessary to effect compliance with the standard violated.

C.  Criminal Remedies.

1. A person who negligently violates or who negligently causes or permits a violation of a provision of this title or of a lawful order of the borough, a permit, or a term or condition of a permit is guilty of a Class B misdemeanor.

2. A person who willfully or recklessly violates a provision of this title, a lawful order of the borough, or a permit, or a term or condition of a permit approved under this title is guilty of a Class A misdemeanor.

3. Each day on which a violation occurs is a separate violation.

4. A person who fails to provide or falsely states information required under this title is guilty of a Class B misdemeanor. Each unlawful act constitutes a separate offense.

D.  Settlement. At any stage in any proceeding under this title, the administrator, with the approval of the mayor, may mitigate fines or other penalties in order to promote settlement of a dispute on terms deemed just and equitable under the circumstances.

E.  Parties. A proper party for any enforcement action under this title may include the owner of the site or any part thereof; any lessee or occupant of the site or any part thereof; and the applicant, its agents, contractors, subcontractors and employees. (Ord. 93-02 § 1 (9.30.090), 1993)

# Chapter 9.12
## ZONING DISTRICTS

Sections:

9.12.010 Maps.
9.12.020 Village (V) district.
9.12.030 Subsistence conservation (SC) district.9.12.035 Habitat conservation (HC) district

22



**9.12.050** General conservation (GC) district.
**9.12.060** Resource development (RD) district.
**9.12.070** Transportation corridor (TC) district.
**9.12.080** Nonconformities.

## 9.12.010 Maps.

The map entitled "Zoning District Map of the Northwest Arctic Borough, Alaska" is adopted and made a part of this title. The map graphically depicts the geographic location of the zoning districts set forth in this title. Except as provided in subsection (B) of this section, the map may be amended only by an ordinance adopted by the assembly under the process set forth in Chapter 9.20 NABC. The map may require interpretation with respect to specific properties and the following apply:

A. The official map, regardless of the existence of copies, is located in the borough planning department. In case of doubt, the administrator shall determine the status of land within the borough as depicted on the official map.

B. In making determinations under this title, the borough may also use the Northwest Arctic Borough 1":200' and 1":50' regional land status maps and relevant U.S. Geological Survey 1:63,360 series quadrangle maps as of the date of this title and as hereafter revised, corrected or updated as supplements to determine the location of the village district and of uses within the village district.

C. To the extent practicable, district boundaries shall be construed to follow elevation contours, section lines, lease area boundaries, lot lines, municipal boundaries or platted lines. Tidelands, submerged lands, waters and ice seaward to the borough boundary of an adjoining district are within the subsistence conservation district unless otherwise mapped. Boundaries indicated as following shorelines are construed to follow such shorelines, and in the event of change of the shoreline shall be construed as moving with the actual shoreline. (Ord. 93-02 § 1 (9.40.010), 1993)

D. Changes to land use district boundaries or other information portrayed on the zoning map shall be made on the date the zoning ordinance amendment becomes effective. If the zoning map contains drafting errors or is damaged, destroyed, lost or difficult to interpret, the assembly may by ordinance adopt a new zoning map or maps which shall supersede the prior zoning map and correct drafting errors and other errors or omissions. Such an ordinance may be adopted after review and recommendation of the planning commission, but the other requirements of Chapter 9.20 NABC shall not apply.

E. The limits of the village district for each village, except Noorvik, Noatak and Kiana, coincide with the corporate city limits of each respective municipality as determined by the State of Alaska Department of Community and Regional Affairs. Kotzebue is not included in the village district designation. The limits of the village districts for Noorvik, Noatak and Kiana shall consist of the following:

1. Noorvik: the city limits, plus all of the land in Sections 26, 27, 34 and 35 of Township 17 North, Range 11 West, and Sections 2, 3 and 4 in Township 16 North, Range 11 West, Kateel River Meridian.

2. Noatak: all land west of the Noatak River in Sections 8, 9, 16 and 17 of Township 25 North, Range 19 West, Kateel River Meridian.

3. Kiana: the city limits, plus all of the land north or west of the Squirrel and Kobuk Rivers in Sections 3, 4, 8, 9, 10, 16 and 17 of Township 18 North, Range 8 West, Kateel River Meridian.



### 9.12.020 Village (V) district.

A.  Purpose. The village district governs the sites and immediate environs of each village in the borough except Kotzebue. The intent of the village district is to accommodate uses which:

1.  Reinforce traditional values and lifestyles;
2.  Are in accord with the borough and village comprehensive plan; and
3.  Are in accord with the desires of the residents of the village.

Except where excluded as a "use" under NABC 9.04.070, land use in the village district is prohibited, unless permitted or approved as required by this title.

B.  Minor Use Permit in the V District. The administrator may approve the following activities without a public notice after reviewing the permit application:

1.  Multifamily dwelling units, warehouses, shop use;
2.  Child care facilities, cultural camps, churches, health care facilities;
3.  Placement of fill in a wetland less than one acre;
4.  Placement of communication equipment;
5.  Temporary construction facilities;
6.  Ice roads and ice pads, and tundra travel for existing or approved development;
7.  Snow disposal sites;
8.  Archaeological surveys;
9.  Temporary use (excluding fuel storage) of airstrips;
10.  Construction of new airports or expansion of existing airports;
11.  Prospecting;
12.  Minor alterations of existing uses;
13.  Public facilities;
14.  Commercial recreation uses;
15.  Miscellaneous commercial uses;
16.  Major alterations to existing uses;
17.  Mineral or oil and gas exploration;
18.  Bulk fuel storage; or
19.  Other "uses" as defined in NABC 9.04.070 that are not included in subsections (C) or (D) of this section.

C.  Major Use Permits in the V District. The following activities may be established upon approval of the administrator after public review of the permit application:

1.  Schools;2. Any use or structure within a watershed which provides a community's drinking water;
3.  Excavation or other activities on a parcel by a professional archaeologist or other person that are likely to disturb archeological or historic resources;
4.  More than one acre of fill placed in wetlands;
5.  Minor resource extraction;
6.  Tundra travel for new, not previously approved development; or
7.  Any use elevated pursuant to NABC 9.16.030.

D.  Conditional Use Permit in the V District. The planning commission may approve the following activities after public review of the permit application:

1.  Landfills;
2  Utility substations, power plants;

3.  Major energy facilities;

24