Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
Firm email: mail@hartig.law.pro
Attorneys for Teck Cominco Alaska Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON, DAVID SWAN, JOSEPH SWAN,      Plaintiffs, <br><br> vs. <br><br> TECK COMINCO ALASKA INCORPORATED,      Defendant, <br><br> NANA REGIONAL CORPORATION, and NORTHWEST ARCTIC BOROUGH,      Intervenor-Defendants. | Case No.: A04-00049 CV (JWS) |

## TECK COMINCO'S & NANA'S OPPOSITION TO PLAINTIFFS' MOTION AT DOCKET 208 TO EXCLUDE EXHIBITS

In their motion at Docket 208 to exclude certain exhibits, the plaintiffs assert that any document with a bates number "higher than 50582" was never produced until "the day after final witness lists and exhibit lists are due". That this is false is plainly revealed by the fact that plaintiffs' Exhibits 1, 2, 41, 101, 132, and 133 include documents with the allegedly offensive bates numbers. If the documents had truly not been produced until after the

plaintiffs filed their exhibit list, the plaintiffs could not have included them within their own exhibits. This is but one example of the defects with the plaintiffs' motion and but one reason their motion should be denied.

I.  INTERNAL MEMORANDA

The plaintiffs challenge four procedural memoranda identified as Exhibits 1648, 1649, 1651 and 1652. The plaintiffs claim these were "never previously disclosed." [Docket 208 at 2] The plaintiffs are mistaken. The exhibits were long ago produced to the plaintiffs and their counsel.

Exhibit 1648 was "Attachment A" to Keith Malone's Declaration of September 1, 2003. That Declaration and its attachments were produced to the plaintiffs in 2003, and were filed with the court at Docket 92 in the case of KRPC v. Teck Cominco, A02-231 CV (JWS). [Davis Declaration.] By stipulation, documents produced in that case were not required to be separately produced again in this case.

Like Exhibit 1648, Exhibits 1649 and 1651 were produced to Luke Cole on September 2, 2003. As with Exhibit 1648, Exhibits 1649 and 1651 were filed with the court at Docket 92 in the KRPC case (each was attached to the Jason Weakley Declaration). [Davis Declaration.]

Exhibit 1652 was produced on at least three prior occasions. It was given to the plaintiffs and their counsel as "Exhibit 2" accompanying Mark Thompson's October 2, 2005 Declaration Regarding TDS, which was produced when created and which was filed with the court in this case at. Docket 100. As well, an earlier version of Exhibit 1652 was produced as part of Teck Cominco's initial disclosures dated February 7, 2003 (Bates TC 005138 RD through TC 005152 RD) and was produced again in Teck Cominco's supplemental disclosures dated March 7, 2003 (Bates TC 007924 RD through TC 007938 RD). [Davis Declaration.]

## II. BIOMONITORING STUDIES

According to the plaintiffs, three Biomonitoring Studies were listed on NANA and Teck Cominco's January 22nd exhibit list that were "never previously disclosed". [Docket 208 at 2] The plaintiffs are again mistaken. January 2008 is not the first time they were told about, or provided, Exhibits 1656, 1658 and 1663. On May 12, 2003, the plaintiffs were informed that biomonitoring reports then in existence were "available for inspection and copying." [Davis Declaration.] That notice explicitly referenced what is now Exhibit 1656. Such an invitation to copy constitutes disclosure consistent with Fed.R.Civ.Proc. 34(b)(2)(B) without regard for the fact that plaintiffs' decided not to copy the documents available to them. Presumably, they chose not to copy them because they already had them; the plaintiffs produced the identical documents to Teck Cominco in their response to Request for Production 147.

During discovery in the KRPC case, Teck Cominco produced to the plaintiffs the August 29, 2003 declaration of expert Al Ott. The biomonitoring reports were discussed by Mr. Ott in his Declaration and he appended to it what is now Exhibit 1658. Mr. Ott's Declaration, including Exhibit 1658, is on file with the court at Docket 92 in KRPC v. Teck Cominco, A02-231 CV (JWS).

The entire series of biomonitoring reports have been repeatedly referenced in almost every produced document that addresses aquatic life in Red Dog and/or Ikalukrok Creeks. [E.g. Brix report of December 31, 2003; Brix report of November 15, 2004; Tsuji report of December 31, 2003; Tsuji report of November 15, 2004; Tsuji report of January 18, 2008; Enoch Adams response to Teck Cominco's Request for Admission 77; Brix depo. at 58, 122, 147-148; see 1998 permit at § I.F.] Exhibit 1663 is the latest in the series of biomonitoring reports. Dated June 2007, and published sometime thereafter, it was not made available to Teck Cominco until after discovery closed.

However, it was relied upon by Joyce Tsuji in preparing her January 2008 supplemental expert report, which, as this court ordered, was an update of her earlier opinions to account for new data such as that found in Exhibit 1663. As with Exhibits 1656 and 1658, Exhibit 1663 is a government publication, authored by Alaska's Department of Natural Resources. Undeniably, it is a readily available public record. [AS 40.25.110, .120.] Other federal courts have recognized that the "readily verifiable nature" of such publications supports their admittance, over any objection that they were not produced during discovery, if they were even referenced in documents or other disclosures that were produced. E.g., Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc. 237 F.R.D. 106, 113 (D.Del. 2006).

Here, where at least one of the reports was physically provided; another was explicitly referenced in an invitation to copy all such reports as may exist; and the third is simply the most recent edition in a long-line of annual government publications reporting biological conditions at Red Dog and is referenced in a timely disclosed supplemental expert report, the plaintiffs' assertion of untimely disclosure is not well founded.

### III. PHOTOS, MAPS AND CHARTS AS DEMONSTRATIVE EVIDENCE

In their combined exhibit list, Teck Cominco and NANA included various demonstrative photographs, maps and charts that will assist witnesses in showing, rather than just telling, the Court valuable baseline information. [Docket 194, Exhibits 1671 through 1711] Some are official government publications [e.g. Exhibits 1743, 1744] and some are from other sources. The plaintiffs disavow ever receiving any of these prior to January 2008, although Teck Cominco's records gainsay that disavowal. They ask to have all of them stricken, even though they offer one of them (Exhibit 1709) as their own Exhibit 73.

Admittedly, Exhibits 1664, 1665, 1666, 1667, 1668, 1669, 1670 and 1711 were first produced in January 2008. However, they were timely produced as part of the supplemental expert reports of Joyce Tsuji and Bob Fuhrman, which were produced to the plaintiffs on January 18, 2008 in accordance with the order at Docket 167 setting that date as the deadline for the exchange of supplemental expert reports.

Other exhibits were produced much earlier. With half a dozen motions now pending and only limited time for response, Teck Cominco's litigation team could make only a cursory review of the volumes previously produced. Yet, many of the contested materials clearly were made available to the plaintiffs long ago. For example:

- Exhibits 1707 and 1708 were appended to Mark Thompson's October 3, 2005 Declaration Regarding TDS on file with the court at Docket 100.
- Exhibit 1709 is the same as Plaintiffs' Exhibit 73, and was produced in November 2006 (as TC 027459 RD through TC 27460 RD). [Davis Declaration]
- Exhibits 1676 and 1677, photos of the monitoring stations, were produced in March, 2003. [Davis Declaration.]
- Exhibit 1703, a photograph of Red Dog Creek, was first produced to the plaintiffs in response to Request for Production 12 on May 12, 2003 when document TC 004868 RD was made available for inspection and copying. [Davis Declaration].

And so the list goes.

Teck Cominco anticipates that by the time of trial it will have identified the occasion or occasions on which it produced many of the other photos, maps and charts about which plaintiffs now complain. However, even if some of the photos, maps and charts were not previously produced, they should be permitted to come before the Court as demonstrative, or at a minimum illustrative, evidence.

As a case develops and witness testimony is presented, parties often find that a photo, chart, map or other document that may or may not be independently admissible can be very useful to illustrate a witnesses testimony. Documents that would not have been "discoverable" because not deemed reasonably calculated to lead to the discovery of admissible evidence often take on new light as a demonstrative exhibit offered not for some decisional truth but, rather, to clarify and enhance the cogency of uttered words.

So, for instance, a late-produced scale model was admitted in a patent-infringement case because it rendered other evidence more understandable to the court. Tritek Technologies, Inc. v. U.S. 67 Fed.Cl. 727, 728 (Fed.Cl. 2005). As the Tritek court noted, "evidence used to explain or illustrate testimony (or other evidence) that is already in the record", but which is not offered for, and does not have, substantive force of its own, is relevant and admissible to help clarify those record facts that are of consequence to the determination of the action. Tritek at 729, 734-735; Fed.R.Evid. 401.

Here, for example, compliance with permit limits is of consequence to the determination. The NPDES permit, already in the record, confirms that compliance may be measured at Outfall 001 or at an outlying "station." A photograph of Outfall 001 (Exhibits 1673, 1674) or of the stations (Exhibits 1676, 1677) can be illustrative in a way pure narrative is not. Coupling such close-up views with a map of the stations (Exh. 1741) and an aerial photo showing the location of Outfall 001 (Exh. 1699) accurately gives the "big picture." This court did not benefit from the aerial and ground tour of Red Dog Mine that was given by Teck Cominco to the plaintiffs, other parties, and their various counsel. Striking photos, maps and charts prior to trial will only mean that witnesses will have to waste valuable time drawing maps and charts while on the stand and/or that the court will be deprived of an opportunity to have certain witnesses present their testimony in the most clear and concise manner possible.

Whether or not admissible, the photos, maps and charts about which plaintiffs complain will be helpful at trial and should be either admitted or, at a minimum, considered as illustrative evidence to aid the trier of fact. Exhibits 1671 - 1711 have no substantive force of their own. They do not, for instance, establish the location of monitoring stations. The EPA selected those sites long ago. The location of a station, and its import for compliance, will exist with or without a picture. The picture is merely an aid whose admission carries little or no likelihood of prejudice.

Demonstrative exhibits that merely illustrate undisputed facts or general scientific principles will not mislead the trier of fact and are generally admissible. E.g., Muth v. Ford Motor Co. 461 F.3d 557, 566 (5th Cir. 2006) (When demonstrative evidence is offered only as an illustration of general scientific principles, not as a reenactment of disputed events, it need not pass the substantial similarity test. Scientific principles, when demonstrated in a fairly abstract way, are quite unlikely to be confused with the events on trial.); U.S. v. White 52 M.J. 713, 715-716 (Army Ct.Crim.App., 2000)(loss of videotape from evidentiary record not reversible error because videotape was merely demonstrative evidence on an issue that was not in dispute and the same material was portrayed in the record by means other than the videotape.)

For all these reasons, the maps, photos and charts should each be measured on their merits at trial.

## IV.  CHARTS AS SUMMARIES

Many of the "charts" to which the plaintiffs object are summaries of information. E.g., Exh. 1668, Summary of Economic Benefits; Exh. 1707, Average TDS 1991 to 2005. All but 4 were produced as part of the supplemental expert reports of Joyce Tsuji and Bob Fuhrman that were required to be exchanged on January 18, 2008, in accordance with the order at Docket 167. Only 1707 through 1710 do not fall into that category, and

each of those was produced during the period of 2004 to 2006.[1] [Davis Declaration.] Unlike the plaintiffs, Teck Cominco complied with the court's order and timely produced its supplemental expert reports. Where the exhibits in question were part of the supplemental reports, the plaintiffs' assertion that their production was untimely is without any basis in fact. Even if they had not been part of the supplemental reports, however, Teck Cominco would have had no obligation to produce them any sooner than it did.

The contents of voluminous writings, recordings, or photographs that cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. Fed.R.Evid. 1006.

> "As for summaries being untimely, Rule 1006 requires only that the [underlying] summarized documents be made available to the opposing party at a 'reasonable time'; it does not say when the summaries must be made available to the party - for that matter, it nowhere states that the summaries must be made available to the opposing party." Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co. 412 F.3d 745, 753 (7th Cir. 2005).

There being no obligation to produce the summaries, Teck Cominco cannot be faulted for "late" production.

So long as the recipient has ample opportunity to check the accuracy of summaries before trial, claims of late production are not well founded. Id. Here, the plaintiffs have over 90 days to assess the accuracy of the summaries. They ought to be deemed admissible unless review reveals inaccuracies.

---

[1] Exhibit 1707 and 1708 were produced on October 3, 2005, and are on file with the court at Docket 100 attached to the Declaration of Mark Thompson. Exhibit 1709 was produced to the plaintiffs on November 14, 2006, in response to RFP 148-151, 153 and 191. Exhibit 1710 was produced on October 12, 2004, in response to RFP 189.

## V. LAB REPORTS

The plaintiffs object to eleven "lab reports" (Exhibits 1116, 1218, 1230, 1231, 1232, 1264, 1341, 1635, 1636, 1637, and 1638). With the exception of Exhibit 1341, all of these were explicitly referenced within various documents comprising Teck Cominco's initial disclosures to the plaintiffs. [Davis Declaration.] In its initial disclosures, Teck Cominco even went so far as to produce cover letters for the lab reports so as to notify the plaintiffs of their existence. [Id.; see e.g. Exhibits 1112, 3042, 3044.] The plaintiffs should not now be heard to complain that production should have occurred sooner.

As to Exhibit 1341, it is concerned with claims that were added by the amended complaint in late summer 2007. Teck Cominco has been searching for relevant documents ever since before the amendment was allowed, and turns such documents over to the plaintiffs whenever they are located. [Davis Declaration.] This exhibit, for example, was provided to the plaintiffs within 2 days of its being found. [Id.]

Even if the lab reports had not been disclosed long ago, however, they would still be admissible. The lab reports are the opposite of summaries. They are the documentation underlying discharge monitoring reports (DMR's). The DMR's summarize the lab analyses. Having produced the DMR's, underlying lab reports need only be made available at a 'reasonable time.' Fed.R.Evid. 1006. Even if production had not occurred prior to the time asserted by the plaintiffs, their production still would have been in accordance with Evidence Rule 1006, since they are usable by any party under that rule to test the continuing accuracy of Teck Cominco's DMR's. U.S. v. Allegheny Ludlum Corp., 366 F.3d 164, 174 (3rd Cir. 2004).

The lab analyses are a reiteration of information previously produced. Employees collect samples at the mine, and forward those samples to laboratories for analysis. [Second Declaration of Mark Thompson (Docket 44) at ¶ 9.] Labs generate analytical reports, the results of which are

summarized by Teck Cominco in its DMR's. Id. ¶¶ 9-11. Because the substance of the lab reports became the substance of the DMR's, and because all the DMR's were timely disclosed, it necessarily follows that the data in the lab reports was previously disclosed. Federal courts have allowed admission of materials, even if produced late and introduced over objection, where the sum and substance of the materials was timely provided in another form. Forest Laboratories 237 F.R.D. at 113 and 117 (updated versions of documents referenced in earlier production); U.S. v. Ortiz, 213 Fed.Appx. 312, 2007 WL 98350 (C.A.5 (Tex.) 2007)(physical location of cell towers admissible at trial because alluded to prior to trial).[2] Similarly, the lab reports are an essential underpinning of the previously produced DMR's.

The lab reports at issue were disclosed early in this litigation. Even if they had not been, however, they would still be admissible as exhibits at trial.

## VI.  THE REMEDY PROPOSED BY THE PLAINTIFFS IS DISPROPORTIONATE

The plaintiffs cite Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) for the proposition that exclusion of documents is proper even where the failure to disclose was not due to defendant's bad faith or willfulness. [Docket 208 at 7-8] But the key word there is "failure." Teck Cominco has not failed to disclose the exhibits it will use at trial. Teck Cominco has previously produced or invited counsel to review most of the challenged materials. Others are timely disclosed in accord with Evidence Rule 1006. Still others are disclosed -- more than 90 days before trial -- for the limited purpose of providing an illustrative aid.

---

[2] This unpublished opinion is cited merely as an example of the proposition stated. Citation appears to be allowed under 9th Circuit Rule 36-3(b) and 5th Circuit Rule 47.5.4 because the decision is recent, it is cited merely as an example, and almost all of the opinions in which a court is grappling with exclusion of a belatedly produced exhibit are unpublished.

Even under <u>Yeti</u>, which turns upon Civil Rule 37(c)(1), late-produced demonstrative aids would be admissible because of their harmlessness.

For all the foregoing reasons, the motion at Docket 208 should be denied.

RESPECTFULLY SUBMITTED this 5th day of February 2008.

    HARTIG RHODES HOGE & LEKISCH, P.C.
    Attorneys for Teck Cominco Alaska    Incorporated.

By: /s/    Sean Halloran
    Sean Halloran

    HELLER EHRMAN LLP
    Attorneys for NANA Regional Corp.

By: /s/    James Torgerson
    James Torgerson

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2008, a true and correct copy of the foregoing was served, via electronic service, on the below identified parties of record:

Luke W. Cole
Center on Race, Poverty, & the Environment
47 Kearny Street, Suite 804
San Francisco, California 94108

Nancy S. Wainwright (via U.S. Mail only)
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, Alaska 99515-3538

James E. Torgerson
Heller Ehrman LLP
510 L Street, Suite 500
Anchorage, Alaska 99501-1959

David S. Case
Landye Bennett Blumstein LLP
701 W. 8th Ave., Suite 1200
Anchorage, AK 99501

/s/Sean Halloran
Hartig Rhodes Hoge & Lekisch PC