LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty & the Environment
450 Geary Street, Suite 500
San Francisco, CA 94102
415/346-4179 • fax 415/346-8723

THOMAS A. DOSIK, Alaska Bar No. 9505018
Law Office of Thomas A. Dosik
431 West 7th Avenue, Suite 204
Anchorage, AK 99501
907/868-1848 • fax 907/868-1180

Attorneys for Plaintiff
Kivalina Relocation Planning Committee

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| KIVALINA RELOCATION PLANNING COMMITTEE<br><br>Plaintiff,<br><br>v.<br><br>TECK COMINCO ALASKA INCORPORATED,<br><br>Defendant. | Case No. A02-231 CV(JWS)<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION BY NORTHWEST ARCTIC BOROUGH** |

## I. INTRODUCTION

Plaintiff Kivalina Relocation Planning Committee ("KRPC") respectfully opposes the Motion for Reconsideration brought by Northwest Arctic Borough ("NAB"). This is a Clean Water Act suit between KRPC and Teck Cominco Alaska, Incorporated ("Teck Cominco"), regarding Teck Cominco's thousands of violations of its discharge permits issued by the U.S. Environmental Protection Agency ("EPA"). NAB does not meet the criteria for reconsideration: it presents no new evidence, fails to describe any change in controlling law, and cannot establish any clear error. Further, NAB does not meet any of the requirements for intervention as a matter of right, nor does it meet the statutory criteria for permissive

intervention. NAB is not the owner of the mine, is not the holder of the two permits at issue here, is not responsible for any of the 2,171 violations documented in KRPC's suit, and has no ability to remedy any of those violations. NAB's Motion is little more than a lengthy disagreement with this Court's January 7, 2003 Order, and it should be denied.

## II.    BACKGROUND

On September 19, 2002, KRPC filed a complaint for injunctive relief and civil penalties under the Federal Water Pollution Control Act (also known as the Clean Water Act), 33 U.S.C §§1251-1387, alleging that Teck Cominco has violated its National Pollutant Discharge Elimination System ("NPDES") permits related to its operation of the Red Dog Mine and Port Site. On November 4, 2002, NAB filed a motion seeking to intervene as a defendant, arguing that the Court should grant intervention as of right or, alternatively, on a permissive basis. KRPC opposed that motion because NAB met none of the substantive criteria for intervention as of right, and its intervention would prejudice KRPC. On January 7, 2003, this Court denied NAB's Motion to Intervene.

First, this Court concluded that NAB alleged interest did not permit intervention as a matter of right, stating that "NAB's interest in the continued operation of the Red Dog Mine is not sufficiently related to KRPC's suit to enforce the NPDES limits under the FWPCA because NAB has no ownership interest, merely an economic expectation." January 7, 2003 Order from Chambers Re: Motion to Intervene ("Order") at 4. Second, this Court concluded that NAB had no right to intervene because its interest was adequately protected by the existing parties: "NAB's asserted interest in the 'environmental consequences of the Red Dog Mine's operation, and, in particular, the consequence of the water pollution authorized under the terms of its NPDES permit' is virtually identical to KRPC's interest." Order at 5. Finally, this Court concluded that NAB was not entitled to permissive intervention because it failed to make the threshold showing of claims or defenses that have a question of law or fact in common with the main action. Order at 6.

On January 17, 2003, NAB brought the present Motion for Reconsideration. NAB now claims that "the Court erred in its analysis." Proposed Defendant-Intervenor Northwest Arctic

Borough's Motion for Reconsideration of Order Denying Intervention and Supporting Memorandum of Law and Request for Oral Argument ("NAB Br."), at 1. NAB argues that this court erred because the Court made no mention of the contract existing between NAB and the defendant and "erroneously characterized the extensive legal obligations imposed by the Northwest Arctic Borough Code[.]" NAB Br. at 4. NAB's Motion does not meet the criteria for reconsideration, and its factual arguments are unsupported. NAB's Motion should be denied.

### III. NAB MEETS NONE OF THE CRITERIA FOR RECONSIDERATION.

Reconsideration is appropriate if the district court:

(1) "is presented with newly discovered evidence,"

(2) "committed clear error or the initial decision was manifestly unjust," or

(3) "if there is an intervening change in controlling law."

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Here, NAB presents no newly discovered evidence, makes no argument that there has been a change in controlling law, and can establish neither clear error nor manifest injustice. NAB's Motion should be denied.

### IV. NAB'S ASSERTIONS OF ERROR ARE UNFOUNDED

NAB first argues, again, that it has a legally protectable interest, citing two errors by this Court: the failure to mention a contract between NAB and Teck Cominco, and the mischaracterization of the "extensive legal obligations imposed by the Northwest Arctic Borough Code[,]" NAB Br. at 4. Neither of these alleged errors is even factually correct, let alone a clear error requiring reconsideration.

**A.     The Court committed no error in considering the PILOT agreement.**

NAB first criticizes this Court because "the Court made no mention of the <u>contract</u> existing between NAB and the defendant[.]" NAB Br. at 4 (emphasis original). KRPC finds this argument surprising, particularly NAB's emphasis on the "contract" between NAB and Teck Cominco, because nowhere in NAB's original moving papers – not in the 14-page Motion to Intervene, not in the 6-page Affidavit of Roswell Schaeffer, not in the 3-page NAB

Plaintiff's Opposition to Motion for
Reconsideration by Northwest Arctic Borough         -3-

1  Resolution, and not in NAB's 16-page Reply – does NAB ever mention the word "contract."
2  This Court can hardly be faulted for not using a word that NAB itself never used. Contrary to
3  NAB's representations, the Court *did* address the *substance* of the issue NAB complains of, the
4  suit's impact on the PILOT agreement between NAB and Teck Cominco. In its order dated
5  January 7, 2003, this Court clearly considered and rejected NAB's argument that, because "the
6  mine is the primary source of revenue for the borough" any "restriction on the mine's
7  operations or adverse affect on TCAK would cause harm to NAB." Order at 3-4. NAB even
8  concedes this in its Motion, NAB Br. at page 10. While the Court did not use the word
9  "contract," neither did NAB; the Court did consider, and reject, NAB's claim of having a
10  legally protectable interest, however. NAB's assertion of error by the Court is simply not
11  supported by the evidence.[1]

12  In it attempt to demonstrate the existence of a legally protectable interest, NAB relies
13  heavily on *Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993):

> it should be evident that the Borough has the requisite "protectable interest." Just as the Court stated in *Sierra Club*, supra, it has "<u>contracts or permits</u>" (in this case, both) connected with the continued operation of the mine, and rights that would therefore be necessarily affected by this lawsuit – in short, the very kind of interest "among those traditionally protected by law" that would support intervention of right.

17  NAB Br. at 8-9 (emphasis original). This is a significant misapplication of *Sierra Club*. In
18  *Sierra Club*, the Club sued EPA under the Clean Water Act for declaratory judgment and an
19  injunction. The relief sought would have required the EPA to change the terms of permits
20  issued to the City of Phoenix for two wastewater treatment plants owned by the City. The
21  Ninth Circuit granted the City's motion to intervene. Here, however, NAB is neither the holder
22  of the NPDES permits at issue nor the owner of the mine, a far different position that the City
23  of Phoenix which was both owner and permit holder. The Ninth's Circuit's analysis in *Sierra*
24  *Club* turned on the intervenor City's *ownership* of the waste disposal plants:

---

[1] NAB's attempt to offer the PILOT agreement (Exhibit 2 to the Case Affidavit) as evidence at this stage is improper. A motion for reconsideration requires evidence or argument that could not have been presented earlier. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). The PILOT agreement could easily have been presented with NAB's original motion, and thus its introduction at this stage is inappropriate. Regardless of whether or not it is admitted, however, the Court committed no error in denying intervention on January 7, 2003.

Plaintiff's Opposition to Motion for
Reconsideration by Northwest Arctic Borough            -4-



> In the case before us, though, the lawsuit would affect the *use of real property owned by the intervenor* by requiring the defendant to change the terms of permits it issues to the would-be intervenor, which permits regulate the use of that real property. These interests are squarely in the class of interests traditionally protected by law.

995 F.2d at 1483 (emphasis added). In reaching its conclusion, the Ninth Circuit distinguished *Portland Audubon Soc. v. Hodel*, 866 F.2d 302 (9th Cir. 1989), explaining that

> [u]nlike the loggers in *Portland Audubon*, the City owns rights protected by law relating to the property which is the subject of the action. The loggers' interest in *Portland Audubon* appears to have been an economic interest based upon a bare expectation, not anything in the nature of real or personal property, contracts or permits. *The City of Phoenix, by contrast, owns the wastewater treatment plants and permits.*

*Sierra Club*, 995 F.2d at 1482 (emphasis added). As this Court has already observed, the Ninth Circuit's emphasis clearly falls on the intervenor City's ownership of both the plants and the permits. *See* Order at n.6.

NAB cites to the above passage from *Sierra Club*, however, in support of its argument that NAB's contract with Teck Cominco (an agreement for payment in lieu of taxes) is sufficiently related to plaintiff's suit (seeking to enforce NPDES permits) that the contract constitutes a "protectable interest." This Court has already rejected that argument. Order at 4. Moreover, NAB cannot credibly argue that its contract with defendant, alone, constitutes a "protectable interest" – if this were true, any person or business who happened to have a contract with Teck Cominco could intervene as a matter of right. Under NAB's theory, this Court could soon entertain intervention motions from the suppliers of bottled water, airline service, hard hats, office supplies and truck tires to the Red Dog Mine, all of who presumably have contracts with Teck Cominco. An economic stake in the outcome of litigation, however, "even if significant," is not enough by itself to establish a "significant protectable interest." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).

NAB also argues that its permits for the mine will be affected, as in *Sierra Club*. This assertion fails, though, as here the permits in question are NPDES permits issued by EPA to Teck Cominco – not permits issued to NAB or by NAB. Nothing in this suit precludes – or, indeed, even touches on – NAB's enforcement of its own permits to the mine, if it has such permits.

**B. The Court committed no error in characterizing the legal obligations of the Borough.**

NAB next argues that disposition of the action may impair NAB's ability to protect its interests. NAB Br. at 9. In its Order, this court noted NAB's "obligation to protect the environment, subsistence opportunities, and to promote economically sustainable development for the citizens of the borough." Order at 4. In its Motion for Reconsideration, NAB argues that this court "erroneously characterized the extensive legal obligations imposed by the Northwest Arctic Borough Code." NAB Br. at 4. As it further argues, at NAB Br. at 10-11,

> Only in a footnote, without other application of those factual interest, however, did the Court in its January 7, 2003 Order also acknowledge the clear relationship between NAB's interest in protecting water and subsistence resources and the goals of the Clean Water Act.... The legal obligations imposed upon the Borough by Title 9 of the Borough's Code will certainly impair its ability to protect this interest.

NAB's point here is unclear.[2] KRPC's suit is a Clean Water Enforcement action and cannot interfere with NAB's operations under the Northwest Arctic Borough Code. Nothing in this suit will impair in any way NAB's ability to regulate local land uses within its jurisdiction. Moreover, NAB fails to describe how these "legal obligations" will impair its ability to protect its interest. Regardless, NAB's argument misses the point: in order to intervene as a matter of right, the *disposition of the action* must impair the potential intervenor's ability to protect its interest — it is not relevant that NAB's interests might be impaired by *legal obligations under the Borough's Code,* as it claims. NAB Br. at 11. The Court committed no error in denying NAB the right to intervene.

**C. NAB's Interests are adequately represented by existing parties.**

NAB also argues that its interests are not adequately represented by existing parties. In

---

[2] The cases NAB lists in the string cite on pages 11-12 are inapposite. These cases, typically brought by an environmental group against a government agency, involve challenges to broad regulatory programs and request sweeping injunctive relief. On occasion, courts have permitted trade associations to intervene as of right in such actions. The cases NAB lists are unlike the present case, a Clean Water enforcement action between private parties that seeks limited relief – *i.e.,* simple enforcement of NPDES permits. As one of the cases cited by NAB points out, "[t]he circumstances that exist when individuals litigate private disputes or those governed by state law differ from those where public law disputes affecting federal regulatory programs are at issue." *Conservation Law Foundation of New England, Inc. v. Mosbacher,* 966 F.2d 39, 42 (1st Cir. 1992).

Plaintiff's Opposition to Motion for
Reconsideration by Northwest Arctic Borough     -6-

02/05/2008 16:56 FAX 5032244133    LANDYE BENNETT BLUMSTEIN    ☒008
Case 3:04-cv-00049-JWS    Document 240-16    Filed 02/08/2008    Page 7 of 10

02/03/2003   19:03    LANDYE BENNETT BLUMSTEIN → LBB PORTLAND

its order of January 7, 2003, this Court described NAB's asserted interest in the environment near the mine as being "virtually identical to KRPC's interest." Order at 5. NAB disagrees with this Court's conclusion: "[w]ith all due respect to the Court, this characterization of KRPC's interest relative to the Borough is both incorrect and unfair and completely misapprehends the nature of NAB's interests, as well as that of the plaintiff." NAB Br. at 13.

NAB contends that its interest is different from the plaintiff's: "the Borough's interest in environmental protection extends well beyond Kivalina, unlike the plaintiff's, and is legally mandated and far more comprehensive and balanced by other legal and contractual obligations." NAB Br. at 13-14. NAB cites to no caselaw describing why such a "legally mandated" and "comprehensive and balanced interest" is indeed "protectable."

NAB also stresses that "[t]he plaintiff has no legal obligation even to the Village of Kivalina, let alone to the other 10 villages within the Borough nor any duty to their residents or to protect the lands and waters located in the vicinity of Noatak or elsewhere within the Borough outside of Kivalina." NAB Br. at 16. But it bears repeating that KRPC's suit is a Clean Water Act enforcement action predicated on defendant's thousands of violations of its Clean Water Act permits at its mine and port site. KRPC alleges that these violations affect the Village of Kivalina, and its claims are not related to the "other 10 villages within the Borough." Unlike Kivalina, the Village of Noatak does not get its drinking water from sources into which Teck Cominco discharges. In any event, NAB again fails to explain the relevance of its own "legal obligation" to the remaining villages in the Borough – or why this "legal obligation" ensures that its interest is at all distinguishable from KRPC's.

NAB also asserts that its interest is different from that of Teck Cominco: "the Borough, unlike the defendant, has a balancing act to perform and must *protect the environmental well-being of the Borough and its citizens*, as well as the *Borough's economic well-being*." NAB Br. at 18 (emphases added). NAB cites to no caselaw indicating why this "balancing act" is relevant. And, as this court has already concluded, NAB's interest in "protect[ing] the environmental well-being of the Borough and its citizens" is virtually identical to that of plaintiffs. Order at 5. Nor is NAB's interest in the "Borough's economic well-being" relevant

Plaintiff's Opposition to Motion for
Reconsideration by Northwest Arctic Borough         -7-



to the present case – KRPC is suing Teck Cominco to enforce NPDES limits.

NAB's motion for reconsideration concludes with a request that the Court allow permissive intervention. In its order of January 7, 2003, this court denied permissive intervention because

> NAB makes no claims or defenses in its motion, but, instead, focuses on its general interests in the end results of the suit. It is not apparent how these interests asserted in the first part of the motion have a question of law or fact in common with the issue of whether and to what extent TCAK has violated its NPDES permits.

Order at 6. NAB's second attempt at making an argument for permissive intervention fails for the same reason. In its Motion for Reconsideration, NAB makes no showing that its claim or defense has a question of law or fact in common with the issue raised by KRPC – whether and to what extent Teck Cominco violated its NPDES permits. Instead, NAB makes the following bare, conclusory assertion: "NAB's defenses respond to the issues of law raised by the plaintiff." NAB Br. at 19. NAB cites to neither the record nor caselaw in support of its assertion. As was true with NAB's original motion, this Court need not consider NAB's arguments regarding delay or prejudice resulting from NAB's intervention since, again, "the threshold showing has not been made." Order at 6.

V.   **ORAL ARGUMENT IS NOT WARRANTED.**

Finally, NAB requests oral argument on its Motion because "it is evident there may be controverted facts[.]" NAB Br. at 20. KRPC is aware of no controverted facts. The sole case NAB cites does not support its request for oral argument, as NAB's own quote makes clear: "If the facts are controverted *by a party opposing intervention*, the Court *may*... hold a hearing[.]" NAB Br. at 20 (emphasis added), citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).[3] Here, KRPC is the party opposing intervention, and it is not controverting any facts; there is no need for oral argument.

NAB also mischaracterizes this Court's Order to make it seem as if there are controverted facts, in asserting "the Court's assumption that Kivalina may be the 'site of the

---

[3] NAB is careful not to quote the actual language of *Southwest*, which supports dispensing with oral argument here: "a hearing is not required if it is clear from the face of the application that the motion must be denied." *Id.* at 820.

alleged illegal discharges'(Order from Chambers, 1-7-03, p.2, n.1) is disputed." The Court's footnote regarding the "site of the alleged illegal discharges" is attached to the end of the phrase "Outfall 001 on the Middle Fork of the Red Dog River," which is, indeed, the site of the alleged illegal discharges. There is no disputed fact here, only NAB's semantic contortions. KRPC requests that no oral argument be held, and that the Motion be denied.

## VI. CONCLUSION

NAB meets none of the three threshold criteria for reconsideration: it offers no new facts, no newly-minted law, and has not established any clear error by the Court. Even were the Court to reconsider its Order, NAB has failed to meet any of the requirements for intervention as a matter of right, nor does it meet the statutory criteria for permissive intervention. NAB's intervention could serve no purpose, and would only prejudice the rights of the original parties to a speedy resolution of the case. NAB's motion should be denied.

Dated this 31st day of January 2003.

CENTER ON RACE, POVERTY & THE ENVIRONMENT

Luke W. Cole

LAW OFFICES OF THOMAS DOSIK

Attorneys for Plaintiff
Kivalina Relocation Planning Committee

Brendan Cody

02/05/2008 16:57 FAX 5032244133      LANDYE BENNETT BLUMSTEIN                                           ☒011
Case 3:04-cv-00049-JWS    Document 240-16    Filed 02/08/2008    Page 10 of 10

02/03/2003   19:03    LANDYE BENNETT BLUMSTEIN → LBB PORTLAND                    NO.074    P11

## CERTIFICATION OF SERVICE

I, Luke W. Cole, am over 18 years of age and not a party to this action. My business address is 450 Geary Street, Suite 500, San Francisco, CA 94102.

On January 31, 2003, I served the PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION BY NORTHWEST ARCTIC BOROUGH and [PROPOSED] ORDER DENYING MOTION FOR RECONSIDERATION on the following parties by U.S. mail, postage paid:

Lawrence Hartig
Hartig Rhodes Hoge & Lekisch
717 K Street
Anchorage, AK 99501

Thomas A. Dosik
Law Offices of Thomas A. Dosik
431 West 7th Avenue, Suite 204
Anchorage, AK 99501

David S. Case
Landye Bennett
701 West 8th Avenue, Suite 1200
Anchorage, AK 99501

I certify under penalty of perjury that the above is true and correct. Executed on January 31, 2003 at San Francisco, CA.

Luke W. Cole

10 of 10