Permit No.: AK-003865-2

United States Environmental Protection Agency
Region 10
1200 Sixth Avenue
Seattle, Washington 98101

AUTHORIZATION TO DISCHARGE UNDER THE
NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM

In compliance with the provisions of the Clean Water Act, 33 U.S.C. §1251 et seq., as amended by the Water Quality Act of 1987, P.L. 100-4, the "Act",

COMINCO ALASKA, INC.
(Red Dog Mine)

is authorized to discharge 1) treated wastewater through Outfall 001 at latitude of 68° 4' 17" and longitude of 162° 52' 5" to receiving water named Middle Fork Red Dog Creek, 2) treated construction camp site wastewater through Outfall 002 at latitude of 68° 1' 45" and longitude of 162° 54' 56" to the tundra, and 3) storm water in accordance with discharge point(s), effluent limitations, monitoring requirements and other conditions set forth herein.

This permit shall become effective August 28, 1998
This permit and the authorization to discharge shall expire at midnight, August 28, 2003

Signed this 29th day of July, 1998.

/s/ Roger K. Mochnick, Acting
Director, Office of Water, Region 10
U.S. Environmental Protection Agency

This permit modification shall become effective August 22, 2003.
Signed this 17th day of July, 2003

Randall F. Smith
Director, Office of Water, Region 10
U.S. Environmental Protection Agency

-THIS PAGE MODIFIED-

Exhibit 3000
Page 1 of 48

Exh 2

JOINT EXHIBIT 3000 ADMITTED
3:04-cv-00049-JWS
(CASE NUMBER)

TC 034572 RD

# TABLE OF CONTENTS

Cover Sheet--Issuance and Expiration Dates
I.   LIMITATIONS AND MONITORING REQUIREMENTS ................... 4
     A.   Outfall 001 Limitations and Monitoring Requirements ............ 4
     B.   Construction Camp Site Requirements ......................... 11
     C.   Other Requirements ......................................... 12
     D.   Ambient Monitoring Requirements ............................ 15
     E.   Precipitation and Evaporation Monitoring Requirements .......... 18
     F.   Bioassessment Program Requirements ........................ 18
     G.   Precipitate Study ........................................... 20
     H.   Whole Effluent Toxicity Testing ............................... 20
     I.   Quality Assurance Requirements .............................. 23
     J.   Site Management Pollution Prevention Plan Requirements ......... 28
     K.   Definitions ................................................. 33

II.  MONITORING, RECORDING AND REPORTING REQUIREMENTS ....... 36
     A.   Representative Sampling .................................... 36
     B.   Monitoring Procedures ...................................... 36
     C.   Reporting of Monitoring Results .............................. 36
     D.   Additional Monitoring by the Permittee ......................... 37
     E.   Records Contents .......................................... 37
     F.   Retention of Records ....................................... 37
     G.   Twenty-four Hour Notice of Noncompliance Reporting ............ 37
     H.   Other Noncompliance Reporting .............................. 38
     I.   Inspection and Entry ........................................ 38

III. COMPLIANCE RESPONSIBILITIES .................................. 39
     A.   Duty to Comply ............................................ 39
     B.   Penalties for Violations of Permit Conditions .................... 39
     C.   Need to Halt or Reduce Activity not a Defense .................. 40
     D.   Duty to Mitigate ............................................ 40
     E.   Proper Operation and Maintenance ............................ 40
     F.   Removed Substances ....................................... 40
     G.   Bypass of Treatment Facilities ................................ 40
     H.   Upset Conditions ........................................... 41
     I.   Toxic Pollutants ............................................ 42

-THIS PAGE MODIFIED-

Exhibit 3000
Page 9 of 48
Exh 2
TC 034573 RD

IV.  GENERAL REQUIREMENTS .................................. 42
    A.  Changes in Discharge of Toxic Substances ................... 42
    B.  Planned Changes ...................................... 43
    C.  Anticipated Noncompliance ............................... 43
    D.  Permit Actions ......................................... 43
    E.  Duty to Reapply ....................................... 43
    F.  Duty to Provide Information .............................. 43
    G.  Other Information ...................................... 44
    H.  Signatory Requirements ................................. 44
    I.   Availability of Reports .................................. 45
    J.  Oil and Hazardous Substance Liability ...................... 45
    K.  Property Rights ........................................ 45
    L.  Severability ........................................... 45
    M.  Transfers ............................................. 45
    N.  State Laws ........................................... 46

V.  AMBIENT MONITORING SAMPLING LOCATIONS .................... 47

-THIS PAGE MODIFIED-

Exhibit 3000
Page 3 of 48
Exh 2

TC 034574 RD

Page 4 of 48
Permit AK-003865-2

I.   LIMITATIONS AND MONITORING REQUIREMENTS

A.   Outfall 001 Limitations and Monitoring Requirements.

During the period beginning on the effective date of this permit and lasting through the expiration date, the permittee is authorized to discharge effluent from Outfall 001 into Middle Fork Red Dog Creek, provided the following effluent limits and monitoring requirements are met:

1.

| Parameter | Daily Maximum | Monthly Average | Weekly Average | Sample Frequency | Sample Type[1] |
|---|---|---|---|---|---|
| Cadmium, total recoverable, µg/L | 3.4 | 2.0 | --- | 1/week | 24 hour composite |
| Copper, total recoverable, µg/L | 43.7 | 15.1 | --- | 1/week | 24 hour composite |
| Chromium, total recoverable, µg/L | --- | --- | --- | 1/week | 24 hour composite |
| Lead, total recoverable, µg/L | 19.6 | 8.1 | --- | 1/week | 24 hour composite |
| Manganese, total recoverable, µg/L | --- | --- | --- | 1/week | 24 hour composite |
| Mercury, total, µg/L | 0.02 | 0.01 | --- | 1/month | 24 hour composite |
| Nickel, total recoverable, µg/L | --- | --- | --- | 1/week | 24 hour composite |
| Selenium, total recoverable, µg/L | 5.6 | 4.9 | --- | 1/week | 24 hour composite |
| Zinc, total recoverable, µg/L | 257.3 | 119.6 | --- | 1/week | 24 hour composite |
| Total Suspended Solids, TSS, mg/L | 30.0 | 20.0 | --- | 1/week | 24 hour composite |
| Total Dissolved Solids, TDS, mg/L | See Part I.A.8 | | | | |
| Cyanide, total, µg/L | 9.0 | 4.0 | --- | 1/week | Grab |
| Fecal Coliform, #/100 ml | --- | 200 | 400 | 1/ 2 months | 24 hour composite |
| Aluminum, total recoverable, µg/L | --- | --- | --- | 1/month | 24 hour composite |
| Iron, total recoverable, µg/L | --- | --- | --- | 1/month | 24 hour composite |
| Silver, total recoverable, µg/L | --- | --- | --- | 1/month | 24 hour composite |
| Total Residual Chlorine, mg/L | --- | --- | --- | 1/month | Grab |
| Biochemical Oxygen Demand, mg/L | --- | --- | --- | 1/month | 24 hour composite |
| Total Ammonia as N, mg/L | --- | --- | --- | 1/week | 24 hour composite |
| Organic Priority Pollutant Scan[2], µg/L | --- | --- | --- | see note 2 | 24 hour composite |
| Turbidity, NTU | --- | --- | --- | 1/week | 24 hour composite |
| Temperature, °C | --- | --- | --- | daily | Grab |
| Hardness, mg/L as CaCO$_3$ | --- | --- | --- | 1/week | 24 hour composite |
| Cumulative Flow, gallons | See Part I.A.2. | --- | --- | | Continuous Recording |
| ...CONTINUED ON NEXT PAGE... | | | | | |

-THIS PAGE MODIFIED-    Exhibit 3000
Page 4 of 48
Exh 2
TC 034575 RD

| Parameter | Daily Maximum | Monthly Average | Weekly Average | Sample Frequency | Sample Type[1] |
|---|---|---|---|---|---|
| Whole Effluent Toxicity, TUc | 12.2 | 9.7 | --- | 1/month | See Part H |

1. Effluent samples collected shall be representative of the effluent discharged without dilution from or contact with any outside sources. Results of analyses conducted under Part I.A.1. of this permit shall be submitted monthly on the discharge monitoring report.
2. Volatile organics shall be monitored using EPA analytical method 624, semi-volatile organics shall be monitored using EPA analytical method 625. Testing shall be conducted once in May, July, and September.

2. The effluent pH from Outfall 001 shall be within the range of 6.0-10.5 standard units. Monitoring for pH shall occur once per week.

3. The maximum cumulative flow discharged from Outfall 001 shall not exceed 2.418 billion gallons from January 1 through December 31 every year.

   The permittee shall report the cumulative flow discharged from Outfall 001 for that year to EPA, the Alaska Department of Environmental Conservation (ADEC), and the Alaska Department of Fish and Game (AK F&G) on the discharge monitoring report (DMR) each month. For example, if the permittee discharges 1 million gallons from Outfall 001 in January 1998 and 2 million gallons in February 1998, the February DMR shall state a cumulative flow discharged from Outfall 001 of 3 million gallons (1 million + 2 million = 3 million). In addition, the permittee shall report the total volume discharged each month.

4. There shall be no discharge of floating solids or oily wastes which produce a sheen on the surface of the receiving water.

5. Additional Monitoring and Reporting Requirements:

   a. The permittee shall conduct analyses using analytical methods approved in 40 CFR §136.

   b. At a minimum, analytical methods should achieve the following method detection limits:

| Parameter | Method Detection Limit[1] |
|---|---|
| Aluminum, total recoverable | 20 µg/L |
| Cadmium, total recoverable | .1 µg/L |
| Chromium, total recoverable | 1 µg/L |
| Copper, total recoverable | 1 µg/L |
| CONTINUED ON NEXT PAGE | |

Exhibit 3000
Page 5 of 48
Exh 2

TC 034576 RD

Page 6 of 48
Permit AK-003865-2

| Parameter | Method Detection Limit |
|---|---|
| Iron, total recoverable | 30 µg/L |
| Cyanide, total | 3 µg/L |
| Lead, total recoverable | .08 µg/L |
| Manganese, total recoverable | 1 µg/L |
| Mercury, total | .2 µg/L |
| Nickel, total recoverable | 5 µg/L |
| Selenium, total recoverable | 2 µg/L |
| Silver, total recoverable | 2 µg/L |
| Zinc, total recoverable | 2 µg/L |
| $BOD_5$ | 8 mg/L |
| Total residual chlorine | 10 µg/L |
| Total ammonia as N | 10 µg/L |

1. The permittee may request less restrictive method detection limits for ambient monitoring. The request shall be submitted to EPA in writing, and is subject to EPA approval.

c. As part of the development of the Quality Assurance Project Plan (see Part I.I.1.b) the permittee shall specify the analytical test method that will be used to achieve each method detection limit.

d. Effluent limits for cyanide, mercury, and selenium are not quantifiable using EPA approved analytical methods. EPA will use the following Interim Minimum Levels as the compliance evaluation level for these parameters.

| Parameter | Interim Minimum Level |
|---|---|
| Cyanide | 9 µg/L |
| Mercury | .5 µg/L |
| Selenium | 6 µg/L |

e. For purposes of reporting on the Discharge Monitoring Report (DMR), if an analytical value is "less than the method detection level, the permittee shall report "less than [numerical method detection limit]" on the DMR. For example, if the laboratory reports "not detected" for a sample, and states that the MDL is "5 µg/L" then the permittee shall report "< 5 µg/L" on the DMR.

Exhibit 3000
Page 6 of 48
Exh 2
TC 034577 RD

4. Sample or monitor at reasonable times, for the purpose of assuring permit compliance or as otherwise authorized by the Act, any substances or parameters at any location.

III. COMPLIANCE RESPONSIBILITIES

A. Duty to Comply. The permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application. The permittee shall give advance notice to the Director and ADEC of any planned changes in the permitted facility or activity which may result in noncompliance with permit requirements.

B. Penalties for Violations of Permit Conditions.

1. Civil Penalty. The Act provides that any person who violates a permit condition implementing Sections 301, 302, 306, 307, 308, 318, or 405 of the Act shall be subject to a civil penalty, not to exceed $25,000 per day for each violation.

2. Criminal Penalties:

a. Negligent Violations. The Act provides that any person who negligently violates a permit condition implementing Sections 301, 302, 306, 307, 308, 318, or 405 of the Act shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation, or by imprisonment for not more than 1 year, or by both.

b. Knowing Violations. The Act provides that any person who knowingly violates a permit condition implementing Sections 301, 302, 306, 307, 308, 318, or 405 of the Act shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both.

c. Knowing Endangerment. The Act provides that any person who knowingly violates a permit condition implementing Sections 301, 302, 306, 307, 308, 318, or 405 of the Act, and who knows at that time that he thereby places another person in imminent danger of death or serious bodily injury, shall, upon conviction, be subject to a fine of not more than $250,000 or imprisonment of not more than 15 years, or both. A person which is an organization shall, upon conviction of violating this subparagraph, be subject to a fine of not more than $1,000,000.

Exhibit 3000
Page 39 of 48
TC 034610 RD
Exh 2