LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty & the Environment
47 Kearny St, Suite 804
San Francisco, CA 94108
415/346-4179 • fax 415/346-8723

NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515-3358
907/345-5595 • fax 907/345-3629

Attorneys for Plaintiffs Enoch Adams, Jr., Leroy
Adams, Andrew Koenig, Jerry Norton, David
Swan and Joseph Swan

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON DAVID SWAN and JOSEPH SWAN,<br><br>    Plaintiffs,<br><br>    v.<br><br>TECK COMINCO ALASKA INCORPORATED<br><br>    Defendant.<br>_____<br>NANA REGIONAL CORPORATION and NORTHWEST ARCTIC BOROUGH,<br><br>    Intervenors-Defendants.<br>_____ | Case No. A04-49 (JWS)<br><br>PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORT |

PLAINTIFFS' OPPOSITION TO MOTION TO
STRIKE PLAINTIFFS' NEW EXPERT REPORTS

I.    INTRODUCTION

It took some audacity for Teck Cominco to withhold nearly ten thousand pages of relevant discovery documents – including lab reports from 2000 through 2007 – until years after the discovery deadline and deadline for expert reports in this case, and months after the deadline ordered by this Court for final disclosures of such documents. That failure to timely disclose relevant discovery documents – documents which Teck Cominco now wants to use at trial – is the subject of a motion to exclude at Docket 208. That violation of the Federal Rules of Civil Procedure and this Court's orders was not the end of Teck Cominco's litigation gamesmanship, however.

With what can only be described as supreme chutzpah, Teck Cominco now requests that the Court *strike* Adams's updated expert reports *because Adams's experts used that newly disclosed evidence to update their expert reports.* This patently unfair maneuver should be swiftly denied by this Court. Further, because the Motion to Strike Plaintiffs' New Expert Reports ("Motion") at Docket 218 is frivolous and without any justification, Adams requests that sanctions against Teck Cominco be entered against Teck Cominco and NANA for forcing Adams to expend the resources to defend against the Motion.

As Adams has noted in filing its motion to exclude some of the most egregiously late-disclosed material (including documents disclosed for the first time in Teck Cominco's Exhibit List, filed January 22, 2008), Teck Cominco has grossly failed to comply with the rules of disclosure in this case. Docket 208 at 1-3. It withheld relevant documents when they should have been disclosed to Adams's experts back in 2004 so they could be used to prepare those experts' reports. It withheld relevant documents even after the Court instructed that all lab reports were to be produced by August 31, 2007. Having failed to timely produce those documents – some of which were requested in discovery by Adams, making their late disclosure doubly troubling – Teck Cominco cannot now seriously challenge Adams's experts use of the documents in the experts' updated expert reports. Remarkably, Teck Cominco asserts that "*Plaintiffs* have tossed the usual rules of disclosure and discovery out the window." Motion at 7 (emphasis added). Teck Cominco's discovery abuse should be penalized. Were the Court to act as requested by Teck Cominco and strike the new expert reports, it would reward Teck Cominco's violation of the discovery rules and this Court's orders, and be a fundamentally unfair violation of the due process rights of the Adams plaintiffs. The

1  Motion should be rejected in its entirety.

2  Teck Cominco objects that the "Plaintiffs' retained experts have produced new reports that contain much more than just updates to their past reports to account for effects resulting from the passage of time." Motion at 1-2. Teck Cominco's objection is misplaced: The "new" testimony by Adams's experts is based on disclosures by Teck Cominco that occurred after the initial expert reports were required to be filed. In many cases, the updated expert reports reflect evidence disclosed by Teck Cominco in *November 2007 and January 2008*, long after the August 31, 2007 deadline set by the Court for the *final* disclosure of "copies of all available monitoring reports, lab reports or other reports of the sort previously relied on in this litigation" to counsel for Adams by August 31, 2007. Docket 167 at 1. Since November 15, 2007, Teck Cominco has disclosed an additional 9,500 pages of new documents, mostly lab reports. As explained below in Section II, the very sections of the updated expert reports that Teck Cominco objects to are those giving expert commentary on the documents disclosed in late 2007 and early 2008.

Teck Cominco also objects that the updated expert reports do not disclose expert testimony in cases as required by Fed.R.Civ.P. 26. As explained in Section III, below, and demonstrated by curriculum vitae (timely served as part of the expert reports) attached to this Opposition, that is simply untrue. (On the date of filing this response, Plaintiffs' counsel has been informed by email that Teck Cominco is withdrawing this portion of its Motion, but has not seen a filing with the Court to that effect and so in an abundance of caution leaves Section III in this brief. If Teck Cominco formally withdraws this section of its motion, then Adams withdraws Section III of its brief.)

The Adams plaintiffs were disturbed by the apparent litigation gamesmanship of Teck Cominco in disclosing almost ten thousand pages of documents (nearly 20% of all pages Teck Cominco disclosed in this case and the KRPC case combined) long after the Court's August 31, 2007 deadline. But they are frankly astonished that Teck Cominco and NANA now seek to penalize plaintiffs for trying – under a radically compressed timeframe cause by these very late disclosures – to understand and use those relevant disclosures for trial. This type of litigation tactic should be strongly rejected by this Court. Adams thus requests that sanctions be levied against Teck Cominco and NANA for this discovery abuse.

## II. THE NEW INFORMATION OR OPINIONS FOUND IN PLAINTIFFS' EXPERT REPORTS IS BASED ON TECK COMINCO'S NEWLY-DISCLOSED DOCUMENTARY EVIDENCE.

Teck Cominco objects to specific passages in each experts' report. It also broadly objects to the reports without any specificity, making it difficult for Adams to identify what exactly Teck Cominco's objection is. As Adams demonstrates below, all of the specific passages Teck Cominco identifies and objects to are a result of Adams's experts opining on the newly disclosed documents provided by Teck Cominco. Indeed, of Teck Cominco's proffered trial exhibits, Exhibits 1341 through 1638, and 1755 through 1798, with the exception of some nine exhibits in that run of 340 documents, were all disclosed later than November 15, 2007. Teck Cominco seeks to introduce just over 800 exhibits, meaning that – not including the undisclosed photographs which Adams has separately moved to exclude – *more than 40 percent of Teck Cominco's exhibits were only disclosed to Adams after November 15, 2007*, long after the date set by this Court to disclose such documents. Adams's experts had to work on a shortened schedule to update their reports to take this huge amount of new data into account.

Plaintiffs updated expert reports comply with this Court's instruction to "take into account any effects resulting from the passage of time from the date used in the original report through December 31, 2007." Docket at 167. One of the primary "effects results from the passage of time" was that Teck Cominco disclosed almost 9500 pages of documents between November 15, 2007 and January 23, 2008. Declaration of Luke Cole in Support of Opposition to Motion to Strike Expert Reports ("Cole dec."), ¶2.

Dr. Michael Kavanaugh updated his calculations to account for the passage of time and the Court's summary judgment decision. Declaration of Michael Kavanaugh ("Kavanaugh dec."), ¶5. Randolph Fischer merely filed an expert report with a new cover page, that is substantively identical to the report he filed in 2005. Cole dec. ¶4. Dr. Robert Moran and Ken Fucik updated their reports to include the actual testimony they had provided in this case (found in their declarations filed with various motions in 2005[1]) and also to include their opinions based on the discovery documents

---

[1] These declarations were, in essence, the updates required by Rule 26 to their original expert reports. No party raised any issue with that sworn testimony when it was introduced in this case in 2005, and thus defendants cannot plausibly be heard to complain in 2008 that the experts continue

PLAINTIFFS' OPPOSITION TO MOTION TO
STRIKE PLAINTIFFS' NEW EXPERT REPORTS         4

1  disclosed by Teck Cominco in November 2007 and January 2008.  Cole dec. ¶3.

2      The more full update of the expert reports of Dr. Moran and Mr. Fucik is a direct result of Teck Cominco's failure to disclose the documents – primarily but not exclusively the laboratory reports underlying the discharge monitoring reports – that such expert reports are usually based on until November 2007 and January 2008.  Teck Cominco cannot fail to provide plaintiffs with the underlying documents on which experts' reports are based until November 2007 and January 2008, and then complain that plaintiffs' 2004 expert reports did not include that data.  The experts could only include the data, and opinions based on that data, that Teck Cominco provided.  It is ironic that Teck Cominco faults the plaintiffs for not filing a motion requesting leave to provide new testimony by August 31, 2007, the Court's deadline for such motions, when it did not provide the documents that necessitated the updated expert reports until months after the August 31, 2007 deadline which also applied to the documents it was required to disclose.

    Teck Cominco's attack is a classic case of blaming the victim.  Its proposed remedy – limiting the expert reports to only those opinions expressed in 2004, with a few Teck Cominco-selected updates – would further punish plaintiffs, who have already had to scramble to have their experts respond to the late-disclosed data.

    **A.**    **The expert report of Randolph Fischer is appropriately updated.**

    Teck Cominco concedes that "In Mr. Fischer's report, Exh. D, copies of excerpts from earlier reports and declarations appear consistently through his new report."  Motion at 5 n.15.  It makes this concession in a footnote following the statement "in some instances, they [the expert reports] copy verbatim certain excerpts from their earlier reports and declarations".  Motion at 4.  Adams is unclear why Teck Cominco seeks to strike Mr. Fischer's updated report, which is literally an electronic combination of his earlier expressed opinions.  It contains no new opinions that have no been previously expressed in this case, not even any updates.  Cole dec. ¶4.  The only specific objection that Teck Cominco can muster anywhere in its Motion to the expert report of Mr. Fischer is that "Mr. Fischer also adds a new reference to a 2003 article on page 2 of his new report, Exh. D."  Motion at 6.  The addition of this reference, previously disclosed to Teck Cominco, cannot seriously

---

to hold the same opinions they held, and expressed in this case, in 2005.

PLAINTIFFS' OPPOSITION TO MOTION TO
STRIKE PLAINTIFFS' NEW EXPERT REPORTS    5

be offered as the justification for striking the updated expert report of Randolph Fischer. Cole dec. ¶5. Teck Cominco's Motion should be denied.

### B.    The expert report of Dr. Robert Moran is appropriately updated.

Teck Cominco objects to several specific parts of Dr. Moran's expert report. An examination of the actual portions of the report Teck Cominco objects to reveals the speciousness of its objections and the Motion as a whole. Adams respectfully requests that this Court actually review the portions of Docket 219-3 that Teck Cominco objects to, as that review will demonstrate that all of the opinions offered were either 1) offered before in the 2004 report and the declarations filed in 2005; or 2) are appropriate updates based on the new information provided by Teck Cominco since the 2004 report.

Teck Cominco objects that "Dr. Moran offered some new opinions based on recent data, but they were opinions that had never been expressed before." Motion at 6 n.18, citing Exhibit B at 7-10, 19-25.[2] However, even a cursory examination of the expert opinion expressed on pages 7-10 and 19-25 of the Moran report demonstrates three things: first, they could not possibly have been opinions offered by the expert report date of November 15, 2004, because they concern Teck Cominco's discharges that occurred in 2005 through 2007; second, they are based on lab reports not disclosed by Teck Cominco until after November 15, 2007; and third, they are appropriate updates of Dr. Moran's earlier testimony. Pages 7-10 are a series of charts including the TDS levels measured by Teck Cominco as reported in the lab results disclosed after November 15, 2007 and in the DMRs from 2005 through 2007. Docket 219-3, at 9-12 (original pagination 7-10); Cole dec. ¶6. Dr. Moran offered "opinions that had never been expressed before" because he had never had access to the data before; his "opinion" here is actually simply a summary of the data provided in those lab reports, in tabular form. Docket 219-3, at 9-12. Similarly, pages 19-25 are tables summarizing the cyanide lab results from May 2005 through September 2007. Docket 219-3, at

---

[2]In responding to Teck Cominco's objections, Adams is at a disadvantage because there are two sets of page numbers on Exhibit B, the Moran report: the original pagination, and then the Exhibit pagination. Adams is proceeding under the assumption that the references to page numbers in the "Dr. Moran's new report" are references to the original pagination as that appears to make the most sense in the context of the reports and the objections to them. Cole dec. ¶6. If Adams is mistaken in this assumption plaintiffs respectfully request the opportunity to modify this brief to respond to the other pagination.

21-27 (original pagination 19-25). These lab results were first provided to Adams after November 15, 2007; *see* Exhibits 1341 through 1638, the lab reports which roughly correspond to these dates and, with few exceptions, have Bates stamps over 42904, which is the first page of the exhibits disclosed on November 15, 2007. Cole dec. ¶7. That Adams could not have offered this opinion without the lab results is evident on examining the summary tables: for example, the May 2005 table on page 19 includes four lab results that were not included in any DMR; without the lab result itself, Dr. Moran could not have constructed this table. Docket 219-3 at 21 (original pagination at 19); Cole dec. ¶7; *see also* Docket 219-3 at original page 20 (August 2005 lab results not reported in DMR), 22 (June 2006 lab results not reported in DMR), 22-23 (July 2006 lab results not reported in DMR), 23 (August 2006 lab results not reported in DMR). Teck Cominco's objection is misplaced. Dr. Moran's summaries of the TDS and cyanide lab results between 2005 and 2007 are a wholly appropriate update of his earlier report, and could not have been produced without the late-disclosed lab reports.

Teck Cominco objects to "new opinions based on 'old' information," Motion at 5, although each of the four specific examples it offers are appropriate updates or are based on new information not available to Dr. Moran before his first expert report in 2004. Teck Cominco first objects to the opinion expressed in the "last paragraph on page six, [where] Dr. Moran offers new opinions regarding how the timing of sampling affects the concentrations reported." Motion at 5 n.17. Dr. Moran came to this opinion on examining the lab reports from 2005-2007 disclosed by Teck Cominco after November 15, 2007. Cole dec. ¶8. The examination of these lab reports disclosed the actual hold times for the TDS samples from 2005 through 2007. *Id*. This data was not available in 2004. *Id*. Teck Cominco's objection is groundless.

Teck Cominco second specific objection is to "the third full paragraph on page twelve, [where] Dr. Moran offers new opinions regarding the acceptable approaches for reporting determinations from labs." Motion at 5 n.17. Again, this data became clear from 2005-2007 Teck Cominco's lab reports when compared to the 2005-2007 DMRs, as Teck Cominco routinely selected the lab which provided the most favorable lab results during that period. Cole dec. ¶9. Teck Cominco's objection is groundless.

Teck Cominco's third specific objection is that "pages thirteen through 19 have new

opinions on alleged cyanide violations between 1999 and 2003." Motion at 5 n. 17. An examination of pages 13-19 shows they are merely summaries of the cyanide data from the DMRs and lab reports from 1999-2003 (the portion of page 19 with May 2005 results is discussed above). These summary tables include data from two spreadsheets that Teck Cominco made available to plaintiffs in April 2005, after Dr. Moran's earlier report was completed. The spreadsheets are included as Exhibits 71-71 to Adams's Exhibit List, Docket 190. Cole dec. ¶10. The full data in the spreadsheets were not available to Adams until after Teck Cominco disclosed it in April 2005. Teck Cominco's objection is groundless.

Teck Cominco's final specific objection to Dr. Moran's testimony is that "more new opinions are found in the last three paragraphs on page 27 where Dr. Moran opines about procedures that should be in place." Motion at 5 n. 17. These three observations are appropriate summarizing opinions based on the new material available to Dr. Moran after he produced his expert report in November 2004. None are so offensive as to require being struck, and certainly none require the striking of the entire updated expert report as Teck Cominco requests. This is the last of the specific objections Teck Cominco has to Dr. Moran's report, and like the other objections, is groundless. The motion should be denied.

Teck Cominco also asserts, without specifying any particular paragraph or line, that "Dr. Moran's revisions to earlier statements appear in his new report, Exh. B, on pages 4, 5, 6, 10, 12, 26, 27, 28, 30, 31, and 36." Motion at 5 n.16. Without further specificity, it is impossible for Adams to respond, as counsel is unclear as to which words, sentences or lines Teck Cominco finds offensive. Cole dec. ¶10. Because Teck Cominco has not provided enough specificity for Adams – or this Court – to determine what has been "revised" and why it is offensive to Teck Cominco, the Motion should be denied.

Teck Cominco finally objects to Dr. Moran adding "references to a 1995 article and a 2002 paper." Motion at 6 n.19. While these offending references are not specified, all references listed in the expert report have been previously disclosed to Teck Cominco during discovery, and if a 1995 article and 2002 paper were added, it was to reflect that earlier disclosure. Cole dec. ¶11.

Each of the specific objections to Dr. Moran's testimony fail under scrutiny, and the motion should be denied.

### C. The expert report of Ken Fucik is appropriately updated.

As with Dr. Moran's expert report, Teck Cominco makes broad accusations about Mr. Fucik's updated report that wither upon scrutiny. Teck Cominco musters four specific complaints about Mr. Fucik's expert report. Motion at 5 n. 17. First, it objects to "the last two sentences of the top paragraph of page ten, together with the chart at page ten, opines on data from May 27, 2000 through October 3, 2002." *Id*. This data is from lab reports on *Ceriodaphnia dubia* tests that was included in spreadsheets made available to Adams in April 2005, after Mr. Fucik's first report was completed. The table summarizes data from the Teck Cominco spreadsheets included as Exhibits 70-71 to Adams's Exhibit List, Docket 190. Cole dec. ¶10. The full data in the spreadsheets were not available to Adams until after Teck Cominco disclosed it in April 2005. Teck Cominco's objection is groundless. Indeed, Teck Cominco even highlights as *acceptable* update the paragraph in Mr. Fucik's declaration at the bottom of page 11 (original pagination; 219-4 at 13) that discusses the exact same data.

Teck Cominco's second specific objection is that "the first two paragraphs under TDS on page 13 are new opinions regarding Gene Andrews' 1999 and 2004 reports." Motion at 5, n. 17. This opinion was provided to Teck Cominco as testimony in earlier declarations filed in 2005. Cole dec. ¶12. Again, Teck Cominco's objection is groundless.

Teck Cominco's third specific objection is that "the chart on page fourteen also addresses data starting in 1999." Motion at 5 n.17. This summary chart is merely a recitation of data found in the DMRs and lab reports and hardly qualifies as "opinion." To the extent that it does, it is a permissible summary under Federal Rules of Evidence Rule 1006. It is also a recitation and summary of the data found in the spreadsheets made available to Adams in April 2005, after Mr. Fucik's original expert report was filed. Cole dec. ¶10. Teck Cominco's objection fails on multiple grounds.

Teck Cominco's final specific objection is that "Mr. Fucik also offers new opinions regarding alleged cyanide violations between 1999 and 2003 in pages 16 through 23. Motion at 5 n.17. Again, this data was in the spreadsheet disclosed to Adams in April 2005, after Mr. Fucik's original expert report was served in November 2004. It is also a summary of the lab reports and DMRs under F.R.E. 1006. Teck Cominco's objection again fails.

PLAINTIFFS' OPPOSITION TO MOTION TO
STRIKE PLAINTIFFS' NEW EXPERT REPORTS          9

1    Teck Cominco further objects that "Mr. Fucik also offered new opinions based on recent
2 data, but they were opinions that had never been expressed before." Motion at 6 n.18, citing Exhibit
3 C at 14-16, 22-27. However, even a cursory examination of the expert opinion expressed on pages
4 14-16 and 22-27 of the Fucik report, like the Moran report above, demonstrates three things: 1) they
5 could not possibly have been opinions offered by the expert report date of November 15, 2004,
6 because they concern Teck Cominco's discharges that occurred in 2005 through 2007; 2) they are
7 based on lab reports not disclosed by Teck Cominco until after November 15, 2007; and 3) they are
8 valid updates of Mr. Fucik's earlier testimony. Pages 14-16 are a series of charts including the TDS
9 levels measured by Teck Cominco as reported in the lab results disclosed after November 15, 2007
10 and in the DMRs from 2005 through 2007. Docket 219-4, at14-16 (original pagination); Cole dec.
11 ¶12. Mr. Fucik offered "opinions that had never been expressed before" because he had never had
12 access to the data before; his "opinion" here is actually simply a summary of the data provided in
13 those lab reports, in tabular form, almost identical to the summary offered by Dr. Moran. Docket
14 219-4, at 14-16. Similarly, pages 22-27 are tables summarizing the cyanide lab results from May
15 2005 through September 2007. Docket 219-4, at 22-27 (original pagination). These lab results
16 were first provided to Adams after November 15, 2007; *see* Exhibits 1341 through 1638, the lab
17 reports which roughly correspond to these dates and, with few exceptions, have Bates stamps over
18 42904, which is the first page of the exhibits disclosed on November 15, 2007. Cole dec. ¶7. That
19 Adams could not have offered this opinion without the lab results is evident on examining the
20 summary tables: for example, the May 2005 table on page 22 includes four lab results that were not
21 included in any DMR; without the lab result itself, Mr. Fucik could not have constructed this table.
22 Docket 219-4 at 22 (original pagination); Cole dec. ¶7; *see also* Docket 219-4 at original page 23
23 (August 2005 lab results not reported in DMR), 25 (June 2006 lab results not reported in DMR), 25
24 (July 2006 lab results not reported in DMR), 26 (August 2006 lab results not reported in DMR).
25 Teck Cominco's objection is misplaced. Mr. Fucik's summaries of the TDS and cyanide lab results
26 between 2005 and 2007 are a wholly appropriate update of his earlier report, and could not have
27 been produced without the late-disclosed lab reports.
28    Each of Teck Cominco's objections to Mr. Fucik's updated report fail on scrutiny, and the
motion should be denied.

PLAINTIFFS' OPPOSITION TO MOTION TO
STRIKE PLAINTIFFS' NEW EXPERT REPORTS            10

**D.   The expert report of Dr. Michael Kavanaugh is appropriately updated.**

Teck Cominco asserts that "Dr. Kavanaugh's December 2004 expert report used financial statements of Teck Cominco Limited in calculating the alleged economic benefit from allegedly violating the permits, even though Teck Cominco Limited was not named as a party." Motion at 6. Teck Cominco then objects to Dr. Kavanaugh's 2008 report because it only includes the economic benefit to Teck Cominco. Motion at 7. Teck Cominco's objection is unfounded, as an examination of Dr. Kavanaugh's updated report reveals.

Teck Cominco's assertion misunderstands the initial expert report of Dr. Kavanaugh, which was focused on Teck Cominco *Alaska Incorporated* although it did use some data from Teck Cominco Limited.[3] Dr. Kavanaugh explains exactly how he updated his report in 2008 from the 2004 version:

> In my original expert report, produced in December 2004, I estimated the benefit Teck Cominco gained from alleged violations at its Red Dog Mine. I am informed and believe that Teck Cominco is a wholly-owned subsidiary of Teck Cominco Limited. In the text of my report I referred to the parent company, Teck Cominco Limited, as the recipient of the gain (or economic benefit) much like someone would say a parent receives the gain given to a child. If there was a data gap in the financial material available on Teck Cominco, in the 2004 report I used information from Teck Cominco Limited to plug the gap.
>
> [¶] The District Court determined that it was improper to refer to Teck Cominco's economic benefit as received by Teck Cominco Limited, and in my updated expert report of 2008 I was careful not to use Teck Cominco Limited interchangeably with Teck Cominco, or to use any data at all from Teck Cominco Limited.
>
> [¶] In updating my report, I read the Court's summary judgment decision (on TDS) and took into account the findings that it made as to liability. I extended my economic benefit estimate from August 2003 to June 2004, and included violations during the Arctic Grayling spawning season in 2005, 2006 and 2007. I did so because I believe this is what an update is supposed to do, that is, incorporate new information that is relevant to the decisions the Court must make.

Kavanaugh dec., ¶¶ 4-6.

---

[3]Teck Cominco notes that Adams discussed at the August 2007 planning conference the possibility of bringing a motion to include new expert testimony. Motion at 2. After the planning conference, through discussion with the expert in question (Dr. Kavanaugh), Adams was able to determine that Dr. Kavanaugh's opinion on the economic benefit accruing to Teck Cominco Alaska Incorporated was largely undisturbed by the Court's striking reference to or use of Teck Cominco Limited financial data in his opinion. *See generally* Kavanaugh dec. ¶¶ 2-10. Because Dr. Kavanaugh's underlying 2004 opinion was not implicated, there was no need to offer new expert testimony; Dr. Kavanaugh disclosed his opinion on Teck Cominco Alaska Incorporated in the 2004 report, and updated it in the 2008 report.

What Teck Cominco's current objection fails to recognize is that in constructing an economic benefit analysis, most of the inputs are independent of the ownership structure of the company involved. *Id.* at 6. As Dr. Kavanaugh explains,

> The cost data has nothing to do with the parent or child company. The dates of violation used for calculating benefit have nothing to do with the parent or child company. The measures of price change (inflation) have nothing to do with the parent or child. The taxes used have nothing to do with the parent or child because I used the statutory limits of U.S. and Alaska taxes in both analyses. In my examination of economic benefit I looked at the opportunity costs in two ways, the equity rate and the weighted average cost of capital (WACC). For the first of these, the equity rate, which I explicitly favored in my 2004 report, has nothing to do with the parent or the child company. The second, WACC, is the one place in my 2004 report where I used Teck Cominco Limited data for the economic benefit analysis. All of the other parts of the economic benefit analysis, and its conclusions, are independent of the identity of the company and applied in my 2004 and 2008 reports to Teck Cominco Alaska Incorporated. My opinions in my 2004 expert report that refer to the equity cost of capital were not based on Teck Cominco Limited data, and pertained to Teck Cominco Alaska Incorporated in the 2004 report; my 2008 report simply updates that equity cost number, which still applies only to Teck Cominco Alaska Incorporated.

*Id.* at 6. Dr. Kavanaugh further explains that while he used the same June 1, 1999 date to begin his *economic benefit* analysis in both the 2004 and 2008 reports, he used the 1999 date in 2004 and 1998 in his 2008 report for the *ability to pay* analysis. Kavanaugh dec. ¶9. As Dr. Kavanaugh explains,

> This has the effect of making that analysis more conservative, as 1998 was a less than average year of performance for Teck Cominco. Using the same starting year of 1999 as in my 2004 report, and updating it to the present with 2004, 2005 and 2006 data, Teck Cominco Alaska has a 71% chance of being able to afford a fine of $27 million. That is slightly higher than the 70% chance of paying a $27 million fine that I found in my 2008 update, which used the 1998 data as well, demonstrating the conservatism of my approach.

Id. The actual calculations using the 1999 starting date are included in the Kavanaugh dec., ¶10.

Thus, Teck Cominco's assertions as to the inadequacies or improprieties of Dr. Kavanaugh's updated expert report are simply wrong, and its Motion should be denied.

### III. PLAINTIFFS EXPERT REPORTS COMPLY WITH RULE 26(a)(2)(B) AND TECK COMINCO HAS BEEN PROVIDED WITH UPDATED CASE INFORMATION.

Teck Cominco also objects that Adams's experts Dr. Kavanaugh, Dr. Moran and Mr. Fucik have not disclosed a listing of any other cases in which they have testified as an expert at trial or by deposition within the preceding four years.[4] Motion at 6. With the exception of Mr. Fucik, whose

---

[4] While the Motion does not assert Mr. Fischer's updated report does not comply with Rule 26, for the record the Revised Expert Report of Randolph C. Fischer of January 2008 (Exhibit D to

PLAINTIFFS' OPPOSITION TO MOTION TO
STRIKE PLAINTIFFS' NEW EXPERT REPORTS        12

sole other case was omitted by an error of Adams's counsel and has since been provided to all defendants, this objection is unfounded.[5]  During the afternoon of February 19, 2008, plaintiffs counsel was informed by email that Teck Cominco and NANA were withdrawing this portion of their motion; as of the time of this filing (nearly 10 p.m.), however, counsel has seen no formal filing with the Court to this effect and so in an abundance of caution, makes the following argument.  If indeed Teck Cominco and NANA file a formal withdrawl of their motion as to the Rule 26 aspect, then Adams withdraws this argument.  Cole dec. ¶13.

### A. Dr. Kavanaugh's updated report includes a list of matters in which he has testified.

Dr. Kavanaugh states explicitly in his updated expert report that "Appendix A contains my resume *and a listing of trial and deposition testimony given since 1990*."  Exhibit E to Motion, Docket 219-5 at 4 (emphasis added).  Appendix A is an integral part of Dr. Kavanaugh's report and was timely served with the expert report on January 18, 2008.  Inexplicably, Teck Cominco has chosen to omit Appendix A in its submission of Dr. Kavanaugh's expert report to this Court.  *See* Docket 219-5.  Adams included Appendix A (Dr. Kavanaugh's resume) as an attachment to plaintiffs' Witness List [Docket 200] filed January 22, 2008, and respectfully directs the Court to pages 4-5 of that document [Docket 200-4], which list the 10 cases in which Dr. Kavanaugh has appeared as an expert at trial and the 32 cases in which he has testified as an expert at deposition since 1991.  Teck Cominco's objection is wholly misplaced.  As even a cursory examination of Dr. Kavanaugh's full expert report reveals, it fully complies with Rule 26.

### B. Dr. Moran's updated report includes a list of matters in which he has testified.

Dr. Moran's expert report likewise states in clear and specific language, *"I have testified at*

---

Torgerson dec., Docket 219-5) states, in pertinent part, under the heading "Other Cases," that "Mr. Fischer has not worked on other cases as an expert witness in the past 4 years." Exhibit D at 14.

[5]The picayune – and simply wrong – objections that Teck Cominco lodges here are perhaps the reason that Rule 37 requires that the moving party in good faith confer with the other side before filing a motion to compel: "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed.R.Civ.P. 37(a)(1). Had Teck Cominco complied with this simple requirement of Rule 37 before filing its motion, Adams's counsel would have been happy to point out where in the expert reports the cases were listed, and provide the one missing case for Mr. Fucik.

*trial or by deposition in the cases listed in my resume, attached.*" Exhibit B to Motion, Docket 219-3, at 43 (41 in the original pagination) (emphasis added).  Just as with Dr. Kavanaugh's resume, Teck Cominco has chosen not to include Dr. Moran's resume as part of its exhibit, although it was timely served as a part of Dr. Moran's expert report on January 18, 2008.  That resume lists, in relevant part, in addition to the KRPC litigation, the only other case in which Dr. Moran has appeared as an expert in the past four years: "Meyers, Nave, Riback, Silver & Wilson/City of Grass Valley, California.  Technical and litigation support in a suit alleging contamination by Newmont Mining Corporation; deposition testimony."  Docket 200-1, at 2.  Because this reference may not have been clear to defendants, Adams's counsel provided all defendants with the case citation when they requested it.  Cole dec. ¶14.

With Mr. Fucik's expert report, the name of the single case Mr. Fucik testified in was inadvertently omitted because of an error of counsel.  It was provided to defendants promptly when this oversight was brought to Adams's attention.  Cole dec. ¶14.

In short, Teck Cominco's Rule 26 objections misplaced.  The required data was either already included (Dr. Kavanaugh and Dr. Moran), or was quickly provided when the omission was pointed out to Adams (Mr. Fucik).  Because any error either didn't exist or has been cured, Teck Cominco's motion should be denied.

**IV.  TECK COMINCO SHOULD BE SANCTIONED FOR THE DISCOVERY ABUSES THIS MOTION EXEMPLIFIES.**

This motion is frivolous.  It seeks to penalize plaintiffs for using the late-disclosed documents in their updated expert reports.  It has entailed more than 30 hours of Adams's attorney time to respond to.  It has taken precious attorney time away from preparing substantively for this case, such as working on the reply in support of the motion for summary judgment (due February 21) and the plaintiffs' trial brief (due February 26).  Teck Cominco and NANA should be sanctioned for this discovery abuse.

When Adams first recieved this motion, Adams's counsel spoke with NANA's counsel, Jim Torgerson, on January 31, 2008 to point out that the expert reports were based on the late-disclosed documents and thus that the motion had no merit.  Cole dec. ¶15.  Adams's counsel again spoke with Mr. Torgerson on February 19, 2008, and sent an email to Mr. Torgerson and Teck Cominco's

attorney, Sean Halloran, again requesting that the motion be withdrawn. Cole dec. ¶15. Despite this invitation, Teck Cominco refused to withdraw the motion. As noted above, Teck Cominco and NANA agreed via email to withdraw the Rule 26 portion of the motion (Section C on page 6, docket 218), but Adams has not seen a formal filing memorializing this withdrawal. Cole dec. ¶13.

Adams respectfully requests leave to file a motion for the attorneys fees and costs it expended in responding to this Motion, to be jointly levied against Teck Cominco and NANA for bringing the frivolous motion.

## V. CONCLUSION

As the foregoing demonstrates, each of Teck Cominco's objections are unsupported, unfounded or simply wrong. The Motion to Strike should be denied.

Respectfully submitted this 19th day of February, 2008.

                                                                     /S/ Luke Cole
                                                                     Luke Cole
                                                                     Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February 2008, a true and correct copy of the foregoing Response to Motion to Strike was served, via electronic mail, on the below identified parties of record:

Sean Halloran
Hartig Rhodes
717 K Street
Anchorage, AK 99501

Nancy S. Wainwright
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, Alaska 99515-3538

PLAINTIFFS' OPPOSITION TO MOTION TO
STRIKE PLAINTIFFS' NEW EXPERT REPORTS    15

James E. Torgerson
Heller Ehrman White & McAuliffe LLP
510 L Street, Suite 500
Anchorage, Alaska 99501-1959

David S. Case
Landye Bennett Blumstein LLP
701 W. 8th Ave., Suite 1200
Anchorage, AK 99501

Thane Tienson
Landye Bennet Blumstein
1300 Southwest Fifth Ave, Suite 3500
Portland, OR 97201

_____/S/ Luke Cole_____

Luke Cole