LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty & the Environment
47 Kearny St, Suite 804
San Francisco, CA 94108
415/346-4179 • fax 415/346-8723

NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515-3358
907/345-5595 • fax 907/345-3629

Attorneys for Plaintiffs Enoch Adams, Jr., Leroy
Adams, Andrew Koenig, Jerry Norton, David
Swan and Joseph Swan

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON DAVID SWAN and JOSEPH SWAN, <br><br> Plaintiffs, <br><br> v. <br><br> TECK COMINCO ALASKA INCORPORATED <br><br> Defendant. <br><br> NANA REGIONAL CORPORATION and NORTHWEST ARCTIC BOROUGH, <br><br> Intervenors-Defendants. | Case No. A04-49 (JWS) <br><br> DECLARATION OF <br> DR. MICHAEL KAVANAUGH |

I, Michael Kavanaugh, declare:

1. I am over 18 years of age and not a party to this action. I have been retained by the plaintiffs' counsel to serve as an expert witness on the economic benefit Teck Cominco Alaska Incorporated ("Teck Cominco") gained from non-compliance with its NPDES permits and its ability to pay a penalty.

2. I submitted a list of my testimony since 1990 with my original expert report in 2004 and with my updated expert report in 2008. This identification of my prior testimony at both trial and deposition is in my curriculum vitae, which was attached to, and a part of, each expert report.

3. In my original expert report, produced in December 2004, I estimated the benefit Teck Cominco gained from alleged violations at its Red Dog Mine. I am informed and believe that Teck Cominco is a wholly-owned subsidiary of Teck Cominco Limited. In the text of my report I referred to the parent company, Teck Cominco Limited, as the recipient of the gain (or economic benefit) much like someone would say a parent receives the gain given to a child. If there was a data gap in the financial material available on Teck Cominco, in the 2004 report I used information from Teck Cominco Limited to plug the gap.

4. The District Court determined that it was improper to refer to Teck Cominco's economic benefit as received by Teck Cominco Limited, and in my updated expert report of 2008 I was careful not to use Teck Cominco Limited interchangeably with Teck Cominco, or to use any data at all from Teck Cominco Limited.

5. In updating my report, I read the Court's summary judgment decision (on TDS) and took into account the findings that it made as to liability. I extended my economic benefit estimate from August 2003 to June 2004, and included violations during the Arctic Grayling spawning season in 2005, 2006 and 2007. I did so because I believe this is what an update is supposed to do, that is, incorporate new information that is relevant to the decisions the Court must make.

6. In constructing an economic benefit analysis, most of the inputs are independent of the ownership structure of the company involved. The cost data has nothing to do with the parent or child company. The dates of violation used for calculating benefit have nothing to do with the

parent or child company. The measures of price change (inflation) have nothing to do with the parent or child. The taxes used have nothing to do with the parent or child because I used the statutory limits of U.S. and Alaska taxes in both analyses. In my examination of economic benefit I looked at the opportunity costs in two ways, the equity rate and the weighted average cost of capital (WACC). For the first of these, the equity rate, which I explicitly favored in my 2004 report, has nothing to do with the parent or the child company. The second, WACC, is the one place in my 2004 report where I used Teck Cominco Limited data for the economic benefit analysis. All of the other parts of the economic benefit analysis, and its conclusions, are independent of the identity of the company and applied in my 2004 and 2008 reports to Teck Cominco Alaska Incorporated. My opinions in my 2004 expert report that refer to the equity cost of capital were not based on Teck Cominco Limited data, and pertained to Teck Cominco Alaska Incorporated in the 2004 report; my 2008 report simply updates that equity cost number, which still applies only to Teck Cominco Alaska Incorporated.

       8. In my original 2004 report and my 2008 updated report I used the date of June 1, 1999 to begin my *economic benefit* analysis.

       9. In my 2004 report, I used 1999 as the beginning year for the *ability to pay* analysis. In my 2008 report, I used 1998 as the beginning date for the ability to pay analysis. This has the effect of making that analysis more conservative, as 1998 was a less than average year of performance for Teck Cominco. Using the same starting year of 1999 as in my 2004 report, and updating it to the present with 2004, 2005 and 2006 data, Teck Cominco Alaska has a 71% chance of being able to afford a fine of $27 million. That is slightly higher than the 70% chance of paying a $27 million fine that I found in my 2008 update, which used the 1998 data as well, demonstrating the conservatism of my approach.

////

////

////

////

DECLARATION OF DR.
MICHAEL KAVANAUGH                      3

10. My actual data for the 2008 update, without the 1998 data, is below. This table is based solely on Teck Cominco Alaska Incorporated data.

| Year | Reported ($,000s) | Constant 2008 $ ($,000s) |
|---|---|---|
| 1999 | 69,402 | 82,942 |
| 2000 | 71,917 | 84,262 |
| 2001 | 1,555 | 1,786 |
| 2002 | 77 | 87 |
| 2003 | 36,078 | 39,833 |
| 2004 | 167,411 | 181,211 |
| 2005 | 246,564 | 261,656 |
| 2006 | 751,561 | 781,924 |
| Mean |  | 179,213 |
| Standard Deviation |  | 259,488 |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of February at San Francisco, California.

/s/ Dr. Michael Kavanaugh

DECLARATION OF DR.
MICHAEL KAVANAUGH                        4