JAMES E. TORGERSON (Alaska Bar No. 8509120)
YVONNE LAMOUREUX (Alaska Bar No. 0512124)
HELLER EHRMAN LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone: (907) 277-1900
Facsimile: (907) 277-1920
jim.torgerson@hellerehrman.com

Attorneys for Intervenor
NANA REGIONAL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON, DAVID SWAN and JOSEPH SWAN,<br><br>       Plaintiffs,<br><br>       v.<br><br>TECK COMINCO ALASKA INCORPORATED,<br><br>       Defendant,<br><br>NANA REGIONAL CORPORATION, and NORTHWEST ARCTIC BOROUGH,<br><br>       Intervenor-Defendants. | Case No.: A:04-cv-0049 (JWS)<br><br>**JOINT RESPONSE TO PLAINTIFFS' PENALTY WITNESS OBJECTIONS AT DOCKETS 225 and 227** |

## I.   INTRODUCTION

In their Objections to Teck Cominco's Penalty Witness List and Motions in Limine to Exclude Witnesses for Failure to Adequately Specify Testimony[1] and their Objections to Teck Cominco's Penalty Phase Witness List and Motions in Limine to Exclude Witnesses and Evidence that is Not Relevant[2], Plaintiffs ask the Court to

---

[1] Doc. 225.

[2] Doc. 227.

prohibit more than three-fourths of Teck Cominco's and NANA's penalty witnesses from testifying at trial, even though they were all listed on the preliminary witness lists.

Plaintiffs' argument throughout both briefs is fundamentally that the witnesses should be excluded on relevance grounds, either because the description of the witnesses' testimony is not specific enough to show relevancy[3] or because the disclosed testimony allegedly is not relevant.[4] For that reason, Teck Cominco and NANA oppose the two motions in this one response. To assist the Court in its review of Plaintiffs' objections to the remedy phase witnesses as well as the liability phase witnesses,[5] Teck Cominco and NANA have prepared a chart listing all their witnesses to whom Plaintiffs have objected, Plaintiffs' objections, and a summary of Teck Cominco's and NANA's responses including the statutory penalty factors to which liability witnesses' testimony is relevant.[6]

Because the witnesses' testimony is relevant and the descriptions of their testimony include sufficient information to give Plaintiffs an adequate basis for developing cross-examination, Plaintiffs' motions should be denied.

## II. LEGAL STANDARD

The Court ordered the parties to exchange witness lists that include disclosure of testimony expected to be elicited at trial.[7] The disclosure must be "specific and not general, the purpose being to avoid surprise and delay at trial and to give opposing counsel an adequate basis for developing cross-examination."[8]

Federal Rule of Civil Procedure 37 authorizes witness preclusion for failure to

---

[3] Doc. 225.
[4] Doc. 227.
[5] See Doc. 211, 221.
[6] Exhibit 1, Chart.
[7] Doc. 177 at 3.
[8] *Id.*

JOINT RESPONSE TO PLAINTIFFS' PENALTY WITNESS OBJECTIONS AT DOCKETS 225 AND 227
ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)
PAGE 2 OF 17

comply with a court order or for failure to disclose information required by Rule 26.[9] But before imposing sanctions for discovery violations under Rule 37, Local Rule 37.1 requires a court to consider a number of factors:

1. the nature of the violation, including the willfulness of the conduct and the materiality of the information the party refused to disclose;

2. the prejudice to the opposing party;

3. the relationship between the information the party refused to disclose and the proposed sanction;

4. whether a lesser sanction would adequately protect the opposing party and deter other discovery violations; and

5. other factors deemed appropriate by the court or required by law.[10]

If a party fails to obey a scheduling or other pretrial order, the court may issue any "just" sanction under Rule 16(f) of the Federal Rules of Civil Procedure.[11] Rule 16(f) incorporates the remedies authorized by Rule 37(b)(2)(B), (C), (D). But sanctions are precluded unless a party in fact failed to comply with an order.[12]

### III. ANALYSIS

Teck Cominco and NANA timely filed their list of penalty witnesses, together with a description of the witnesses' testimony.[13] Plaintiffs ask for the severe sanction of

---

[9] FRCP 37(b)(2)(B); FRCP 37(c)(1).

[10] D. Ak. LR 37.1; *see also Price v. Seydel*, 961 F.2d 1470, 1474 (9th Cir. 1992) (holding that factors a court should consider in determining whether to admit the testimony of unlisted witnesses include: (1) the possibility of prejudice or surprise to the other party, (2) the ability of the other party to cure the prejudice, (3) the extent to which waiver of the rule against calling unnamed witnesses would disrupt the orderly and efficient trial of the case, and (4) bad faith or willfulness in failing to comply with the court's order.).

[11] FRCP 16(f).

[12] *See* FRCP 16(f) ("If a party or party's attorney fails to obey a scheduling or pretrial order …"); FRCP 37(b)(2) ("If a party … fails to obey an order …").

[13] Doc. 198, Doc. 203.

preclusion of Teck Cominco's and NANA's penalty witnesses based on relevance grounds.

Plaintiffs argue that most of Teck Cominco's and NANA's remedy witnesses should be precluded from testifying at trial for the following reasons: (1) the descriptions of 11 witnesses' testimony are not sufficiently specific;[14] (2) the descriptions of 57 witnesses' testimony do not list the specific statutory penalty factors about which they will testify[15]; (3) testimony regarding the conditions at Kivalina and near the Mine are not relevant[16]; (4) testimony regarding the Mine processes and water treatment systems are not relevant[17]; and (5) testimony from lab personnel is not relevant.[18] In fact, the descriptions of the witnesses' testimony include enough information to give Plaintiffs an adequate basis for developing cross-examination and their testimony is relevant to the statutory penalty factors.[19] Preclusion of these witnesses is not warranted.

### A.   The Descriptions of Witness Testimony Are Sufficient.

The descriptions of witness testimony in Teck Cominco's and NANA's remedial witness list provide sufficient information to provide Plaintiffs an adequate basis for developing cross-examination.

### 1.   The Descriptions Of The 11 Witnesses Plaintiffs Specifically Challenge Are Sufficiently Specific.

Plaintiffs' attacks on the sufficiency of the descriptions of the testimony offered

---

[14] Doc. 225 at 2.
[15] Doc. 225 at 9.
[16] Doc. 227 at 3-7.
[17] Doc. 227 at 7-11.
[18] Doc. 227 at 11-16.
[19] Teck Cominco and NANA have attempted to predict each witness's trial testimony, but to a certain extent a defense witness's testimony will depend on the evidence Plaintiffs' present at trial. The Plaintiffs' evidence will influence which defense witnesses and facts are in fact relevant.

by 11 specific witnesses all lack merit. With respect to Kathleen Willman, for example, the plaintiffs' assert that the description is inadequate because "Adams is unaware of what 'water balance issues' are". This is not a credible claim. The plaintiffs are well aware that Teck Cominco produced a memo regarding the Red Dog Water Balance Study in this case. It was attached to Teck Cominco's comments on the Draft 2007 NPDES Mine Permit (TC 037777 RD - TC 037783 RD) on November 14, 2006.[20] Further, the plaintiffs are necessarily very familiar with Red Dog's water balance in light of their appeal from the 2007 Mine NPDES permit. Teck Cominco discussed water balance extensively in its Petition responding to the plaintiffs' EAB Appeal filed April 6, 2007.[21] The State similarly addresses water balance in Trial Exhibit 1007, the § 401 Certification of the 2007 permit from which the plaintiffs appealed. Moreover, the plaintiffs produced numerous documents to Teck Cominco in this case that deal specifically with water balance. [E.g. bates 002489-2490).[22]] In addition, questions regarding water balance were raised by counsel for the plaintiffs during the deposition of Mark Thompson. [Thompson 3/5/05 Depo. at 205, 208-209.[23]] Mr. Thompson also provided a definition of water balance in his 10/3/05 Affidavit Regarding TDS which is on file with this court at Docket 100.[24]

The plaintiffs assert that Mr. Brown should be stricken because American Meteorburst is not referenced in any trial exhibits. In fact, however, that company is referenced in Trial Exhibit 1652 at page 7. As well, it has been discussed in several documents filed in this case and in the KRPC case.[25] The plaintiffs argue a lack of relevance in asserting that "none of the violations Adams will prove at trial . . . involve

---

[20] Davis Decl. Attachment 4.
[21] Davis Decl. Attachment 5.
[22] Davis Decl. Attachment 1.
[23] Davis Decl. Attachment 2.
[24] See ¶ 37 at p.14 [Davis Decl. Attachment 3.]
[25] E.g. Docket 100.

JOINT RESPONSE TO PLAINTIFFS' PENALTY WITNESS OBJECTIONS AT DOCKETS 225 AND 227
ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)
PAGE 5 OF 17

auto-monitoring equipment or in-stream conductivity". If this is true, the plaintiffs should be required to dismiss, at a minimum, their Mine COBC claims at Station 7 on July 27, 1999, July 25, 2001, August 27, 2001, August 28, 2001, August 29, 2001, and at Station 10 on July 1-9, 14-5, 17-8, 1999 (11 violations alleged), September 12, 1999, October 1, 1999, October 5, 1999, June 22-28, 2000, July 5-6, 8, 11, 2000, July 7, 2000, May 28, 29 2002, June 3, 6, 2002 and June 24, 2002. Equipment used by Teck Cominco, including that obtained from American Meteorburst, is relevant to many of the claims. Testimony regarding it will enlighten the court with respect to various of the statutory factors, including the seriousness of a violation, the economic benefit, the history of such violations, the good faith efforts to comply with permit requirements, and numerous other factors as may be required by justice. If, on the other hand, the Plaintiffs intend to proceed with those claims, Teck Cominco should be allowed to present its relevant witnesses.

Similarly, the Plaintiffs object to Mr. Horner on the grounds that they have no knowledge of the work performed by Ecology and Environment and "nothing other than the one sentence description with which to prepare for trial". In fact the relevant studies were produced to the plaintiffs as bates numbers TC 31640 RD to TC 31744 RD.[26] Contrary to the suggestion of the plaintiffs, Teck Cominco is not obligated to make them trial exhibits when it will produce the testimony of Mr. Horner.

The plaintiffs' attack on Joyce Tsuji with respect to work performed by Exponent is unjustified. The plaintiffs are familiar with the studies performed by Exponent. They have the studies and know that they address marine life and also evaluate caribou. As well, Ms. Tsuji was asked numerous questions about the work of Exponent in her deposition.[27] The plaintiffs are aware that if they put on testimony regarding the issues addressed by Exponent, Teck Cominco will rebut their testimony with the testimony of

---

[26] Davis Decl.

[27] Davis Decl.

1 Ms. Tsuji.

2 The plaintiffs' assertion that the description of Mr. Lackey's testimony is too broad is similarly unjustified. If the plaintiffs raise an issue at trial that reflects on Teck Cominco's laboratory facilities, and Teck Cominco and NANA expect that is likely to happen, Mr. Lackey will be available to respond. At a minimum, questions involving what laboratories are in existence, what functions they perform, what their cost was and is, why the company chose to have them, and what role they may have played over the years are likely to be tangential to subjects raised by the plaintiffs in the remedial phase. Until the plaintiffs have presented their case, however, all that Teck Cominco and NANA can say with certainty is that Mr. Lackey will address issues involving the Teck Cominco laboratory facilities.

Mr. Chapman will discuss "the effect of mine effluent on fish and other aquatic life". In doing so, he will undoubtedly touch on the subjects of "toxicology, TDS, and WET" because each is involved in any discussion of the effect (or lack thereof) of the mine's effluent on those organisms living or unable to live in the receiving waters. As with all of Teck Cominco's and NANA's witnesses, Mr. Chapman's testimony will in some measure be dependent upon the testimony to be offered by the plaintiffs. Even so, the description is very specific and needs no further explanation. To the extent that the plaintiffs complain that they don't know if this testimony will have anything to do with Red Dog Mine, their assertion borders on the ludicrous.[28] It is, afterall, Red Dog Mine that is the subject of this lawsuit.

According to the plaintiffs, "weather conditions at Red Dog do not pertain to claims", and Mr. Schierman should be stricken as a result. A review of the many papers filed with this court proves otherwise. Weather is a significant factor affecting every aspect of operations in the arctic. It governs whether the rivers and streams were frozen at times when the plaintiffs complain that Teck Cominco should have obtained samples

---

[28] See also Trial Exhibits 1653 and 1654.

from free-flowing water. It governs whether helicopters and planes are able to be put into service to timely obtain and deliver samples to labs. (Weather prevented the shipment of samples in April 1999, May 8, 2000, May 29, 2000 and February 4, 2001 for BOD & fecal coliform, for example.) It governs many of the conditions that dictate what processes will or won't work in such a harsh environment as is found at Red Dog. It governs the water balance that is so critical to every facet of mine discharge. Every statutory factor that this court will consider in assessing a penalty involves elements that are, at a minimum, affected by weather. The description of Mr. Schierman's testimony is both relevant and specific.

The plaintiffs claim that they cannot be sure if Mr. Stubblefield will testify as to the Whole Effluent Toxicity of Red Dog Mine's effluent, or some tool for internet web pages. This is not a serious argument. The description given may be short, but it is very specific.[29]

As for Mr. Stanoway, the plaintiffs know who he is and where he works, and that his work involves such things as Trial Exhibits 1342 and 1231. They similarly know of Mr. Lundberg's involvement in alleged port violations as well as his work with respect to TIE/TRE at Red Dog. As with other defense witnesses, the degree to which their testimony will be more general or more specific will have to depend upon what the plaintiffs offer in the way of evidence at trial. Either way, however, there are no surprises here for the plaintiffs. Rather, it is Teck Cominco and NANA who have to await the plaintiffs' surprises, especially since some of the claims that Mr. Stanoway's testimony will relate to are the recently added claims about which Teck Cominco and NANA have had absolutely no opportunity to conduct discovery. The subjects of these witnesses' testimony are specified, and are consistent with the many disclosures made by the defendants in this case.

Mr. Weakley will testify as to "the chemistry and treatment of Red Dog Water".

---

[29] See also Trial Exhibits 1011, 1021, 1041, 1045 and 1116.

The plaintiffs are well aware that any water source (including Red Dog effluent) has a unique chemistry, and they are familiar with the fact that Red Dog treats its water. Moreover, they know that Mr. Weakley is familiar with all aspects of the treatment process and purposes at the mine. (The plaintiffs are also familiar with testimony he has given in this case regarding certain aspects of his work involving cadmium.)[30] The Plaintiff's claim otherwise is not credible.

### B. Reference to the statutory penalty factors is not required

As to 57 of Teck Cominco's and NANA's remedy phase witnesses, Plaintiffs assert that without reference to the statutory penalty factors, it is "difficult for Adams to determine what information the witness will present."[31] However, the Court's Order did not specify that one of the statutory penalty factors should be associated with each witness. The information provided in the witnesses' description of testimony gives Plaintiffs an adequate basis for developing cross-examination and determining the statutory penalty factors associated with each witness. Nonetheless, even though the current descriptions satisfy the Court's Order, Teck Cominco and NANA have supplemented their initial disclosure to identify specific statutory factors for each remedy phase witness.[32]

The descriptions of witness testimony are sufficient to allow Plaintiffs to prepare their cross-examination, and Plaintiffs' motions should be denied.

---

[30] See, e.g. Weakley declarations of April 2 and June 6, 2005, on file with this court

[31] Doc. 225 at 1.

[32] Exhibit 1, Chart.

C.  **The Witnesses' Testimony is Relevant**

If the Court finds a violation of the Clean Water Act, civil penalties are mandatory.[33] But the Court has substantial discretion in setting the amount of penalties.[34] To determine the amount of penalties, the Court must consider six factors: (1) the seriousness of the violation; (2) any economic benefit resulting from the violation; (3) any history of such violations; (4) the good-faith efforts to comply with the applicable requirements; (5) the economic effect of the penalty on the violator; and (6) such other matters as justice may require.[35]

The "seriousness of the violation" statutory factor also is known as the "gravity component."[36] EPA's Interim Clean Water Act Settlement Penalty Policy divides the gravity component into four factors: (1) significance of the violation; (2) health and environmental harm; (3) number of effluent limit violations; and (4) significance of non-effluent limit violations.[37] The health and environmental harm factor is for violations that "present actual or potential harm to human health or to the environment."[38]

How all these factors are applied in determining a remedy is left to the Court's discretion. The Ninth Circuit Court of Appeals repeatedly has held that the district court has broad discretion in deciding on a remedy.[39] Any testimony going to any of these

---

[33] 33 U.S.C. § 1319(d); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995).

[34] *Leslie Salt*, 55 F.3d at 1397 ("District courts retain the broad discretion to set a penalty commensurate with the defendant's culpability. Indeed, in its consideration of the seriousness of a defendant's violations and 'such other matters as justice may require,' the district court could assess a civil penalty of only a nominal amount."); *Borden Ranch Partnership v. U.S. Army Corps of Engineers*, 261 F.3d 810, 818 (9th Cir. 2001).

[35] 33 U.S.C. § 1319(d).

[36] EPA, Interim Clean Water Act Settlement Penalty Policy (March 1, 1995) at 6.

[37] *Id.*

[38] *Id.* at 8-9.

[39] *Borden Ranch Partnership*, 261 F.3d at 818; *Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985, 1001-02 (9th Cir. 2000); *Leslie Salt*, 55 F.3d at 1397.

factors therefore is relevant, and potentially helpful to the Court in exercising its discretion, as to the appropriate remedy in this case. Plaintiffs agree that "evidence that touches on these penalty factors would be relevant."[40]

### 1. Conditions at Kivalina and Near the Mine are Relevant to at least the Seriousness and Good Faith Efforts Factors.

Plaintiffs assert that testimony from defense witnesses regarding conditions, including regarding subsistence resources and drinking water, at Kivalina and elsewhere in the Wulik River watershed is not relevant.[41] Plaintiffs object to 27 defense witnesses on this basis.[42] Plaintiffs apparently believe, however, that such evidence if offered by the Plaintiffs' witnesses is relevant. They state that they intend to offer testimony as to conditions in Kivalina because it is relevant to the seriousness and duration of violations statutory factors.[43]

Just as such testimony by Plaintiffs' witnesses is relevant, so is it relevant when offered by defense witnesses. Each of the 27 witnesses' testimony is relevant, at a minimum, to the seriousness or gravity factor the Court must consider in determining the remedy. The testimony is relevant to this factor, in part, because it will provide information about baseline conditions for water quality and environmental status in and around Kivalina before the mine began operating. The testimony also will show that the violations about which Plaintiffs complain have caused no harm to health or the environment. For instance, Bert Adams, Sr., Theodore Booth, and Raymond Hawley are residents of Kivalina and are "expected to testify regarding [their] observations of the availability, location, quantity and quality of subsistence resources over the years near

---

[40] Doc. 227 at 3.

[41] Doc. 227 at 3-5.

[42] Doc. 227 at 3-7.

[43] Doc. 227 at 3, n.1. Plaintiffs' descriptions of the testimony of Jerry Norton, Joseph Swan, Andrew Koenig, and Enoch Adams, are almost identical and indicate that each of them will testify regarding subsistence resources and drinking water. Doc. 200 at 3-4, 7.

and around Kivalina."[44] They, like Mr. Pannone, Mr. Peterson and Ms. Tsuji, are also expected to testify regarding their observations on issues related to the drinking water in Kivalina. Roland Booth, a resident of Noatak and member of the Red Dog Mine Subsistence Council, is expected to offer testimony regarding "his observations of the availability, location, quantity and quality of subsistence resources over the years near and around Kivalina."[45] This testimony will aid the Court in determining an appropriate remedy.

Similarly, the testimony of State of Alaska and EPA employees including Scott Arnold, Jim Dau, Alfred DeCicco, Lee Johnson, Al Ott, John Middaugh, Craig Paulsen, and Phyllis Weber-Scannell, like that of Mr. Shock, will be relevant to the seriousness or gravity factor. Their testimony will be relevant to whether the Mine has had any impact on health or the environment and will establish various baseline conditions for water quality and the environment in and around Kivalina.

Some of the witnesses' testimony also will show Teck Cominco's good faith efforts to comply with applicable regulatory requirements and/or will be relevant to the significance of any non-effluent limit violations. For example, Rose Barr, Chuck Greene, Walter Sampson, and Robert Sheldon are expected to testify about efforts to protect the region's subsistence resources. Specifically, Robert Sheldon may "testify regarding efforts made by Teck Cominco to protect subsistence resources within the region and to protect the quality of the water into which the mine discharges."[46]

Why the plaintiffs classify Mr. Brown with other witnesses that the plaintiffs have placed in this category is unknown. As the plaintiffs know, and as the motion practice in this case and the earlier KRPC litigation long ago established, Meteorburst equipment was used to measure TDS in Teck Cominco's effluent, and was the cause of various

---

[44] Doc. 203 at 2, 13.

[45] Doc. 203 at 2.

[46] Doc. 203 at 13.

alleged violations. Mr. Brown's testimony regarding auto-monitoring equipment and in-stream conductivity is relevant to the statutory factors of economic benefit, history of violations, seriousness of violations, good faith efforts to comply, and other factors required by justice.

The descriptions of these witnesses' testimony establish that their testimony is relevant to a number of statutory penalty factors including seriousness and good faith efforts to comply.

### 2. Testimony About Mine Processes and Water Treatment Systems Is Relevant.

According to the plaintiffs, Mike Schierman should not be permitted to testify at the penalty phase of trial because the plaintiffs believe that his testimony is irrelevant to the liability phase. While his testimony affecting such defenses as force majeur clearly is relevant at the liability phase, his testimony is also relevant to the penalty phase, in that the subjects upon which he will give testimony will shed light on such factors as the seriousness of a violation, the economic benefit, the history of such violations, the good faith efforts to comply with permit requirements, and numerous other factors as may be required by justice.

As to Mr. Napier, the plaintiffs concede his testimony is relevant, but they wish him stricken anyhow. Mr. Napier is a witness who is going to testify as to varied violations that the Plaintiffs recently added to this case, and about which they have not produced one shred of evidence. Accordingly, Mr. Napier will be responding to whatever it is the Plaintiffs present at trial. As to the new claims, and with respect to the remedy phase of trial, Mr. Napier's testimony will be relevant to each of the statutory factors that the court will consider when determining what penalty to ultimately impose.

As for the remainder of the witnesses that the Plaintiffs object to under this category, Mine Processes and Water Treatment Systems, the relevancy to the statutory factors is obvious. The plaintiffs have made clear that they will assert that Teck Cominco should have adopted or refrained from adopting various processes and

treatment systems. Teck Cominco will refute the plaintiffs' testimony in this regard with the testimony of witnesses Hall, Hinsbergen, key, Koon, Lundberg, Malone, Martinisko, and others, and will establish why it adopted that which it did, and why it didn't adopt that which it didn't. All of this runs to the statutory factors of economic benefit, history of violations, seriousness of violations, good faith efforts to comply, potential economic impact of penalties, and other factors required by justice.

### 3. Testimony from Lab Personnel Is Clearly Relevant.

The Plaintiffs claim ignorance regarding how the testimony of witnesses working in or with the various laboratories could be relevant to the remedy phase of the trial, and further assert that even if those individuals' testimony is relevant, lab reports are an adequate substitute for their testimony, such that the witnesses should be stricken as redundant. At the same time, the plaintiffs assert that other witnesses must not be relevant because there are NOT any trial exhibits that could substitute for their testimony. The plaintiffs' assertion is absurd. In this regard, they ignore entirely the fact that laboratory procedures are neither developed nor applied in a vacuum. They ignore the fact that laboratory results do not disclose what steps Teck Cominco may have taken to ensure that it fully complied with the varied requirements of its permits when selecting labs, developing protocols or having them developed on its behalf, or ensuring that the best science was applied. Nor can any lab datum found in an analytical report be relied upon to reveal whether it is unreliable as a result of the application of some mandated procedure that simply doesn't work when applied to the very complex water that is Red Dog Creek and/or the effluent that flows into it. Similarly, it is lab personnel, and not lab results, who can testify as to the availability and viability of the procedures and processes that determine whether there has been an economic benefit. The plaintiffs' feigned ignorance does not diminish the fact that the seriousness of a violation, the economic benefit, the history of such violations, the good faith efforts to comply with permit requirements, and numerous other factors as may be required by justice may each be

revealed through the testimony that will be offered by these witnesses on the subjects identified in their descriptions. All of these witnesses were long ago disclosed. All their labs and their respective role relative to the issues of this case have long been known by the plaintiffs. Their subjects of their testimony were adequately specified. As to witnesses Barkey, Brown, Capps, Chapman, DeForest, Dryden, Eide, Homer, Lackey, Patton, Prieve, Pillard, Stanoway, Stubblefield, and Weakley, each should be permitted to testify at trial.

### D.   Sanctions are Not Warranted

Plaintiffs ask the Court to prohibit more than three-quarters of Teck Cominco's and NANA's remedy witnesses from testifying at trial. Because Teck Cominco's and NANA's timely filed witness list satisfies the Court's Order and because the witnesses' testimony is relevant, no sanctions are warranted. Even if the descriptions of the witnesses' testimony were not sufficiently specific, preclusion of the majority of Teck Cominco's and NANA's witnesses would not be a just sanction as required by Rules 16(f) and 37(b).

Looking to the factors courts consider before imposing sanctions for discovery violations demonstrates that preclusion of the witnesses is not warranted.

First, the nature of any alleged violation is minimal. Teck Cominco and NANA disclosed these witnesses on the preliminary witness lists and described the witnesses' proffered testimony in the final witness list. The information Plaintiffs seek now is not material in light of the descriptions already provided to Plaintiffs.

Second, Plaintiffs are not prejudiced by the descriptions that Teck Cominco and NANA provided in the final witness list. The descriptions provide sufficient information to allow Plaintiffs to prepare for cross-examination, which is still months away. Plaintiffs are not prejudiced or surprised by the inclusion of these witnesses on Teck Cominco's and NANA's final witness list. Further, the Plaintiffs complain they cannot determine which of the statutory factors witnesses' testimony will address. With this

response, Teck Cominco and NANA have addressed that complaint.

By contrast, Teck Cominco and NANA would be severely and unfairly prejudiced if they were prohibited from calling more than three-quarters of their witnesses.

## IV. CONCLUSION

Because the witnesses' testimony is relevant and the descriptions of their testimony include sufficient information to give Plaintiffs an adequate basis for developing cross-examination, Plaintiffs' motions should be denied.

Dated: February 19, 2008                Respectfully submitted,

HELLER EHRMAN LLP
Intervenor-Defendant
NANA REGIONAL CORP.

By _____/s/ James E. Torgerson_____
JAMES E. TORGERSON
YVONNE LAMOUREUX
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone: (907) 277-1900
Facsimile: (907) 277-1920
jim.torgerson@hellerehrman.com

Dated: February 19, 2008                Respectfully submitted,

HARTIG RHODES HOGE & LEKISCH
Defendant
TECK COMINCO ALASKA INCORPORATED

By _____/s/ Sean Halloran_____
SEAN HALLORAN

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing JOINT RESPONSE TO PLAINTIFFS' PENALTY WITNESS OBJECTIONS AT DOCKETS 225 AND 227 was served via the method indicated below this 19th day of February, 2008, on the following parties:

Luke W. Cole
Center on Race, Poverty & the Environment
450 Geary Street, Suite 500
San Francisco, CA  94102

Counsel for Plaintiffs
Served via:
☐ Facsimile  ☐ Regular U. S. Mail
☐ Hand Delivery  ☒ Electronic transmission

Nancy S. Wainwright
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK  99515-3538

Counsel for Plaintiffs
Served via:
☐ Facsimile  ☒ Regular U. S. Mail
☐ Hand Delivery  ☐ Electronic transmission

Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, AK  99501

Counsel for Defendant Teck Cominco
Served via:
☐ Facsimile  ☐ Regular U. S. Mail
☐ Hand Delivery  ☒ Electronic transmission

David S. Case
Landye Bennett Blumstein LLP
701 West 8th Avenue, Suite 1200
Anchorage, AK  99501

Counsel for Intervenor-Defendant Northwest Arctic Borough
Served via:
☐ Facsimile  ☐ Regular U. S. Mail
☐ Hand Delivery  ☒ Electronic transmission

_/S/ James E. Torgerson_
JAMES E. TORGERSON (BAR NO. 8509120)
HELLER EHRMAN LLP
510 L Street, Suite 500
Anchorage, AK  99501
Telephone:  907-277-1900
Facsimile:  907-277-1920
james.torgerson@hellerehrman.com

Heller Ehrman LLP
510 L STREET, SUITE 500
ANCHORAGE, AK  99501-1959
TELEPHONE (907) 277-1900

JOINT RESPONSE TO PLAINTIFFS' PENALTY WITNESS OBJECTIONS AT DOCKETS 225 AND 227
ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)
PAGE 17 OF 17