LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty, & the Environment
47 Kearny Street, Suite 804
San Francisco, CA, 94108
415/346-4179 • fax 415/346-8723

NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515-3538
907/345-5595 • fax 907/345-3629

Attorneys for Plaintiffs Enoch Adams, Jr., Leroy
Adams, Andrew Koenig, Jerry Norton and Joseph Swan

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA AT ANCHORAGE**

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON DAVID SWAN and JOSEPH SWAN,<br><br>Plaintiffs,<br><br>v.<br><br>TECK COMINCO ALASKA INCORPORATED<br><br>Defendant.<br>_____<br><br>NANA REGIONAL CORPORATION and NORTHWEST ARCTIC BOROUGH,<br><br>Intervenors-Defendants.<br>_____ | Case No. A04-49 (JWS)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF OF MOTION FOR SUMMARY ADJUDICATION OF FOUR LEGAL ISSUES** |

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  TECK COMINCO'S SUMMARY JUDGMENT STANDARD ARGUMENT
     IS NOT RELEVANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. TECK COMINCO IS LIABLE FOR ALL VIOLATIONS OF THE
     MONTHLY TDS PERMIT LIMITATION IF THE VIOLATIONS OF
     THAT LIMITATION ARE PROVEN TO BE ONGOING OR CAPABLE OF
     REPETITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   This Court can, and has, ruled on a portion of a claim at summary judgment . . . . . 2

     B.   There are no genuine issues of material fact as to the legal question at
          issue here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     C.   The 1998 permit limitation for monthly average TDS is still in place
          during Arctic grayling spawning season . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          1.   Teck Cominco's admissions in deposition testimony contradict
               its new litigation posture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          2.   The Compliance Order by Consent contradicts Teck Cominco's
               New litigation posture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.   Teck Cominco concedes Adams's argument by not responding to it . . . . . . . . . . . 6

III. TECK COMINCO CANNOT AVOID LIABILITY FOR THE VIOLATIONS OF
     PERMIT CONDITION I.A.1 FOR CYANIDE BY RELYING ON PERMIT
     CONDITION I.A.5.d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   Teck Cominco must comply with all of its cyanide permit conditions . . . . . . . . . . 8

     B.   Plaintiffs most certainly have not conceded that 9.0 ug/L is the
          enforceable standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.   Teck Cominco cannot challenge the 4 ug/L permit limit if it did not appeal it . . . . . 9

IV.  THE "SPLIT SAMPLE" DEFENSE IS CONTRARY TO THE STRICT
     LIABILITY REGIME OF THE CLEAN WATER ACT . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.   Whether or not Teck Cominco can use the split sample defense is a question
          of law that is appropriately decided at summary judgment . . . . . . . . . . . . . . . . . 11

     B.   Sierra Club I does not allow picking and choosing among lab results . . . . . . . . . 12

V.   TECK COMINCO MAY NOT IMPEACH ITS DMRS IN THIS ENFORCEMENT
     ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.  A VIOLATION OF A MONTHLY AVERAGE PERMIT LIMITATION IS

CONSIDERED A VIOLATION ON EACH DAY OF THE MONTH THE FACILITY DISCHARGED .................................................... 13

VII.     CONCLUSION .................................................................... 15

**I.     INTRODUCTION**

This Court granted Adams's request for leave to file a summary judgment motion on four strictly legal issues, which Adams filed on February 8, 2008. Docket 241. Teck Cominco now responds. Docket 257.[1]

Teck Cominco's arguments run the gamut from frivolous to irrelevant. At almost every turn they misrepresent facts and case holdings. As is explained in detail below, they should be rejected in their entirety. This Court should enter summary judgment for Adams on the four legal questions.

**II.    TECK COMINCO'S SUMMARY JUDGMENT STANDARD ARGUMENT IS NOT RELEVANT.**

Teck Cominco correctly notes the elementary notion that summary judgment must be denied if there are issues of material fact. Opp. at 2. This assertion and Teck Cominco's arguments in its "Summary Judgment Standards" section are simply not relevant here, where Adams is asking the Court to resolve four purely *legal* questions. Adams is entitled to judgment on these questions *as a matter of law*. Fed.R.Civ.P. 56(c).

**III.   TECK COMINCO IS LIABLE FOR ALL VIOLATIONS OF THE MONTHLY TDS PERMIT LIMITATION IF THE VIOLATIONS OF THAT LIMITATION ARE PROVEN TO BE ONGOING OR CAPABLE OF REPETITION.**

As Adams set forth in its Motion, Teck Cominco is liable for all violations of its monthly TDS permit limitation if Adams can prove the violations are ongoing or capable of repetition. Docket 241 at 2-4. Teck Cominco responds by 1) asserting that the Court cannot grant partial summary judgment; 2) asserting that there are issues of material fact; and 3) making the astonishing argument that the monthly average permit limitation of the 1998 permit is no longer in force during Arctic grayling spawning season. As demonstrated below, each of these arguments are unfounded – the first and third are in fact frivolous – and all three are contradicted by Teck Cominco's own filings in this case. Teck Cominco does not address the central issue here, which is that under Ninth

---

[1] Teck Cominco's Opposition was initially filed at Docket 254. In the "no good deed goes unpunished" category, when Adams pointed out to Teck Cominco (rather than to the Court) that filing a 33-page Opposition directly violated both the Court's Order of January 25, 2008 [Docket 206] – which instructed that the "parties must strictly adhere to the page limitations set out in the local rules" – and Local Rule 10.1(m), Teck Cominco filed a Notice blaming plaintiffs' counsel for the need to refile (Docket 256) and then refiled the Opposition as Docket 257.

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES   1

1  Circuit law, because Teck Cominco has violated the monthly average permit limitation for TDS
2  since the filing of this suit, and continues to do so, all of the earlier violations of that same,
3  numerically unchanged permit parameter are ongoing or capable of repetition.  This Court should
4  enter summary judgment for Adams on this question.

        **A.**        **This Court can, and has, ruled on a portion of a claim at summary judgment.**

6          Teck Cominco leads with a novel defense: that the Court cannot grant partial summary
7  judgment.  Opp. at 3-4.  According to Teck Cominco, "a motion 'that partitions a single claim for
8  relief into constituent parts and then seeks partial summary judgment on some but not all of the
9  constituent parts is not permitted.'"  Opp. at 3, quoting *Rubin v. Islamic Republic of Iran*, 408
10 F.Supp.2d 549, 552 (N.D. Ill. 2005).  This argument is frivolous.

11         Putting aside the fact that Teck Cominco itself has moved, *in this case*, for partial summary
12 judgment on "a portion of plaintiffs' claims" that would have resolved some, but not all, of a
13 particular claim,[2] the cases Teck Cominco offers do not apply here.  This is a motion brought under
14 Fed.R.Civ.P. 56(a), which states that "A party claiming relief may move, with or without supporting
15 affidavits, for summary judgment *on all or part of the claim*."

16         Teck Cominco's argument is wholly without legal foundation.  Perhaps that is why it must
17 travel back in time 25 years, and to the Northern District of Illinois, in an attempt to find support.
18 The primary case it offers, *Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 947 (N.D. Ill. 1981),
19 concerns a Rule 56(d) motion.  Had Teck Cominco read that case, it would have learned from that
20 Court that Rule 56(d) is "solely an adjunct to Rules 56(a) to (c) *under which a party may move for*
21 *summary judgment as to all or part of a claim*."  531 F.Supp. at 948 (emphasis added).  The other
22 cases in the string cite at Opp. 3 n.1, including *Rubin*, quoted above and also a Rule 56(d) case, are
23 similarly inapposite.[3]

---

[2]*See, e.g.,* Teck Cominco's "Motion for Summary Judgment Seeking to Dismiss a Portion of Plaintiffs' Claims Related to Monitoring and Reporting," Docket 44, filed April 4, 2005.

[3]Although the *Rubin* is inapposite as a Rule 56(d) case, it also supports Adams here.  Had Teck Cominco read *Rubin*, it would have learned from that decision that "Plaintiffs' motion for partial summary judgment is appropriate[.]" 408 F.Supp.2d at 551.  Rule 56(d) "is really no more

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES   2

It is obvious that this Court can, and has, ruled on portions of Adams's claims here. *See, e.g.* Docket 127 (ruling on Teck Cominco's motion on "a portion of plaintiffs' claims relating to monitoring and reporting violations"). The Court should reject Teck Cominco's argument and enter summary judgment for Adams on the first legal question.

**B.    There are no genuine issues of material fact as to the legal question at issue here.**

The legal question here is whether or not the monthly average TDS violations Teck Cominco has previously admitted that took place in months outside Arctic grayling spawning season are still considered ongoing or capable of repetition now that violations of that identical permit provision can (and do) occur only during Arctic grayling spawning season. Teck Cominco faults Adams for not demonstrating that there are no issues of material fact. Opp. at 4-5. This objection is misplaced: Adams has requested summary judgment on a legal question. Based on this Court's Order, Adams briefed only the four legal questions as the Court expressly instructed that the motion "shall not raise any additional issues." Docket 206 at 1. Teck Cominco cannot persuasively fault Adams for not briefing a factual question that the Court did not allow.

While Adams will demonstrate Teck Cominco's admissions of liability at trial, it is instructive to note that there are no disputed material facts regarding the monthly TDS violations underlying this Motion. Teck Cominco in its Answer [Docket 184] admits that it violated the monthly average permit limit in five months after this suit was filed. Adams's Supplemental Complaint (Docket 183) sets forth the allegation of monthly TDS violations:

> [¶] 73. Teck Cominco has violated permit condition I(A)(1)'s limits for monthly average for TDS in every month in which Teck Cominco discharges from Outfall 001. Teck Cominco violated its permit limits in May 1999, June 1999 . . . [etc.] ... May 2004, June 2004, May 2005, June 2005, May 2006, June 2006, May 2007 and June 2007.

Teck Cominco's Answer (Docket 184) **admits the violations in May 2004, May 2005, May 2006, May 2007 and June 2007**:

> 73. Teck Cominco denies the allegations of the first sentence of paragraph 73. Teck Cominco admits the allegations of the second sentence of paragraph 73 except as to alleged

---

than a pretrial adjudication, interlocutory in character, specifying certain issues to be 'deemed established' for trial." *Rubin*, 408 F.Supp.2d at 552.

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES    3

violations in October 1999, October 2000 and May 2001, and further denies the allegations as to June 2004, June 2005, and June 2006.

Docket 184 at 20, ¶73. Thus, the facts underlying Adams's legal question – that is, the ongoing nature of the monthly TDS violations after the March 2004 commencement of this suit – are not in dispute. The legal question is thus ripe for determination at summary judgment.

### C. The 1998 permit limitation for monthly average TDS is still in place during Arctic grayling spawning season.

Teck Cominco's final argument in the monthly TDS section is remarkable in its distance from reality: it argues that permit condition I.A.1 of the 1998 permit for monthly average TDS is no longer in place during Arctic grayling spawning season. Opp. at 6-9. This new position directly contradicts the testimony given by Teck Cominco's environmental coordinator at deposition, and directly contradicts the U.S. Environmental Protection Agency (EPA) and Teck Cominco's own representations in the 2006 Compliance Order by Consent. It is wholly unsupported by any legal authority and should be rejected.

Teck Cominco asserts that "the plaintiffs ask the court to presume that the average monthly limit from the 1998 permit still applies to discharges occurring during Grayling spawning season" and that "where the permit no longer requires compliance with the standard at issue, violations of that prior permit standard are no longer possible." Opp. at 6. It argues that "the monthly average TDS limit from 1998 no longer has any viability," *id*. at 8, and that "eliminating a permit condition eliminates the possibility of violating it." *Id*. Teck Cominco's new litigation position that the 1998 permit limitation is no longer in force during Arctic grayling season is simply wrong, and this Court should reject it as part of entering summary judgment for Adams.

#### 1. Teck Cominco's admissions in deposition testimony contradict its new litigation posture.

In the deposition of James Kulas, environmental superintendent of the mine, which was taken on May 31, 2005, more than a year after the filing of this suit, Mr. Kulas specified the permit limitations Teck Cominco believed applied to it during Arctic grayling spawning season:

> Q. What permit requirements currently apply to you in terms of TDS during the arctic grayling spawning season?

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES   4

A.  Current permit limits for arctic grayling during the spawning period are the permit conditions in the 1998 permit.[4]

These admissions at deposition are echoed by the admissions in Teck Cominco's Answer in this case, noted above in Section III.B; Docket 184 at ¶73.  Teck Cominco appears to have discovered its new posture that the 1998 permit is not in force during grayling spawning season solely for purposes of opposing this motion.  Its arguments as to the "fundamentally distinct" 1998 and 2003 permit conditions (Opp. at 8-9) are simply not relevant where the 1998 permit condition is still in place.  This Court should reject this transparent litigation tactic.

### 2. The Compliance Order by Consent contradicts Teck Cominco's new litigation posture.

In its various Compliance Orders by Consent (COBCs), Teck Cominco and the EPA have formalized their joint understanding of the relevant permit requirements applicable to the Red Dog mine.  Those legally-binding documents tell a different story than the one Teck Cominco asserts before this Court.  For example, the 2006 COBC states, at ¶2.7,

> In an appeal of the 2003 Modified Permit, the Environmental Appeals Board ("EAB") vacated the 500 mg/l TDS limit during Arctic grayling spawning, and remanded it to EPA Region 10 for further proceedings. . . . This stayed the effect of that limit pending further action by EPA, so during Arctic grayling spawning the TDS limits from the 1998 Permit (specified in ¶2.5) remained in effect.

Trial Exhibit 1002 at 3-4, ¶2.7.  Paragraph 2.5 specifies, in pertinent part, "Part I.A.1. of the 1998 Permit established an average monthly effluent limit of 170 mg/l[.]"  *Id*.  The COBC continues:

> 2.11.  On February 2, 2006, EPA issued for public notice, a draft NPDES permit for the Red Dog Mine ("2006 Draft Permit") . . . .  Because EPA Region 10 has not yet reissued the permit as of the date of this Order, **the 1998 Permit's original more stringent TDS limits, as set forth in Paragraph 2.5, remain the effective effluent limits during Arctic grayling spawning.**

*Id*. (emphasis added).  The 2006 Draft Permit never took effect and has been withdrawn by EPA.  Trial Exhibit 6 (Notice of Permit Withdrawl).  The 2006 COBC further states, "At times during the months of September 1998, May-October 1999, May-October 2000, May-October 2001, May-October 2002, May-August 2003, May-June 2004 and *May-June 2005*, Teck Cominco violated the

---

[4]Deposition of James Kulas, 178:21-179:4 (lodged January 22, 2008).  The follow-up question: "Q.  Are you complying with those permit conditions?  A.  No, we are not."  *Id*.

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES   5

1  TDS effluent limits in Part I.A.1 of the 1998 permit." Trial Exhibit 1002 at 5, ¶2.12 (emphasis

2  added). Teck Cominco "agreed and consented to" this COBC. *Id*. at 11.

3      If, as Teck Cominco now asserts, the 1998 permit was no longer in force at any time after

4  June 2004, it would be unlikely that Teck Cominco and EPA would represent in the 2006 COBC

5  that the limitations from the 1998 permit "remain the effective effluent limits during Arctic grayling

6  spawning" and, further, list non-compliance with the 1998 permit in May and June 2005. Teck

7  Cominco's new argument is simply wrong, and yet another attempt to escape the consequences of its

8  admitted permit violations. The Court should reject Teck Cominco's brazen misrepresentation and

9  enter summary judgment for Adams on the first legal question.

10     **D.     Teck Cominco concedes Adams's argument by not responding to it.**

11     Because Teck Cominco's three arguments responding to Adams's first question are specious

12 to the point of frivolousness – that Adams cannot bring a partial summary judgment motion, that

13 there are issues of material fact, and that the 1998 permit is no longer is force during grayling

14 spawning season – summary judgment should be entered for Adams. Teck Cominco has not

15 addressed, and has thus conceded under D.Ak. Local Rule 7.1(d)(1), the actual legal question raised

16 by Adams and Adams's answer to it: under Ninth Circuit law, because Teck Cominco has violated

17 the monthly average permit limitation for TDS since the filing of this suit, and continues to do so, all

18 of the earlier violations of that same, numerically unchanged permit parameter are ongoing or

19 capable of repetition. *Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir. 1988) ("*Sierra

20 Club III*"). "If the same parameter is exceeded [after the Complaint is filed] . . . then the violation

21 will be deemed 'ongoing' and liability will attach." *Sierra Club v. Union Oil Co. of Cal.*, 716 F.

22 Supp. 429, 433 (N.D. Cal. 1988) (*Sierra Club II*). This Court should enter summary judgment for

23 Adams on the first legal question.

24 **IV.   TECK COMINCO CANNOT AVOID LIABILITY FOR THE VIOLATIONS OF
        PERMIT CONDITION I.A.1 FOR CYANIDE BY RELYING ON PERMIT
25      CONDITION I.A.5.d.**

26     Adams moved for summary judgment on the legal question of whether Teck Cominco could

27 challenge as unenforceable its permit condition I.A.1 of 4 µg/L for monthly average cyanide in this

28

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES   6

1  Clean Water Act enforcement suit.  Motion at 4-9.  Adams based its motion on four legal points: 1)
2  Teck Cominco's defense is a direct challenge to permit condition I.A.1 in this enforcement action, a
3  challenge which is expressly barred by the Clean Water Act; 2) it is an impermissable impeachment
4  of Teck Cominco's own DMRs, which for years have reported results as "in violation" of the 4.0
5  µg/ml permit condition; 3) accepting Teck Cominco's reading of its permit would impermissibly
6  read out of the permit three other permit provisions; and 4) the Clean Water Act is a strict liability
7  statute, and Teck Cominco has reported cyanide levels in excess of its monthly average permit
8  limitations.  Motion at 4-9.
9        Teck Cominco responds with three arguments: first, that the enforceable standard is 9 µg/L,
10 not 4 µg/L as the permit reads; second, that plaintiffs have conceded that 9 µg/L is the enforceable
11 standard; and third, that Teck Cominco was not required to appeal from the 4 µg/L standard.  Opp.
12 at 9-13.  Each of these arguments is wrong: the first and third are legally unsupported, and the
13 second is factually incorrect.
14      **A.**    **Teck Cominco must comply with all of its cyanide permit conditions.**
15       Teck Cominco's permit itself requires that Teck Cominco "comply with all conditions of
16 this permit."  Permit Condition III.A, Trial Exhibit 3000 at 39.  Teck Cominco's argument that it
17 need not comply with the 4 µg/L permit condition flies in the face of this permit condition (as well,
18 obviously, as the 4 µg/L permit condition), and the strict liability of the Clean Water Act.
19       Teck Cominco's arguments on the method detection limit are misplaced and not relevant
20 here.  Teck Cominco's factual argument that "cyanide cannot be accurately quantified at any
21 concentration lower than 9.0 µg/L" (Opp. at 11) is directly contradicted by the language of its
22 permit, which requires (at Condition I.A.5.b) that Teck Cominco achieve a method detection limit of
23 3 µg/L.  Trial Exhibit 3000, at 5-6.  Teck Cominco offers not a single authority in either statute or
24 caselaw for its assertion that it can ignore three of its permit conditions, and this Court should reject
25 this unsupported argument.
26      **B.**    **Plaintiffs most certainly have not conceded that 9.0 µg/L is the enforceable
27               standard.**
28       Teck Cominco's next effort is to assert that "plaintiffs concede that 9.0 µg/L is the

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES    7

1  enforceable standard" and that EPA "can 'not enforce' any other limit." Opp. at 12. This is a gross
2  misrepresentation of Adams's position; Adams has never "conceded" this point, as should be clear in
3  that this motion is an attempt to enforce the 4 µg/L permit limitation. Adams stated that "EPA
4  *would not* enforce the permit unless Teck Cominco violated the higher 9 µg/L limit of I.A.5.d" and
5  that "permit condition I.A.5.d is only a tacit agreement between Teck Cominco and EPA that EPA
6  *will not* enforce the lower permit limit." Motion at 8 (emphasis added). "Will not" and "would not"
7  are not "cannot."

8        Teck Cominco asserts that *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517 (9th Cir.
9  1987) and *P.I.R.G. of New Jersey v. Powell Duffryn Terminals*, 913 F.2d 64 (3rd Cir. 1987)
10  preclude Adams from bringing suit where EPA cannot. Opp. at 12. Those cases, which concerned
11  the choice of a statute of limitations, are not applicable here, though their general policy language
12  supports Adams. This is not a situation where EPA *cannot* enforce the permit limitation; this is a
13  situation where EPA has voluntarily agreed not to enforce the permit limitation. As with the
14  Compliance Orders by Consent, it has voluntarily waived its opportunity to enforce condition I.A.1.
15  Adams, however (or, for that matter, any other private plaintiff or the State of Alaska), is free to
16  enforce the other permit limitations without running afoul of *Powell Duffryn* or *Sierra Club v.*
17  *Chevron*. As the Ninth Circuit explained in *Sierra Club v. Chevron*, "A citizen plaintiff, when
18  bringing an enforcement action, *supplements* the enforcement power of the EPA." 834 F.2d at
19  1522 (emphasis added); *see also Powell Duffryn*, 913 F.2d at 74, 75 (citizens act as an adjunct, and
20  a supplement to, government enforcement actions). Here, while EPA has chosen not to enforce the
21  permit limitation (indeed, EPA has chosen not to enforce even the violations of the higher 9 µg/L
22  permit condition), Adams has.

23      **C.**    **Teck Cominco cannot challenge the 4 µg/L permit limit if it did not appeal it when the permit was issued.**
24
25        Teck Cominco's final point is that because it had the 9.0 µg/L condition in the permit, it did
26  not need to appeal the 4.0 µg/L permit condition. Opp. at 12-13. In making this argument, Teck
27  Cominco again misrepresents the permit, and also its obligations under the permit and the Clean
28  Water Act. Its argument fails.

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES    8

1   Teck Cominco asserts that the "1998 NPDES permit for the mine expressly recognized at §
2   I.A.5.d that levels less than 9.0 are 'not quantifiable'" and "the permit expressly recognized that any
3   laboratory analytical result below 9 µg/L is not competent evidence of the concentration, if any, of
4   Total cyanide that may be present in any given sample[.]" Opp. at 12-13.  The actual permit
5   language does not support Teck Cominco's assertion here.  The permit does not state that levels less
6   than 9.0 are "not quantifiable."  It states, in pertinent part, "Effluent limits for cyanide, mercury, and
7   selenium are not quantifiable *using EPA approved analytical methods*."  Trial Exhibit 3000[5] at
8   page 6 (emphasis added); Docket 242-3 at 6.  The permit does not say that "any analytical result
9   below 9 µg/L is not competent evidence of the cyanide concentration," as Teck Cominco asserts.  In
10  fact, the permit states that "at a minimum, analytical methods should achieve the following method
11  detection limits... cyanide, total, 3 µg/L."  Trial Exhibit 3000 at 5; Docket 242-3 at 5.  The fact that
12  *EPA* has not yet approved an analytical method does not mean such a method does not exist and is
13  not in widespread use; indeed, the EPA in the permit *requires* Teck Cominco to use an analytical
14  method with a method detection limit of 3 µg/L.[6]

15  Teck Cominco's arguments as to why it can ignore the 4.0 µg/L permit limit found in
16  condition I.A.1 are unavailing.  To harmonize the permits conditions, Adams must have the right to
17  enforce condition I.A.1.  Teck Cominco's reading of the permit, by contrast, would nullify condition
18  I.A.1, condition I.A.5.b and condition III.A.  Teck Cominco does not even respond to Adams's point
19  that the strict liability of the Clean Water Act binding Teck Cominco to compliance with all of its
20  permit conditions and liability for the violations it has reported of the 4.0 µg/L cyanide limitation
21  (Motion at 8), thus conceding that argument.  D.Ak. L.R. 7.1(d)(1).  It also does not respond to
22  Adams's argument that adopting Teck Cominco's position would read three other conditions out of
23  the permit entirely, thus conceding it as well.  D.Ak. L.R. 7.1(d)(1).  Adams respectfully requests

---

25  [5]Trial Exhibit 3000 is the 2003 permit, not the 1998 permit as Teck Cominco repeatedly
26  asserts, although the cyanide numerical limitations are identical in each permit.

27  [6]Teck Cominco's reliance on a 2005 Guidance (Opp. at 13) is misplaced, as 1) a guidance is
    not binding and cannot trump the plain language of the permit and the Clean Water Act; and 2) this
28  suit was filed in 2004 and primarily alleges cyanide violations from 1999-2003.

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES   9

1   that the Court enter summary judgment for Adams on the second legal question.

2   **IV.   THE "SPLIT SAMPLE" DEFENSE IS CONTRARY TO THE STRICT LIABILITY REGIME OF THE CLEAN WATER ACT.**

   Teck Cominco admits that it began to split its water samples in May 2003. Opp. at 13. This was, not coincidentally, some of the first water sampling after KRPC filed suit in September 2002. Teck Cominco's split sampling has always been in the context of trying to create a litigation defense for its numerous permit violations. In its Motion, Adams requested summary judgment on the legal question of whether, given that the Clean Water Act is a strict liability statute, Teck Cominco may avoid liability for a laboratory test result of its effluent taken under accepted and reliable procedures showing a value for cyanide or whole effluent toxicity over its permit limit, by offering a laboratory result from a second lab showing a value for that permit parameter under the permit limit. Motion at 9-11. Adams set forth the Ninth Circuit's dispositive holding in *Sierra Club v. Union Oil of Calif.*, 813 F.2d 1480, 1492 (9th Cir. 1986), *vacated and remanded,* 485 U.S. 931 (1988), *reinstated and amended,* 853 F.2d 667 (9th Cir. 1988) (*"Sierra Club I"*), which disallows the impeachment of DMRs during litigation to enforce a Clean Water Act permit. Motion at 9-11.

   Teck Cominco responds with two arguments: first, that "this Court has already ruled that conflicting results of split samples do not establish ongoing violations, but rather raise a genuine issue of material fact as to whether there were violations," and second, that *Sierra Club I* does not bar the permittee from proving that its choice among split samples was correct. Opp. at 14-15. Neither argument is successful: first, this Court is being asked here to rule on the legal question of whether the split sample defense is available, and second, Teck Cominco's "picking and choosing" strategy runs afoul of *Sierra Club I.*

   **A.   Whether or not Teck Cominco can use the split sample defense is a question of law that is appropriately decided at summary judgment.**

   Teck Cominco's first line of defense is to assert that the Court has already decided the question and determined it to be a factual dispute. Opp. at 14, citing to Docket 136 at 17. It made this same argument in opposing Adams's request to file a summary judgment motion. Docket 189 at 5-6. The Court rejected Teck Cominco's position then, as it should now: "After examining the

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES  10

1  parties' papers the court concludes that the 'law of the case' doctrine does not preclude consideration
2  of the four issues identified by plaintiffs. *None of them has been decided by the court*." Docket
3  206 at 1 (emphasis added).  Contrary to Teck Cominco's assertion, the availability of the split
4  sample defense is a legal question ripe for determination on summary judgment.  Indeed, the *Sierra*
5  *Club I* Court held that the District Court's consideration of the sampling error excuse is a "question
6  of statutory interpretation". *Sierra Club I*, 813 F.2d at 1491.

       **B.**    *Sierra Club I* **does not allow picking and choosing among lab results.**

8        The Ninth Circuit caselaw on the split sample defense is well defined:  "We conclude that
9  when a permittee's reports indicate that the permittee has exceeded permit limitations, the permittee
10 may not impeach its own reports by showing sampling error." *Sierra Club I*, 813 F.2d at 1492.  In
11 several of the violations that Adams will prove at trial, Teck Cominco's defense is that although the
12 "permittee's reports indicate that the permittee has exceeded permit limitations," Teck Cominco has
13 a second sample that indicates it has *not* exceeded its permit limitations and thus, by implication, the
14 sample showing a permit exceedance is in error.  This is precisely the type of split-sample defense
15 that *Sierra Club I* disallows.

16       In the face of this caselaw, Teck Cominco attempts to distinguish *Sierra Club I* factually,
17 asserting that

> In *Sierra Club I*, the trial court had made no explicit finding as to why thirteen alleged
> exceedances were not exceedances so the appellate court had to 'surmise' that the alleged
> violations had been excused on the basis of sampling error.  That judicial supposition flowed
> from defendant Union Oil's argument that violations reported as such in DMRs, and which
> on their face were supported only by the incriminating results, were actually invalid due to
> some sampling error not disclosed in the DMR. *Sierra Club I*, at 1491[.] The Ninth Circuit
> refused to allow after-the-fact impeachment of publicly filed reports that clearly indicated
> illegal pollution was taking place. *Id*. at 1492[.] [¶]  Here, the publicly filed reports were, at
> most, ambiguous.

23 Opp. at 15.  Teck Cominco's offering is not quite an accurate rendition of either the facts of *Sierra*
24 *Club I* or this case.  There, "Union Oil argued that seven of the alleged violations were excusable
25 because, while the Discharge Monitoring Reports ostensibly indicated that Union Oil had exceeded
26 limitations contained in the permit, these reports were invalid due to sampling error.  We hold that
27 the district court should not have excused these exceedances on the basis of  sampling error." *Sierra*

*Club I*, 813 F.2d at 1491. Contrary to Teck Cominco's representation, *Sierra Club I* says nothing about whether Union Oil's assertions of sampling error were or were "not disclosed in the DMR." Opp. at 15.

Teck Cominco similarly misrepresents the facts of this case. Here, the publicly filed reports are unambiguous: in the DMRs for the months at issue in this case, there are cyanide lab results reported that are unarguably higher than the effluent limitations found in the permit. There are also, in some cases, other lab results reported from split samples that are lower than the effluent limitations found in the permit. Teck Cominco's approach is to say the higher ones are the result of sampling error, so that the lower ones absolve it of liability for any violation. This appears to be exactly – and unambiguously – the situation described in Sierra Club I: "when a permittee's reports indicate that the permittee has exceeded permit limitations, the permittee may not impeach its own reports by showing sampling error." *Sierra Club I*, 813 F.2d at 1492. Even if Teck Cominco no longer labels the higher number a "violation" – a nomenclatural practice it began defensively after this litigation commenced – the data in the DMRs listing a permit limit at $X$ µg/L and a lab result at $X + 5$ µg/L indicates a value that exceeds the permit limitations. Teck Cominco seeks to avoid these values by arguing sampling error. This is simply not allowed under *Sierra Club I*.[7]

Teck Cominco argues that the "concerns underlying Sierra Club I are not present when both split sample results are reported" because the "possibility that unequivocal reports would be rendered meaningless with 'additional information unavailable to citizen groups'" is not present, as "the 'additional information' was presented as part of Teck Cominco's DMRs." Opp. at 15. Teck Cominco's argument misses the point: how is Adams, or any other member of the public, to know which split sample result is the correct one? This Court addressed the question in *Adams v. Teck Cominco Alaska, Inc.*, 396 F.Supp.2d 1095 (D.Alaska 2005) in considered amended DMRs:

> In a related way, providing Adams' counsel with a second "correct" report on March 7, 2003, did not reduce plaintiff's litigation risk, unless one first posits that the second report must necessarily be the correct one. . . .  it may be noted that there is a sampling error issue

---

[7] Nor can Teck Cominco rely on *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164 (3d Cir. 2004) ("*Allegheny*"), which explicitly departed from the *Sierra Club I* holding urged on it by the U.S. *Id*. at 172. The Ninth Circuit's caselaw controls here.

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES  12

        inherent even in the "corrected" DMR, because it recited lab results from CT&E which would show a violation unless they are discredited as erroneous.

*Id*. at 1102. The Court also noted that plaintiffs would bear the risk of incurring "needless costs by initiating litigation which would not succeed if a defendant could then put on proof of sampling error remains." *Id*. The Court should apply this law of the case to Teck Cominco's new application of the split sample defense, and enter summary judgment for Adams precluding the "split sample" defense at trial.

### V. TECK COMINCO MAY NOT IMPEACH ITS DMRS DURING THIS ENFORCEMENT ACTION.

        Teck Cominco next argues that it should be allowed to impeach its DMRs through later amendment. Opp. at 16-18. Its argument directly contradicts both the Ninth Circuit's holding in *Sierra Club I*, 813 F.2d at 1492, and the law of the case here, *Adams v. Teck Cominco Alaska, Inc.*, 396 F.Supp.2d 1095, 1102 (D.Alaska 2005), and should be rejected. As Teck Cominco itself concedes, in Sierra Club I, the "Ninth Circuit refused to allow after-the-fact impeachment of publicly filed reports that clearly indicated illegal pollution was taking place." Opposition at 15, citing *Sierra Club I*, 813 F.2d at 1492. Teck Cominco fails to distinguish its own practice from the prohibited practice it describes in *Sierra Club I*.

        Teck Cominco's protestations ring even less true if the Court examines the actual context of the DMR amendments: Teck Cominco amended the DMRs to change all cyanide values that were reported as violations of its 4.0 µg/L monthly cyanide limitation (the limitation was listed as 4.0 µg/L in the original DMRs) so that the permit limitation is now listed as 9.0 µg/L and every value below that (even if above 4.0) is listed simply as "<9". This amendment, in some cases six years after the original DMR was filed, took place for only one reason: to attempt to avoid liability once Teck Cominco faced enforcement litigation. It is plainly the type of DMR impeachment rejected by the Ninth Circuit in Sierra Club I and by this Court in *Adams v. Teck Cominco Alaska, Inc.*, 396 F.Supp.2d at 1102. Teck Cominco's arguments are not supported by the law of the Circuit or the law of the case, and should be rejected.

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES  13

**V.     A VIOLATION OF A MONTHLY AVERAGE PERMIT LIMITATION IS CONSIDERED A VIOLATION ON EACH DAY OF THE MONTH THE FACILITY DISCHARGED.**

Adams's final point is that violations of a monthly average limit mean that the permit was violated on each day the facility discharged in that month. *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 791 F.2d 304, 313-15 (4th Cir. 1986), *vacated and remanded on other grounds,* 484 U.S. 49 (1987). Teck Cominco makes four arguments in response: first, it correctly points out that the Ninth Circuit has not squarely addressed this issue. Opp. at 19-20. Second, it asserts that the Third Circuit has "rejected the formulaic *Gwaltney* approach." Opp. at 21-23. Finally, Teck Cominco argues there are limitations to the *Gwaltney* calculation and that the Court should adopt the Third Circuit's reasoning. Opp. at 23-24. With the exception of Teck Cominco's non-controversial observation that the Ninth Circuit has not addressed this issue, Teck Cominco's arguments are not relevant to the liability phase. They are all about the discretion this Court has in setting penalties, and are misplaced here.

It is important to note at the outset that there is no Circuit split as to the determination of *liability*: the three Circuits that have addressed the issue – the Third, Fourth and Eleventh – have all held that a violation of a monthly average means the violator is liable for as many days of violation as it discharged that month, as Adams explains below.

    **A.     The Third Circuit in *Allegheny* embraced *Gwaltney* for determination of liability.**

Teck Cominco's deployment of *Allegheny* supports Adams here. In *Allegheny*, for the purposes of liability, the Court followed *Gwaltney*: "the best we can do... is to follow *Gwaltney* on the question of the statutory maximum . . . but to give guidance structuring the way in which a district court is to exercise its discretion in setting an actual penalty." 366 F.3d at 189. This Court should follow both *Allegheny* and *Gwaltney* in determining that a violation of the monthly average is a violation on each day that the facility discharged during that month. The rest of Teck Cominco's arguments (Opp. at 21-23) are all directed at the penalty phase and not relevant to the *liability* determination at issue here.

    **B.     The Eleventh Circuit's *Tyson* decision supports Adams's argument here.**

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES  14

1    Teck Cominco next asserts that the Eleventh Circuit has placed a limitation on the *Gwaltney*
2  approach in *Atlantic States Legal Fdn. v. Tyson Foods, Inc.* 897 F.2d 1128, 1140 (11th Cir. 1990).
3  Opp. at 23. Again, Teck Cominco is mistaken in the liability context. In *Tyson*, the Eleventh
4  Circuit adopted the *Gwaltney* approach: "We find the reasoning of the Fourth Circuit persuasive and
5  consistent with section 1319(d) [of the Clean Water Act]. Although the maximum penalty for a
6  monthly violation may seem high, we note, as did the *Gwaltney* court, that section 1319(d) only
7  serves to set a maximum penalty." *Id*. at 1139. *Tyson* also points out that the U.S. EPA endorses
8  *Gwaltney*: "The EPA agrees in its Penalty Policy that 'violation of a monthly average effluent
9  limitation should be counted as 30 violations.'" *Id*. For purposes of liability – i.e., how many days
10 of violation a month should count for, the question before this Court on summary judgment – *Tyson*
11 supports Adams here.

    **C.    This Court should follow *Allegheny* at the liability phase.**

13    Teck Cominco's final argument is that the Court should consider "whether violations are
14 already sufficiently sanctioned before determining how many – if any – violation days should be
15 assessed for exceeding a monthly average permit limit." Opp. at 24 (relying on *Allegheny* to argue
16 against "disproportionate, duplicative and unfair penalties"). In making this argument, Teck
17 Cominco again improperly conflates the liability and penalty phases of this suit. As noted above,
18 *Allegheny* adopts the *Gwaltney* standard for determining liability. At Teck Cominco's urging, this
19 Court should too.

20    For purposes of assessing *liability*, violations of a monthly average limit should count as a
21 violation on each day the facility discharged in that month. The Court should enter summary
22 judgment on this legal question for Adams.

**VI.    CONCLUSION**

24    Adams respectfully requests that the Court to grant summary judgment on each of the four
25 legal questions to Adams. Respectfully submitted this 21st day of February, 2008.

                                                        /S/ Luke Cole
                                                        Luke Cole
                                                        Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February 2008, a true and correct copy of the foregoing Reply in Support of Motion for Summary Judgment on Four Legal Issues and Proposed Order was served, via electronic mail, on the below identified parties of record:

Sean Halloran
Hartig Rhodes
717 K Street
Anchorage, AK 99501

Nancy S. Wainwright
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, Alaska 99515-3538

James E. Torgerson
Heller Ehrman White & McAuliffe LLP
510 L Street, Suite 500
Anchorage, Alaska 99501-1959

David S. Case
Landye Bennett Blumstein LLP
701 W. 8th Ave., Suite 1200
Anchorage, AK 99501

_____
    /S/ Luke Cole

Luke Cole

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON FOUR LEGAL ISSUES   16