**UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS,<br>ANDREW KOENIG, JERRY NORTON,<br>DAVID SWAN, and JOSEPH SWAN,<br><br>       **Plaintiffs,**<br><br>       **vs.**<br><br>TECK COMINCO ALASKA, INC.,<br><br>       **Defendant.**<br>—————————————————<br>NANA REGIONAL CORPORATION and<br>NORTHWEST ARCTIC BOROUGH,<br><br>       **Intervener-Defendants.**<br>————————————————— | )<br>)<br>)<br>)<br>)   **3:04-cv-00049-JWS**<br>)<br>)   **ORDER AND OPINION**<br>)<br>)   **[Re:  Motion at docket 241]**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.  MOTION PRESENTED

At docket 241 plaintiffs Enoch Adams, Leroy Adams, Andrew Koenig, Jerry
Norton, and Joseph Swan (collectively "Adams") move for an order establishing four
propositions as a matter of law.  Defendant Teck Cominco Alaska, Inc. ("Teck") and
intervener-defendant NANA Regional Corporation ("NANA") oppose the motion. The
motion has been fully briefed.

## II.  BACKGROUND

Having described the general background of this litigation in prior orders, and
realizing that the parties are very familiar with it, the court deems it unnecessary to

include a general description of the events giving rise to the litigation in this order.[1] What needs to be said here is only that the court allowed Adams to file the instant motion long after the time for filing summary judgment motions had expired based on Adams' representation that the motion would raise only legal issues which would have to be determined at some point in the trial process.[2]

### III.  SUMMARY JUDGMENT  STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.[3]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[4]  Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[5] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[6] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[7]

---

[1] *See, e.g.*, Order at doc. 104.

[2] Order at doc. 206.

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4] *Celotex*, 477 U.S. at 323-325.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-9 (1986).

[6] *Anderson*, 477 U.S. at 255.

[7] *Id.*, 477 U.S. at 248-9.

## IV.  DISCUSSION

Adams' motion purports to present four issues.  Bluntly put, the briefing from both parties is turgid.  The court has distilled from it the four questions set out below.  To the extent the parties believe they have raised other or different issues, the court declines to address them on the basis that the court cannot tease them out of the briefing.

**Question 1:   Are Monthly Average TDS Violations of TDS Limits Which Occured Outside Arctic Grayling Spawning Season Capable of Repetition?**

The short answer is "yes, but."  To be less cryptic a fuller comment is in order.  If Adams proves that the violations were capable of repetition at the time he filed his action by showing, for example, sufficient proof of subsequent violations, then the fact that the permit limitation was later altered so that the monthly average TDS limit applies only during Arctic Grayling Spawning season does not establish that the violations were not capable of repetition.  But, the fact that the permitting authority determined that it is not actually necessary to impose limits outside the sensitive spawning season will weigh heavily in assessing an appropriate penalty.  Of course, the issue of what penalty is appropriate will not be addressed prior to the penalty phase of this bifurcated litigation.

**Question 2: Is Teck Liable for Violations of the 4 ug/l Permit Limitation for Cyanide in the Mine permit?**

Adams points to three sections of the Mine Permit which address cyanide limits.  Adams reads the three provisions as standing alone and says in effect, even if it cannot be shown as a matter of fact that there ever was a violation of the 4 ug/l limit, Teck is liable because it did not appeal that permit provision to the permitting authority.  Unlike Adams, the court believes these provisions must be read together and read logically.  Doing so on the basis of the pre-trial record, suggests that the 4ug/l limit was desired, Teck was expected at some point to devise a methodology which could discriminate to a level of 3ug/l, but because there was no approved method that could discriminate below 9 ug/l, an interim limit of 9ug/l was the only enforceable limit.  The court concludes that this matter cannot be resolved on summary judgment.

**Question 3: Can Teck Rely on a Split Sample Defense?**

The answer is "no." This proposition was expressly addressed in the order at docket 104. As the court put it in that earlier order:

> In *Sierra Club v. Union Oil Co. of Calif.*,[8] the Ninth Circuit disapproved the use of sampling errors as a defense to a claim based on a reported violation of an NPDES permit. Adams contends that *Sierra Club* controls. Teck argues that *Sierra Club* should be distinguished. The *Sierra Club* court explained why sampling errors cannot be used to defend against claims that an NPDES permit has been violated:
>
>> Were we to accept Union Oil's argument regarding the use of sampling errors to excuse reported permit exceedances, we would be sanctioning countless additional hours of NPDES litigation and creating new, complicated factual questions for district courts to resolve. As indicated by the legislative history, Congress hoped to limit such situations. In addition, if each self monitoring report is to be considered only prima facie rather than conclusive evidence of an exceedance of a permit limitation, citizen groups like the Sierra Club would be taking a considerable risk whenever they initiated a citizen enforcement action . . . . While a permitee's publicly filed reports might clearly indicate that illegal pollution was taking place, the permittee might have additional information unavailable to citizen groups indicating that sampling error rendered the reports meaningless. Finally and most importantly, allowing permittees to excuse their reported exceedances by showing sampling error would create the perverse result of rewarding permittees for sloppy laboratory practices. Such an approach would surely undermine the efficacy of the self-monitoring program.
>>
>> We conclude that when a permittee's reports indicate that the permittee has exceeded permit limitations, the permittee may not impeach its own reports by showing sampling error.[9]

---

[8] 813 F.2d 1480, 1491-93 (9th Cir. 1987), *vacated for reconsideration*, 481 U.S. 931 (1988), *reinstated and amended*, 853 F.2d 667 (9th Cir. 1988).

[9] 813 F. 2d 1492. It may be noted that the concern for the risk borne by a plaintiff who sues in reliance on a report has been ameliorated, but not eliminated, by the Supreme Court's decision in *Gwaltney*, 108 S. Ct. 376, which holds that a Clean Water Act plaintiff has standing if his claims are pled in "good faith." It would certainly be appropriate to rely on a filed report. However, the risk that a plaintiff would incur needless costs by initiating litigation which would not succeed if a defendant could then put on proof of sampling error remains.

Teck's arguments for distinguishing *Sierra Club* are not persuasive. In essence, they boil down to the proposition that Teck does not seek to use sampling error as a defense but rather to use the "correct" DMR to show there was no violation. Such an approach still falls within the reach of the *Sierra Club* rationale. First, litigating over which of two reports is the "correct" one encourages additional hours of litigation. In a related way, providing Adams' counsel with a second "correct" report on March 7, 2003, did not reduce plaintiff's litigation risk, unless one first posits that the second report must necessarily be the correct one. Third, while it may be that the "sloppy" lab work here was that of CT&E, not Teck or Columbia, CT&E was the contractor chosen by Teck to analyze samples for reporting purposes, and so it is not unfair to require Teck to bear the consequences of CT&E's presumed error.[10]

**Question 4: Is Violation of a Monthly Average Limit Considered A Violation On Each Day There Was A Discharge?**

The answer is yes. This court finds the Fourth Circuit's decision in *Chesapeak Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*[11] to be directly on point. The parties cite no controlling authority in this circuit. As Teck suggests, the Ninth Circuit decision in *United States v. Trident Seafoods Corp.*[12] is distinguishable on its facts. However, as this court reads *Trident*, the Ninth Circuit decided that the notice requirement at issue there was a one-time violation, not a continuing violation, precisely because neither the statute nor the regulations spoke to a specific time period. The Ninth Circuit distinguished *Gwaltney* in this manner: "The [*Gwaltney*] court reasoned that the Clean Water Act 'speak[s] in terms of penalties per *day* of violation rather than penalties per *violation*.'"[13] This court concludes that the Ninth Circuit likely would agree with the reasoning of *Gwaltney* in a case presenting similar facts. That being said, this court must also follow *Gwaltney*.

--------

[10]Doc. 104 at pp. 9-10.

[11]791 F.2d 304, 313-15 (4th Cir. 1986), *vacated and remanded on other grounds*, 484 U.S. 49 (1987).

[12]60 F.3d 556 (9th Cir. 1995).

[13]*Trident Seafoods* at 60 F.3d 558 (quoting *Gwaltney* at 791 F.2d 314) (emphasis in quote in *Gwaltney*).

## V. CONCLUSION

For the reasons set out above, the motion at docket 241 is **GRANTED in part and DENIED in part** consistent with the preceding text.

DATED this 27th day of February 2008.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE