JAMES E. TORGERSON (Alaska Bar No. 8509120)
YVONNE LAMOUREUX (Alaska Bar No. 0512124)
HELLER EHRMAN LLP
510 L Street, Suite 500
Anchorage, AK  99501-1959
Telephone: (907) 277-1900
Facsimile: (907) 277-1920
Jim.torgerson@hellerehrman.com
Yvonne.lamoureux@hellerehrman.com

Attorneys for Intervenor-Defendant
NANA REGIONAL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON, DAVID SWAN and JOSEPH SWAN,<br><br>          Plaintiffs,<br><br>v.<br><br>TECK COMINCO ALASKA INCORPORATED,<br><br>          Defendant,<br><br>NANA REGIONAL CORPORATION, and NORTHWEST ARCTIC BOROUGH,<br><br>          Intervenor-Defendants. | Case No.: A:04-cv-0049 (JWS)<br><br>**JOINT REPLY IN SUPPORT OF JOINT MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS [RE: DOCKET 218]** |

## I.   INTRODUCTION

In its Order of August 9, 2007, (Order) the Court allowed updates to expert reports only "to take into account any effects resulting from the passage of time."  In producing 96 pages of new expert reports last month, the Plaintiffs' experts did much more.  They repackaged many of their old opinions and presented numerous new ones.  Accordingly, the Plaintiffs' experts' new reports should be struck, except for those portions of the reports that update to reflect the passage of time the opinions they previously expressed.

## II. ABSENT A MOTION, THIS COURT ALLOWED UPDATES TO EXPERT REPORTS ONLY "TO TAKE INTO ACCOUNT ANY EFFECTS RESULTING FROM THE PASSAGE OF TIME."

In light of the Plaintiffs' stridency and attempt to confuse the issues in their Opposition to the Joint Motion to Strike New Expert Opinions (Opposition), reviewing the requirements set by the Court for new expert opinions is in order. The Court held a planning conference in this matter on August 9, 2007. At the conference, Plaintiffs' counsel raised the issue of updating expert reports. In raising the issue, counsel only mentioned updating expert testimony regarding economic issues. Plaintiffs' counsel noted that at trial the length of time "that the experts would be considering in terms of economic benefit in this case is obviously longer than they had considered."[1]

When questioned by the Court as to whether he had "anything in mind other than bringing calculations and opinions forward based on the passage of time," Plaintiffs' counsel admitted he did, if the Court was amenable to it.[2] After some discussion, the Court held that it would not resolve at the planning conference the question of whether new expert opinions would be allowed. Instead, the Court directed that if Plaintiffs wanted to introduce any new opinions, they were to file a motion by August 31.[3] The Court stated that unless counsel succeeded with such a motion, "the only thing I will direct the parties to do is to update the existing admissible expert reports to take into account the passage of time."[4]

This is in fact what the Court did in its Order at Docket 167. The Court directed that the parties experts "shall update their reports to take into account any effects resulting from the passage of time from the date used in the original report through December 31, 2007."[5]

The Court, accordingly, created a two prong approach to updating expert reports.

---

[1] Exhibit O, Transcript of excerpts of August 9, 2007 planning conference, p. 2
[2] *Id.*
[3] *Id.*, p. 5.
[4] *Id.*, p. 4.
[5] Doc. 167.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 2 OF 14

Experts could revise their reports without further permission from the Court to take "into account the effects resulting from the passage of time from the date used in the original report through December 31, 2007."[6] As to any other desired revisions, parties were required to first seek and receive permission from the Court.

This dichotomy is important. The Court signaled that updating opinions and reports just to take into account the effects resulting from the passage of time would not trigger additional discovery. By contrast, new opinions could or would.[7] Filing a motion seeking permission to offer new opinions, therefore, would provide the defendants with an opportunity to agree or object to the request. It also would afford defendants a chance to request any additional discovery, such as updating its experts' reports and deposing the Plaintiffs' expert, they deemed warranted. The Court being fully advised then could decide whether to allow the new opinion(s).

In short, following the process established by the Court the Plaintiffs could only offer new opinions *after* (1) Plaintiffs had filed a request for permission to do so, (2) Defendants had an opportunity to respond to Plaintiffs' request, and (3) the Court granted Plaintiffs' request. The Court at no point indicated its Order would not apply if the Plaintiffs' new opinions were based on what Plaintiffs considered "new" evidence.[8]

---

[6] *Id.*
[7] Exhibit O, p. 3.
[8] Plaintiffs appear to argue that because Teck Cominco did not produce certain documents to them until after August 31, 2007 deadline for filing a motion for leave, they should be excused from filing such a motion. Opposition to Motion to Strike Plaintiff's New Expert Reports (Opposition), p. 5. There are three flaws in this argument. <u>First</u>, no party - including Plaintiffs – is entitled to ignore the Court's Order on the grounds that another party violated it. <u>Second</u>, the Court set August 31 as the deadline for both Teck Cominco's document production and Plaintiffs' motion seeking permission to provide additional expert testimony. In so doing, the Court signaled it did not necessarily expect Plaintiffs to have all of Teck Cominco's newly-produced documents before filing their expert testimony motion. Rather, Plaintiffs' motion, if filed, apparently was expected to address evidence and opinions of which Plaintiffs' already were aware as of August 2008. Plaintiffs did not ask the Court to set the schedule differently. <u>Third</u>, Plaintiffs attempt to justify a number of their experts' new opinions by reference to spreadsheets provided them in April 2005. Opposition, p. 9, As will be explained below, the spreadsheets did not in fact contain any new information. But to the extent Plaintiffs thought they did, and to the extent Plaintiffs wanted to offer new expert opinions based on them, they could have filed a timely motion seeking leave to do so. By August 2007, they had had the spreadsheets for over two years.

Heller Ehrman LLP
510 L STREET, SUITE 500
ANCHORAGE, AK 99501-1959
TELEPHONE (907) 277-1900

## III. THE PLAINTIFFS IGNORED THE COURT'S ORDER.

At the August 9 hearing, the Court set controls on the introduction of new expert opinions. Plaintiffs have chosen to ignore those limits. This is readily evident from even a superficial review of the Plaintiffs' experts' new reports. Only two of Teck Cominco's five retained experts produced updated reports. They total approximately 20 pages in length.[9] All four of Plaintiffs' retained experts, by contrast, prepared new reports. They total just shy of 100 pages in length.

As explained in the Joint Motion, only a small part of Plaintiffs' expert's reports actually constitute updates of opinions previously expressed to take into account effects resulting from the passage of time.[10] Teck Cominco and NANA have carefully reviewed the new reports, indicated the sections that satisfy those criteria and highlighted them.[11] Contrary to Plaintiffs' arguments, the remaining portions of the new reports consist of three different kinds of opinions that are not permitted by the Court's Order.

### A. Plaintiffs' experts' new reports are comprised primarily of three different kinds of opinions not allowed by the Court's Order.

#### 1. Much of the Plaintiff's experts' new reports consists of repackaged opinions from earlier reports and declarations

Plaintiffs have had their experts repackage a lot of their previous reports and declarations in their new reports. For instance, Plaintiffs on the one hand assert that Mr. Fischer's report is appropriately updated, which would mean that all it does is update his past opinions to take into account the effects resulting from the passage of time. Yet they also assert that his report is "literally an electronic combination of his earlier expressed opinions" and "contains no new opinions …, not even any updates."[12] If this is true, the report should be struck in its entirety. It does not fall within the narrow scope for updated reports created by the Court. Teck Cominco and NANA, however, concluded

---

[9] *See* Declaration of Jim Torgerson in Support of Reply.
[10] Joint Motion and Memorandum in Support of Motion to Strike Plaintiff's New Expert Reports (Joint Motion), p. 4, fn 13.
[11] *Id*.
[12] Doc. 258 at 5.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 4 OF 14

there are portions of his reports that are permissible updates.[13] They will stand by their analysis, despite Plaintiffs' concession, and ask that all of Mr. Fischer's report except the parts to which they did not object be stricken.

Likewise, Dr. Moran's new report is replete with repackaging. For instance, the second full paragraph on page 12 of his report is almost identical to paragraph 52 of his December 2005 declaration at docket 124, except that the new report adds "and research laboratories" in the second sentence, deletes "on" and adds "identically labeled" in the third sentence, and deletes "Most importantly" at the beginning of the last sentence. Another example comes from page 27 of his new report.[14] The first full paragraph on page 27 is almost identical to paragraph 36 of his November 2004 report[15] except that the new report adds "from 1998 until June 15, 2004" and "which was then raised to 3900 mg/L" in the second sentence, and deletes "and even the much higher TDS levels in Consent Orders issued by the U.S. EPA" at the end of the fourth sentence.

These are but a few examples. To identify all such instances of such revisions of repackaging in the new reports cannot be done within the space allowed for this brief.

It is not clear why Plaintiffs' have done this, given that their revised or repackaged opinions so clearly failed to satisfy the Court's criteria for acceptable updates. It may be they believe that by including all their repackaged opinions in their new reports they can disguise, and make it more difficult for the Court to identify, their new opinions. It may be that they hope to secure the admissibility of opinions previously set forth only in declarations attached to various motions. For instance, in a footnote, Plaintiffs assert that their experts' declarations were "in essence, updates required by Rule 26 to their original expert reports."[16] This issue is not before the Court so Teck Cominco and NANA will not engage it except to note that (1) they do not necessarily agree with Plaintiffs'

---

[13] Exhibit D to Joint Motion, Doc. 219-5. For simplicity, Defendants refer to the page numbers as they appear on the reports.
[14] Exhibit B to Joint Motion, Doc. 219-3.
[15] Exhibit F to Joint Motion, Doc. 219-6.
[16] Doc. 258 at 4, n. 1.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 5 OF 14

assertion and (2) the argument is inconsistent with Plaintiffs' argument in their Opposition that they should be allowed to revise their expert reports based on any evidence, such as the spreadsheets discussed below, disclosed after the expert's earlier reports but before their declarations.

Ultimately, Plaintiffs' motives do not matter. What matters is simply the fact that Plaintiffs' repackaged opinions do not satisfy the requirements set by the Court in its Order of August 9. Such opinions should be struck from plaintiffs' experts' new reports.

### 2. Much of the Plaintiff's experts' new reports consists of new opinions based on "old" evidence.

The Plaintiffs do not even try to defend their experts' opinions based on "old" evidence available to the Plaintiffs before November 2004 when they prepared their earlier reports. Instead, they use several other tactics to try to salvage them. First, they just deny that any of their opinions are based on old evidence, asserting instead that all of their opinions are based on new evidence that Teck Cominco just provided.[17] This is not true, as will be discussed below using the example of the oft-cited spreadsheets. Second, they attempted to disguise these opinions by including them in the mix with other opinions, some of which are permissible under the Court's Order. What they do not do, but should have, is ask the Court for leave before attempting to present any new opinions, whether based on "old" or "new" evidence.

### 3. Much of the Plaintiff's experts' new reports consists of new opinions based on "new" evidence

Plaintiffs core argument seems to be that they are entitled to proffer any opinion they can tie to "new" evidence, which designation they appear to give to all discovery provided to them after August 31, 2007. They adopt a tone of righteous outrage at Teck Cominco's and NANA's "supreme chutzpah" for even challenging such opinions and demand sanctions.[18] But Plaintiffs are not relieved of the requirement to seek permission to introduce new opinions even if a proffered opinion is in some way based on "new"

---

[17] Opposition, p.4.
[18] Opposition, pp. 2, 14.

evidence. Viewing the Plaintiffs' position most generously, they appear to have confused the Court's permission to update past opinions to "take into account any effects resulting from the passage of time"[19] with permission to do wholesale updates to their reports to take into account any evidence they did not know about when they prepared their earlier reports. This, of course, is not what the Court said.[20]

Further, "facts are stubborn things"[21] and the facts here are not what plaintiffs say they are. Much of the allegedly new evidence upon which Plaintiffs' experts rely Plaintiffs in fact have had for years.

For example, Dr. Moran and Mr. Fucik both offer new opinions based on information that was available at the time they prepared their earlier reports.[22] Dr. Moran's new opinions included his views on procedures that should be in place at Red Dog Mine and the importance of independent analyses, neither of which is an opinion susceptible to updating to take into account the effects resulting from the passage of time since 2004.[23] Plaintiffs argue that Dr. Moran's "observations are appropriate summarizing opinions based on the new material available to Dr. Moran after he produced his expert report in November 2004."[24] Plaintiffs' argument is a *non sequitur*. It says nothing, because Plaintiffs cannot, about how Dr. Moran's new opinions take into account the effects resulting from the passage of time. They should be struck, just as should his opinions (1) regarding how the timing of sampling affects the concentrations

---

[19] Doc. 167.
[20] *Id*.
[21] John Adams, *Argument in Defense of the Soldiers in the Boston Massacre Trials*, December 1770
[22] Dr. Moran's new report offered several such new opinions, including on pages 6, 12, 13-19, and 27. Exhibit B to Joint Motion, doc. 219-3. Mr. Fucik also offered such opinions, including on pages 10, 13, 14, and 16-22. Exhibit C to Joint Motion, Doc. 219-4.
[23] By way of example, Dr. Moran opined that in his experience: "having independent on-site oversight or inspections of mining facilities improves the incentives for those mining facilities to comply with their permit limitations. These independent observers must have formal training in environmental monitoring and data interpretation." Exhibit B to Joint Motion, Doc. 219-3, p. 27.
[24] Doc. 258 at 8.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 7 OF 14

reported[25] and (2) regarding acceptable approaches for reporting determinations from labs[26].

Plaintiffs tried to justify some of Dr. Moran's and Mr. Fucik's other new opinions[27] by claiming they are based on newly-disclosed evidence, referring to two spreadsheets Teck Cominco produced to plaintiffs in April 2005, after Dr. Moran's earlier report was completed.[28] Similarly, regarding Mr. Fucik's new opinions, Plaintiffs assert that the "data was in the spreadsheet disclosed to Adams in April 2005, after Mr. Fucik's original expert report was served in November 2004."[29]

This argument fails for at least four reasons. First, the spreadsheets (Trial Exhibits 71 & 72) were disclosed in April 2005, after the Plaintiffs' experts had prepared their original reports. But the spreadsheets contain the same data as (1) the lab reports and results produced to Plaintiffs before Plaintiffs' experts prepared their original reports, (2) the DMRs produced to and/or available to Plaintiffs prior to the date of the original expert reports, or (3) both.[30] In short, the spreadsheets do not contain "new" evidence, even using Plaintiffs' meaning for the word.

Second, Plaintiffs' claim that Dr. Moran and Mr. Fucik relied on the spreadsheets in preparing their new reports is not credible. With one exception, when they identified their source information, neither Dr. Moran nor Mr. Fucik indicate that they relied on the spreadsheets.[31] The one exception is on the bottom of page 11 of Mr. Fucik's new

---

[25] Exhibit B to Joint Motion, Doc. 219-3, p. 6.
[26] Exhibit B to Joint Motion, Doc. 219-3, p. 12.
[27] *See* Dr. Moran's new opinions on pages 13-19. Exhibit B to Joint Motion, Doc. 219-3. *See* Mr. Fucik's new opinions on pages 10, 14, and 16-22. Exhibit C to Joint Motion, Doc. 219-4.
[28] Doc. 258 at 8.
[29] Doc. 258 at 9.
[30] Exhibit P, Declaration of Joe Diehl, ¶¶ 4-8; Exhibit Q, Declaration of Rachel Davis, ¶¶ 3-7.
[31] Plaintiffs indicate that the spreadsheets are included as Exhibits 70-71 to Plaintiffs' Exhibit List, Docket 190. Doc. 258 at 9. This appears to be a typographical error and instead Plaintiffs should have referred to Plaintiffs' Exhibits 71-72. Exhibit 70 is September 2007 lab reports.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 8 OF 14

report.[32]

Third, if Plaintiffs wished to provide additional testimony based on information in the spreadsheets disclosed in April 2005, the Court set a deadline of August 31, 2007, for Plaintiffs to file a motion for permission to do so. They certainly had time to seek the necessary permission. They chose not to, and should not be allowed to now escape the consequences of their choice.

Fourth and last, even if the spreadsheets were "new" evidence, that would not relieve the Plaintiffs from the requirement, under the Court's Order, of seeking leave before proffering a new opinion about a subject other than the "effects resulting from the passage of time."

Mr. Fucik also offers new opinions in the first two paragraphs under TDS on page 13 of his report.[33] The new opinions address Teck Cominco expert Gene Andrews' 1999 and 2004 reports. Plaintiffs assert that these opinions were provided in earlier declarations filed in 2005 but fail to provide a citation.[34] Mr. Fucik provided only one declaration in 2005, attached to docket 124. The opinions do not appear in that declaration.

Next, Plaintiffs assert that some of Dr. Moran and Mr. Fucik's new opinions are based on documents provided in November 2007 and January 2008.[35] Plaintiffs argue

---

[32] Exhibit C to Joint Motion, Doc. 219-4. Because in this one instance one of the Plaintiffs' witnesses claimed in his report to have relied on the spreadsheets, Teck Cominco and NANA did not object to Mr. Fucik's new opinions in the last paragraph of page 11 of his new report, continuing through the chart on page 12, even though an objection would have been proper because the opinions are beyond what the Court allowed. Prompted by the Plaintiffs' sudden discovery that a number of their experts' new opinions relied on the spreadsheets, Teck Cominco and NANA investigated whether the spreadsheets in fact contain any new evidence. As discussed above, they do not.
From a principled approach, Mr. Fucik's new opinions on pages 11 and 12 should be struck because they do not take into account the effects resulting from the passage of time. But Teck Cominco and NANA will not object now because they did not raise the objection in the Joint Motion at Docket 218.
[33] Exhibit C to Joint Motion, Doc. 219-4.
[34] Doc. 258 at 9.
[35] The new opinions Plaintiffs assert are based on documents disclosed since November 2007 are Dr. Moran's new opinions offered at pps. 7-10 and 19-25 (Exhibit B to Joint Motion, Doc 219-3), and Mr. Fucik's new opinions offered at pp. 14-16 and 22-
*(Footnote Continued)*

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 9 OF 14

that Dr. Moran and Mr. Fucik offered these new opinions for the first time in their new reports "because [they] had never had access to the data before."[36] Defendants agree that the 2005-2007 data was disclosed after the original 2004 reports, but the experts are limited to updating their reports to take into account "any effects resulting from the passage of time." Because neither Dr. Moran nor Mr. Fucik had included similar tables for any of the years 1999-2004 in their earlier reports, the new tables for 2005-2007 by definition cannot be updates allowed by the Court's Order.

Again, even if the documents should have been disclosed earlier, that is not a justification for Plaintiffs' violation of the Court's Order. If Plaintiffs wanted to offer additional expert testimony based on the documents provided after August 31, 2007, they should have filed a motion seeking permission to do so.

**B.     Dr. Kavanaugh's new report should be struck in its entirety.**

Dr. Kavanaugh's new report suffers from many of the same infirmities discussed above as well as some that are unique. It is not an update reflecting the effects resulting from the passage of time. It is instead an assortment of new opinions, partly "to address the Court's rulings,"[37] all presented without permission from the Court to do so.

First, Dr. Kavanaugh apparently has replaced his calculations using data from Teck Cominco Alaska Incorporated. Dr. Kavanaugh indicates that in his 2004 report, he "used information from Teck Cominco Limited to plug the gap" and that in his 2008 report he was careful not "to use any data at all from Teck Cominco Limited."[38] Stated most clearly, in the earlier report Dr. Kavanaugh calculated economic benefit that he attributed to the parent company. In his 2008 report, he attributed the economic benefit due to noncompliance with TDS permit limitations to the subsidiary. This change obviously has nothing to do with taking into account "effects resulting from the passage

---

27 (Exhibit C to Joint Motion, Doc 219-4). Plaintiffs admit that the summary provided by Mr. Fucik is "almost identical to the summary offered by Dr. Moran." Doc. 258 at 10.
[36] Doc. 258 at 6 and 10.
[37] Exhibit E to Joint Motion, Doc. 219-5, at 1, n.1.
[38] Declaration of Dr. Kavanaugh, ¶¶ 3-4.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 10 OF 14

Heller Ehrman LLP
510 L STREET, SUITE 500
ANCHORAGE, AK 99501-1959
TELEPHONE (907) 277-1900

of time." It is instead an effort to address testimony stricken from his earlier report. As to other testimony from this very witness that Plaintiffs wanted to update to respond to the Court's order, the Court instructed Plaintiffs at the planning conference on August 9 that they would need to file a motion. That is what Plaintiffs should have done here if they wanted these new opinions of Dr. Kavanaugh admitted.[39]

Second, Dr. Kavanaugh changed the data used in his ability-to-pay calculation. He admits that he added an additional earlier year to his calculations.[40]

Third, there are substantial differences between the cash flows Dr. Kavanaugh used in his earlier report[41] and his new report.[42] For example, on page nine of his initial expert report, he provided the following data as representing "TCAI's annual net income from Red Dog's operations adjusted for depreciation, a non-cash cost":

    1999: $143,406,000
    2000: $103,238,000
    2001:   $2,587,000
    2002:  -$4,327,000
    2003:   $9,197,000

But on page 13 of his January 18, 2008 expert report, Dr. Kavanaugh provided the following data as the "cash flow from operations for TCAI as reported" for those same years:

    1999: $69,402,000
    2000: $71,917,000
    2001:  $1,555,000
    2002:     $77,000
    2003: $36,078,000

Dr. Kavanaugh used the first data set in the ability-to-pay calculations he provided in his 2004 expert report. He used the second set of data as part of the data set for his ability-to-pay calculations in his 2008 update of his 2004 report.

Between the two reports, Dr. Kavanaugh did something more than just update his

---

[39] Exhibit O, pp. 3-4.
[40] Declaration of Dr. Kavanaugh, ¶ 9.
[41] Exhibit M to Joint Motion, Doc. 219-8, at 9.
[42] Exhibit E to Joint Motion, Doc. 219-5, at 13.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 11 OF 14

time series for the passage of time (i.e., add additional data for additional years). Instead, he changed the concepts behind the data he selected for use in his ability-to-pay analyses.

These revisions are not updates to take into account any effects resulting from the passage of time. They are new opinions that violate the Court's Order and that should be stricken.

## IV. THE COURT SHOULD STRIKE ALL OF THE PLAINTIFFS' EXPERTS' NEW REPORTS EXCEPT THOSE PORTIONS THAT ADDRESS THE EFFECTS, IF ANY, RESULTING FROM THE PASSAGE OF TIME SINCE THE DATE OF THE ORIGINAL REPORT THROUGH DECEMBER 31, 2007.

To be permissible, the contents of the Plaintiffs' experts' new opinions must meet two requirements. They must be an update, which is to say that they can not be something newly disclosed for the first time in 2008, and they must be limited to "taking into account any effects resulting from the passage of time from the date used in the original report through December 31, 2007." If there was no opinion expressed in the original report, by definition there cannot be an updated opinion taking into account any effects resulting from the passage of time from the date used in the original report through December 31, 2007. Further, only some opinions will be susceptible to being updated. The opinion must be of a nature such that the passage of time could and did have some effect on the earlier expressed opinion. That is why not all of Teck Cominco's experts updated their reports. Not all opinions will change over time.

Because the portions of the Plaintiffs' experts' new reports to which Teck Cominco and NANA object do not meet the Court's requirements, they should be struck.

Plaintiff's counter by arguing for sanctions against Teck Cominco and NANA for having the temerity to file the Joint Motion.[43] Calling the Joint Motion "frivolous," Plaintiffs allege that it seeks to "penalize plaintiffs for using the late-disclosed documents in their updated expert reports."

---

[43] Opposition, p 14.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 12 OF 14

But that is not what Teck Cominco and NANA argue.  Instead, they assert that in fact most of the Plaintiffs' new opinions are based on information Plaintiffs have possessed for years.  As to the discovery produced to Plaintiffs in 2007 and 2008, Teck Cominco and NANA have not addressed whether Plaintiffs' experts should or should not be able to use that information.  That issue has not be put before the Court in a cognizable manner.  Teck Cominco and NANA simply ask the Court to enforce its Order and limit the Plaintiffs' updated expert opinions in the manner stated the Order.  If the Plaintiffs want to introduce any new opinions, they should be required to file a motion that the defendants can then respond to on its merits.

It is not "supreme chutzpah" to expect the Plaintiffs will follow the Court's Order, nor is it "supreme chutzpah" to ask the Court to enforce its Order.  If the label must be applied to some party in this dispute it better fits the Plaintiffs, who responded to being called on their violation of the Court's Order by asking for sanctions against Teck Cominco and NANA, and in some instances misrepresenting the evidentiary basis of their experts' new opinions.  Plaintiffs' shrillness should not obscure their failure to comply with the Court's Order regarding new expert opinions.  The Joint Motion should be granted.[44]

Dated:  February 29, 2008            Respectfully submitted,

                                     Attorneys for Intervenor-Defendant
                                     NANA REGIONAL CORP.

                                     By _____/s/ James E. Torgerson_____
                                     JAMES E. TORGERSON (BAR NO. 8509120)
                                     YVONNE LAMOUREUX (BAR NO. 0512124)
                                     Heller Ehrman LLP
                                     510 L Street, Suite 500
                                     Anchorage, AK  99501
                                     Telephone:  907-277-1900
                                     Jim.torgerson@hellerehrman.com
                                     Yvonne.lamoureux@hellerehrman.com

---

[44] Alternatively, at a minimum, Defendants should be afforded an opportunity to provide supplemental expert reports and depose Plaintiffs' experts regarding their new reports.

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 13 OF 14

Dated: February 29, 2008          Respectfully submitted,

HARTIG RHODES HOGE & LEKISCH
Defendant
TECK COMINCO ALASKA INCORPORATED

By _____*/s/ Sean Halloran*_____
    SEAN HALLORAN (BAR NO. 9211080)

**CERTIFICATE OF SERVICE**
This is to certify that a true and correct copy of the foregoing **JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS** was served via the method indicated below this 29th day of February, 2008, on the following parties:

| | |
|---|---|
| Luke W. Cole<br>Center on Race, Poverty & the Environment<br>47 Kearny Street, Suite 804<br>San Francisco, CA 94108<br>luke@igc.org | Counsel for Plaintiffs<br><br>Served via: Electronic transmission |
| Nancy S. Wainwright<br>Law Offices of Nancy S. Wainwright<br>13030 Back Road, Suite 555<br>Anchorage, AK 99515-3538 | Counsel for Plaintiffs<br><br>Served via: U.S. Mail only |
| Sean Halloran<br>Hartig Rhodes Hoge & Lekisch, P.C.<br>717 K Street<br>Anchorage, AK 99501<br>sean.halloran@hartig.com | Counsel for Defendant Teck Cominco<br>Served via: Electronic transmission |
| David S. Case<br>Landye Bennett Blumstein LLP<br>701 West 8th Avenue, Suite 1200<br>Anchorage, AK 99501<br>dcase@lbblawyers.com | Counsel for Intervenor-Defendant<br>Northwest Arctic Borough<br><br>Served via: Electronic transmission |

   */S/ James E. Torgerson*
JAMES E. TORGERSON (BAR NO. 8509120)
YVONNE LAMOUREUX (BAR NO. 0512124)
HELLER EHRMAN LLP
510 L Street, Suite 500
Anchorage, AK 99501
Telephone: 907-277-1900
Jim.torgerson@hellerehrman.com
Yvonne.lamoureux@hellerehrman.com

SE 2243913 v1
2/29/08 11:23 PM (38576.0002)

**JOINT REPLY TO MOTION TO STRIKE PLAINTIFFS' NEW EXPERT REPORTS**
**ENOCH ADAMS V. TECK COMINCO ALASKA INCORPORATED, CASE NO.: A:04-CV-0049 (JWS)**
PAGE 14 OF 14

Heller Ehrman LLP
510 L STREET, SUITE 500
ANCHORAGE, AK 99501-1959
TELEPHONE (907) 277-1900