who make such a request shall be included as reviewing parties. (Ord. 93-02 § 1 (9.30.050), 1993)

**9.08.060 Fees.**
The commission shall establish a schedule of fees for permits or other actions under this title by resolution. The administrator may waive or reduce the fees in this schedule when the borough, state, federal or a local government is the applicant, when the applicant is a nonprofit corporation or for any natural person for whom the fee would pose an economic hardship. (Ord. 93-02 § 1 (9.30.060), 1993)

**9.08.070 Compliance.**
Any use that is not in compliance with the applicable provisions of this title as well as permits, master plans, approvals, and other authorizations issued under this title is a violation of this title. The administrator may take administrative actions consistent with this title to bring about compliance, and may initiate or request such civil or criminal action as may be available for violations of this title.
　A. Violation Complaint. Any person may bring to the attention of the administrator suspected violations of this title. The complaint may be oral or in writing. The administrator shall summarize in writing the substance of any complaint lodged orally. The administrator is authorized to investigate any credible complaints in order to ensure compliance with this title. At any time, upon his or her initiative, or upon the receipt of a complaint, the administrator may inspect or investigate any use or development for compliance with or violations of this title.

　B. Violation Notice. After a violation has been discovered, investigated and verified, the administrator will notify by written finding the person responsible for the violation and the property owner by personal notice, certified mail and/or notice posted on the site of the violation. The finding will specify the violation(s) and may specify the range of fines or penalties to be imposed and shall direct the person to cease the violation, or appeal the finding within 10 days after receipt, mailing or posting of the notice, as the case may be. All violation notices will be reported to the commission at its next meeting.

**9.08.080 Enforcement orders.**
　A. Upon substantiation of a violation, the administrator may:
　　1. Order the discontinuance of activity for any use which does not comply with the terms of this title;
　　2. Order the removal or abatement of buildings or structures or any noncompliant additions or alterations to buildings or structures;
　　3. Order the discontinuation of development, use, construction or other activity leading to a noncompliant use or structure;
　　4. Order the restoration of any structure, vegetation, land, water body, or other thing upon the land that is destroyed or damaged;
　　5. Specify the date by which corrective actions be completed; 6. Revoke permits or other licenses issued by the borough;
　　7. Order submittal of a plan for compliance with the terms of this title. The plan shall include a schedule for completion and procedures to accomplish compliance. The administrator will review and approve, condition, or deny the plan pursuant to the administrative approval procedures of Chapter 9.16 NABC;
　　8. Assess a civil fine under provisions in NABC 9.08.240;

16

9. Order posting of a bond or other security in a form and amount calculated by the administrator to ensure correction of the violation and recovery of any damages, or

10. Take any other action necessary to ensure compliance with all provisions of this title, including revocation or suspension of approvals. (Ord. 93-02 § 1 (9.30.080), 1993)

B. An order issued by the administrator under this chapter shall be delivered to the owner, operator, manager, or lessee of the property, or person responsible for the violation by personal service or by certified mail, or, if the foregoing parties cannot be located after a reasonable inquiry, it may be posted in a conspicuous place on the site of the violating development. An order posted under this chapter may not be moved, removed, modified, defaced, hidden or obliterated except upon the authority of the administrator.

**9.08.090 Appeals – To the commission.**
Any aggrieved person, including the applicant, may appeal a decision of the administrator by serving written notice of appeal on the administrator (and the applicant) within 15 business days of receipt of the decision. The notice shall state the reasons why the appellant believes the decision of the administrator is improper. Notice of an appeal is considered served when actually received or when properly mailed. The issues before the commission shall be limited to those raised on appeal, and the evidence shall be limited to a review of the record, although further argument may be allowed based on the record. The burden of proof shall be on the appellant to demonstrate the issues on appeal by substantial evidence. Except for an applicant, the appellant must also demonstrate the manner in which the appellant is adversely affected by the decision being appealed. The commission may affirm or reverse the administrator's decision, return the matter to the administrator for further evidence, or change the conditions attached to any approval issued by the administrator. Approved uses may proceed during the appeal process unless ordered to cease by the administrator or the planning commission. Uses which have not been approved are subject to abatement, fines and other penalties following an unsuccessful appeal. (Ord. 93-02 § 1 (9.30.100), 1993)

**9.08.100 Appeals – To the assembly.**
An appeal to the assembly from any decision of the planning commission may be made in the same manner and according to the same requirements as set forth above for appeals to the commission. Notice of appeal shall be served on the administrator. The assembly's decision shall be final for the borough. (Ord. 93-02 § 1 (9.30.110), 1993)

**9.08.110 Appeals – From assembly decisions.**
Any person aggrieved by the final decision of the assembly may appeal such a decision or action as provided under NABC 9.08.210. (Ord. 93-02 § 1 (9.30.120), 1993)

**9.08.120 Date of hearing.**
Where an appeal to the commission or assembly is allowable under this title and an appeal has been properly lodged, such proceeding shall take place at the next regularly scheduled or special meeting of the body hearing the appeal; provided, that sufficient time exists for the applicant and the borough to prepare the appeal. In no case should the date of hearing exceed three months from the lodging of the appeal. (Ord. 93-02 § 1 (9.30.130), 1993)

### 9.08.130 General hearing procedures.

Appeals under this title should be conducted informally and may be governed by such rules and procedures as the commission or assembly may choose to establish, except that:

  A. Parties may appear in person or through counsel.
  B. Parties may present witnesses and evidence on their own behalf.
  C. Parties or their counsel may cross-examine opposing witnesses on matters relevant to the issues, impeach witnesses regardless of which party first called the witness to testify, and rebut evidence against themselves.
  D. Relevant evidence should be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of a common law or statutory rule which makes improper the admission of the evidence over objection in a civil action. Hearsay evidence may be considered, provided there are guarantees of its trustworthiness and that it is more probative on the point for which it is offered than any other evidence which the proponent can procure by reasonable efforts.
  E. All appeals shall be open to the public, unless otherwise agreed by all parties to the appeal.
  F. All appeals should be memorialized by an electronic recording or a stenographic record. (Ord. 93-02 § 1 (9.30.140), 1993)

### 9.08.140 Specific hearing procedures.

Subject to modification by the commission or the assembly, the following procedures shall be followed in the conduct of an appeal.

  A. Before the Planning Commission.
   1. The notice of violation, or the notice of appeal if the appeal does not relate to a notice of violation, shall be read into the record.
   2. Parties make opening statements (appellant going first).
   3. Appellant presents its case which may include a statement or information provided by witnesses. An opportunity is provided for cross-examination.
   4. The administrator and/or the applicant, as appropriate, offers a rebuttal
   5. Parties make closing remarks (appellant going first).
   6. The Planning Commission deliberates and makes a written decision under the provisions of NABC 9.08.160 and NABC 9.08.170.
  B. Before the Assembly.

In appeals before the assembly, the administrator or the borough clerk may assist in preparation of the record on appeal. The record on appeal shall contain a brief factual summary of the proceedings before the planning commission, and any other relevant information. Either party may request a full transcript of the prior proceedings before the planning commission. Such request must be in writing, presented to the borough clerk, and the borough clerk will deliver the transcript within 10 business days of the request. The party making such request must bear the costs of transcription. The borough clerk will notify the requesting party of the costs of such transcription once the transcription has been completed.

The appeal shall proceed as follows.
   1. The decision of the planning commission shall be read into the record or distributed to assembly members for review.
   2. Parties make opening statements (appellant going first).

18

   3. Appellant presents its case which may include a statement or information provided by witnesses. An opportunity shall be provided for cross-examination by the borough.
   4. The Planning Commission or its designee and/or the applicant, as appropriate, offers a rebuttal.
   5. Parties make closing remarks (appellant going first).
   6. The Assembly deliberates and makes a written decision under the provisions of NABC 9.08.160 and NABC 9.08.170.
  C. Telephonic Appearances. Telephonic appearances of parties to appeals is allowable, particularly in cases where it will result in reduced costs to all parties.
  D. Failure to Appear. If any appellant has a scheduled appearance, but has failed to appear before the appellate body, the appeal will proceed as scheduled, and any documents or evidence submitted by the appellant will be presented to the appellate body at the time of the hearing. For good cause shown, the appellate body may postpone the hearing at the request of the appellant. (Ord. 93-02 § 1 (9.30.150), 1993)

**9.08.150 Scope of review.**
The commission or assembly may hear and decide de novo all matters appealed and may exercise independent judgment as to the weight of evidence supporting or refuting the decision being appealed, and may exercise independent judgment on legal issues raised by the parties. Decisions being appealed may be reversed, modified, remanded or affirmed by the commission or assembly. In each case where the reviewing body denies the appeal, it may also determine any penalties to be imposed for a violation. (Ord. 93-02 § 1 (9.30.160), 1993)

**9.08.160 Deliberations.**
Upon close of the presentation of the case on appeal, and after any closing remarks have been made by the parties, the body hearing the appeal may adjourn to closed chambers to privately discuss any adjudicatory matters pertaining to the appeal or may otherwise take the matter under advisement prior to issuing a written decision on the matter under appeal. (Ord. 93-02 § 1 (9.30.170), 1993)

**9.08.170 Decisions.**
No later than 15 business days following an administrative hearing or quasi-judicial proceeding conducted under this chapter, the body empowered to conduct the appeal proceeding shall issue a written decision based on findings and conclusions adopted by the body hearing the appeal. An oral decision may be given on the record at the close of the proceedings, but such decision will not become a final decision from which appeal may be taken until that decision is issued as a written decision containing the required findings. Such findings must be in writing and must be reasonably specific so as to provide interested persons, and where appropriate, reviewing authorities, a clear and precise understanding of the reasons for the decision entered. The decision, findings of fact and conclusions of law shall be forwarded to all parties to the appeal. (Ord. 93-02 § 1 (9.30.180), 1993)

**9.08.180 Reconsideration.**
 A. A decision of the commission or the assembly reached at the conclusion of a hearing or other proceeding may be reconsidered or reheard only if:
  1. There was substantial procedural error in the original proceedings; or

2. The original decision was based on fraud or misrepresentation.

B. Any party to an appeal seeking reconsideration or rehearing must file a request with the borough clerk together with the materials supporting one or more of the grounds stated above within 10 business days after the date of the final decision for which reconsideration or rehearing is requested. If reconsideration is granted, a rehearing may also be granted if appropriate. A rehearing shall be conducted in the same manner as the original proceeding. (Ord. 93-02 § 1 (9.30.190), 1993)

### 9.08.190 Ex parte contacts prohibited.

Members of the commission or the assembly, while acting in a quasi-judicial capacity, shall be impartial in all matters both in fact and in appearance. No member of the commission or the assembly shall receive or otherwise engage in ex parte communications with the appellant, applicant or other parties adversely affected by the appeal or members of the public concerning the appeal or issues specifically presented in the notice of appeal, either before the appeal hearing or afterwards, during the period of time the matter is subject to reconsideration. This section shall not be deemed to prevent those charged with conducting appeals under this title from discussing matters relating to the appeal among themselves or to prohibit communications between the borough staff and such persons where such staff members themselves are not named parties to an appeal. Insofar as practicable, communications between borough staff and such commission or assembly members should avoid discussion of the merits, evidence or other nonprocedural matters related to a specific appeal. (Ord. 93-02 § 1 (9.30.200), 1993)

### 9.08.200 Transition.

The provisions of this chapter shall apply only to those appeals or applications for administrative decisions filed on or after the date this title becomes effective. (Ord. 93-02 § 1 (9.30.210), 1993)

### 9.08.210 Judicial relief.

Any aggrieved party may seek an appeal before the Superior Court for the state of Alaska only after final exhaustion of all administrative remedies and appeals. The venue for an appeal to the Superior Court will be the Second Judicial District at Kotzebue. All such judicial appeals are appeals on the record, and no new evidence or issues may be presented. Both parties are limited to the record on appeal, except to the extent that the Alaska Rules of Civil Procedure require otherwise. (Ord. 93-02 § 1 (9.30.220), 1993)

### 9.08.215 Costs of Enforcement.

A. A developer shall be responsible for all costs incurred by the borough in enforcing violations of this title and unsuccessful appeals of a decision by the administrator or the planning commission. Such costs shall include, but are not limited to, the cost of detecting, investigating and attempted correction of the violations; attorney fees and costs; costs of removal of structures; repair or restoration of damages; and all other costs related to the enforcement action.

B. In addition, in the discretion of he administrator, the borough may assess the economic savings realized by the person in not complying with the requirement for which a violation is charged. "Economic savings"

means the sum which a person would be required to expend for the planning, acquisition, siting, construction, installation and operation of the facilities necessary to effect compliance with the standard violated.

C. All costs shall become a lien on the violator's property or interest in property, if the property or interest was the subject of the abatement action, or shall become collectible and subject to any collection actions the borough employs to collect other debts.

D. The administrator may defer assessment of all or part of that portion of the costs imposed upon a person under this section conditioned upon the person complying, within the shortest feasible time, with the requirement that was violated.

### 9.08.220 Lien enforcement.

The failure to pay any penalty assessed or upheld as a result of a violation of this title, or the failure of an appellant to reimburse the borough for all costs incurred in the defense of an appeal that is dismissed or otherwise rejected creates a lien against the appellant and appellant's real and personal property. The lien amount may include the cost of abating a violation or defending a permit or approval condition. The lien created may be enforced as provided in AS 34.35.005 through 34.35.045. The enforcement of the lien is a cumulative remedy and does not bar the collection of the charges for abatement or costs and attorney fees through a personal action. (Ord. 93-02 § 1 (9.30.230), 1993)

### 9.08.230 Interpretation.

All questions of the administrator's interpretation of the provisions of this title shall be treated as an appeal if proper notice is served pursuant to NABC 9.08.120. (Ord. 93-02 § 1 (9.30.240), 1993)

### 9.08.240 Violation – Penalty.

A. Administrative fines. The commission may establish by resolution a schedule of civil fines for various violations which can be imposed by the administrator and disposed of without court appearance. Absent such a schedule, fines may be levied by the administrator, with the approval of the mayor, on a case-by-case basis for each violation up to the maximum allowed by this chapter. Prior to imposing a fine under this section, the administrator shall give written notice to the violator of the violation and that a specific fine will be imposed unless the violator can show cause why the fine should not be imposed. The notice shall also inform the violator of the date, time and place a hearing will be held by the administrator or the administrator's appointee to hear from the violator why the fine should not be imposed. The administrator may delegate to an appointee the authority to hear the case and provide the administrator with a proposed decision or may delegate the authority to hear and decide the case. At the conclusion of the hearing, the person hearing the case shall render a written decision ordering a full fine, a partial fine or dismissal. The order shall contain findings supporting the conclusion and action ordered. If the violator fails to appear at the hearing, without good cause, the person hearing the case may treat such failure as an admission of the violation and may issue an order with appropriate findings an may impose the fine. All orders issued under this section shall be mailed or otherwise promptly delivered to the violator and shall contain notice of a violator's right to appeal the decision to the commission and the time within which such an appeal must be filed. Fines imposed under this section may be collected in a civil action against the violator if not paid voluntarily within 30 days.

B. Civil Remedies. The administrator, with the approval of the mayor, may commence a civil judicial action against a person who violates a provision of this title or a term, a

lawful order of the borough, or a condition or limitation imposed on a permit or approval under this title. A judicial action to enjoin a violation may be brought notwithstanding the availability of any other remedy. Each act of violation and every day a violation exists is a separate violation. In addition to other relief, a civil penalty not to exceed $1,000 may be imposed for each violation; or in the case of operating without an appropriate notice, permit or for violations which are related to public health, safety or welfare, or cause substantial adverse effects to the environment, no more than $5,000 for the initial violation nor more than $2,000 for each day thereafter on which the violation continues and which, in either case, shall reflect, when applicable:

    1. Reasonable compensation in the nature of liquidated damages for any adverse public health, safety, welfare, or environmental effects caused by the violation, which shall be determined by the court according to the sensitivity of the receiving environment, and the degree to which the violation degrades existing environmental quality;

    2. Reasonable enforcement costs incurred by the borough as described in NABC 9.08.215; and

    3. The economic savings realized by the person in not complying with the requirement for which a violation is charged. As used in this section "economic savings" means that sum which a person would be required to expend for the planning, acquisition, siting, construction, installation, or operation of the facilities necessary to effect compliance with the standard violated.

  C. Criminal Remedies.

    1. A person who negligently violates or who negligently causes or permits a violation of a provision of this title or of a lawful order of the borough, a permit, or a term or condition of a permit is guilty of a Class B misdemeanor.

    2. A person who willfully or recklessly violates a provision of this title, a lawful order of the borough, or a permit, or a term or condition of a permit approved under this title is guilty of a Class A misdemeanor.

    3. Each day on which a violation occurs is a separate violation.

    4. A person who fails to provide or falsely states information required under this title is guilty of a Class B misdemeanor. Each unlawful act constitutes a separate offense.

  D. Settlement. At any stage in any proceeding under this title, the administrator, with the approval of the mayor, may mitigate fines or other penalties in order to promote settlement of a dispute on terms deemed just and equitable under the circumstances.

  E. Parties. A proper party for any enforcement action under this title may include the owner of the site or any part thereof; any lessee or occupant of the site or any part thereof; and the applicant, its agents, contractors, subcontractors and employees. (Ord. 93-02 § 1 (9.30.090), 1993)

## Chapter 9.12
## ZONING DISTRICTS

**Sections:**
    <u>9.12.010</u> **Maps.**
    <u>9.12.020</u> **Village (V) district.**
    <u>9.12.030</u> **Subsistence conservation (SC) district.<u>9.12.035</u> Habitat conservation (HC) district**

  9.12.050 **General conservation (GC) district.**
  9.12.060 **Resource development (RD) district.**
  9.12.070 **Transportation corridor (TC) district.**
  9.12.080 **Nonconformities.**

**9.12.010 Maps.**
The map entitled "Zoning District Map of the Northwest Arctic Borough, Alaska" is adopted and made a part of this title. The map graphically depicts the geographic location of the zoning districts set forth in this title. Except as provided in subsection (B) of this section, the map may be amended only by an ordinance adopted by the assembly under the process set forth in Chapter 9.20 NABC. The map may require interpretation with respect to specific properties and the following apply:
 A. The official map, regardless of the existence of copies, is located in the borough planning department. In case of doubt, the administrator shall determine the status of land within the borough as depicted on the official map.
 B. In making determinations under this title, the borough may also use the Northwest Arctic Borough 1":200' and 1":50' regional land status maps and relevant U.S. Geological Survey 1:63,360 series quadrangle maps as of the date of this title and as hereafter revised, corrected or updated as supplements to determine the location of the village district and of uses within the village district.
 C. To the extent practicable, district boundaries shall be construed to follow elevation contours, section lines, lease area boundaries, lot lines, municipal boundaries or platted lines. Tidelands, submerged lands, waters and ice seaward to the borough boundary of an adjoining district are within the subsistence conservation district unless otherwise mapped. Boundaries indicated as following shorelines are construed to follow such shorelines, and in the event of change of the shoreline shall be construed as moving with the actual shoreline. (Ord. 93-02 § 1 (9.40.010), 1993)
 D. Changes to land use district boundaries or other information portrayed on the zoning map shall be made on the date the zoning ordinance amendment becomes effective. If the zoning map contains drafting errors or is damaged, destroyed, lost or difficult to interpret, the assembly may by ordinance adopt a new zoning map or maps which shall supersede the prior zoning map and correct drafting errors and other errors or omissions. Such an ordinance may be adopted after review and recommendation of the planning commission, but the other requirements of Chapter 9.20 NABC shall not apply.
 E. The limits of the village district for each village, except Noorvik, Noatak and Kiana, coincide with the corporate city limits of each respective municipality as determined by the State of Alaska Department of Community and Regional Affairs. Kotzebue is not included in the village district designation. The limits of the village districts for Noorvik, Noatak and Kiana shall consist of the following:
  1. Noorvik: the city limits, plus all of the land in Sections 26, 27, 34 and 35 of Township 17 North, Range 11 West, and Sections 2, 3 and 4 in Township 16 North, Range 11 West, Kateel River Meridian.
  2. Noatak: all land west of the Noatak River in Sections 8, 9, 16 and 17 of Township 25 North, Range 19 West, Kateel River Meridian.
  3. Kiana: the city limits, plus all of the land north or west of the Squirrel and Kobuk Rivers in Sections 3, 4, 8, 9, 10, 16 and 17 of Township 18 North, Range 8 West, Kateel River Meridian.

**9.12.020 Village (V) district.**

A. Purpose. The village district governs the sites and immediate environs of each village in the borough except Kotzebue. The intent of the village district is to accommodate uses which:
1. Reinforce traditional values and lifestyles;
2. Are in accord with the borough and village comprehensive plan; and
3. Are in accord with the desires of the residents of the village.

Except where excluded as a "use" under NABC 9.04.070, land use in the village district is prohibited, unless permitted or approved as required by this title.

B. Minor Use Permit in the V District. The administrator may approve the following activities without a public notice after reviewing the permit application:
1. Multifamily dwelling units, warehouses, shop use;
2. Child care facilities, cultural camps, churches, health care facilities;
3. Placement of fill in a wetland less than one acre;
4. Placement of communication equipment;
5. Temporary construction facilities;
6. Ice roads and ice pads, and tundra travel for existing or approved development;
7. Snow disposal sites;
8. Archaeological surveys;
9. Temporary use (excluding fuel storage) of airstrips;
10. Construction of new airports or expansion of existing airports;
11. Prospecting;
12. Minor alterations of existing uses;
13. Public facilities;
14. Commercial recreation uses;
15. Miscellaneous commercial uses;
16. Major alterations to existing uses;
17. Mineral or oil and gas exploration;
18. Bulk fuel storage; or
19. Other "uses" as defined in NABC 9.04.070 that are not included in subsections (C) or (D) of this section.

C. Major Use Permits in the V District. The following activities may be established upon approval of the administrator after public review of the permit application:
1. Schools;2. Any use or structure within a watershed which provides a community's drinking water;
3. Excavation or other activities on a parcel by a professional archaeologist or other person that are likely to disturb archeological or historic resources;
4. More than one acre of fill placed in wetlands;
5. Minor resource extraction;
6. Tundra travel for new, not previously approved development; or
7. Any use elevated pursuant to NABC 9.16.030.

D. Conditional Use Permit in the V District. The planning commission may approve the following activities after public review of the permit application:
1. Landfills;
2 Utility substations, power plants;

3. Major energy facilities;

24

4. Mineral development; or

5. Any use elevated for review pursuant to NABC 9.16.030. (Ord. 93-02 § 1 (9.40.020), 1993)

**9.12.030 Subsistence conservation (SC) district.**

A. Purpose. The subsistence conservation (SC) district encompasses certain undeveloped areas of the borough that have been determined to have high importance to borough residents for subsistence resources or activities. The SC district is intended to include areas that are used regularly for subsistence harvest, to conserve the natural ecosystem for all the various plants and animals upon which borough residents depend for subsistence, and to promote access to those resources for subsistence purposes. Uses will not be allowed unless the administrator or planning commission determines by substantial evidence that such uses will not interfere or conflict with subsistence uses. Subject to this overall intent, the SC district can accommodate mineral exploration and development and minor resource extraction, but applicants for major development projects must apply for rezoning to the resource development district. Commercial recreation uses are not allowed in the subsistence conservation district, except by permit. Except where excluded as a "use" under NABC 9.04.070, land use in the SC district is prohibited unless permitted or approved as required by this title.

B. Sub-districts. In addition to general areas zoned as the SC district, the following sub-districts are established to protect subsistence resources and uses in specific areas. The borough may identify additional sub-districts either prior to or during the consideration of permit applications. The boundaries of the sub-districts, other than the Pah River Subsistence Conservation Sub-district, are depicted on the zoning district map.

1. Sisoalik Spit Subsistence Conservation Sub-district.
2. Cape Krusenstern Subsistence Conservation Sub-district.
3. Kobuk-Selawik Lakes Subsistence Conservation Sub-district T
4. Cape Espenberg/Goodhope River Subsistence Conservation Sub-district.
5. Kobuk River Delta Subsistence Conservation Sub-district.
6. Selawik River Delta Subsistence Conservation Sub-district.
7. Salmon River Subsistence Conservation Sub-district.
8. Selawik-Hunt-Redstone Rivers Subsistence Conservation Sub-district.
9. Maniilaq River-Ambler Lowlands Subsistence Conservation Sub-district.
10. Inmachuk River Subsistence Conservation Sub-district.
11. Lower Buckland River Subsistence Conservation Sub-district.
12. North Fork-Squirrel-Omar River Subsistence Conservation Sub-district.
13. North Kivalina Coast Subsistence Conservation Sub-district.
14. Onion Portage Subsistence Conservation Sub-district.
15. Eschscholtz Bay Subsistence Conservation Sub-district
16. Elephant Point/Choris Peninsula Subsistence Conservation Sub-district.
17. Upper Kivalina River Subsistence Conservation Sub-district.
18. Pah River Subsistence Conservation Sub-district includes all of Township 16 North, Range 13 East, Kateel River Meridian, including the confluence of the Pah and Kobuk Rivers and extending south to include the area where the Pah River and its tributaries flow to and including the Pah River Flats.

C. Minor Use Permits in the SC District. The administrator may approve the following activities without public notice after reviewing the permit application:

1. Warehouse, shop use;

2. Child care facilities, cultural camps, churches, health care facilities;
3. Movement of bulk fuel for village needs;
4. Placement of communication equipment;
5. Miscellaneous commercial use;
6. Public facilities;
7. Commercial recreational uses;
8. Ice roads and ice pads, and tundra travel for existing or approved development;
9. Archaeological surveys;
10. Temporary use (excluding fuel storage) of airstrips;
11. Prospecting;
12. Airports and airstrips;
13. Bulk fuel storage; 14. Minor alterations of existing uses;
15. Major alterations to existing uses;
16. Mineral or oil and gas exploration;
17. Snow disposal sites;
18. Tundra travel for new, not previously approved development; or
19. Other "uses" as defined in NABC 9.04.070 that are not included in subsections (D) or (E) of this section.

D. Major Use Permits in the SC District. The administrator may approve the following activities after public review of the permit application:
1. Any use or structure within a watershed which provides a community's drinking water;
2. Landfills, placement of fill in a wetland;
3. Temporary construction facilities;
4. Excavation or other activities on a parcel by a professional archaeologist or other person that are likely to disturb archaeological or historic resources;
5. Minor resource extraction;

6. Construction of new airports or expansion of existing airports involving greater than 20 acres of surface; or
7. Any minor use permit use elevated pursuant to NABC 9.16.030.

E. Conditional Uses in the SC District. The planning commission may approve the following activities after public review of the permit application:
1. Residential uses including multifamily dwellings;
2. Utility substations, power plants;
3. Major energy facilities; or
4. Any major use permit elevated pursuant to NABC 9.16.030. (Ord. 93-02 § 1 (9.40.030), 1993)

### 9.12.035 Habitat Conservation (HC) District

A. Purpose. The Habitat Conservation (HC) district is a district that encompasses areas of the borough that provide habitat essential for the maintenance of subsistence species and have high importance to borough residents for subsistence resources. These areas are not appropriate for development activities. The HC district is intended to ensure that such areas are protected from development. These areas may include denning, calving, feeding, molting, brooding, migrating, fish habitat, whale resting and

26

feeding areas and other areas that are critical to subsistence resources. Subsistence activities may be conducted in the HC district without a permit. Uses and activities will only be allowed in these areas if it is determined they will not interfere or conflict with subsistence uses or the maintenance of the habitat functions related to the productivity of the habitat. Uses with the potential for a significant adverse effect to the habitat are not allowed without a zone change including bulk fuel storage, landfills, major resource extraction, major development projects, and permanent structures not related to habitat improvement.

B. Minor Use Permits in the HC District. The administrator may approve the following activities without public notice with such conditions as the administrator determines to be appropriate to avoid interference or conflicts with subsistence uses:
   1. Minor alterations of existing uses;
   2. Airports or airstrips;
   3. Cultural camps;
   4. Bulk fuel storage; or
   5. Archaeological surveys.
   6. Commercial recreation uses;
   7. Miscellaneous commercial use;
   8. Minor or major alterations to existing uses;
   9. Ice roads and ice pads, and tundra travel for existing or approved development;
   10. Minor resource extraction during times when fish or wildlife populations are not present.

C. Major Use Permits in the HC District. The administrator may approve the following activities after public review of the permit application if it is determined there will be no adverse effects to the functions related to the productivity of the habitat:
   1. Any use or structure within a watershed which provides a community's drinking water;
   2. Any minor permit elevated pursuant to NABC 9.16.030;
   3. Tundra travel for new, not previously approved development;
   4. Placement of communication equipment; and
   5. Mineral exploration and prospecting.

D. Conditional Uses in the HC District. The planning commission may approve the following activities after public review of the permit application if it determines there will be no adverse effects to the functions related to the productivity of the habitat:
   1. Public facilities;
   2. Temporary construction;
   3. Excavation or other activities on a parcel by a professional archaeologist or other person that are likely to disturb archaeological or historic resources;
   4. Major energy facilities;
   5. Major resource extraction during times when fish or wildlife populations are not present.
   6. Minor resource extraction during times when fish or wildlife populations are present; and
   7. Any major permit elevated pursuant to NABC 9.16.030. (Ord. 93-02 § 1 (9.40.030), 1993)

**9.12.040 Commercial recreational conservation (CRC) district (Repealed).**

**9.12.050 General conservation (GC) district.**
  A. Purpose. The general conservation (GC) district encompasses the undeveloped areas of the borough outside the boundaries of the other districts. The general conservation district is intended to conserve the natural ecosystem for all the various plants and animals used for subsistence. Uses will only be allowed in the GC district if the administrator or planning commission determines such uses will not unreasonably interfere or conflict with access to or use of the environment or subsistence resources. Subject to this overall intent, the GC district can accommodate mineral and oil and gas exploration projects, minor resource extraction, and development projects on a limited scale. Applicants for major development projects must apply for rezoning to the resource development district. Except where excluded as "use" under NABC 9.04.070, land use in the GC district is prohibited, unless permitted or approved as required by this title.
  B. Minor Use Permits in the GC District. The administrator may approve the following activities without public notice after review of the permit application:
    1. Residential uses excluding multifamily dwellings;
    2. Warehouse, shop use;
    3. Child care facilities, cultural camps, churches, health care facilities;
    4. Movement of bulk fuel for village needs;
    5. Temporary construction facilities;
    6. Placement of communication equipment;
    7. Airstrips, construction of new airports or expansion of existing airports involving greater than 20 acres of surface;
    8. Ice roads or ice pads, and tundra travel for existing, approved development;
    9. Archaeological surveys;
    10. Temporary use (excluding fuel storage) of airstrips;
    11. Prospecting;
    12. Bulk fuel storage;13.  Miscellaneous commercial use;
    14. Commercial recreation;
    15. Minor or major alterations of existing uses;
    16. Tundra travel for existing approved development;
    17. Prospecting and mineral and oil and gas exploration,
    18. Public facilities; or
    19. Other "uses" as defined in NABC 9.04.070 that are not included in subsections (C) or (D) of this section.
  C. Major Use Permits in the GC District. The administrator may approve the following activities after public review of the permit application:
    1. Any use or structure within a watershed which provides a community's drinking water;
    2. Landfill;
    3. Placement of fill in a wetland;
    4. Excavation or other activities on a parcel of land by a professional archaeologist or other person that are likely to disturb archaeological or historic resources;
    5. Minor resource extraction;

      6. Wetlands fill less than one acre;
      7. Tundra travel for new, not previously approved development;
      8. Mineral development; or
      9. Any use elevated pursuant to NABC 9.16.030.
  D. Conditional Use Permits in the GC District. The planning commission may approve the following activities after public review of the permit application:
      1. Multifamily dwellings;
      2. Utility substations, power plants;
      3. Major energy facilities;
      4. Landfills;
      5. Wetlands fill one acre or larger; or
      6. Any use elevated pursuant to NABC 9.16.030. (Ord. 93-02 § 1 (9.40.050), 1993)

### 9.12.060 Resource development (RD) district.

  A. Purpose. The resource development (RD) district is designed and intended to address the individual and cumulative effects of major developments and to offer developers efficient and predictable permit approvals. The purpose of the RD district is to accommodate major development projects and major resource extraction including mineral development, oil and gas development, and similar activities which:
      1. Do not seriously impair the capacity of the surrounding ecosystem to support the plants and animals upon which borough residents depend for subsistence,
      2. Do not result in significant adverse effects to subsistence uses;
      3. Are planned and developed as a unit, or series of interrelated units under an approved master plan under Chapter 9.20 NABC, with provisions made for all necessary public and private facilities; and
      4. Meet the objectives of the comprehensive plan and coastal management plan as well as the conditions of approval and special policies imposed on each individual resource development district at the time of designation.
  B. To accommodate types of development and development needs that differ from one development to another, RD districts may be give distinguishing designations and may have areas within an RD district designated as subdistricts in which specific master plans, standards and policies are applicable. Commercial recreation uses are not allowed in the RD District except by a permit issued in accordance with this title.
  C. Except where excluded as "use" under NABC 9.04.070, land use in the RD district is prohibited, unless permitted or approved as required by this title.
  D. Minor Use Permits in the RD District. If not identified in an approved master plan, the administrator may approve the following activities without public notice after review of the permit application:
      1. Warehouse, shop use;
      2. Child care facilities, cultural camps, churches, health care facilities;
      3. Movement of bulk fuel for village needs;
      4. Placement of communication equipment;
      5. Temporary construction facilities;
      6. Ice roads, ice pads, or tundra travel for existing approved or new development;
      7. Snow disposal sites;
      8. Archaeological surveys;
      9. Temporary use (excluding fuel storage) of airstrips;

   10. Prospecting;
   11. Minor resource extraction;
   12. Miscellaneous commercial uses;
   13. Commercial recreation uses;
   14. Minor or major alterations of existing uses;
   15. Bulk fuel storage;
   16. Public facilities;
   17. Airstrips or airports; or
   18. Other "uses" as defined in NABC 9.04.070.

   E. Major Use Permits in the RD District. If not identified in an approved master plan, the administrator may approve the following activities after public review of the permit application:
   1. Residential uses including multifamily dwellings;
   2. Schools;
   3. Utility substations, power plants;
   4. Excavation or other activities on a parcel by a professional archaeologist or other person that are likely to disturb archaeological or historic resources; .
   5. Wetlands fill;
   6. Mineral and oil and gas exploration;
   7. Mineral development;
   8. Construction of new airports or expansion of existing airports involving greater than 20 acres of surface; or
   9. Any use elevated pursuant to NABC 9.16.030.

   F. Conditional Use Permits in the RD District. If not identified in an approved master plan, the planning commission may approve the following activities after public review of the permit application:
   1. Any use or structure within a watershed, which provides a community's drinking water;
   2. Landfill, placement of fill in wetlands;
   3. Major development projects;
   4. Major energy facilities;
   5. Any use elevated pursuant to NABC 9.16.030.

   G. Resource Development Areas. The following areas are included in the resource development district as existing development:
   1. All borough, state, federal and private lands outside the transportation corridor committed to the development or operation of the Red Dog Mine as depicted on the borough zoning map, to include the mine ore body, processing facilities and associated infrastructure, such as the airfield, port site, construction camp, laydown areas, drinking water reservoir, and material sites and offshore lands and waters reasonably necessary for port and ore trans-shipment operations. (Ord. 93-02 § 1 (9.40.060), 1993)

**9.12.070 Transportation corridor (TC) district.**
   A. Purpose. The transportation corridor (TC) district is established to provide a strip of land to accommodate linear transportation facilities such as roads, railroads and pipelines. The TC district will ensure that such transportation uses comply with all borough policies including those that apply specifically to transportation corridors in Chapter 9.24 NABC. The TC district provides an area for development associated with the use of a transportation corridor. Development within this corridor is intended to minimize the negative effects of the transportation corridor (such as increased access