Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska 99501
Phone: (907) 276-1592
Fax: (907) 277-4352
Firm email: mail@hartig.law.pro
Attorneys for Teck Cominco Alaska Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON, DAVID SWAN, JOSEPH SWAN, Plaintiffs, vs. TECK COMINCO ALASKA INCORPORATED, Defendant, NANA REGIONAL CORPORATION, and NORTHWEST ARCTIC BOROUGH, Intervenor-Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.: A04-00049 CV (JWS) |

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

TECK COMINCO ALASKA INCORPORATED'S TRIAL BRIEF

This litigation was brought by several individuals claiming to be residents of the village of Kivalina, although not all actually live there. They seek to have Teck Cominco fined for claimed violations of the Clean Water Act resulting from alleged NPDES permit violations at Red Dog Mine and at the DeLong Mountain Transportation System Port, and they seek an award of attorney fees. NANA Regional Corporation, who owns and leases the Red Dog Mine to Teck Cominco,

and the Northwest Arctic Borough, the regional government in northwest Alaska that is almost wholly funded by Teck Cominco's Red Dog operations, have intervened in the litigation. This court has issued partial summary judgment as to liability on more than six hundred claims. Thousands more remain for trial, including hundreds of claims that were added by amendment of the Complaint in autumn 2007.

The court has directed the parties to file a trial brief limited to the significant issues of law that are likely to arise at trial. In compliance with that order, this is defendant Teck Cominco Alaska Incorporated's brief.

For the most part, the defense of the claims in this litigation will be fact intensive. Each of the many claims involves and/or results from vastly different circumstances. There are some legal principles, however, that will be advanced in defense of claims (or otherwise) at trial as to which Teck Cominco assumes there is a dispute between itself and the plaintiffs.

A.    **Plaintiffs' Experts:**

With two exceptions, the plaintiffs failed to provide any expert reports by the deadline originally established by the court, and then compensated by designating "rebuttal" experts to "rebut" various documents that had been given to them years earlier, and/or to rebut Teck Cominco's experts. More recently, the plaintiffs "revised" their reports in violation of this court's order in an attempt to rehabilitate their witnesses where the court had stricken testimony and/or where

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

deposition testimony revealed weaknesses or vulnerabilities.  Regardless of how the court rules on the pending motion to strike the revised reports, at trial, Teck Cominco anticipates that significant portions, and perhaps all of the expert opinions offered by the plaintiffs, will not be admissible.  In this regard, Evidence Rule 702 requires that scientific, technical, and other expert testimony, in order to be admitted, must be the product of reliable principles and methods properly applied to a sufficient number of relevant facts and data.  [Fed.R.Evid. 702.]  In its current form, the Rule attempts to implement the principles set forth in <u>Kumho Tire v. Carmichael</u>, 526 U.S. 137 (1999) and <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993).  [<u>Id</u>. at Advisory Committee Notes: 2000 Amendments.]  Accordingly, reported cases since <u>Daubert</u> have recognized that "unverified statements that [are] unsupported by any scientific method ... [provide] no basis for relaxing the usual first-hand knowledge requirement of the Federal Rules of Evidence ...." <u>Rogers v. Ford Motor Co.</u>, 952 F.Supp 606, 615 (N.D.Ind. 1997).  Application of these principles requires that the court function as a gatekeeper, ensuring that expert testimony is "based on sound science." <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 43 F.3d 1311, 1316 (9th Cir.) (opinion after remand)<u>, cert. denied</u>, 516 U.S. 869 (1995). In this regard, the Court's task "is to analyze not what the experts say, but what basis they have for saying it." <u>Id</u>.

In order for an expert's opinion to be reliable, it must be based on sufficient facts or data. <u>See</u> <u>Elcock v. Kmart Corp.</u>, 233 F.3d 734 (3rd Cir. 2000) (economic analysis excluded when relying on assumptions "wholly without foundation in the

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

record"); <u>Coffey v. Dowley Manufacturing, Inc.</u>, 187 F.Supp.2d 958 (M.D.Tenn. 2002) (opinion rejected when based on "guestimations"). Rule 702 requires experts to provide some basis on which to examine the reliability of their opinion. See, <u>Donnelly v. Ford Motor Co.</u>, 80 F.Supp.2d 45, 50 (E.D.N.Y. 1999) ("Without some explanation of the data, studies or reasoning [an expert] employed, his conclusion is simply inadmissible *ipse dixit*"). Thus, when an expert relies solely or primarily on experience, for example, "he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reasonably applied to the facts." Fed.R.Evid. 702, Advisory Committee Notes: 2000 Amendments; <u>Nemir v. Mitsubishi Motors Corp.</u>, 200 F.Supp.2d 770, 774 (E.D.MI 2002).

As a matter of law, an assertion of an expert's qualifications and conclusions, even when accompanied by an assurance of reliability, is not enough to allow a court to consider an expert's proffered opinion to be reliable.  <u>See Daubert v. Merrill Dow Pharmaceuticals Inc.</u>, 43 F.3d 1311, 1319 (9th Cir. 1995). Where even the assurance of reliability is lacking, as it is here, the court should recognize that it has an obligation to preclude testimony that is nothing more than "subjective belief or unsupported speculation." <u>See</u> <u>O'Conner v. Commonwealth Edison Co.</u>, 13 F.3d 1090, 1106 (7th Cir), <u>cert. denied</u>, 512 U.S. 1222 (1994).

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

B.    **Force Majuere / Upset:**

A *force majeure* defense may be asserted in the context of alleged Clean Water Act violations.  Upper Chattahoochee Riverkeeper Fund v. City of Atlanta, 98 F.Supp.2d 1380, 1384 (N.D. Ga. 2000).  *Force majeure* concepts and provisions are explicitly included in Teck Cominco's permits.  [See, e.g., Permit No. AK-003865-2, § (I)(D)(7), footnote 2 and Permit No. AK-004064-9 (V)(H), respectively.] Moreover, the conditions applicable to every NPDES permit excuse noncompliance with permit effluent limitations where factors beyond the reasonable control of the permittee exist.  Those conditions form the affirmative defense of "upset":

> Upset means an exceptional incident in which there is unintentional and temporary noncompliance with technology based permit effluent limitations because of factors beyond the reasonable control of the permittee.

[40 C.F.R. § 122.41(n)(1).]

> An upset constitutes an affirmative defense to an action brought for noncompliance with such technology based permit effluent limitations…

[40 C.F.R. § 122.41(n)(2).]

Teck Cominco will assert various weather-related and other upset based defenses.

C.    **Claims Must Be Ongoing:**

In addition to establishing actual violations, the plaintiffs must establish that violations of the various parameters at issue were ongoing as of March 8, 2004, the date the Complaint was filed.  Gwaltney, 484 U.S. at 57, 66.  "A citizen-

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

plaintiff may prove ongoing violations either (1) by proving violations that continue on or after the date the Complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." <u>Sierra Club v. Union Oil Co. of California</u>, 853 F.2d 667, 671 (9th Cir.1988). <u>See also</u>, <u>Community Assn. for Restoration of the Env. v. Henry Bosma Dairy</u>, 305 F.3d 943, 953 (9th Cir.2002); <u>Natural Resources Defense Council v. Southwest Marine Inc.</u>, 236 F.3d 985, 998-99 (9th Cir.2000). To determine whether a plaintiff has met the "ongoing violations" requirement, the plaintiffs must establish at trial either a likelihood of recurring violations of the same parameter; or a likelihood that the same inadequately corrected source of trouble will cause recurrence of one or more different parameters. Docket 104 at 11; <u>Natural Resources Defense Council, Inc. v. Texaco Refining & Marketing, Inc.</u>, 2 F.3d 493, 499 (3d Cir.1993).

The court is obligated to recognize that violations are not likely to recur where a defendant has implemented a corrective procedure and no new violations have occurred since its implementation. <u>Ailor v. City of Maynardville, Tennessee</u>, 368 F.3d 587, 599-600 (6th Cir.2004). The law in the Ninth Circuit, for example, provides that if violations resulted from "faulty testing" that was subsequently corrected, or even from a prior method of reporting compliance with a permit, there is no ongoing violation and the claims must be dismissed. <u>Russian River Watershed Protection Comm. v. City of Santa Rosa</u>, 142 F.3d 1136, 1143 (9th Cir.1998).

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

**D.    Regulatory Mootness:**

Mootness is a jurisdictional issue that "a federal court must resolve before it assumes jurisdiction." North Carolina v. Rice, 404 U.S. 244, 246 (1971).  In the context of the Clean Water Act, mootness precludes maintenance of a lawsuit when the violations at issue become "wholly unconnected to any present or future wrongdoing." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 66 (1987).  Thus, if after some post-complaint event, the court may no longer order effective relief, the case is no longer live and the court must dismiss it as moot. Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  A citizen claim for violation of the Clean Water Act becomes moot by certain post-complaint events, including: (1) defendant's voluntary cessation of the harmful activity; (2) a change in regulations altering defendant's effluent standards or limitations; or (3) citizen plaintiff seeking relief that is beyond the authority of the court.  Cf. Forest Guardians v. U.S. Forest Serv., 329 F.3d 1089, 1095-96 (9th Cir.2003); Northwest Res. Info. Ctr., Inc. v. Nat'l Marine Fisheries Serv., 56 F.3d 1060, 1069-70 (9th Cir.1995); Powder River Basin Res. Council v. Babbitt, 54 F.3d 1477, 1487 (10th Cir.1995); Nat'l Mining Ass'n v. U.S. Dep't of the Interior, 251 F.3d 1007 (D.C.Cir.2001).  As to the plaintiffs' claims for COBC violations, for example, none of the parameters contained in the COBC's at issue are any longer applicable.  All such claims have become moot.

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

E.    Penalties:

Section 309(d) of the Clean Water Act provides that violations of the Clean Water Act:

> shall be subject to a civil penalty not to exceed $25,000[1] for each violation. In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice shall require.

[33 U.S.C. §1319(d).]  Section 309(d) does not specify how much weight should be given to each of these factors or otherwise provide guidance as to how the court should determine an appropriate penalty.  EPA Guidance merely provides that "the government [or citizens standing in its shoes[2]] should then offer into evidence facts that are related to the gravity-oriented statutory criteria, such as the magnitude and duration of the violations, the actions available to the defendant to have avoided or mitigated the violations, or any environmental damage" and

---

[1]    Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, civil penalties of up to $27,500 per day for any violation occurring between January 30, 1997 and March 15, 2004, and up to $32,500 for any violation occurring after March 15, 2004.

[2]    A "citizen suit is meant to supplement rather than to supplant governmental action".  Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, 484 U.S. 49, 60 (1987).  In this regard, when seeking enforcement of the Clean Water Act, the "citizen plaintiffs effectively stand in the shoes of the EPA." Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1522 (9th Cir. 1987); Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 74 (3rd Cir. 1990).  Consequently, citizens who bring Clean Water Act suits should be barred from taking positions that the government could not take. Powell Duffryn Terminals at 74.

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

"argue as an advocate" for an appropriate penalty. [*Guidance on the Distinctions Among Pleading, Negotiating, and Litigating Civil Penalties for Enforcement Cases Under the Clean Water Act*, US EPA, January 19, 1989 at 8.]  Courts, however, generally recognize that the calculation of a penalty involves two steps: First, "the economic benefit of noncompliance" must be assessed, and second, that amount should be adjusted to account for the degree of seriousness of the violations.  United States v. Municipal Authority of Union Township, 929 F. Supp. 800, 806 (M.D.Pa. 1996).  Known colloquially as the "bottom up" approach, "[t]his method of calculating the civil penalty in a Clear Water Act case is clearly the majority view."  Id.

**F.    Injunctive Relief:**

Teck Cominco assumes that the plaintiffs will ask for relief in the form of an injunction seeking compliance with the specific TDS limits in Teck Cominco's existing permit that form the basis of claimed violations, in the hope that an inability to comply with such an order will shut down Red Dog Mine.  Although the court has broad discretion to enter an order enforcing any of the standards and limitations found in applicable permits and/or compliance orders, [33 U.S.C. § 1365(a)], the facts do not warrant such an order, and it is vital that the court not enter one.

As it stands today, certain of the existing permit limits applicable to TDS simply are not achievable, and the only way to comply with them would be for

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

Teck Cominco to cease discharging (and consequently, cease mining).  However, Teck Cominco is required to treat and discharge water that collects behind its impoundment dam into perpetuity.  A cessation in the discharge of Red Dog effluent would necessarily result in untreated water overtopping Red Dog's impoundment dam, which would create an environmental catastrophy.  Moreover, where Teck Cominco's permit provides for discharging its effluent into Red Dog Creek, any cessation of discharge would only serve to drastically lower the quality of Red Dog Creek.

In its natural state, and as a result of the extraordinary amount of mineralization in the region, the water in Red Dog Creek is toxic.  By treating the waters it uses and/or must collect, Teck Cominco produces effluent that vastly improves the water quality of the receiving creek.   Thus, upon discharge, it is Teck Cominco's effluent that is polluted by the untreated waters of the creek, not the other way around.  Thus, a cessation in the discharge of Red Dog effluent would lower the quality of Red Dog Creek back to naturally toxic levels, as well as creating a disaster in the form of having untreated water overtop the dam.

But for the plaintiffs' efforts to preserve the unworkable TDS limits in order to create liability, those limits would have been replaced by reasonable limits with which Teck Cominco already fully complies.  (If and when a long overdue new permit is reissued[3], there is no question but that the EPA must incorporate TDS

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

---

[3]     A new permit was due in 2003 but delayed in large measure by the plaintiffs until 2007. As a result of the plaintiffs' appeal, the 2007 permit was withdrawn and will be reissued following the completion of NEPA review attendant to the Aqqaluk deposit.

TECK COMINCO'S TRIAL BRIEF                                    Page 10 of 14
*Adams et. al. v. Teck Cominco Alaska,* A04-00049 CV (JWS)

limits that are not only workable but have already been determined by both the State and EPA to be appropriate and protective of the environment.)

"[I]njunctive relief is not automatic". <u>Northern Cheyenne Tribe v. Norton</u>, 503 F.3d 836, 843 (9th Cir. 2007). Rather, courts must "balance the competing claims of injury and must consider the effect on each party" of the requested relief. <u>Id</u>. If Teck Cominco is forced by an order of this court to cease operations, even temporarily, it is possible that the Northwest Arctic Borough would cease being able to conduct business, and NANA, each of the Native corporations that participate in 7(i) ANCSA distributions, and their respective shareholders, would all suffer tremendously.

G.    **Other Issues:**

1.    **Unknown Claims:**

The court allowed the plaintiffs to amend their complaint in autumn 2007, but denied any opportunity for the parties to conduct discovery relative to the new claims. After reviewing the Discharge Monitoring Reports, upon which the plaintiffs claims allegedly are based, Teck Cominco remains without any clue as to what the basis of some of the asserted claims may be (as, for example, where discharge violations are alleged on days when no discharge even occurred). With respect to such claims, Teck Cominco assumes the plaintiffs will disclose for the first time at trial their theory of liability. Teck Cominco anticipates that it may

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

need additional previously unanticipated witnesses and/or exhibits to rebut and defend against whatever it is that constitutes the plaintiffs' claims.


2.    **Split Samples:**

At Docket 276, the court determined that the answer to whether Teck Cominco may rely upon a "split sample defense" is "no". The court elaborated by saying that revised DMR's may not be used to circumvent <u>Sierra Club</u>'s holding that sampling error is not a defense to strict DMR liability. At the outset, the court made clear that it was intending to answer only the exact question it distilled, and not "other or different issues". [Docket 276.] Teck Cominco understands and intends to honor the court's rulings regarding use of amended DMR's for this purpose.

The plaintiffs seek liability based upon split samples. In many instances, their claims have nothing whatsoever to do with revised or supplemented DMR's. This court previously determined that conflicting results of split samples do not establish ongoing violations, but rather may serve to raise genuine issues of material fact as to whether violations occurred. [Docket 136 at 17.] Teck Cominco does not understand the full meaning of the court's more recent order, and asked for clarification as to whether the court is now saying that Teck Cominco may not defend claims where the plaintiffs choose to ignore the plain language of the relevant DMRs that properly attest (under oath with supporting data) to the fact

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

that no violation occurred in order to establish liability based upon a split sample. [Docket 294.]  The court denied the motion for clarification.  [Docket 297.]

Teck Cominco still needs clarification as to the intended reach of the court's order in order to prepare for trial, and/or to create a record sufficient to address the issue on appeal.

### 3.    Attorney Fees:

The plaintiffs have made clear that a primary motivation for pursuing this litigation is that they can obtain attorney fees with which to fund additional litigation against Teck Cominco and others.  Teck Cominco assumes that attorney fee issues are not required to be briefed here, since fees usually become an issue post trial, and not at trial.  None the less, Teck Cominco believes that the fees sought by the plaintiffs are, in large measure, both outrageous and not permitted by law.[4]

DATED at Anchorage, Alaska, this 12th day of March, 2008.

HARTIG RHODES HOGE & LEKISCH, P.C.
Attorneys for Teck Cominco Alaska, Inc.

By:   /s/   Sean Halloran
Hartig Rhodes Hoge & Lekisch, P.C.
717 K Street
Anchorage, Alaska  99501
Phone:  (907) 276-1592
Fax:   (907) 277-4352
Firm email:  mail@hartig.law.pro

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE
(907) 276-1592
FAX
(907) 277-4352

---

[4]    Courts in the Ninth Circuit typically apply the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975) in analyzing and determining the lodestar amount, and then adjust the lodestar as appropriate.

TECK COMINCO'S TRIAL BRIEF                                     Page 13 of 14
*Adams et. al. v. Teck Cominco Alaska,* A04-00049 CV (JWS)

CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March 2008,
a true and correct copy of the foregoing was served,
via electronic service, on the  below identified parties of
record:

Luke W. Cole
Center on Race, Poverty, & the Environment
47 Kearny Street, Suite 804
San Francisco, California 94108

Nancy S. Wainwright (via U.S. Mail only)
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, Alaska 99515-3538

James E. Torgerson
Heller Ehrman White & McAuliffe LLP
510 L Street, Suite 500
Anchorage, Alaska 99501-1959

David S. Case
Landye Bennett Blumstein LLP
701 W. 8th Ave., Suite 1200
Anchorage, AK 99501

/s/ Sean Halloran
Hartig Rhodes Hoge & Lekisch PC

F:\Docs\62880\184\PLEADINGS\Trial Brief.doc

HARTIG RHODES
HOGE &
LEKISCH, P.C.
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592
FAX:
(907) 277-4352

TECK COMINCO'S TRIAL BRIEF                                    Page 14 of 14
*Adams et. al. v. Teck Cominco Alaska*, A04-00049 CV (JWS)