LUKE W. COLE, California Bar No. 145,505
CAROLINE FARRELL, California Bar No. 202,871
BRENT J. NEWELL, California Bar No. 210,312
Center on Race, Poverty & the Environment
47 Kearny St, Suite 804
San Francisco, CA 94108
415/346-4179 • fax 415/346-8723

NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
Law Offices of Nancy S. Wainwright
13030 Back Road, Suite 555
Anchorage, AK 99515-3358
907/345-5595 • fax 907/345-3629

Attorneys for Plaintiffs Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and Joseph Swan

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON DAVID SWAN and JOSEPH SWAN,<br><br>Plaintiffs,<br><br>v.<br><br>TECK COMINCO ALASKA INCORPORATED<br><br>Defendant.<br>──────────────────────────────<br>NANA REGIONAL CORPORATION and NORTHWEST ARCTIC BOROUGH,<br><br>Intervenors-Defendants. | Case No. A04-49 (JWS)<br><br><br><br>**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO MOTION AT DOCKET 218** |

Plaintiffs requested oral argument on Teck Cominco's motion to strike plaintiffs' expert reports at Docket 218 because of a number of misrepresentations and mischaracterizations in Teck Cominco's Reply, Docket 288. The Court granted Adams the opportunity to file a five-page (total) sur-reply instead. Here Adams addresses seven of the worst misrepresentations.

**1. Statement:** Plaintiffs produced "96 pages of new expert reports". Docket 288 at 1.

**Fact:** Adams produced four updated reports that included all the previous opinions

PLAINTIFFS' SUR-REPLY

expressed in this case, updating the opinions with the information available through 2007. Vast majorities of the 96 pages of reports are not "new" at all, but are verbatim the opinions offered in late 2004 and, in rebuttal, in early 2005. Adams took the Court's instructions – "I'm going to direct that the parties update the existing admissible experts' opinions and reports on January 18 with their views through the end of the calendar year, on December 31, 2007" (Docket 288-2, at 5:10-14) – seriously. Adams understood the Court's instruction to be to file final expert reports by January 18, 2008. To ensure those final reports were as complete as possible, it had its experts include all of their previous opinions in this case. This is hardly cause for striking the reports; while Teck Cominco objects to "repackaged opinions from earlier reports," it can hardly object to the same opinions expressed in 2004 being re-expressed in 2008.

**2. Statements:** "The spreadsheet did not in fact contain any new information." Docket 288 at 3 n.8. "[T]he spreadsheets contain the same data as (1) the lab reports and results produced to Plaintiffs before Plaintiffs' experts prepared their original reports, (2) the DMRs produced to and/or available to Plaintiffs prior to the date of the original expert reports, or (3) both." Docket 288 at 8, citing the Declarations of Joseph Diehl and Rachel Davis.

**Fact:** The spreadsheet in question (Trial Exhibit 71) contains laboratory data not disclosed by Teck Cominco until it disclosed the spreadsheet in 2005. Teck Cominco did not disclose many of the lab reports underlying the 2004 DMRs until after the expert reports were filed, and in some instances did not disclose those lab reports until after January 16, *2008*.

Tellingly, although the spreadsheet at Exhibit 71 contains significant quantities of data from 2004, the Diehl Declaration only covers data and disclosures *up to 2003*. Similarly, Rachel Davis's 37-page exhibit chart only covers disclosures *up to 2003*, conveniently omitting any mention of 2004 data included in the spreadsheet. The spreadsheet that was used by Dr. Moran and Mr. Fucik – which Teck Cominco made available in April 2005, after the submission of expert reports in December 2004 – has a great deal of data from *2004*. *See, e.g.*, Exhibit A attached (pages 1 and 21 of Exhibit 71). Most of the underlying lab reports for 2004 were not disclosed by Teck Cominco until after the expert reports were submitted, and some were not disclosed until long after the August 31, 2007 cut-off for filing motions to amend expert reports. To take just one example (there are many others; space does not permit their explication here),

**PLAINTIFFS' SUR-REPLY**                                           2

the spreadsheet lists a whole effluent toxicity value of 13.6 TUc on August 2, 2004 (which is a permit violation). *See* Exhibit 71 at 21, attached as Exhibit A (7th line down, under "flea"). The lab reports underlying that data were not disclosed until *after* January 16, 2008. See Exhibit B (excerpt of Teck Cominco's Exhibit List, listing Exhibits 1341 and 1342, the two WET tests for August 2004, with Bates stamp numbers beginning 51017 and 50928) and the Davis Declaration (Docket 288-4) at ¶11 (January 16, 2008 disclosures went through Bates number 50927).

**3. Statement:** "Because neither Dr. Moran nor Mr. Fucik had included similar tables for any of the years 1999-2004 in their earlier reports, the new tables for 2005-2007 by definition cannot be updates allowed by the Court's order." Docket 288 at 10.

**Fact:** Both Dr. Moran and Mr. Fucik included extensive opinion on TDS, WET and cyanide in their expert reports and rebuttal reports filed in late 2004 and early 2005. *See, e.g.*, Docket 219-6 at 5-14 (original pagination) (Moran Expert Report on cyanide, TDS and WET); *id.* at 16-28 (court-stamped pagination) (Moran Rebuttal Report on cyanide, TDS and WET); *id.* at 32 (Moran Rebuttal to Brix's Supplemental Report on TDS and WET); Docket 219-7 at 4-7 (original pagination) (Fucik Expert Report on WET, TDS and cyanide); *id.* at 14-25 (court-stamped pagination) (Fucik Rebuttal Report on WET, TDS and cyanide); *id.* at 27-29 (Fucik Rebuttal to Brix's Supplemental Report on WET and TDS). That Dr. Moran and Mr. Fucik chose to use tables in their updates to summarize the years of DMR reports is wholly appropriate under Rule 1006 of the Federal Rules of Evidence; here, the tables obviated the need to describe, in narrative, the years of laboratory results. The use of the charts is an appropriate update using material provided by Teck Cominco in November 2007 (the 2005-2007 DMRs) and January 2008 (the 2005-2007 lab reports, Davis Declaration, Docket 288-4 at ¶¶8-9). Adams believes these updates, including the charts, to be fully in line with the Court's direction to update the expert reports to take into account "any effects resulting from the passage of time." Certainly, Teck Cominco's continued discharges and reporting thereof are an "effect resulting from the passage of time" from the previous expert reports back in 2004. If this Court is of the opinion that updates including the 2005-2007 data were beyond the scope of its pre-trial order, Adams respectfully apologizes for misunderstanding the Court's direction and requests leave to file the

**PLAINTIFFS' SUR-REPLY**                    3

updated reports including the new information.

**4. Statement:** "Dr. Kavanaugh apparently has replaced his calculations using data from Teck Cominco Alaska Incorporated." Docket 288 at 10.

**Fact:** As Dr. Kavanaugh stated in his initial 2004 expert report (Docket 219-8 at 13 n.2 ("Cash-flow data from Teck Cominco Alaska Incorporated financial statements"), 20 ("I reviewed the financial performance of Teck Cominco Alaska from 1999 to 2003")), his initial report was based on Teck Cominco Alaska Incorporated data. Dr. Kavanaugh did update his 2004 report to make clear his use of Teck Cominco Alaska Incorporated data ("I was careful not to use Teck Cominco Limited interchangeably with Teck Cominco, or to use any data at all from Teck Cominco." Docket 259 ¶4.). Teck Cominco is not prejudiced by this clarification.

**5. Statement:** "[I]n the earlier report Dr/ Kavanaugh calculated the economic benefit that he attributed to the parent company. In his 2008 report, he attributed the economic benefit due to noncompliance with TDS permit limitations to the subsidiary." Docket 288 at 10.

**Fact:** The *attribution* of the economic benefit has no relevance here, where the *calculation* of that economic benefit in both reports was based on Teck Cominco Alaska Incorporated data or was calculated independent of data from either company. As Dr. Kavanaugh explained in his declaration, "My opinions in my 2004 expert report that refer to the equity cost of capital were not based on Teck Cominco Limited data, and pertained to Teck Cominco Alaska Incorporated in the 2004 report; my 2008 report simply updates that equity cost number, which still applies only to Teck Cominco Alaska Incorporated." Docket 259, ¶6. The central question Dr. Kavanaugh will answer during the penalty phase is, what was the economic benefit Teck Cominco Alaska Incorporated achieved by violating its permit? The fact that Dr. Kavanaugh *attributed* that benefit to one company rather than another does not change the underlying number that represents the economic benefit, as Dr. Kavanaugh explained in his declaration at Docket 259. Dr. Kavanaugh's report has consistently used and reported the correct calculations, although this Court determined that his *attribution* of the benefit to Teck Cominco Limited was not appropriate. Adams had no need to move for leave to file a different expert opinion because the opinion and underlying data remained the same from 2004 to 2008.

**PLAINTIFFS' SUR-REPLY**                4

**6. Statement:** "[Dr. Kavanaugh] admits that he added an additional earlier year to his calculations." Docket 288 at 11.

**Fact:** Dr. Kavanaugh gives calculations beginning in 1999 at Docket 259. As Dr. Kavanaugh explained there, using the 1998 data as he did in the 2008 report was more conservative and favored Teck Cominco as it resulted in a lower ability-to-pay number. Teck Cominco is not prejudiced in any way by either the addition of an extra year in the calculation (2008 report), or the late provision of the calculation using the same starting year (Docket 259).

**7. Statement:** "There are substantial differences between the cash flows Dr. Kavanaugh used in his earlier report and his new report." Docket 288 at 11.

**Fact:** As the descriptions in each report of the data used make clear, the 2004 report used "annual net income" which is a *subset* of total cash flow and the 2008 report, to be more conservative, used "cash flow from TCAI's operations." Both approaches are valid, and Teck Cominco suffers no prejudice from the use of the latter. Teck Cominco seeks to create controversy around Dr. Kavanaugh's report where none exists, and where it suffers no prejudice.

Plaintiffs have made a good faith effort to comply with this Court's Order, to provide full disclosure to the defendants, and to respond to tens of thousands of pages of late-disclosed documents that their experts must review and discuss at trial. They should not be penalized for this good faith effort at full disclosure. Respectfully submitted this 13th day of March, 2008.

                                                                                  \_\_\_\_\_/S/ Luke Cole_____
                                                                                        Luke Cole
                                                                             Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of March 2008, a true and correct copy of the foregoing Plaintiffs' Trial Brief was served, via electronic mail, on the below identified parties of record:

| | | |
|---|---|---|
| Sean Halloran | Nancy Wainwright | Thane Tienson |
| Hartig Rhodes | 13030 Back Road, Suite 555 | Landye Bennet Blumstein |
| 717 K Street | Anchorage, AK 99501 | 1300 SW Fifth Ave, Suite 3500 |
| Anchorage, AK 99501 | | Portland, OR 97201 |
| | | |
| James E. Torgerson | David S. Case | |
| Heller Ehrman White & McAuliffe LLP | Landye Bennett | |
| 510 L Street, Suite 500 | 701 W. 8th Avenue, Suite 1200 | |
| Anchorage, Alaska 99501-1959 | Anchorage, AK 99501 | |

\_\_\_\_\_/S/ Luke Cole_____
Luke Cole

**PLAINTIFFS' SUR-REPLY**            5