1  LUKE W. COLE, California Bar No. 145,505
   CAROLINE FARRELL, California Bar No. 202,871
2  BRENT J. NEWELL, California Bar No. 210,312
   Center on Race, Poverty & the Environment
3  47 Kearny St, Suite 804
   San Francisco, CA 94108
4  415/346-4179 • fax 415/346-8723

5  NANCY S. WAINWRIGHT, Alaska Bar No. 8711071
   Law Offices of Nancy S. Wainwright
6  13030 Back Road, Suite 555
   Anchorage, AK 99515-3358
7  907/345-5595 • fax 907/345-3629

8  Attorneys for Plaintiffs Enoch Adams, Jr., Leroy
   Adams, Andrew Koenig, Jerry Norton, David
9  Swan and Joseph Swan

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON DAVID SWAN and JOSEPH SWAN,<br><br>    Plaintiffs,<br><br>    v.<br><br>TECK COMINCO ALASKA INCORPORATED<br><br>    Defendant.<br> | Case No. A04-49 (JWS)<br><br><br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR RECONSIDERATION** |
| NANA REGIONAL CORPORATION and NORTHWEST ARCTIC BOROUGH,<br><br>    Intervenors-Defendants. | |

**PLAINTIFFS' OPPOSITION TO
MOTION FOR RECONSIDERATION**

Teck Cominco files a motion for reconsideration of this Court's denial of its motion to strike the expert report of Dr. Michael Kavanaugh. The motion fails both procedurally and on the merits. This Opposition is timely filed. Fed. R. Civ. P. 6(a)(2).

## I. TECK COMINCO DOES NOT MEET THE STANDARD FOR RECONSIDERATION.

The Court has discretion to reconsider and vacate a prior order. D.Ak. L.R. 59.1. Motions for reconsideration are disfavored, however. *Motorola, Inc. v. J.B. Rodgers Mech. Contrs., Inc.*, 215 F.R.D. 581, 582 (D.Az. 2003). Although neither Fed. R. Civ. P. Rule 54(b) nor the District Court's Local Rule 59.1 provide a standard for reconsideration, the District Court in *Motorola* undertook a thoughtful and thorough canvass of Local Rules in the Ninth Circuit. 215 F.R.D. at 586. Based on that canvass, motions for reconsideration should only be granted if:

> (1) There are material differences in fact or law from that presented to the Court and, at the time of the Court's decision, the party moving for reconsideration could not have known of the factual or legal differences through reasonable diligence;
>
> (2) There are new material facts that happened after the Court's decision;
>
> (3) There has been a change in the law that was decided or enacted after the Court's decision; or
>
> (4) The movant makes a convincing showing that the Court failed to consider material facts that were presented to the Court before the Court's decision.

*Id.* Teck Cominco meets none of these standards. Its arguments are identical to those made in its initial motion, it cites no new law nor facts, and does not point to any error by the Court. The Court's Order at Docket 311 denying the motion to strike Kavanaugh's expert report but ruling that "defendants shall be afforded the opportunity to provide supplemental expert reports addressing plaintiffs 'new' or 'updated' reports" is more than fair, and this Court need not disturb it. The motion for reconsideration should be denied.

## II.    DR. KAVANAUGH'S EXPERT REPORT IS APPROPRIATELY UPDATED.

Teck Cominco's motion fails on the merits, as Dr. Kavanaugh's report is appropriately updated. Because Teck Cominco has striven to obfuscate the basis and content of Dr. Kavanaugh's original 2004 expert report, it is important to start there in understanding what Dr. Kavanaugh is actually testifying to here. In that original expert report, Dr. Kavanaugh did three things: first, he calculated the economic benefit that Teck Cominco received using an equity rate. Second, he calculated the economic benefit using a weighted average cost of capital, or

PLAINTIFFS' OPPOSITION TO
MOTION FOR RECONSIDERATION                1

1  "WACC," analysis.  Third, he calculated Teck Cominco's ability to pay a fine.

2  In making the *economic benefit* calculations, Dr. Kavanaugh primarily used Teck
3  Cominco Alaska, Incorporated data but also supplemented that data for second of the two types
4  of economic benefit analysis he undertook – the WACC analysis – with information from Teck
5  Cominco Limited, Teck Cominco's parent.  As he explained in his 2005 deposition:

6  > Q.  Would you please summarize for me, and then we will go into some more detail, what you did to obtain the facts that you used in preparing your expert report.
7
8  > A.  Sure. .... I went and began to collect financial information from discovery of the Teck Cominco Alaska, Incorporated annual reports that were sent to me. [¶] I went and downloaded annual reports of Cominco prior to -- say '98, '99, prior to their merger.
9
10 > Q.  That's Cominco Alaska we are talking about?
11 > A.  Cominco Alaska. ....
12 > A.  Then I also looked at Teck annual reports when they owned significant portions of Cominco Alaska.  I think that was also from '98, '99 period.  I began to assemble in general terms a financial profile of the parents and the mine operation.  I
13 looked at a map to find out where this place was. [¶] There is also some financial information, general economic information that I might need.  So I went and updated that
14 material.  That basically is tax rates, price indices, interest rates.

15 Deposition of Michael Kavanaugh, 23:16-26:4, attached to Cole dec.  For the equity rate
16 analysis, Dr. Kavanaugh's calculation applied to Teck Cominco Alaska Incorporated and was
17 independent of the ownership structure of the company involved.  Declaration of Michael
18 Kavanaugh ("Kavanaugh dec."), Docket 321, at ¶6.  As Dr. Kavanaugh explains,

19 > The cost data has nothing to do with the parent or child company.  The dates of violation used for calculating benefit have nothing to do with the parent or child company.  The
20 > measures of price change (inflation) have nothing to do with the parent or child.  The taxes used have nothing to do with the parent or child because I used the statutory limits
21 > of U.S. and Alaska taxes in both analyses.  In my examination of economic benefit I looked at the opportunity costs in two ways, the equity rate and the weighted average cost
22 > of capital (WACC).  For the first of these, the equity rate, which I explicitly favored in my 2004 report, has nothing to do with the parent or the child company.  The second,
23 > WACC, is the one place in my 2004 report where I used Teck Cominco Limited data for the economic benefit analysis.  All of the other parts of the economic benefit analysis, and
24 > its conclusions, are independent of the identity of the company and applied in my 2004 and 2008 reports to Teck Cominco Alaska Incorporated.  **My opinions in my 2004
25 > expert report that refer to the equity cost of capital were not based on Teck Cominco Limited data, and pertained to Teck Cominco Alaska Incorporated in the
26 > 2004 report; my 2008 report simply updates that equity cost number, which still applies only to Teck Cominco Alaska Incorporated.**  *Id.* (emphasis added).
27
28 For the *ability to pay* analysis, Dr. Kavanaugh used solely Teck Cominco Alaska data in
   his 2004 report, as he explained to Teck Cominco's counsel during his deposition.

PLAINTIFFS' OPPOSITION TO
MOTION FOR RECONSIDERATION         2

> Q. I would like to move down to the bottom of page 8 here now and talk about ability to pay. .... [¶] Here you say that you are looking at the financial performance of Teck Cominco Alaska. Were you working off Teck Cominco Alaska's financial statements or using Teck Cominco Limited's financial statements?
>
> A. Teck Cominco Alaska.
>
> Q. Why were you using Teck Cominco Alaska instead of the limited?
>
> A. I wanted to see if Teck Cominco Alaska could survive.
>
> Q. You didn't assume they would get their money from the parent corporation?
>
> A. Right, I did not. I wanted to see if Teck Cominco Alaska, Incorporated could survive. ....
>
> Q. Let me ask you another question while we are on this table [on page 9 of Kavanaugh's expert report]. This table, I take it, these are from the financial statements?
>
> A. Yes, the annual reports of Teck Cominco Alaska, Incorporated.

Kavanaugh Deposition, 168:10-11, 169:19-170:10, 173:12-174:2, attached to Cole dec.

It is in this context that Teck Cominco now challenges Dr. Kavanaugh's updated expert report of January 2008. Teck Cominco is seeking to create controversy and confusion over what Dr. Kavanaugh initially offered in his 2004 report and now offers in his 2008 report, which is why it is important that this Court review both expert reports.

Teck Cominco attacks Dr. Kavanaugh's updated expert report on four grounds. First, it asserts that Dr. Kavanaugh improperly offered his opinion on the economic benefit that Teck Cominco Alaska received because it is "a new opinion of the type this Court had announced it would not allow absent a successful motion seeking leave to reopen expert testimony." Teck Cominco's objection is unfounded,[1] as an examination of Dr. Kavanaugh's updated report

---

[1] Teck Cominco notes that Adams discussed at the August 2007 planning conference the possibility of bringing a motion to include new expert testimony. Motion at 1, 2. After the planning conference, through discussion with Dr. Kavanaugh, Adams was able to determine that Dr. Kavanaugh's opinion on the economic benefit accruing to Teck Cominco Alaska Incorporated was largely undisturbed by the Court's striking reference to or use of Teck Cominco Limited financial data in his opinion. *See generally* Kavanaugh dec. ¶¶ 2-10. Because Dr. Kavanaugh's underlying 2004 opinion was not implicated, there was no need to offer new expert testimony; Dr. Kavanaugh disclosed his opinion on Teck Cominco Alaska Incorporated in the 2004 report, and updated it in the 2008 report.

The central question Dr. Kavanaugh will answer during the penalty phase is, what was the

**PLAINTIFFS' OPPOSITION TO**
**MOTION FOR RECONSIDERATION**               3

reveals. Teck Cominco's assertion misrepresents the initial expert report of Dr. Kavanaugh, which as explained above was focused on Teck Cominco *Alaska Incorporated* although it did use some data from Teck Cominco Limited. Dr. Kavanaugh explains exactly how he updated his report in 2008 from the 2004 version in his declaration at Docket 259 (and refiled at 321).

> In my original expert report, produced in December 2004, I estimated the benefit Teck Cominco gained from alleged violations at its Red Dog Mine. I am informed and believe that Teck Cominco is a wholly-owned subsidiary of Teck Cominco Limited. In the text of my report I referred to the parent company, Teck Cominco Limited, as the recipient of the gain (or economic benefit) much like someone would say a parent receives the gain given to a child. If there was a data gap in the financial material available on Teck Cominco, in the 2004 report I used information from Teck Cominco Limited to plug the gap.
>
> [¶] The District Court determined that it was improper to refer to Teck Cominco's economic benefit as received by Teck Cominco Limited, and in my updated expert report of 2008 I was careful not to use Teck Cominco Limited interchangeably with Teck Cominco, or to use any data at all from Teck Cominco Limited.
>
> [¶] In updating my report, I read the Court's summary judgment decision (on TDS) and took into account the findings that it made as to liability. I extended my economic benefit estimate from August 2003 to June 2004, and included violations during the Arctic Grayling spawning season in 2005, 2006 and 2007. I did so because I believe this is what an update is supposed to do, that is, incorporate new information that is relevant to the decisions the Court must make. Kavanaugh dec., ¶¶ 4-6.

Second, Teck Cominco objects that "his new calculations are based wholly on Teck Cominco Alaska's finances." Docket 314 at 2. This objection is misplaced; there is nothing improper about this. As explained above, in his initial report, Dr. Kavanaugh used Teck Cominco Alaska data for the ability to pay analysis,[2] and he continues to use it here. For the economic benefit analysis, Dr. Kavanaugh in both reports used data independent of both Teck Cominco Alaska and Teck Cominco Limited in his equity rate calculation, which in both reports

---

economic benefit Teck Cominco Alaska Incorporated achieved by violating its permit? The fact that Dr. Kavanaugh *attributed* that benefit to one company rather than another does not change the underlying number that represents the economic benefit, as Dr. Kavanaugh's declaration explains. Dr. Kavanaugh's report has consistently used and reported the correct calculations, although the Court determined that his *attribution* of the benefit to Teck Cominco Limited was not appropriate. Adams had no need to move for leave to file a different expert opinion because the opinion and underlying data remained the same from 2004 to 2008.

[2]Dr. Kavanaugh noted his data sources in his initial 2004 expert report (Docket 219-8 at 13 n.2 ("Cash-flow data from Teck Cominco Alaska Incorporated financial statements"), 20 ("I reviewed the financial performance of Teck Cominco Alaska from 1999 to 2003")).

he ascribed to Teck Cominco Alaska. Kavanaugh dec. ¶6. He was careful to make that ascription clearer in his 2008 report based on the confusion over the ambiguous and sometimes interchangeable use of "Teck Cominco" in his 2004 report. Kavanaugh dec. ¶5. Teck Cominco is not prejudiced by this clarification. Indeed, had Dr. Kavanaugh used Teck Cominco *Limited*'s finances, Teck Cominco certainly would have objected; it cannot now object that he did *not* use such finances in his updated report.

Third, Teck Cominco asserts that Dr. Kavanaugh added an additional earlier year (1998) to the time period he used in his "ability to pay" calculation. This assertion is correct, but does not prejudice Teck Cominco in any way as 1) it makes the analysis more conservative and 2) Teck Cominco's expert is able to respond by April 26 based on the Court's Order at Docket 311. As Dr. Kavanaugh explains, using the 1998 data (in addition to the original 1999-2003 data)

> has the effect of making that analysis more conservative, as 1998 was a less than average year of performance for Teck Cominco. Using the same starting year of 1999 as in my 2004 report, and updating it to the present with 2004, 2005 and 2006 data, Teck Cominco Alaska has a 71% chance of being able to afford a fine of $27 million. That is slightly higher than the 70% chance of paying a $27 million fine that I found in my 2008 update, which used the 1998 data as well, demonstrating the conservatism of my approach.

Kavanaugh dec. ¶9. The actual calculations using the 1999 starting date are included in the Kavanaugh dec., ¶10.

Finally, Teck Cominco asserts that Dr. Kavanaugh used "new and different cash flow assumptions for his ability to pay analysis in his Revised Report." Docket 314 at 3. As the descriptions in each report of the data used make clear, the 2004 report used "annual net income" which is a *subset* of total cash flow and the 2008 report, to be more conservative, used "cash flow from TCAI's operations." Both approaches are valid, and Teck Cominco suffers no prejudice from the use of the latter, which is actually more conservative and favors Teck Cominco.

Dr. Kavanaugh's 2008 updated expert report is a good faith effort to comply with this Court's Order and to provide full disclosure to the defendants, and plaintiffs should not be penalized for it. Should this Court be inclined to grant the motion for reconsideration, Adams respectfully requests oral argument on the motion. Respectfully submitted, 7 April 2008.

                                               /S/ Luke Cole
                                               Luke Cole

CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April 2008, a true and correct copy of the foregoing Plaintiffs' Trial Brief was served, via the Court's electronic mail distribution system, on the below identified parties of record:

| | | |
|---|---|---|
| Sean Halloran | Nancy Wainwright | Thane Tienson |
| Hartig Rhodes | 13030 Back Road, Suite 555 | Landye Bennet Blumstein |
| 717 K Street | Anchorage, AK 99501 | 1300 SW Fifth Ave, Suite 3500 |
| Anchorage, AK 99501 | | Portland, OR 97201 |

| | |
|---|---|
| James E. Torgerson | David S. Case |
| Heller Ehrman White & McAuliffe LLP | Landye Bennett |
| 510 L Street, Suite 500 | 701 W. 8th Avenue, Suite 1200 |
| Anchorage, Alaska 99501-1959 | Anchorage, AK 99501 |

_____/S/ Luke Cole_____
Luke Cole

**PLAINTIFFS' OPPOSITION TO MOTION FOR RECONSIDERATION**     6