5/19/08

# Settlement Agreement

## I. Entry of Consent Decree

Upon execution of this agreement (Agreement), Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, and Joseph Swan, Sr., (collectively, the Plaintiffs), Teck Cominco Alaska Incorporated (Teck Cominco), NANA Regional Corporation (NANA), and the Northwest Arctic Borough (Borough) will lodge with the court a proposed consent decree (Consent Decree), in the form attached as Exhibit A, dismissing with prejudice all claims asserted in *Adams v. Teck Cominco*, A:04-00049 CV (JWS) (*Adams v. Teck Cominco*). Following the government review process required by applicable regulations (40 CFR § 135.5), the parties to the litigation promptly will file a joint motion in the form attached as Exhibit B to enter the Consent Decree. Entry, or rejection, by the Court of the Consent Decree shall not alter the effect or efficacy of any of the terms of this Agreement, except that if the Consent Decree is not approved by the Court in the form presented, this Agreement shall be voidable at the sole discretion of either the Plaintiffs or Teck Cominco.

## II. Pipeline

A.    After entry of the Consent Decree, Teck Cominco will, in good faith, undertake to design, construct and operate a pipeline to carry Red Dog Mine effluent from the Red Dog Mine through the DeLong Mountain Transportation System (DMTS) right-of-way corridor to an outfall to be constructed in the Chukchi Sea at or near the DMTS Port (the "Pipeline"). Teck Cominco will diligently pursue the necessary permits and other needed approvals for the construction and operation of the Pipeline. Teck Cominco will apply for certain permits according to the schedule listed in Exhibit C. NANA and the Borough warrant that they support the pipeline concept and will actively work for its implementation.

B.    Except as otherwise provided in this subsection, if the permits and approvals necessary to build the pipeline, and to develop and mine the Aqqaluk Deposit, are obtained, Teck Cominco will engineer, construct and operate the Pipeline. If Teck Cominco elects not to proceed with the Pipeline, it will notify the court and Plaintiffs, and it will pay a civil penalty in the amount of eight million ($8,000,000) dollars if Teck Cominco's decision not to proceed is for good cause or twenty million ($20,000,000) dollars if Teck Cominco's decision not to proceed is not for good cause. Teck Cominco has good cause not to build the Pipeline if: (1) the approval conditions imposed in the federal, state or local permits, and in any other needed approvals, required for permitting, engineering and constructing the Pipeline require substantial, material undertakings other than the design, construction and operation of the Pipeline in the DMTS, (2) the failure to receive necessary permits and other needed approvals to build the Pipeline and develop and mine the Aqqaluk deposit within a reasonable period of time is for reasons beyond Teck Cominco's control, or (3) the total cost of permitting, engineering and constructing

the Pipeline exceeds $120 million. Any disputes about whether Teck Cominco's decision not to proceed is for good cause shall be determined by the Court in *Adams v. Teck Cominco*. Payment of the penalty shall be made to the United States.

C.    Teck Cominco warrants that as of the time of this Agreement, it has no reason to believe that a pipeline cannot be designed, engineered, constructed, and/or operated within the DMTS as provided for in this Agreement, and that all information available to it suggests that engineering and construction costs for the Pipeline will be substantially less than $120 million. Teck Cominco further warrants that as of the time of this Agreement, it has no reason to believe that the Pipeline cannot be permitted, and no reason to believe that any necessary permits or permissions will not be granted.

D.    Teck Cominco will annually report in writing to the court and Plaintiffs: (1) what permits have been applied for, (2) the current status of the applications, (3) any known obstacles to permitting or construction of the Pipeline, (4) the total costs expended that year and to date, and (5) other steps taken in furtherance of permitting, engineering and constructing the Pipeline.

E.    If Teck Cominco fails to diligently design, construct, and operate the Pipeline and seek necessary permits and approval, Plaintiffs may seek to enforce the terms of the Consent Decree at any time.

## III. Kivalina Environmental Benefits

Within 90 days of the execution of this Agreement, Teck Cominco shall purchase and provide reverse osmosis water filtration units in sufficient quantities to serve each residence, business and public building in Kivalina, in no case less than 125 such units. Upon delivery, Teck Cominco shall pay the City of Kivalina $10,000 for the installation of these units; such payment could be used to send a Kivalina resident for training on installation and maintenance of the units. Commencing in 2009 and until the commencement of marine discharge from the Pipeline referenced in section II, Teck Cominco shall pay the City of Kivalina $50,000 per year to maintain or replace the reverse osmosis water filtration units.

## IV. Releases

A.    Upon entry of the Consent Decree, Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, and Joseph Swan, Sr., individually and in any official capacity that they each may have, will each withdraw as appellants with respect to their pending appeal of Alaska's § 401 certification of NPDES Permit AK-003865-2 before the Alaska Department of Environmental Conservation (ADEC), and will seek to have their appeal dismissed with prejudice as to them, and will further agree not to assist, support or in any other way participate with any of the other parties to that appeal in furtherance of the other parties' appeal.

B.    Individually and in any official capacity that they each may have, Enoch Adams Jr., Leroy Adams, Andrew Koenig, Jerry Norton, and Joseph Swan, Sr., and all of their assigns, hereby release and fully and forever discharge Teck Cominco, NANA, the Borough, and their present and former affiliates, subsidiaries, owners, partners, directors,

officers, employees, associates, agents, and representatives, of and from any and all claims, demands, suits, liabilities, causes of action, judgments, settlements, losses, damages, expenses, costs and penalties of every kind and nature whatsoever, which accrued prior to the date of settlement, with the exception of claims for personal injury caused by exposure to a toxic substance ("toxic torts"). All parties warrant that as of the date of this Agreement, they do not know of any such claims, and do not intend to file any such claims. In reliance upon that warranty, Teck Cominco will not assert that any party should now know of any such claims.

C.      Teck Cominco, NANA, and the Borough, individually and on behalf of their present and former affiliates, subsidiaries, owners, partners, directors, officers, employees, and associates hereby release and fully and forever discharge Enoch Adams Jr., Leroy Adams, Andrew Koenig, Jerry Norton, Joseph Swan, Sr. of and from any and all claims, demands, suits, liabilities, causes of action, judgments, settlements, losses, damages, expenses, costs and penalties of every kind and nature whatsoever, which accrued prior to the date of settlement.

D.      Notwithstanding any other provision of this section, neither Enoch Adams Jr. nor the Borough release against the other any employment-related claims which accrued prior to the date of settlement.

## V. Agreement to Cooperate

All parties to this Agreement will work cooperatively to actively support the reasonable permitting of the Pipeline as described in section II. Except as expressly provided in this Agreement, Enoch Adams Jr., Leroy Adams, Andrew Koenig, Jerry Norton, and Joseph Swan, Sr., individually and in any official capacity that they each may have, each agree that if Teck Cominco does not appeal from the issuance of any permit, consent or other authorization required for (1) the discharge of effluent from Red Dog Mine, (2) the construction and operation of the Pipeline, and/or (3) the mining of the Aqqaluk deposit, then they will withdraw from and dismiss any appeal that they may have brought relative to the same permit, consent or other authorization. With respect to the Pipeline, all parties agree that they will not seek in any permit, authorization or consent for the construction or operation of the Pipeline the imposition of undertakings other than those related to the design, construction and operation of the Pipeline in a manner that is environmentally sound and protective of public health. This paragraph is otherwise not meant to restrict any party to this Agreement from providing input to permitting authorities or from otherwise participating in the public processes preceding issuance of any permit, consent or other authorization. Further, Plaintiffs may in any event appeal from limits set for Total Dissolved Solids ("TDS") discharge into Red Dog Creek from when grayling begin spawning in the Main Stem of Red Dog Creek until the conclusion of that spawning season as determined by Alaska Department of Fish and Game. Teck Cominco will not seek higher in-stream TDS limits than 1500 mg/L.

## VI. Consent Decree Terms

A.      The parties to this Agreement will not sue Teck Cominco for violations of any of its NPDES permits between the date of settlement and the earlier of (a) the date

that marine discharge via the Pipeline commences, (b) Teck Cominco advises Plaintiffs pursuant to section II that it is unable to proceed with the Pipeline in accordance with this agreement, or (c) the Consent Decree is terminated by the Court.

B.    Commencing from the date of the Agreement and continuing through the effective date of the reissuance of NPDES Permit No. AK-003865-2, Teck Cominco shall comply with the existing permitted effluent discharge and in-stream water quality limits in NPDES Permit No. AK-003865-2 (as issued in 1998, and modified in 2003) with respect to parameters other than TDS, and shall comply with the Alaska State water quality standards for TDS ("Interim Effluent Limits"). As to TDS, it shall comply with the In-Stream Limit at the End of the Mixing Zone in Red Dog Creek (Station 151). The in-stream limit for TDS at Station 151 (downstream edge of the mixing zone in Main Stem Red Dog Creek) shall be 1500 mg/L from the start of, and at all times during, the discharge season, regardless of the concentration of TDS in Outfall 001. The applicable in-stream TDS concentrations for waters receiving Red Dog Mine discharge are as follows:

  i.    1500 mg/L at the downstream edge of the mixing zone in Main Stem Red Dog Creek (Station 151);

  ii.   1000 mg/L at the downstream edge of the mixing zone in Ikalukrok Creek (Station 150); and

  iii.  500 mg/L after July 25th in Lower Ikalukrok Creek (Station 160).

The Interim Effluent Limits shall be governed by the definitions in the existing NPDES Permit No. AK-003865-2 Condition I.K.

C.    The Interim Effluent Limits shall remain in effect until the effective date of the effluent limits prescribed in a renewed NPDES Permit No. AK-003865-2, and as to any effluent limits in a reissued permit whose effective date may be delayed or stayed as a result of administrative appeals or otherwise, during the period that the effluent limits are stayed. Consistent with the spirit of Evidence Rule 408, the Interim Effluent Limits have been agreed to during settlement negotiations and cannot be relied on or used by any party in any future proceeding.

D.    Beginning with the date of entry of the consent decree and continuing through the earlier of (a) the date that marine discharge via the Pipeline commences or (b) Teck Cominco advises Plaintiffs pursuant to section II that it elects not to proceed with the Pipeline in accordance with this agreement, Teck Cominco shall pay to the United States, automatically and without notice or demand, stipulated penalties in the amounts set forth below for the below listed violations of the Interim Effluent Limits applicable to Red Dog Mine and violations of the effluent limits in the reissued NPDES Permit No. AK-003865-2. For each violation of a given effluent discharge limit, Teck Cominco shall pay stipulated penalties as follows:

| Number of Daily Violations per Discharge Limit | Penalty |
| --- | --- |
| 1-10 | $625 |
| 11-25 | $1,500 |

|         |          |
|---------|----------|
| 26-50   | $3,750   |
| 51-300  | $6,000   |
| 301+    | $12,500  |

| Number of Monthly Violations per Discharge Limit | Penalty |
|--------------------------------------------------|---------|
| 1-30                                             | $625    |
| 31-60                                            | $1,500  |
| 61-185                                           | $3,750  |
| 186-500                                          | $6,000  |
| 500+                                             | $12,500 |

For purposes of calculating the number of violations, violations shall not be cumulated for more than five years on a rolling basis. A monthly violation is a violation for every day in which discharge occurs during that month.

Within 30 days of entry of the Consent Decree and until reissuance of NPDES Permit No. AK-003865-2, Teck Cominco shall pay a civil penalty of $118,750 to the United States for each discharge season.

Consistent with the spirit of Evidence Rule 408, the stipulated penalties have been agreed to during settlement negotiations and cannot be relied on or used by any party in any future proceeding.

     E.     Teck Cominco shall pay all stipulated penalties to the United States by electronic funds transfer within 30 days of the submittal to EPA Region 10 of the discharge monitoring report that reports the occurrence of a violation under this Agreement. Compliance by Teck Cominco with the Interim Effluent Limits for Red Dog Mine and/or the reissued permit effluent limits for Red Dog Mine, together with timely payment of any stipulated penalties assessed pursuant to this section, constitutes a complete remedy for any violations of the effluent limitations contained in NPDES Permit No. AK-003865-2 that occur between the date of entry of the decree and the effective date of reissuance of NPDES Permit No. AK-003865-2, and for any violations of the effluent limits contained in a reissued permit No. AK-003865-2 that occur between the date of re-issuance and the operation of the Pipeline. Teck Cominco shall file annually with the Court and provide monthly to the plaintiffs a report of violations and automatic penalties assessed pursuant to the Decree.

## VII. Joint Press Release

A joint press release of the parties to this Agreement will be issued containing only mutually agreed upon terms; no individual press releases may be issued and no comments may be made by any party or counsel to any party to this Agreement that are inconsistent with the joint press release.

## VIII. Discharge into Red Dog Creek

All parties to this agreement seek to avoid discharging effluent at Red Dog Mine into Red Dog Creek after the Pipeline is completed and will work toward that goal in the permitting of the Pipeline. In the event that any permit is issued requiring ongoing and/or regular effluent discharge into Red Dog Creek after the Pipeline becomes operational, Teck Cominco shall, and other parties to this Agreement may, appeal from the imposition of such a requirement.

## IX. Attorney Fees and Costs

Teck Cominco shall pay the Plaintiffs' attorney fees and costs in the amount of $2,350,000 within 30 days of the entry by the court of the Consent Decree.

## X. Pre-filing Confidentiality

The parties to this Agreement agree to keep the terms of this Agreement confidential until the Consent Decree is lodged with the Court.

## XI. Authority to Enter into Agreement

The parties each individually represent, warrant and agree that they have the full right and authority to enter into this Agreement, and to provide the covenants set forth in this Agreement, and that the party or representative executing this Agreement has the full right and authority to commit and bind such party according to the provisions hereof.

## XII. Binding Effect of Agreement

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors in interest and assigns.

## XIII. Commitment to Support Agreement

The parties each agree to support this Agreement.

## XIV. Complete Agreement

This Agreement and the Consent Decree when entered by the Court constitute the entire agreement among the parties relating to the settlement of *Adams v. Teck Cominco*.

## XV. Modification of Agreement

No modification or waiver of this Agreement or any part hereof shall be valid or effective unless in writing and signed by all parties. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other subsequent breach or condition, whether of like or different nature.

## XVI. Severability

If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

## XVII. Counterparts/PDF and Facsimile Signatures

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument. PDF or facsimile signatures shall have the same effect as an original and may be relied upon by any party.

**IN WITNESS WHEREOF,** the parties have duly executed this Agreement as set forth below, intending to be legally bound by the terms and conditions of this Agreement.

DATED: ~~May~~ June 17, 2008     Center on Race, Poverty & the Environment
Attorneys for Enoch Adams, Jr., Leroy Adams,
Andrew Koenig, Jerry Norton, David Swan and
Joseph Swan

By: _____
     Luke Cole

DATED: May __, 2008     Hartig Rhodes Hoge Lekisch, PC
Attorneys for Teck Cominco Alaska Incorporated

By: _____
     Sean Halloran

DATED: May __, 2008     Heller Ehrman LLP
Attorneys for NANA Regional Corp.

By: _____
     James E. Torgerson

DATED: May __, 2008     Landye Bennett Blumstein LLP
Attorneys for Northwest Arctic Borough

By: _____
     David S. Case, P.C.

## XVI.Severability

If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

## XVII.Counterparts/PDF and Facsimile Signatures

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.  PDF or facsimile signatures shall have the same effect as an original and may be relied upon by any party.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as set forth below, intending to be legally bound by the terms and conditions of this Agreement.

DATED: May __, 2008        Center on Race, Poverty & the Environment
                           Attorneys for Enoch Adams, Jr., Leroy Adams,
                           Andrew Koenig, Jerry Norton, David Swan and
                           Joseph Swan

                           By: _____
                                   Luke Cole

DATED: ~~May~~ July 15 __, 2008    Hartig Rhodes Hoge Lekisch, PC
                           Attorneys for Teck Cominco Alaska Incorporated

                           By: _____
                                   Sean Halloran

DATED: May __, 2008        Heller Ehrman LLP
                           Attorneys for NANA Regional Corp.

                           By:_____
                                   James E. Torgerson

DATED: May __, 2008        Landye Bennett Blumstein LLP
                           Attorneys for Northwest Arctic Borough

                           By:_____
                                   David S. Case, P.C.

## XVI.Severability

If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

## XVII.Counterparts/PDF and Facsimile Signatures

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.  PDF or facsimile signatures shall have the same effect as an original and may be relied upon by any party.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as set forth below, intending to be legally bound by the terms and conditions of this Agreement.

DATED: May __, 2008        Center on Race, Poverty & the Environment
                           Attorneys for Enoch Adams, Jr., Leroy Adams,
                           Andrew Koenig, Jerry Norton, David Swan and
                           Joseph Swan


                           By: _____
                                 Luke Cole

DATED: May __, 2008        Hartig Rhodes Hoge Lekisch, PC
                           Attorneys for Teck Cominco Alaska Incorporated


                           By: _____
                                 Sean Halloran

DATED: July 18, 2008       Heller Ehrman LLP
                           Attorneys for NANA Regional Corporation, Inc.


                           By: _____
                                 James E. Torgerson

DATED: May __, 2008        Landye Bennett Blumstein LLP
                           Attorneys for Northwest Arctic Borough


                           By: _____
                                 David S. Case, P.C.

## XVI. Severability

If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

## XVII. Counterparts/PDF and Facsimile Signatures

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument. PDF or facsimile signatures shall have the same effect as an original and may be relied upon by any party.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as set forth below, intending to be legally bound by the terms and conditions of this Agreement.

DATED: May __, 2008

    Center on Race, Poverty & the Environment
Attorneys for Enoch Adams, Jr., Leroy Adams,
Andrew Koenig, Jerry Norton, David Swan and
Joseph Swan

By: _____
        Luke Cole

DATED: ~~May~~ *July 15*__, 2008

    Hartig Rhodes Hoge Lekisch, PC
Attorneys for Teck Cominco Alaska Incorporated

By: _____
        Sean Halloran

DATED: May __, 2008

    Heller Ehrman LLP
Attorneys for NANA Regional Corp.

By: _____
        James E. Torgerson

DATED: ~~May~~ *July 16*, 2008

    Landye Bennett Blumstein LLP
Attorneys for ~~Northwest~~ Arctic Borough

By: _____
        David S. Case, P.C.

# EXHIBIT A

# PROPOSED CONSENT DECREE

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

9

10

ENOCH ADAMS, JR., LEROY ADAMS,
ANDREW KOENIG, JERRY NORTON,
DAVID SWAN and JOSEPH SWAN,

11
                                        Plaintiffs,

12          v.

13   TECK COMINCO ALASKA
     INCORPORATED,

14
                                        Defendant,

15

16   NANA REGIONAL CORPORATION, and          Case No.: A:04-cv-0049 (JWS)

17   NORTHWEST ARCTIC BOROUGH,

18                        Intervenor-Defendants.          **[PROPOSED] CONSENT DECREE**

19

20          WHEREAS, Plaintiffs Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton,

21

22   David Swan and Joseph Swan filed a Complaint against Defendant Teck Cominco Alaska

23   Incorporated on March 8, 2004, filed a Revised Complaint on July 7, 2004, filed a Supplemental

24   Revised Complaint on October 12, 2007, and filed a First Amended Supplemental Revised

25

26   Complaint on August 29, 2008 (collectively referred to herein as the "Complaint"), alleging

27   violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharge limits set by the

28   National Pollution Discharge Elimination System (NPDES) permits for the Red Dog Mine and

29

for the DeLong Mountain Transportation System (DMTS) Port in northwest Alaska, seeking declaratory and injunctive relief, civil penalties and attorneys fees and costs;

WHEREAS Defendant Teck Cominco Alaska Incorporated (Teck Cominco) has contested the Plaintiffs' claims and any liability for the alleged violations;

WHEREAS NANA Regional Corporation, Inc. (NANA) has intervened as a defendant;

WHEREAS the Northwest Arctic Borough (Borough) has intervened as a defendant for remedial purposes; and

WHEREAS the parties to this action have engaged in discussions relating to the potential settlement of this litigation, which discussions have included an assessment of the facts surrounding the alleged violations; and

WHEREAS Defendant Teck Cominco has undertaken, and is implementing, measures to further ensure compliance with the Clean Water Act at the Red Dog Mine and the DMTS Port and to address issues raised in the notices of intent to sue served by the Plaintiffs; and

WHEREAS Teck Cominco warrants that as of the time of the Settlement Agreement on file with the Court in this case (Settlement Agreement), it has no reason to believe that the Pipeline described in Paragraph 8 cannot be designed, engineered, constructed, and/or operated within the DMTS as provided for in the Settlement Agreement, and that all information available to it suggests that engineering and construction costs for the Pipeline will be substantially less than $120 million.  Teck Cominco further warrants that as of the time of the Settlement Agreement, it has no reason to believe that the Pipeline cannot be permitted, and no reason to believe that any necessary permits or permissions will not be granted; and

WHEREAS NANA and the Borough warrant that they support the pipeline concept and will actively work for its implementation; and

WHEREAS the Plaintiffs and all Defendants agree that settlement of these matters is in the best interests of the parties and of the public, and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving these actions; and

WHEREAS the Plaintiffs and Defendants, by their authorized counsel, consent to the entry of this Consent Decree in order to avoid the risks of litigation and to resolve the controversy between them;

NOW THEREFORE, upon consent of the parties, and upon consideration of the mutual promises herein contained, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1.     This Court has jurisdiction over the parties and subject matter of this action.

2.     The undersigned representative for each party certifies that he is fully authorized by the party or parties whom he represents to enter into the terms and conditions of this Consent Decree and to legally bind the party or parties and their successors in interest to it.

3.     This Consent Decree shall apply to, and be binding upon, the parties, and upon the successors in interest and assigns of the parties.

4.     This Consent Decree shall apply on a going forward basis to Defendant Teck Cominco's continued discharge of effluent from its operation of the Red Dog Mine, which is located on Red Dog Creek, 82 miles north of Kotzebue, Alaska, at latitude 68° 4' 17" and longitude 162° 52' 5" (Mine).

5.     This Consent Decree constitutes a full and complete settlement of the claims alleged in the Complaint and all other claims that accrued as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-

1387, for violations of NPDES permits issued to Teck Cominco for the Red Dog Mine and for the DMTS Port.

6.    This Consent Decree shall not constitute (1) evidence in any proceeding other than this one, (2) an admission or adjudication with respect to any allegation of the Complaint, (3) a fact or conclusion of law with respect to any matter alleged in or arising out of the Complaint, (4) an admission or evidence of any wrongdoing or misconduct on the part of any Defendant or its successor, or (5) a concession by any party of any legal or factual issue.

7.    In full and complete satisfaction of the claims covered by the Complaint and all other claims covered by this Consent Decree, as described in Paragraph 5, Defendant Teck Cominco agrees to abide by and be subject to the terms and conditions set forth in this Consent Decree.

8.

    A.  After entry of the Consent Decree, Teck Cominco will, in good faith, undertake to design, construct and operate a pipeline to carry Red Dog Mine effluent from the Red Dog Mine through the DeLong Mountain Transportation System (DMTS) right-of-way corridor to an outfall to be constructed in the Chukchi Sea at or near the DMTS Port (the "Pipeline"). Teck Cominco will diligently pursue the necessary permits and other needed approvals for the construction and operation of the Pipeline. Teck Cominco will apply for certain permits according to the schedule listed in Exhibit C to the Settlement Agreement.

    B.  Except as otherwise provided in this subsection, if the permits and approvals necessary to build the Pipeline, and to develop and mine the Aqqaluk Deposit, are obtained, Teck Cominco will engineer, construct and operate the Pipeline. If Teck Cominco elects not to

proceed with the Pipeline, it will notify the Court and Plaintiffs, and it will pay a civil penalty in the amount of eight million ($8,000,000) dollars if Teck Cominco's decision not to proceed is for good cause or twenty million ($20,000,000) dollars if Teck Cominco's decision not to proceed is not for good cause. Teck Cominco has good cause not to build the Pipeline if: (1) the approval conditions imposed in the federal, state or local permits, and in any other needed approvals, required for permitting, engineering and constructing the Pipeline require substantial, material undertakings other than the design, construction and operation of the Pipeline in the DMTS, (2) the failure to receive necessary permits and other needed approvals to build the Pipeline and develop and mine the Aqqaluk Deposit within a reasonable period of time is for reasons beyond Teck Cominco's control, or (3) the total cost of permitting, engineering and constructing the Pipeline exceeds $120 million. Any disputes about whether Teck Cominco's decision not to proceed is for good cause shall be determined by the Court. Payment of the penalty shall be made to the United States.

      C. Teck Cominco will annually report in writing to the Court and Plaintiffs: (1) what permits have been applied for, (2) the current status of the applications, (3) any known obstacles to permitting or construction of the Pipeline, (4) the total costs expended that year and to date, and (5) other steps taken in furtherance of permitting, engineering and constructing the Pipeline.

      D. If Teck Cominco fails to diligently design, construct, and operate the Pipeline and seek necessary permits and approval, Plaintiffs may seek to enforce the terms of this Consent Decree at any time.

      9.      Teck Cominco shall purchase and provide reverse osmosis water filtration units in sufficient quantities to serve each residence, business and public building in Kivalina, in no case less than 125 such units. Upon delivery, Teck Cominco shall pay the City of

Kivalina $10,000 for the installation of these units in accordance with the Settlement Agreement. Commencing in 2009 and until the commencement of marine discharge from the Pipeline referenced in paragraph 8, Teck Cominco shall pay the City of Kivalina $50,000 per year to maintain or replace the reverse osmosis water filtration units.

10.

A. Commencing from May 14, 2008 and continuing through the effective date of the reissuance of NPDES Permit No. AK-003865-2, Teck Cominco shall comply with the existing permitted effluent discharge and in-stream water quality limits in NPDES Permit No. AK-003865-2 (as issued in 1998, and modified in 2003) with respect to parameters other than TDS, and shall comply with the Alaska State water quality standards for TDS ("Interim Effluent Limits"). As to TDS, it shall comply with the In-Stream Limit at the End of the Mixing Zone in Red Dog Creek (Station 151). The in-stream limit for TDS at Station 151 (downstream edge of the mixing zone in Main Stem Red Dog Creek) shall be 1500 mg/L from the start of, and at all times during, the discharge season, regardless of the concentration of TDS in Outfall 001. The applicable in-stream TDS concentrations for waters receiving Red Dog Mine discharge are as follows:

    i.    1500 mg/L at the downstream edge of the mixing zone in Main Stem Red Dog Creek (Station 151);

    ii.    1000 mg/L at the downstream edge of the mixing zone in Ikalukrok Creek (Station 150); and

    iii.    500 mg/L after July 25th in Lower Ikalukrok Creek (Station 160).

The Interim Effluent Limits shall be governed by the definitions in the existing NPDES Permit No. AK-003865-2 Condition I.K.

B.  The Interim Effluent Limits shall remain in effect until the effective date of the effluent limits prescribed in a renewed NPDES Permit No. AK-003865-2, and as to any effluent limits in a reissued permit whose effective date may be delayed or stayed as a result of administrative appeals or otherwise, during the period that the effluent limits are stayed.  The Interim Effluent Limits have been agreed to during settlement negotiations and cannot be relied on or used by any party in any future proceeding.

C.  Beginning with the date of entry of the Consent Decree and continuing through the earlier of (a) the date that marine discharge via the Pipeline commences or (b) Teck Cominco advises Plaintiffs and the Court pursuant to Paragraph 8 that it elects not to proceed with the Pipeline, Teck Cominco shall pay to the United States, automatically and without notice or demand, stipulated penalties in the amounts set forth below for the below listed violations of the Interim Effluent Limits applicable to Red Dog Mine and violations of the effluent limits in the reissued NPDES Permit No. AK-003865-2.  For each violation of a given effluent discharge limit, Teck Cominco shall pay stipulated penalties as follows:

| Number of Daily Violations per Discharge Limit | Penalty |
| --- | --- |
| 1-10 | $625 |
| 11-25 | $1,500 |
| 26-50 | $3,750 |
| 51-300 | $6,000 |
| 301+ | $12,500 |

| Number of Monthly Violations per Discharge Limit | Penalty |
|---|---|
| 1-30 | $625 |
| 31-60 | $1,500 |
| 61-185 | $3,750 |
| 186-500 | $6,000 |
| 500+ | $12,500 |

For purposes of calculating the number of violations, violations shall not be cumulated for more than five years on a rolling basis. A monthly violation is a violation for every day in which discharge occurs during that month.

Within 30 days of entry of the Consent Decree and until the effective date of reissuance of NPDES Permit No. AK-003865-2, Teck Cominco shall pay a civil penalty of $118,750 to the United States for each discharge season.

The stipulated penalties have been agreed to during settlement negotiations and cannot be relied on or used by any party in any future proceeding.

D. Teck Cominco shall pay all stipulated penalties to the United States by electronic funds transfer within 30 days of the submittal to EPA Region 10 of the discharge monitoring report that reports the occurrence of a violation under this Consent Decree. Compliance by Teck Cominco with the Interim Effluent Limits for Red Dog Mine and/or the reissued permit effluent limits for Red Dog Mine, together with timely payment of any stipulated penalties assessed pursuant to this paragraph 10, constitutes a complete remedy for any violations of the effluent limitations contained in NPDES Permit No. AK-003865-2 that occur between the date of entry of the Consent Decree and the effective date of reissuance of NPDES Permit No. AK-003865-2,

and for any violations of the effluent limits contained in a reissued permit No. AK-003865-2 that occur between the date of re-issuance and (1) the operation of the Pipeline or (2) Teck Cominco's notification to the Plaintiffs and the Court of the decision not to proceed with the Pipeline. Teck Cominco shall file annually with the Court and provide monthly to the Plaintiffs a report of violations and automatic penalties assessed pursuant to the Consent Decree.

11.    Teck Cominco agrees to pay Plaintiffs' costs and attorneys' fees, including expert witness fees and costs, in the amount of $2,350,000 as provided by 33 U.S.C. § 1365(d). The check shall be made payable to the Center on Race, Poverty and the Environment (CRPE) and shall be received within 30 days of entry of this Consent Decree. CRPE shall be wholly responsible for the proper distribution of that sum to any and all attorneys, experts or other entities who may be entitled thereto. The sum set forth in this paragraph shall be complete settlement of Plaintiffs' claim for costs and fees incurred up to the date of entry of this Consent Decree and thereafter for responding to possible comments on this Consent Decree and for monitoring Teck Cominco's compliance with this Consent Decree, but does not include costs and fees, if any, incurred thereafter in the event of a proceeding that results in the Court issuing an order interpreting or enforcing the terms of this Consent Decree.

12.    The Court shall retain jurisdiction over this matter until termination of the Consent Decree per Paragraph 14. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties shall first attempt to informally resolve the dispute through meetings between the parties by serving written notice of request for resolution to the parties and their counsel of record. If no resolution is reached within thirty (30) days from the date that the notice of dispute is served, the parties may resolve the dispute by filing motions with the Court.

13.    The Court recognizes that no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to 45 days following the receipt of

a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA pursuant to 33 U.S.C. § 1365(c)(3). The parties have certified that the EPA Administrator and the Attorney General received copies by no later than_____, and more than 45 days have elapsed since that date.

14.    This Consent Decree shall take effect immediately. Upon notice to Plaintiffs, which may be accomplished by service of any pleadings filed with the Court, Teck Cominco may move the Court to terminate this Consent Decree at any time following the later of (1) completion of Teck Cominco's obligations under Paragraph 8 or (2) the effective date of reissued NPDES Permit No. AK-003865-2. In support of a motion to terminate, Teck Cominco shall certify that it has discharged all of its obligations arising under this Consent Decree. The Court shall terminate the Consent Decree unless, within 45 days of service of Teck Cominco's certification, the Plaintiffs demonstrate that Teck Cominco has failed to discharge one or more of its obligations under this Consent Decree.

15.    This Consent Decree may be modified only upon the written consent of the parties and the approval of the Court.

16.    Notifications required by this Consent Decree shall be served by first class mail, postage pre-paid, to each of the following addressees.

Plaintiffs:
        Luke Cole
        Center on Race, Poverty & the Environment
        47 Kearny, Ste 804
        San Francisco, CA 94108

        Nancy S. Wainwright
        Law Offices of Nancy S. Wainwright
        13030 Back Road, Suite 555
        Anchorage, AK 99515

Teck Cominco Alaska Incorporated:
        Sean Halloran
        Hartig Rhodes Hoge & Lekisch, PC
        717 K Street

Anchorage, AK 99501

NANA Regional Corporation:
    James Torgerson
    Heller Ehrman LLP
    510 L Street
    Anchorage, AK 99501

Northwest Arctic Borough:
    David S. Case, P.C.
    Landye Bennett Blumstein LLP
    701 W. 8th Avenue, Suite 1200
    Anchorage, AK 99501


Dated and entered this ____ day of _____, 2008.


_____
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

Center on Race, Poverty & the Environment
Attorneys for Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and
Joseph Swan


By: _____
    Luke Cole


Hartig Rhodes Hoge Lekisch, PC
Attorneys for Teck Cominco Alaska Incorporated


By: _____
    Sean Halloran

Heller Ehrman LLP
Attorneys for NANA Regional Corp.


By: _____
    James Torgerson

Landye Bennett Blumstein LLP
Attorneys for Northwest Arctic Borough

By:_____
        David S. Case, P.C.

# EXHIBIT B

# JOINT MOTION
# TO ENTER CONSENT DECREE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ENOCH ADAMS, JR., LEROY ADAMS,
ANDREW KOENIG, JERRY NORTON,
DAVID SWAN and JOSEPH SWAN,

                              Plaintiffs,

    v.

TECK COMINCO ALASKA
INCORPORATED,

                              Defendant,


NANA REGIONAL CORPORATION, and

NORTHWEST ARCTIC BOROUGH,

                Intervenor-Defendants.          Case No.: A:04-cv-0049 (JWS)

## JOINT MOTION FOR ENTRY OF CONSENT DECREE
## EFFECTUATING SETTLEMENT

Having reached a settlement of all issues in the above captioned matter, each and

all of the parties request that the court enter a consent decree, in the form lodged

herewith, following a comment period of not less than 45 days. The parties certify that a

copy of the consent decree has been served on the U.S. Attorney General and the

Administrator of the U.S. Environmental Protection Agency to enable them to each

comment pursuant to 33 U.S.C. § 1365(c)(3). The consent decree disposes of all issues in this matter.

    Dated this ___ day of ___, 2008.


_____

Luke Cole
Attorney for Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and Joseph Swan


Hartig Rhodes Hoge Lekisch, PC
Attorneys for Teck Cominco Alaska Incorporated


By: _____
    Sean Halloran


Heller Ehrman LLP
Attorneys for NANA Regional Corp.


By:_____
    James Torgerson


Landye Bennett Blumstein, LLP
Attorneys for Northwest Arctic Borough


By:_____
    David Case

EXHIBIT C

## Exhibit C

Teck Cominco will apply for an NPDES permit for marine discharge from a Pipeline carrying Red Dog Mine effluent no later than thirty days after a reissued NPDES Permit AK-003865-2 is final and in effect and no longer subject to appeal.

It is the parties' understanding that a marine outfall discharge is being considered in the Supplemental Environmental Impact Statement for the Red Dog Mine currently under way.

Within 45 days after full execution of this Agreement, Teck Cominco will cause an application to be made to the United States Department of Interior and/or the National Park Service to begin the process of obtaining authorization for the DMTS right-of-way to include a Pipeline.

Within 180 days after full execution of this Agreement, Teck Cominco will initiate an investigation of the degree to which consultation with United States Fish and Wildlife Service must occur under the Endangered Species Act, Marine Mammal Protection Act, Migratory Bird Treaty Act, and the Fish and Wildlife Conservation Act.

Within the first discharge season after full execution of this Agreement, Teck Cominco will undertake a wetlands survey for the DMTS as a prerequisite to apply for modification or issuance of any 404 permit from the United States Army Corps of Engineers applicable to the Pipeline.