IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ENOCH ADAMS, JR., LEROY ADAMS, ANDREW KOENIG, JERRY NORTON, DAVID SWAN and JOSEPH SWAN,<br><br>    Plaintiffs,<br><br>v.<br><br>TECK COMINCO ALASKA INCORPORATED,<br><br>    Defendant,<br><br>NANA REGIONAL CORPORATION, and NORTHWEST ARCTIC BOROUGH,<br><br>    Intervenor-Defendants. | Case No.: A:04-cv-0049 (JWS)<br><br>[PROPOSED] CONSENT DECREE |

WHEREAS, Plaintiffs Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and Joseph Swan filed a Complaint against Defendant Teck Cominco Alaska Incorporated on March 8, 2004, filed a Revised Complaint on July 7, 2004, filed a Supplemental Revised Complaint on October 12, 2007, and filed a First Amended Supplemental Revised Complaint on August 29, 2008 (collectively referred to herein as the "Complaint"), alleging violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharge limits set by the National Pollution Discharge Elimination System (NPDES) permits for the Red Dog Mine and

for the DeLong Mountain Transportation System (DMTS) Port in northwest Alaska, seeking declaratory and injunctive relief, civil penalties and attorneys fees and costs;

WHEREAS Defendant Teck Cominco Alaska Incorporated (Teck Cominco) has contested the Plaintiffs' claims and any liability for the alleged violations;

WHEREAS NANA Regional Corporation, Inc. (NANA) has intervened as a defendant;

WHEREAS the Northwest Arctic Borough (Borough) has intervened as a defendant for remedial purposes; and

WHEREAS the parties to this action have engaged in discussions relating to the potential settlement of this litigation, which discussions have included an assessment of the facts surrounding the alleged violations; and

WHEREAS Defendant Teck Cominco has undertaken, and is implementing, measures to further ensure compliance with the Clean Water Act at the Red Dog Mine and the DMTS Port and to address issues raised in the notices of intent to sue served by the Plaintiffs; and

WHEREAS Teck Cominco warrants that as of the time of the Settlement Agreement on file with the Court in this case (Settlement Agreement), it has no reason to believe that the Pipeline described in Paragraph 8 cannot be designed, engineered, constructed, and/or operated within the DMTS as provided for in the Settlement Agreement, and that all information available to it suggests that engineering and construction costs for the Pipeline will be substantially less than $120 million. Teck Cominco further warrants that as of the time of the Settlement Agreement, it has no reason to believe that the Pipeline cannot be permitted, and no reason to believe that any necessary permits or permissions will not be granted; and

WHEREAS NANA and the Borough warrant that they support the pipeline concept and will actively work for its implementation; and

WHEREAS the Plaintiffs and all Defendants agree that settlement of these matters is in the best interests of the parties and of the public, and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving these actions; and

WHEREAS the Plaintiffs and Defendants, by their authorized counsel, consent to the entry of this Consent Decree in order to avoid the risks of litigation and to resolve the controversy between them;

NOW THEREFORE, upon consent of the parties, and upon consideration of the mutual promises herein contained, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1. This Court has jurisdiction over the parties and subject matter of this action.

2. The undersigned representative for each party certifies that he is fully authorized by the party or parties whom he represents to enter into the terms and conditions of this Consent Decree and to legally bind the party or parties and their successors in interest to it.

3. This Consent Decree shall apply to, and be binding upon, the parties, and upon the successors in interest and assigns of the parties.

4. This Consent Decree shall apply on a going forward basis to Defendant Teck Cominco's continued discharge of effluent from its operation of the Red Dog Mine, which is located on Red Dog Creek, 82 miles north of Kotzebue, Alaska, at latitude 68° 4' 17" and longitude 162° 52' 5" (Mine).

5. This Consent Decree constitutes a full and complete settlement of the claims alleged in the Complaint and all other claims that accrued as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-

1387, for violations of NPDES permits issued to Teck Cominco for the Red Dog Mine and for the DMTS Port.

6.  This Consent Decree shall not constitute (1) evidence in any proceeding other than this one, (2) an admission or adjudication with respect to any allegation of the Complaint, (3) a fact or conclusion of law with respect to any matter alleged in or arising out of the Complaint, (4) an admission or evidence of any wrongdoing or misconduct on the part of any Defendant or its successor, or (5) a concession by any party of any legal or factual issue.

7.  In full and complete satisfaction of the claims covered by the Complaint and all other claims covered by this Consent Decree, as described in Paragraph 5, Defendant Teck Cominco agrees to abide by and be subject to the terms and conditions set forth in this Consent Decree.

8.

  A. After entry of the Consent Decree, Teck Cominco will, in good faith, undertake to design, construct and operate a pipeline to carry Red Dog Mine effluent from the Red Dog Mine through the DeLong Mountain Transportation System (DMTS) right-of-way corridor to an outfall to be constructed in the Chukchi Sea at or near the DMTS Port (the "Pipeline"). Teck Cominco will diligently pursue the necessary permits and other needed approvals for the construction and operation of the Pipeline. Teck Cominco will apply for certain permits according to the schedule listed in Exhibit C to the Settlement Agreement.

  B. Except as otherwise provided in this subsection, if the permits and approvals necessary to build the Pipeline, and to develop and mine the Aqqaluk Deposit, are obtained, Teck Cominco will engineer, construct and operate the Pipeline. If Teck Cominco elects not to

proceed with the Pipeline, it will notify the Court and Plaintiffs, and it will pay a civil penalty in the amount of eight million ($8,000,000) dollars if Teck Cominco's decision not to proceed is for good cause or twenty million ($20,000,000) dollars if Teck Cominco's decision not to proceed is not for good cause. Teck Cominco has good cause not to build the Pipeline if: (1) the approval conditions imposed in the federal, state or local permits, and in any other needed approvals, required for permitting, engineering and constructing the Pipeline require substantial, material undertakings other than the design, construction and operation of the Pipeline in the DMTS, (2) the failure to receive necessary permits and other needed approvals to build the Pipeline and develop and mine the Aqqaluk Deposit within a reasonable period of time is for reasons beyond Teck Cominco's control, or (3) the total cost of permitting, engineering and constructing the Pipeline exceeds $120 million. Any disputes about whether Teck Cominco's decision not to proceed is for good cause shall be determined by the Court. Payment of the penalty shall be made to the United States.

C. Teck Cominco will annually report in writing to the Court and Plaintiffs: (1) what permits have been applied for, (2) the current status of the applications, (3) any known obstacles to permitting or construction of the Pipeline, (4) the total costs expended that year and to date, and (5) other steps taken in furtherance of permitting, engineering and constructing the Pipeline.

D. If Teck Cominco fails to diligently design, construct, and operate the Pipeline and seek necessary permits and approval, Plaintiffs may seek to enforce the terms of this Consent Decree at any time.

9. Teck Cominco shall purchase and provide reverse osmosis water filtration units in sufficient quantities to serve each residence, business and public building in Kivalina, in no case less than 125 such units. Upon delivery, Teck Cominco shall pay the City of

Kivalina $10,000 for the installation of these units in accordance with the Settlement Agreement. Commencing in 2009 and until the commencement of marine discharge from the Pipeline referenced in paragraph 8, Teck Cominco shall pay the City of Kivalina $50,000 per year to maintain or replace the reverse osmosis water filtration units.

10.

A. Commencing from May 14, 2008 and continuing through the effective date of the reissuance of NPDES Permit No. AK-003865-2, Teck Cominco shall comply with the existing permitted effluent discharge and in-stream water quality limits in NPDES Permit No. AK-003865-2 (as issued in 1998, and modified in 2003) with respect to parameters other than TDS, and shall comply with the Alaska State water quality standards for TDS ("Interim Effluent Limits"). As to TDS, it shall comply with the In-Stream Limit at the End of the Mixing Zone in Red Dog Creek (Station 151). The in-stream limit for TDS at Station 151 (downstream edge of the mixing zone in Main Stem Red Dog Creek) shall be 1500 mg/L from the start of, and at all times during, the discharge season, regardless of the concentration of TDS in Outfall 001. The applicable in-stream TDS concentrations for waters receiving Red Dog Mine discharge are as follows:

    i.    1500 mg/L at the downstream edge of the mixing zone in Main Stem Red Dog Creek (Station 151);

    ii.    1000 mg/L at the downstream edge of the mixing zone in Ikalukrok Creek (Station 150); and

    iii.    500 mg/L after July 25th in Lower Ikalukrok Creek (Station 160).

The Interim Effluent Limits shall be governed by the definitions in the existing NPDES Permit No. AK-003865-2 Condition I.K.

B.  The Interim Effluent Limits shall remain in effect until the effective date of the effluent limits prescribed in a renewed NPDES Permit No. AK-003865-2, and as to any effluent limits in a reissued permit whose effective date may be delayed or stayed as a result of administrative appeals or otherwise, during the period that the effluent limits are stayed. The Interim Effluent Limits have been agreed to during settlement negotiations and cannot be relied on or used by any party in any future proceeding.

C.  Beginning with the date of entry of the Consent Decree and continuing through the earlier of (a) the date that marine discharge via the Pipeline commences or (b) Teck Cominco advises Plaintiffs and the Court pursuant to Paragraph 8 that it elects not to proceed with the Pipeline, Teck Cominco shall pay to the United States, automatically and without notice or demand, stipulated penalties in the amounts set forth below for the below listed violations of the Interim Effluent Limits applicable to Red Dog Mine and violations of the effluent limits in the reissued NPDES Permit No. AK-003865-2. For each violation of a given effluent discharge limit, Teck Cominco shall pay stipulated penalties as follows:

| Number of Daily Violations per Discharge Limit | Penalty |
| --- | --- |
| 1-10 | $625 |
| 11-25 | $1,500 |
| 26-50 | $3,750 |
| 51-300 | $6,000 |
| 301+ | $12,500 |

| Number of Monthly Violations per Discharge Limit | Penalty |
|---|---|
| 1-30 | $625 |
| 31-60 | $1,500 |
| 61-185 | $3,750 |
| 186-500 | $6,000 |
| 500+ | $12,500 |

For purposes of calculating the number of violations, violations shall not be cumulated for more than five years on a rolling basis. A monthly violation is a violation for every day in which discharge occurs during that month.

Within 30 days of entry of the Consent Decree and until the effective date of reissuance of NPDES Permit No. AK-003865-2, Teck Cominco shall pay a civil penalty of $118,750 to the United States for each discharge season.

The stipulated penalties have been agreed to during settlement negotiations and cannot be relied on or used by any party in any future proceeding.

D. Teck Cominco shall pay all stipulated penalties to the United States by electronic funds transfer within 30 days of the submittal to EPA Region 10 of the discharge monitoring report that reports the occurrence of a violation under this Consent Decree. Compliance by Teck Cominco with the Interim Effluent Limits for Red Dog Mine and/or the reissued permit effluent limits for Red Dog Mine, together with timely payment of any stipulated penalties assessed pursuant to this paragraph 10, constitutes a complete remedy for any violations of the effluent limitations contained in NPDES Permit No. AK-003865-2 that occur between the date of entry of the Consent Decree and the effective date of reissuance of NPDES Permit No. AK-003865-2,

and for any violations of the effluent limits contained in a reissued permit No. AK-003865-2 that occur between the date of re-issuance and (1) the operation of the Pipeline or (2) Teck Cominco's notification to the Plaintiffs and the Court of the decision not to proceed with the Pipeline. Teck Cominco shall file annually with the Court and provide monthly to the Plaintiffs a report of violations and automatic penalties assessed pursuant to the Consent Decree.

11. Teck Cominco agrees to pay Plaintiffs' costs and attorneys' fees, including expert witness fees and costs, in the amount of $2,350,000 as provided by 33 U.S.C. § 1365(d). The check shall be made payable to the Center on Race, Poverty and the Environment (CRPE) and shall be received within 30 days of entry of this Consent Decree. CRPE shall be wholly responsible for the proper distribution of that sum to any and all attorneys, experts or other entities who may be entitled thereto. The sum set forth in this paragraph shall be complete settlement of Plaintiffs' claim for costs and fees incurred up to the date of entry of this Consent Decree and thereafter for responding to possible comments on this Consent Decree and for monitoring Teck Cominco's compliance with this Consent Decree, but does not include costs and fees, if any, incurred thereafter in the event of a proceeding that results in the Court issuing an order interpreting or enforcing the terms of this Consent Decree.

12. The Court shall retain jurisdiction over this matter until termination of the Consent Decree per Paragraph 14. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties shall first attempt to informally resolve the dispute through meetings between the parties by serving written notice of request for resolution to the parties and their counsel of record. If no resolution is reached within thirty (30) days from the date that the notice of dispute is served, the parties may resolve the dispute by filing motions with the Court.

13. The Court recognizes that no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to 45 days following the receipt of

a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA pursuant to 33 U.S.C. § 1365(c)(3). The parties have certified that the EPA Administrator and the Attorney General received copies by no later than _____, and more than 45 days have elapsed since that date.

14. This Consent Decree shall take effect immediately. Upon notice to Plaintiffs, which may be accomplished by service of any pleadings filed with the Court, Teck Cominco may move the Court to terminate this Consent Decree at any time following the later of (1) completion of Teck Cominco's obligations under Paragraph 8 or (2) the effective date of reissued NPDES Permit No. AK-003865-2. In support of a motion to terminate, Teck Cominco shall certify that it has discharged all of its obligations arising under this Consent Decree. The Court shall terminate the Consent Decree unless, within 45 days of service of Teck Cominco's certification, the Plaintiffs demonstrate that Teck Cominco has failed to discharge one or more of its obligations under this Consent Decree.

15. This Consent Decree may be modified only upon the written consent of the parties and the approval of the Court.

16. Notifications required by this Consent Decree shall be served by first class mail, postage pre-paid, to each of the following addressees.

Plaintiffs:
    Luke Cole
    Center on Race, Poverty & the Environment
    47 Kearny, Ste 804
    San Francisco, CA 94108

    Nancy S. Wainwright
    Law Offices of Nancy S. Wainwright
    13030 Back Road, Suite 555
    Anchorage, AK 99515

Teck Cominco Alaska Incorporated:
    Sean Halloran
    Hartig Rhodes Hoge & Lekisch, PC
    717 K Street

       Anchorage, AK 99501

NANA Regional Corporation:
    James Torgerson
    Heller Ehrman LLP
    510 L Street
    Anchorage, AK 99501

Northwest Arctic Borough:
    David S. Case, P.C.
    Landye Bennett Blumstein LLP
    701 W. 8th Avenue, Suite 1200
    Anchorage, AK 99501

Dated and entered this _____ day of _____, 2008.

_____
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

Center on Race, Poverty & the Environment
Attorneys for Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan and Joseph Swan

By: _____
    Luke Cole

Hartig Rhodes Hoge Lekisch, PC
Attorneys for Teck Cominco Alaska Incorporated

By: _____
    Sean Halloran

Heller Ehrman LLP
Attorneys for NANA Regional Corp.

By: _____
    James Torgerson

Landye Bennett Blumstein LLP
Attorneys for Northwest Arctic Borough


By:_____
        David S. Case, P.C.